Christopher Celentino (SBN 131688)
Yosina M. Lissebeck (SBN 201654)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Tel: (619) 400-0500
Fax: (619) 400-0501
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com

Tyler Powell (Ky. Bar No. 90520 – Admitted pro hac vice)
**DINSMORE & SHOHL LLP**
100 West Main Street, Suite 900
Lexington, KY  40507
Tel: (859) 425-1046
Fax: (859) 425-1099
tyler.powell@dinsmore.com

Attorneys for Richard A. Marshack,
Trustee of the LPG Liquidation Trust

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>The Litigation Practice Group P.C.,<br><br>   Debtor.<br>_____<br><br>Richard A. Marshack, Trustee of the LPG Liquidation Trust,<br><br>   Plaintiff,<br><br>v.<br><br>Oxford Knox, LLC, *et. al.*<br><br>   Defendants. | Chapter 11<br><br>Case No. 8:23-bk-10571-SC<br>Adv No. 8:25-ap-01208-SC<br><br>**STIPULATION OF PLAINTIFF RICHARD A. MARSHACK, TRUSTEE OF THE LPG LIQUIDATION TRUST AND CERTAIN DEFENDANTS: (I) ALLOWING AMENDMENT OF COMPLAINT; (II) DISMISSING CERTAIN DEFENDANTS WITHOUT PREJUDICE; (III) EXTENDING REMAINING DEFENDANTS' TIME TO ANSWER AND OTHER DEADLINES; AND (IV) RESCHEDULING STATUS CONFERENCE FROM AUGUST 21, 2025 TO SEPTEMBER 16, 2025**<br><br>Honorable Scott C. Clarkson<br><br>**Status Conference:**<br>Date:   August 21, 2025<br>Time:  1:30 P.M.<br>Place:  411 West Fourth Street #5C, Santa Ana, CA 92701 (by Zoom.gov) |

1

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, TO THE UNITED STATES TRUSTEE AND TO ALL OTHER INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

This Stipulation ("Stipulation") is entered into by and between Plaintiff Richard A. Marshack, the Trustee of the Liquidating Trust ("Trustee" and/or "Plaintiff") for the bankruptcy estate ("Estate") of the Debtor "The Litigation Practice Group PC" ("Debtor" or "LPG") in the above captioned bankruptcy and certain defendants who have not been dismissed or had a default entered against them, represented by their counsel, Golden Goodrich, LLP, pursuant to LBR 7016-1(a)(5), with regard to the following.

## RECITALS

A.    On or about March 19, 2025, the Trustee filed the above captioned adversary proceeding against multiple Defendants. Pursuant to the issued summons, the Defendants' answers were due on or before May 7, 2025.

B.    On April 7, 2025, the Court entered an Order Scheduling a Status Conference on June 5, 2025 [Dkt. No. 5]. The Order also established meet and confer and other deadlines for counsel in advance of the Status Conference.

C.    Golden Goodrich, LLP has stated it represents the parties listed on the attached Exhibit 1 ("GG Parties"). Golden Goodrich, LLP. has agreed to appear on behalf of the GG Parties that are or will be named in the second amended Complaint ("Second Amended Complaint"). [1]

D.    The Parties previously agreed to extend the time of the GG Parties to answer or otherwise respond to the operative complaint until June 6, 2025 and to extend other deadlines in advance of a status conference scheduled for July 17, 2025 ("Order Extending Time") [Dkt. No. 12].

E.    Plaintiff has asked the GG Parties to consent to the filing of a Second Amended Complaint after the dismissal of certain defendants without prejudice and to correct typographical and other mistakes in the caption and the Complaint and First Amended Complaint. No additional claims or causes of action are being added. A separate notice of dismissal will be filed. A redlined copy of

---

[1] Golden Goodrich, LLP never appeared or represented Defendants BAE, Inc., who has had a default entered against it [Dkt. No. 14] and Rose Bianca Loli, who has been dismissed as a party [Dkt. No. 20].

#63391135v2

the Plaintiff's proposed Second Amended Complaint (without exhibits) is attached hereto as **Exhibit 2**.

F.     Plaintiff and the GG Parties (Collectively "Parties") agree that the GG Parties' consent to the filing of Plaintiff's Second Amended Complaint is without prejudice to the GG Parties' rights to assert any and all defenses to the Second Amended Complaint and any subsequently filed complaint, including defenses relating to the addition of certain GG Parties as defendants to the Complaint after the deadlines set for in 11 U.S.C. §§ 108(a) and 546(a).

G.     Based on the proposed amendment of the First Amended Complaint and to provide additional time to gather information and discuss the litigation, the Parties believe it will be beneficial to further extend the deadlines set in the Order Extending Time.

H.     The Parties agree that the Court will retain the ability to enforce the promises and representations of the parties set forth in this Stipulation as may be needed.

WHEREFORE, the Parties agree and stipulate, subject to Court approval, to the following:

1.     Upon entry of an order approving this stipulation, Plaintiff will file a Notice of Dismissal Without Prejudice of Rick Emmett, Ryan Taylor Connet, Obrick, Inc., Albright, Inc., Final Season, Inc., Factor In, Inc., Sean Stephens, Decacorn Holdings, Inc., Daniel Lansdale, Innovative Solutions, LLC, MFCR Investments, LLC, MRJR20 Partners, LLC, Lifesize, Inc., Karrington, Inc., Jason D. Williams, The Coelho Irrevocable Life Insurance Trust, and A Solution Debt Relief, Inc.

2.     Plaintiff will file his Second Amended Complaint within three (3) business days of entry of an order approving this Stipulation.  When the Second Amended Complaint is filed, the Parties ask that the Court approve the amendment of the caption and complaint to reflect the dismissal of parties so they are no longer connected to this litigation.

3.     The remaining GG Parties will waive service of process of the Second Amended Complaint and acknowledge service of the complaint through their undersigned counsel. The GG Parties shall have until August 18th, 2025 to answer or otherwise respond to the Plaintiff's Second Amended Complaint.

4.     The Parties agree to reschedule the status conference currently set for 1:30 p.m. on

#63391135v2

1  August 21, 2025 to a status conference at 1:30 p.m. on September 16th,          2025 or any other

2  date that is convenient to the Court.  A status report will be filed in accordance with the local rules

3  and the Parties will hold a timely Rule 26(f) meeting.

4       5.     Except as set forth herein, the Parties reserve all rights and claims against the other.

5       6.     This Stipulation may be executed in one or more counterparts, and facsimile or

6  electronic signatures may be used in filing this document with the Court.

7  Dated: August 7, 2025          DINSMORE & SHOHL LLP

8

9                                By: /s/ Tyler Powell
                                  YOSINA M. LISSEBECK
10                                TYLER POWELL (pro hac vice)
                                  Attorneys for Plaintiff Richard A. Marshack, Trustee of
11                                the LPG Liquidation Trust

12

13  Dated: August 7, 2025          GOLDEN GOODRICH LLP

14

15                                By:
                                  JEFFREY GOLDEN
16                                DAVID GOODRICH
                                  *Counsel for Defendants listed on Exhibit 1.*

17

18

19

20

21

22

23

24

25

26

27

28

4

#63391135v1

# EXHIBIT 1

# EXHIBIT 1

Daniel Lansdale

Lexicon Consulting, Inc.

Frank Brown

United Partnerships, Inc.

Jason D. Williams

A Solution Debt Relief Inc.

Jason Dovalina

JNR Services, Inc.

Karrington, Inc.

Obrik, Inc.

Albright, Inc.

Matthew Church

Ventura Consulting, LLC.

MFCR Investments, LLC.

Rachel Dovalina

Buffalo 21 Partners, Inc.

C.A.T. Exteriors, Inc.

Rick Emmett

Home Energy Solutions, Inc.

Investlinc Wealth Services, Inc.

MRjR20 Partners, LLC.

Oxford Knox, LLC.

The Coelho Irrevocable Life Insurance Trust

Validation LLC

Ryan Taylor Connet

Samson Ly

Spectrum Payment Solutions, LLC.

Decacorn Holdings, LLC

BEW Solar Management LLC.

Sean M. Stephens

AZLS Enterprises, Inc.

Factor In, Inc.

Syed Faisal Gilani

Innovative Solutions, LLC

Final Season, Inc.

Lifesize, Inc.

#63391135v1

# EXHIBIT 2

1   Christopher Celentino (State Bar No. 131688)
    Yosina M. Lissebeck (State Bar No. 201654)
2   Christopher B. Ghio (State Bar No. 259094)
    **DINSMORE & SHOHL LLP**
3   655 West Broadway, Suite 800
    San Diego, CA 92101
4   Telephone: 619.400.0500
    Facsimile: 619.400.0501
5   christopher.celentino@dinsmore.com
    yosina.lissebeck@dinsmore.com
6   christopher.ghio@dinsmore.com

7   Tyler Powell (Ky. Bar No. 90520 – Admitted pro hac vice)
    **DINSMORE & SHOHL, LLP**
8   100 West Main Street, Suite 900
    Lexington, KY 40507
9   Telephone: 859-425-10456
    Facsimile: 859-425-1099
10   tyler.powell@dinsmore.com

11   ~~Special Counsel~~Attorneys for ~~to~~ Richard A. Marshack,
    Trustee of the LPG Liquidation Trust

12

13           **UNITED STATES BANKRUPTCY COURT**

14     **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

15   In re:                          Chapter 11

16   The Litigation Practice Group P.C.,     Case No.: 8:23-bk-10571-SC

17                  Debtor(s).    Adv. No: 8:24-ap-01208~~-----~~-SC

18   Richard A. Marshack, Trustee of the LPG    **TRUSTEE'S SECOND AMENDED**
    Liquidation Trust,               **COMPLAINT FOR:**

19

20                   Plaintiff,   **(1) AVOIDANCE, RECOVERY, AND
                           PRESERVATION OF PREFERENTIAL
      v.                     TRANSFERS MADE TO OR FOR
                           CERTAIN DEFENDANTS MADE
21   Oxford Knox, LLC, a Delaware limited liability   WITHIN NINETY DAYS OF THE
    company; Buffalo 21 Partners, Inc., a Wyoming   PETITION DATE;**

22   corporation; ~~Rick Emmett, individually; Ryan~~
    ~~Taylor Connet, individually; Obrik, Inc., a~~   **(2) AVOIDANCE, RECOVERY, AND

23   ~~Wyoming corporation; Albright, Inc., a Florida~~   PRESERVATION OF POST-PETITION
    ~~corporation;~~ Jason Dovalina, individually; Rachel   TRANSFERS MADE TO OR FOR THE

24   Dovalina, individually; ~~Final Season, Inc., a~~   BENEFIT OF CERTAIN DEFENDANTS;**
    ~~California corporation; Factor In, Inc., a California~~

25   ~~corporation;~~ Syed Faisal Gilani aka Sye Gilani,   **(3) AVOIDANCE OF DEBTOR'S
    individually; BAE Enterprises, Inc., a Wyoming   EXECUTION OF REPAYMENT

26   corporation; Rose Bianca Loli, individually;   AGREEMENT WITH DEFENDANT
    ~~Decacorn Holdings, Inc., a California limited~~   OXFORD KNOX, LLC PURSUANT TO

27   ~~liability company;~~ Samson Ly, individually; BEW   11 U.S.C. §§ 548(a), 550, AND 551;**
    Solar Management, LLC, a California limited

28                           **(4) AVOIDANCE, RECOVERY, AND
                           PRESERVATION OF FRAUDULENT**

liability company; ~~Sean Stephens, individually~~; Lexicon Consulting, LLC, a ~~California~~ Colorado limited liability company~~corporation; Daniel Lansdale, individually~~; United Partnerships, LLC, a ~~California~~ Florida limited liability company;~~corporation;~~ Ventura Consulting, LLC, a Nevada limited liability company; Matthew Church, individually; Frank Brown, individually; Validation, LLC, a terminated California limited liability company; ~~Innovative Solutions, LLC, a Wyoming corporation; MRJR20 Partners, LLC, a California limited liability company; MFCR, Investments, LLC, a Florida limited liability company; Lifesize, Inc., a Wyoming corporation.; Karrington, Inc., a Wyoming corporation;~~ Spectrum Payment Solutions, LLC, a California limited liability company; ~~Jason D. Williams, individually;~~ Home Energy Solutions, Inc., a California corporation; ~~The Coelho Irrevocable Life Insurance Trust, a California trust;~~ JNR Services, Inc., a California corporation; C.A.T. Exteriors, Inc., an Arizona corporation; AZLS Enterprises, Inc, a California corporation; ~~A Solution Debt Relief, Inc., a Wyoming corporation~~ and INVESTLINC Wealth Services, Inc., a California corporation;

Defendant(s).

**TRANSFER(S) PURSUANT TO 11 U.S.C. §§ 548(a)(1), 550, AND 551;**

**(5) AVOIDANCE, RECOVERY, AND PRESERVATION OF FRAUDULENT TRANSFER(S) PURSUANT TO 11 U.S.C. §§ 548(a)(2), 550, AND 551;**

**(6) AVOIDANCE, PRESERVATION, AND RECOVERY OF VOIDABLE TRANSFERS MADE WITH INTENT TO DEFRAUD [11 U.S.C. §§ 544, 550, 551; CAL. CIV. CODE §§ 3439.04(a)(1) AND 3439.07];**

**(7) AVOIDANCE, PRESERVATION, AND RECOVERY OF VOIDABLE TRANSFERS MADE WITH NO INTENT TO DEFRAUD [11 U.S.C. §§ 544, 550, 551; CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05, AND 3439.07];**

**(8) AVOIDANCE, RECOVERY, AND PRESERVATION OF FRAUDULENT TRANSFERS MADE TO OR FOR THE BENEFIT OF DEFENDANTS GILANI AND DOVALINA ARISING FROM USE OF AMERICAN EXPRESS CARD; and**

**(9) OBJECTION TO PROOF OF CLAIM NO. 818 OF OXFORD KNOX, LLC**

Judge: Hon. Scott C. Clarkson
Dept: 5C

For his *Second Amended* Complaint for (1) Avoidance, recovery, and preservation of preferential transfers made to or for certain defendants made within ninety days of the petition date; (2) Avoidance, recovery, and preservation of Post-Petition transfers made to or for certain defendants; (3) Avoidance c̶ of Debtor's execution of repayment agreement with defendant Oxford Knox, LLC pursuant to 11 U.S.C. §§548(a), 550, and 551; (4) Avoidance, rr̶ecovery, and preservation of fraudulent transfers(s) pursuant to 11 U.S.C. §§548(a)(1), 550, and 551; (5) Avoidance, recovery, and preservation of fraudulent transfer(s) to 11 U.S.C. §§548(a)(2), 550, and 551; (6) Avoidance, preservation, and recovery of voidable transfers made with intent to defraud [11 U.S.C. §§544, 550, 551; Cal. Civ Code §§3439.04(a)(1) and 3439.07] (7)Avoidance, preservation, and recovery of voidable transfers made with no intent to defraud [11 U.S.C. §§544, 550, 551; Cal. Civ. Code

2

*§§3439.04(a)(2), 3439.05, and 3439.07]; (8) Avoidance, recovery, and preservation of fraudulent transfers made to or for the benefit of Defendants Gilani and Dovalina arising from use of American Express Card; and (9) Objection to Proof of Claim No. 818 of Oxford Knox, LLC* (the "Complaint"), plaintiff Richard A. Marshack, the former Chapter 11 Trustee for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") and Trustee of the LPG Liquidation Trust (collectively, "Trustee" or "Plaintiff") in the above-captioned bankruptcy case (the "Bankruptcy Case"), alleges and avers as follows:

### STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court").

2.      Regardless of whether this proceeding is core, non-core, or otherwise, the Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

3.      Defendants are hereby notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires them to plead whether consent is given to the entry of a final order and judgment by the bankruptcy court.

4.      Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to the Debtor's pending Bankruptcy Case.

### THE PARTIES

5.      Debtor LPG is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

6.      Defendant Oxford Knox, LLC is, and at all material times represented that it was, a Delaware - domestic limited liability company ("Oxford Knox").

7.      Defendant Oxford Knox may be served by first class mail postage prepaid upon its

#62848569V1

1    Partnership Representative: Richard R. Emmett, 251 Little Falls Drive, Wilmington, Delaware 19808.

2        8.       Defendant Buffalo 21 Partners, Inc. is, and at all material times represented that it was,

3    a Wyoming - domestic corporation, ("Buffalo 21").

4        9.       Defendant Buffalo 21 may be served by first class mail postage prepaid upon its CEO:

5    Richard R. Emmett, 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801.

6        ~~10.       Defendant Rick Ronald Emmett is, and at all material times represented that he was,~~

7    ~~an individual residing in the state of California ("Emmett").~~

8        ~~11.       Defendant Emmett may be served by first class mail postage prepaid upon himself; 10~~

9    ~~Pointe Drive, Suite 150, Brea, California 92821.~~

10       ~~12.       Defendant Ryan Taylor Connet is, and at all material times represented that he was,~~

11    ~~an individual residing in the state of California ("Connet").~~

12       ~~13.       Defendant Connet may be served by first class mail postage prepaid upon himself;~~

13    ~~4155 E. La Palma Avenue, Anaheim, California 92807.~~

14       ~~14.       Defendant Obrik, Inc. is, and at all material times represented that it was, a Wyoming~~

15    ~~- domestic corporation ("Obrik").~~

16       ~~15.       Defendant Obrik may be served by first class mail postage prepaid upon its registered~~

17    ~~agent: Cloud Peak Law; 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming 82801.~~

18       ~~16.       Defendant Albright, Inc. is, and at all material times represented that it was, a Florida~~

19    ~~- domestic corporation ("Albright").~~

20       ~~17.       Defendant Albright may be served by first class mail postage prepaid upon its~~

21    ~~registered agent: William J. Albright; 701 Aqui Esta Drive, #263, Punta Gorda, Florida, 33951.~~

22       ~~18.~~10.   Defendant Jason Dovalina is, and at all material times represented that he was, an

23    individual residing in the state of California ("Jason Dovalina").

24       ~~19.~~11.   Defendant Jason Dovalina, may be served by first class mail postage prepaid upon

25    himself; 128 W. Santa Fe Avenue, Suite C, Placentia, California 92870-5632.

26       ~~20.~~12.   Defendant Rachel Dovalina is, and at all material times represented that she was, an

27    individual residing in the state of California ("Rachel Dovalina").

28       ~~21.~~13.   Defendant Rachel Dovalina, may be served by first class mail postage prepaid upon

#62848569V1

1  herself; 736 Oceanview Drive, Fullerton, California 92832.

2  ~~22.    Defendant The Final Season, Inc. is, and at all material times represented that it was,~~

3  ~~a California - domestic corporation ("Final Season").~~

4  ~~23.    Defendant Final Season may be served by first class mail postage prepaid upon its~~

5  ~~agent; 5716 Corsa Avenue S. 110, West Lake Village, California 91362.~~

6  ~~24.    Defendant Factor In, Inc. is, and at all material times represented that it was, a~~

7  ~~California - domestic corporation ("Factor In").~~

8  ~~25.    Defendant Factor In may be served by first class mail postage prepaid upon its~~

9  ~~registered agent: Sye Gilani; 7651 Greenock Way, Riverside, California 92508.~~

10  ~~26.~~14.  Defendant Syed Faisal Gilani aka Sye Gilani is, and at all material times represented

11  that he was, an individual residing in the state of California ("Gilani").

12  ~~27.~~15.  Defendant Gilani may be served by first class mail postage prepaid upon himself: 7651

13  Greenock Way, Riverside, California 92508.

14  ~~28.~~16.  Defendant Bae Enterprises, Inc. is, and at all material times represented that it was, a

15  Wyoming - domestic corporation ("Bae Enterprises").

16  ~~29.~~17.  Defendant Bae Enterprises may be served by first class mail postage prepaid upon its

17  registered agent: Cloud Peak Law, LLC, 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming

18  82801.

19  18.    ~~Defendant~~ Rose Bianca Loli was named as a Defendant but has subsequently been

20  dismissed as a party [Dkt. No. 20].

21  ~~30.    is, and at all material times represented that she was, an individual residing in the state~~

22  ~~of California ("Loli").~~

23  ~~31.    Defendant Loli may be served by first class mail postage prepaid upon herself: 33741~~

24  ~~Alcazar Drive, Dana Point, California 92629 or 1220 Ensenada Avenue, Laguna Beach, California~~

25  ~~92651.~~

26  ~~32.    Defendant Decacorn Holdings, LLC is, and at all material times represented that it~~

27  ~~was, a California - domestic limited liability company ("Decacorn Holdings").~~

28  ~~33.    Defendant Decacorn may be served by first class mail postage prepaid upon its~~

#62848569V1

1  registered agent: Dana Fang, 2520 Venture Oaks Way, Suite 120, Sacramento, California 95833.

2  ~~34.~~19.  Defendant Samson Ly is, and at all material times represented that he is a resident of

3  California ("Ly").

4  ~~35.~~20.  Defendant Ly may be served by first class mail postage prepaid upon himself: 208 S.

5  Moore Avenue, Apt. D, Monterey Park, California 91754.

6  ~~36.~~21.  Defendant BEW Solar Management, LLC is, and at all material times represented that

7  it was, a California – domestic limited liability company ("BEW Solar").

8  ~~37.~~22.  Defendant BEW Solar may be served by first class mail postage prepaid upon its

9  manager: Sean M. Stephens, 2560 N. Synergy Avenue, Eagle, Idaho 83616.

10  ~~38.     Defendant Sean M. Stephens is, and at all material times represented that he was, an~~

11  ~~individual residing in Idaho ("Stephens").~~

12  ~~39.     Defendant Stephens may be served by first class mail postage prepaid upon himself:~~

13  ~~2560 N Synergy Ave, Eagle, Idaho 83616.~~

14  ~~40.~~23.  Defendant Lexicon Consulting, ~~Inc~~LLC. is, and at all material times represented that

15  it was, a Colorado limited liability company~~California – domestic corporation~~ ("Lexicon").

16  ~~41.~~24.  Defendant Lexicon may be served by first class mail postage prepaid upon its

17  registered agent: Vanghagen Law, PC, 44 Cook Street, Suite 110 Denver CO 80206.  ~~Jamie Latshaw,~~

18  ~~266 S Magnolia Avenue, Suite 202, El Cajon, California 92020.~~

19  ~~42.     Defendant Daniel Lansdale is, and at all material times was, an individual residing in~~

20  ~~the state of California ("Lansdale").~~

21  ~~43.     Defendant Lansdale may be served by first class mail postage prepaid upon himself:~~

22  ~~515 W. Commonwealth Avenue, Suite 211, Fullerton, California 92832.~~

23  ~~44.~~25.  Defendant United Partnerships, ~~Inc~~LLC. is, and all material times represented that it

24  was, a ~~California~~Florida limited liability company ~~, – domestic corporation~~ ("United Partnerships").

25  ~~45.~~26.  Defendant United Partnerships may be served by first class mail postage prepaid upon

26  its registered agent: ~~7300~~ Frank Brown, 215 New River Drive East 910, Fort Lauderdale, FL 33301.

27  ~~Lennox Avenue, Room J-14, Van Nuys, CA 91405.~~

28  ~~46.~~27.  Defendant Ventura Consulting, LLC is, and at all material times represented that it

1    was, a Nevada - domestic limited liability company ("Ventura").

2        47.28.  Defendant Ventura may be served by first class mail postage prepaid upon its member

3    Matthew Church; 708 Grandview Avenue, Fullerton, California 92832 and/or 10620 Southern

4    Highlands Parkway, Suite 110-18, Las Vegas, Nevada 89141.

5        48.29.  Defendant Matthew Church is, and at all material times represented that he was an

6    individual residing in the states of California and Nevada ("Church")

7        49.30.  Defendant Church may be served by first class postage prepaid upon himself; 708

8    Grandview Avenue, Fullerton, California 92832 and 10620 Southern Highlands Parkway, Suite 110-

9    18, Las Vegas, Nevada 89141.

10       50.31.  Defendant Frank Brown is, and at all material times represented that he was an

11   individual residing in the state of Nevada ("Brown").

12       51.32.  Defendant Brown may be served first class postage prepaid upon himself: and 10620

13   Southern Highlands Parkway, Suite 110-18, Las Vegas Nevada 89141 and 10881 Pentland Downs

14   Street, Las Vegas, Nevada 89141.

15       52.33.  Defendant Validation, LLC is currently a terminated California limited liability

16   company that dissolved on September 19, 2022 ("Validation").

17       53.34.  Defendant Validation may be served by first class mail postage prepaid delivered to

18   its last registered agent Matthew Church at either 708 Grandview Avenue, Fullerton, California 92832

19   and 10620 Southern Highlands Parkway, Suite 110-18, Las Vegas, Nevada 89141.

20       54.    Defendant Innovative Solutions, Inc. is, and at all material times represented that it

21   was a Wyoming - domestic corporation ("Innovative Solutions").

22       55.    Defendant Innovative Solutions may be served by first class mail postage prepaid upon

23   its agent Cloud Peak Law, LLC; 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming 82801.

24       56.    Defendant MRJR20 Partners, LLC, is and at all material times represented that it was

25   a California - domestic limited liability company ("MRJR20").

26       57.    Defendant MRJR20 may be served by first class mail postage prepaid upon its agent

27   Rick R. Emmett; 10 Pointe Drive, Suite 150, Brea, California 92821.

28       58.    Defendant MFCR Investments, LLC is, and at all material times represented that it

7

1  was a Florida – domestic limited liability company ("MFCR Investments").

2  59.  Defendant MFCR Investments may be served by first class mail postage prepaid upon

3  its agent Scott F. Penton; 1525 Clapton Drive, Deland, Florida 32720.

4  60.  Defendant Lifesize, Inc. is, and at all material times represented that it was a Wyoming

5  – domestic corporation ("Lifesize").

6  61.  Defendant Lifesize may be served by first class mail postage prepaid upon its agent

7  Cloud Peak Law, LLC; 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming 82801.

8  62.  Defendant Karrington, Inc. is, and at all material times represented that it was, a

9  Wyoming – domestic corporation ("Karrington").

10  63.  Defendant Karrington may be served by first class mail postage prepaid upon it

11  registered agent: Company Sage Agents, LLC; 1095 Sugarview Drive, Suite 100, Sheridan, Wyoming

12  82801.

13  64.35.  Defendant Spectrum Payment Solutions, LLC is, and at all material times represented

14  that it was, a California – domestic limited liability company ("Spectrum").

15  65.36.   Defendant Spectrum may be served by first class mail postage prepaid upon its agent

16  Samson Ly; 208 S. Moore Avenue, Apt. D, Monterey Park, California 91754.

17  66.  Defendant Jason D. Williams is, and at all material times represented that he was an

18  individual residing in the state of California ("Williams").

19  67.  Defendant Williams may be served by first class mail postage prepaid upon himself;

20  4155 E. La Palma Avenue, Anaheim, California 92807.

21  68.37.  Defendant Home Energy Solutions, Inc. is, and at all material times represented that

22  it was a California – domestic corporation ("Home Energy").

23  69.38.  Defendant Home Energy may be served by first class mail postage prepaid upon its

24  Financial Manager: Rick R. Emmett, 300 S. Harbor Boulevard., Suite 1000, Anaheim, California

25  92805.

26  70.  Defendant The Coelho Irrevocable Life Insurance Trust is, and at all material times

27  represented that it was a California Trust ("Coelho Trust").

28  71.  Defendant Coelho Trust may be served by first class mail postage prepaid upon its

#62848569V1

1    ~~Trustee Rick R. Emmett: 300 S. Harbor Boulevard., Suite 1000, Anaheim, California 92805.~~

2    ~~72.~~39.  Defendant JNR Services, Inc. is, and at all material times represented that it was a

3    California – domestic corporation ("JNR").

4    ~~73.~~40.  Defendant JNR may be served by first class mail postage prepaid upon its agent Rick

5    R. Emmett; 10 Pointe Drive, Suite 150, Brea, California 92821.

6    ~~74.~~41.  Defendant C.A.T. Exteriors, Inc. is, and at all material times represented that it was an

7    Arizona – domestic corporation ("CAT Exteriors").

8    ~~75.~~42.  Defendant CAT Exteriors may be served by first class mail postage prepaid upon its

9    agent Rick R. Emmett: 10 Pointe Drive, Suite 150, Brea, California 92821.

10    ~~76.~~43.  Defendant AZLS Enterprises Inc. is, and at all material times represented that it was a

11    California – domestic corporation ("AZLS").

12    ~~77.~~44.  Defendant AZLS may be served by first class mail postage prepaid upon its agent: Hee

13    S. Noh, 9 Traditional Place, Irvine, California 92602.

14    ~~78.    Defendant A Solution Debt Relief, Inc. is, an administratively dissolved Wyoming~~

15    ~~corporation ("A Solution").~~

16    ~~79.    Defendant A Solution may be served by first class mail postage prepaid upon its agent:~~

17    ~~Cloud Peak Law, LLC, 1095 Sugar View Drive, Suite 500, Sheridan, WY 82801.~~

18    ~~80.~~45.  Defendant Investlinc Wealth Services, Inc. is, and at all material times represented that

19    it was a California – domestic corporation ("Investlinc").

20    ~~81.~~46.  Defendant InvestLinc may be served by first class mail postage prepaid upon its agent:

21    West A. Cohan, 10 Pointe Drive, Suite 150, Brea, California 92821.

22    ~~82.~~47.  Unless separately identified herein, all of the Defendants will collectively be referred

23    to herein as the "Oxford Knox Defendants."

24    ~~83.    As discussed herein, not all Oxford Knox Defendants are identified in the Exhibits as~~

25    ~~receiving payments. Those Oxford Knox Defendants that are not identified as receiving a payment~~

26    ~~are named herein in their capacity as (i) as a subsequent transferee of an identified transfer, (ii) the~~

27    ~~potential recipient of a not yet identified transfer, and/or (ii) the party for whose benefit a particular~~

28    ~~transfer was made that is identified herein. Specific allegations regarding the relationships of~~

1    ~~Defendants are made herein.~~

2                                    **GENERAL ALLEGATIONS**

3    **A.    The Bankruptcy Case**

4          ~~84.~~48.   On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under

5    Chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

6          ~~85.~~49.   The Office of the United States Trustee ("UST") filed its *Motion by United States*

7    *Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and

8    creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the

9    *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, &*

10   *1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No.

11   44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter*

12   *11 Trustee* [Bankr. Docket No. 58].

13         ~~86.~~50.   Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No.

14   63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy

15   Case. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's*

16   *Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

17         ~~87.~~51.   Trustee was not appointed until after events of the case and, therefore, bases these

18   allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir.

19   2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged

20   upon information and belief where the facts are peculiarly within the possession and control of the

21   defendant or where the belief is based on factual information that makes the inference of culpability

22   plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at

23   *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was

24   allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013

25   U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules

26   of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have

27   evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations

28   omitted)).

88.52.  Pursuant to the *Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation* entered September 9, 2024, and the *Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation* filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust, effective September 24, 2024. [Bankr. Docket Nos. 1646 & 1762].

89.53.  Plaintiff brings this action solely in his capacity as the Liquidating Trustee of the LPG Liquidation Trust, for the benefit of Debtor's Estate and its creditors.

**B.      Protective Order**

90.54.  On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of Protective Order (the "Protective Order").

91.55.  On June 3, 2024, the Court entered its *Order Granting Motion for Entry of Protective Order and the Protective Order* [Bankr. Docket No. 1270] (the "Protective Order"). A true and accurate copy of the Protective Order is attached as **Exhibit 1**, and incorporated herein.

92.56.  By its own terms, the Protective Order applies to this adversary proceeding and governs all discovery conducted herein.

**C.      LPG's Ownership and Management**

93.57.  Prior to the Petition Date, LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify. At all relevant times, LPG was controlled and operated by the individual named Tony Diab ("Diab").

94.58.  The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

95.59.  The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

96.60.  In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

97.61.  LPG mismanaged the consumers' monthly payments.

98.62.  Diab and other defendants devised a plan to fraudulently transfer funds, client files,

1   client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts

2   Receivable") out of LPG to third parties prior to the filing of bankruptcy.

3   ~~99.~~63.   To obtain consumer clients, LPG contracted with marketing companies, who

4   engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG

5   in exchange for a percentage of the ACH Receivables collected by LPG from the consumers. The

6   marketing affiliate went so far as to assist with the execution of an engagement letter between the

7   consumer and LPG.

8   ~~100.~~64.   In exchange, LPG agreed to pay the marketing affiliates a percentage the

9   monthly payments collected by LPG from the consumers.

10   ~~101.~~65.   Because LPG received payments from consumers over time, it often sought

11   financing by borrowing against its future cash flows. This borrowing was not only used to finance

12   operations at LPG, but also to pay the fees owed to the marketing companies for providing the client

13   referrals.

14   ~~102.~~66.   Many of the documents executed in connection with such financing described

15   the transactions as accounts receivable purchase agreements.

16   ~~103.~~67.   Diab used entities he controlled including, without limitation, Vulcan

17   Consulting, LLC ("Vulcan"), B.A.T. Inc. dba Coast Processing ("Coast"), PrimeLogix, LLC

18   ("PrimeLogix") and others to divert LPG consumer funds and ACH Receivables. Diab would use

19   numerous ACH processing companies in order to easily transfer millions of dollars from Debtor to

20   these entities he controlled, without oversight or detection, and to avoid payment disputes and

21   complications. The money that flowed from Debtor through these bank account to Defendants

22   consisted of Client Funds that Debtor funneled to these entities by means of the ACH processing

23   companies. Debtor also made deposits into these entities bank account such that they received Client

24   Funds directly from Debtor in addition to direct Accounts Receivable.

25   **SPECIFIC ALLEGATIONS**

26   A.   **Ponzi Scheme Presumption**

27   ~~104.~~68.   The Ponzi Scheme Presumption exists in bankruptcy proceedings.

28   ~~105.~~69.   The Ponzi Scheme Presumption can be utilized to establish a debtor's "intent

12

to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless makes payments to present investors, which, by definition, are meant to attract new investors. He must know all along, from the very nature of his activities, that investors at the end of the line will lose their money. Knowledge to a substantial certainty constitutes intent in the eyes of the law," *cf. Restatement (Second) of Torts § 8A* (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them. *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 114 F.4th 1148, 1153 (9th Cir. 2024) (by definition Ponzi scheme is destined to fail and the swindler and their entities often end in bankruptcy or equitable receivership); *Cf. Coleman Am. Moving Servs., Inc. v. First Nat'l Bank & Trust Co. (In re American Properties, Inc.)* 14 B.R. 637, 643 (Bankr. D. Kan. 1981) (intentionally carrying out a transaction with full knowledge that its effect will be detrimental to creditors is sufficient for actual intent to hinder, delay or defraud within the meaning of § 548(a)(1))." *Merrill v. Abbott (In re Independent Clearing House Co.)* (D. Utah 1987) 77 B.R. 843, 860. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 ("[a] trustee's action to recover assets fraudulently conveyed in the course of a Ponzi scheme does not require that the trustee also prove the Ponzi-scheme operator was subjectively aware his Ponzi scheme was destined to fail.").

106.70.     "But if all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share. In fact, by helping the debtor perpetuate his scheme, the transfers exacerbate the harm to creditors by increasing the amount of claims while diminishing the debtor's estate. In such a situation, the use of the defendant's money cannot objectively be called 'reasonably equivalent value.'" *In re Independent Clearing House Co.* 77 B.R. at 859. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute "property of the estate," and the trustee can recover them. *Id.* at

#62848569V1

853 n.17 (citations omitted).

~~107.~~71.        Debtor was operating a Ponzi scheme that utilized affiliates and several other entities as investors to continue its unlawful business practices by using funds provided by current investors to attract new investors hoping for very high returns. Therefore, the Debtor was running a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. section 548(a)(1). This is evidenced by the Court in this Bankruptcy Case declaring that Debtor was operating a Ponzi scheme when it stated the following:

> It is important to note that this Court has never received any significant and trustworthy evidence that Debtor accomplished meaningful results for its clients, but only anecdotal examples of viable success for its clients. By reviewing the Estate's claims register, there is evidence of consumer claims for the fraud and demanded but undelivered refunds of approximately $500 million. There is ample evidence that the pre-petition Debtor never placed the collected funds into an attorney-client trust account, and that Debtor or its principals simply looted the payments received through the client automatic withdrawals, stiffing both the clients and outside attorneys who may have been working on client cases with the hopes of being paid. There is also evidence before the Court that Debtor was running a Ponzi scheme and paying some outside (or "network") attorneys with funds obtained from new clients. In this case, it appears that some of the "lenders" may have been serving as "investors," hoping for very high returns before "the music stopped."   The Ninth Circuit has recently explained, "[b]y definition, a Ponzi scheme is destined to fail because the pool of available investors is not limitless. When the Ponzi scheme operator's pool of investors inevitably runs dry, the scheme collapses and the swindler and their entities often end up in bankruptcy or equitable receivership. *See generally* David R. Hague, Expanding the Ponzi Scheme Presumption, 64 DePaul L. Rev. 867 (2015). In bankruptcy, the court-appointed trustee is tasked with taking immediate control of the entity, ceasing ongoing fraudulent activity, locating and collecting assets for the bankruptcy or receivership estate, and achieving a final, equitable distribution of the remaining assets. *See* 11 U.S.C. § 704; *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 2024 U.S. App. LEXIS 21363, at *15 (9th Cir. Aug. 23, 2024). Finally, there is evidence that Debtor was encumbering (or as some creditors assert, "double or triple selling") their accounts or receivables to multiple lenders. With respect to Greyson's requested Administrative Claim [Dk. 676], and as more fully described in the concurrently entered order denying the claim, there has been no evidence presented that any work allegedly performed by Greyson assisted any clients or added any value to the Estate.

*See, Case 8:23-bk-10571-SC*, Doc 1545 n. 5.

~~108.~~72.        The Ponzi Scheme Presumption establishes a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme." *Merrill v.*

14

1   *Abbott* (*In re Independent Clearing House Co.*), 77 B.R. 843, 860 (D. Utah 1987). "Knowledge to a

2   substantial certainty constitutes intent in the eyes of the law, *cf. Restatement (Second) of Torts* § 8A

3   (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish

4   his actual intent to defraud them." *Id*. A trustee in bankruptcy is not required to show that an operator

5   of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co.,*

6   *LLC*, 114 F.4th at 1153 (9th Cir. 2024).

7       ~~109.~~73.         "[I]f all the debtor receives in return for a transfer is the use of the defendant's

8   money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share." *In re*

9   *Independent Clearing House Co.* 77 B.R. at 859. In such a situation, the use of the defendant's money

10  cannot objectively be called "reasonably equivalent value." *Id*. Therefore, "[t]he trustee can avoid the

11  transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are

12  preferential and fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can

13  recover them." *Id*. at 853 n.17 (citations omitted).

14      ~~110.~~74.         In addition to the solicitation of investments and lending from the Oxford Knox

15  Defendants, the Debtor's need for capital was so severe that it began borrowing funds through a loan

16  broker named Spot On Consulting, Inc. ("Spot On"). Upon information and belief, Spot On would

17  facilitate loans to LPG from individuals and corporations – sometimes for as little as $5,000 – in

18  exchange for a ten percent (10%) commission on the principal amount of the loan. LPG would then

19  typically promise to pay each lender as much as eight percent (8%) interest per month on the principal

20  balance for twelve months and would then repay the original principal amount at maturity.

21      ~~111.~~75.         Upon further information and belief, LPG borrowed hundreds of thousands of

22  dollars **each week** on these terms beginning in August 2022 and continuing until filing for

23  bankruptcy.

24      ~~112.~~76.         Proof of Claim No. 91 seeking more than $66 million dollars has been filed for

25  the outstanding balances owed on these brokered "loans". This Proof of Claim is incorporated by

26  reference herein.

27      ~~113.~~77.         Based on the Ponzi Scheme presumption the Court can infer that the Debtor

28  had the intent to defraud investors within the meaning of 11 U.S.C. § 548(a)(1). Since the Transfers

15

to the Defendants were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for such transfers, and the Trustee can avoid any such transfers because they were actually fraudulent as to the Debtor's creditors..

**B.    Prepetition Litigation and Creditors**

114.78.    Debtor's Schedule E/F, filed on April 4, 2023, as Dk. No. 33, lists: (a) 11 unsecured creditors with priority unsecured claims totaling $374,060.04; and (b) 58 nonpriority unsecured creditors with scheduled claims totaling $141,439,158.05.

115.79.    The claims register in this Bankruptcy Case includes 2,554 proofs of claim, totaling in excess of $424 million of claims asserted against the Estate.

116.80.    At least 14 UCC-1 statements were of record securing alleged debts of the Debtor as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired or provided evidence of the assignment or sale of substantial portions of the Debtor's future income. They secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (a) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (b) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (c) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 purportedly secured by a UCC statement filed on or about May 28, 2021; and (d) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.

117.81.    Debtor's balance sheets for the 36 months ending December 31, 2021, show approximately $17,900,000 in total assets at its highest point in November 2021. This amount is significantly less than the $424 million of claims filed.

118.82.    Debtor's Statement of Financial Affairs, filed on April 4, 2023, as Dk. No. 34, reflects 15 pending lawsuits against Debtor as of the Petition Date. The lawsuits date back to October 18, 2021 (*Fundura v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 613192-2021) and are as recent as March 10, 2023 (*Diverse Capital LLC v. The Litigation*

16

1    *Practice Group P.C. et al.*, Supreme Court of New York Index No. 135614-2023).

2    **C.    Debtor's Insolvency**

3    ~~119.~~83.        Debtor was insolvent when the Transfers occurred as evidenced by: (a) the 14

4    UCC-1 statements reflecting secured liens against the Debtor's owned and after-acquired assets and

5    the assignment or sale of substantial portions of the Debtor's future income; (b) the priority and non-

6    priority unsecured debt of nearly $142 million listed in Debtor's schedules; (c) the $424 million of

7    creditor claims filed in this Bankruptcy Case; and (d) Debtor's balance sheets reflecting, at its highest

8    point, $17.9 million of assets in November 2021.

9    ~~120.~~84.        Moreover, insolvency is presumed as a matter of law where, as in this

10   Bankruptcy Case, the debtor operated a Ponzi scheme. *See, e.g., Glob. Money Mgmt., L.P. v.*

11   *McDonnold*, No. 06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008)

12   (concluding that "if a Ponzi scheme is proven, then the debtor is proven insolvent from the time of its

13   inception").

14                                **SPECIFIC ALLEGATIONS**

15   ~~121.~~85.        Upon information and belief, Oxford Knox and its predecessor Validation were

16   formed to try to meet promises made to investors and lenders to or partners of the Debtor and/or a

17   related entity. Whether these debts arose from traditional loans, "purchases" of receivables from a set

18   of client files, or investments in the Debtor or a particular venture, the Debtor, Tony Diab, and/or a

19   related entity was not able to fulfill the promised obligations.

20   ~~122.~~86.        Some Oxford Knox Defendants appear to have lent money to Tony Diab. In

21   the summer of 2021, Defendants Home Energy, ~~Ryan Connet, the Coelho Trust, Jason Williams~~,

22   Samson Ly, BEW Solar, ~~and~~ Spectrum, and others collectively paid more than $1,000,000 into escrow

23   to fund the down payment on Tony Diab's purchase of Arash Bayrooti's shares in Coast. These

24   escrowed funds were ultimately paid to Mr. Bayrooti on behalf of Mr. Diab; however, the Debtor,

25   and not Mr. Diab, was required to make these payments.

26   ~~123.~~87.        Upon information and belief, some amounts may have been repaid to these

27   individuals that advanced money to fund Mr. Diab's purchase of shares in Coast. These debts may

28   have been restructured into assignments of income from groups of files.

#62848569V1

124.88.    Also in 2021, ~~Defendants~~ Validation LLC was formed and entities affiliated with some or all of the Defendants were named as members.  ~~Innovative, MRJR, MFCR, Lifesize, and Karrington became members of Validation according to its Amended and Restated Limited Liability Company Agreement.~~ Upon information and belief, Validation's stated purpose was to support the Debtor's marketing affiliates and/or work with law firms like the Debtor. Upon further information and belief, Validation's true purpose and goal was the repayment of amounts owed to its members by the Debtor or Mr. Diab.

125.89.    Validation was ultimately dissolved in September 2022, but while it operated, the Debtor paid it almost one million dollars as shown herein.

126.90.    While Validation was winding down, Mr. Diab formed a new entity – Oxford Knox in late 2021. Upon information and belief, Oxford Knox was formed for the same purpose as Validation – to nominally support to the Debtor's affiliates while collecting payments from the Debtor for its members.

127.91.    The initial ~~original~~ members of Oxford Knox were (i) Buffalo 21; (ii) Obrick, Inc.; (iii) Albright, Inc.; (iv) Final Season, Inc.; (v) Factor In, Inc.; (vi) Bae Enterprises, Inc.; (vii) Decacorn Holdings; (viii) BEW Solar; (ix) Lexicon Consulting, LLC; (x) United Partnerships; (xi) Ventura Consulting; and (xii) Summer Cederberg.

128.92.    Following its formation, the Debtor and/or Mr. Diab made payments directly to Oxford Knox, and/or its members using client funds paid to or collected by the Debtor.

129.93.    Upon further information and belief, Mr. Diab would direct the Debtor or a related entity to make or direct payments to one or more of the Oxford Knox Defendants either based on invoices for services that were never performed to make the payment appear tax deductible, or paid to a third party that was owned or controlled by a member of Oxford Knox.

130.94.    All payments to any Oxford Knox Defendant made pre-petition known to the Trustee as of the date this complaint was filed are set forth on **Exhibit 2** hereto and incorporated as if set forth herein.

131.95.    All payments to any Oxford Knox Defendant made after the Debtor filed for bankruptcy known to the Trustee as of the date this complaint was filed are set forth on **Exhibit 3**

18

hereto and incorporated as if set forth herein.

132.96.        Upon further information and belief, each member of Oxford Knox contributed "debt" they claimed to be owed by the Debtor to the LLC. In turn, Oxford Knox, which was partially owned and/or controlled by Tony Diab, entered into an agreement with the Debtor that fixed the debt owed to Oxford Knox at $22,000,000 ("Repayment Agreement").

133.97.        The Repayment Agreement is the basis of, and is attached to, the Proof of Claim No. 818 ("Claim") filed by Oxford Knox herein. A true and accurate copy of the Repayment Agreement from the Claim is attached hereto as **Exhibit 4**.

134.98.        The Claim states that Oxford Knox received three payments totaling $1,743,686.74 on November 1, 2021, January 1, 2022, and February 1, 2022. The Trustee does not know if these payments reflect payments made directly to the members of Oxford Knox or to third parties on their behalf or if these payments were made directly to Oxford Knox from an unknown source. They are identified herein and included in the Transfers that the Trustee seeks to avoid.

135.99.        Hereinafter, any payment to any Oxford Knox Defendant identified herein will be referred collectively as the "Transfers". Specific sets of Transfers such as those made during the ninety-day period preceding the Petition Date may be given a certain name, but they will remain part of the Transfers identified herein.

136.100.        All Transfers identified herein may not relate to the transactions and entities discussed herein, and the Trustee may have filed or may file separate litigation against one or more Defendants based on other transactions or relationships it had with the Debtor. All Transfers to Defendant known to the Trustee are identified herein out of an abundance of caution.

137.   As noted above, the Debtor often made payments to unrelated parties to or for the benefit of one or more Oxford Knox Defendants. As a result, some defendants named herein are not identified on an Exhibit as receiving any Transfer but that does not mean that an identified Transfer was not made for their benefit. The following paragraphs supplement the allegations regarding the relationships of certain individuals with other Oxford Knox Defendants.

138.   Upon information and belief, Emmett operates or is an officer, member, or owner of Buffalo 21, MRJR, and Coelho Trust. He is also the registered agent for Home Energy.

19

1    ~~139.    Upon information and belief, Connet is an officer, member, or owner of Buffalo 21,~~

2    ~~MRJR, and CAT Exteriors.~~

3    ~~140.    Upon information and belief, Jason Dovalina is an officer, member, or owner of~~

4    ~~Defendants Obrick, Albright, Karrington, JNR, and A Solution. Rachel Dovalina is related to Mr.~~

5    ~~Dovalina.~~

6    ~~141.    Upon information and belief, Gilani is an officer, member, or owner of Final Season,~~

7    ~~Factor In, AZLS, and Lifesize.~~

8    ~~142.    Upon information and belief, Ly is an officer, member, or owner of Decacorn and~~

9    ~~Spectrum.~~

10    ~~143.    Upon information and belief, Stephens is an officer, member, or owner of BEW Solar.~~

11    ~~144.    Upon information and belief, Lansdale is an officer, member, or owner of Lexicon.~~

12    ~~145.    Upon information and belief, Church and Brown are officers, members, or owners of~~

13    ~~Defendants United Partnerships, Ventura, and MFCR, LLC.~~

14    ~~146.    Upon information and belief, Williams is an officer, member, or owner of CAT~~

15    ~~Exteriors and Spectrum.~~

16    <u>**CLAIMS FOR RELIEF**</u>

17    <u>**COUNT ONE**</u>

18    **Avoidance, Recovery, and Preservation of Transfers Made Within the Ninety Day Period**

19    **Before the Petition Date**

20    **[11 U.S.C. §§ 547, 550, and 551]**

21    ~~147.~~101.    Plaintiff realleges and incorporates by reference each and every allegation

22    contained in the preceding paragraphs as though set forth in full herein.

23    ~~148.~~102.    In the ninety-day period preceding the Petition Date, the Debtor made transfers

24    of property or payments to one or more of the Oxford Knox Defendants ("90 Day Transfers"). The

25    90 Day Transfers to the Oxford Knox Defendants known to the Trustee as of the filing date are

26    identified on hereto as **Exhibit 2.**

27    ~~149.~~103.    The Debtor made the 90 Day Transfers to the Oxford Knox Defendants

28    identified on the Exhibit on account of a debt owed to that particular Defendant or to Oxford Knox.

20

150.104.    The 90 Day Transfers were made to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because the 90 Day Transfers were payments made on account of debts nominally owed by the Debtor.

151.105.    A transfer of the Debtor's assets occurred when the 90 Day Transfers were received by the particular Oxford Knox Defendant.

152.106.    The 90 Day Transfers were made on account of antecedent debt nominally owed by the Debtor to the recipient of the Transfer due to an "investment" or other document evidencing indebtedness. The Debtor's payment obligations to the transferees constituted a "debt" (as defined in the Bankruptcy Code).

153.107.    The 90 Day Transfers occurred when the Debtor actually was insolvent. However, Plaintiff is also entitled to the presumption of insolvency when the 90 Day Transfers were made pursuant to 11 U.S.C. § 547(f).

154.108.    The 90 Day Transfers were made in the ninety-day period before the Petition Date.

155.109.    To the extent any transfers were made by the Debtor to any Oxford Knox Defendant within the ninety-day period preceding the Petition Date and are not identified herein, Plaintiff reserves the right to avoid and recover such transfers pursuant to 11 U.S.C. §§ 547 and 550.

156.110.    As the holder of an unsecured claim(s) or as party who has not filed a claim, the payment of the 90 Day Transfers to one or more of the Oxford Knox Defendants enabled them to recover more than they would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the 90 Day Transfers had not been made; and (iii) the debts owed to the Oxford Knox Defendants that received the 90 Day Transfers were paid pursuant to the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case, as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's bankruptcy estate.

157.111.    In accordance with the foregoing, the 90 Day Transfers are avoidable pursuant to 11 U.S.C. § 547(b), and may be recovered and preserved for the benefit of the estate pursuant to

21

11 U.S.C. §§ 550 and 551.

**COUNT TWO**

**Avoidance, Recovery, and Preservation of Post-Petition Transfers**

**[11 U.S.C. §§ 549, 550, and 551]**

~~158.~~112.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

~~159.~~113.    This is an action to pursuant to 11 U.S.C. §§ 549 and 550 to avoid and recover unauthorized post-petition transfers made by Debtor to any of the Oxford Knox Defendants ("Post-Petition Transfers").

~~160.~~114.    To the extent any Post-Petition Transfers were made by the Debtor to any Oxford Knox Defendant following the Petition Date and are not identified herein, Plaintiff reserves the right to amend the Complaint to identify the Post-Petition Transfers and seek the avoidance and recovery of them pursuant to 11 U.S.C. §§ 549 and 550.

~~161.~~115.    Those Post-Petition transfers to Oxford Knox Defendants that are known to the Trustee at this time are identified on **Exhibit 3** hereto.

**COUNT THREE**

**Avoidance of Debtor's Execution of Repayment Agreement with Oxford Knox As a**

**Fraudulent Conveyance**

**[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

~~162.~~116.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

~~163.~~117.    11 U.S.C. § 548(a)(1)(B), in relevant part, permits a debtor or trustee to avoid "any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition" if the debtor failed to receive reasonably equivalent value in exchange for such transfer or obligation and if the debtor:

(I)    was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II)    was engaged in business or a transaction, or was about to engage in business

22

1    or a transaction, for which any property remaining with the debtor was an unreasonably small

2    capital;

3           (III)    intended to incur, or believed that the debtor would incur, debts that would be

4    beyond the debtor's ability to pay as such debts matured . . .

5    ~~164.~~118.    The Debtor executed the Repayment Agreement on or about April 15, 2022,

6    which was within Two-Years of the Petition Date.

7    ~~165.~~119.    On or after the date that the Repayment Agreement was executed, the Debtor

8    was or became indebted to the Prepetition Creditors.

9    ~~166.~~120.    The Repayment Agreement was executed while the Debtor:

10       a.    was insolvent or became insolvent as a result;

11       b.    was engaged or was about to engage in a transaction for which any property

12   remaining with Debtor was of unreasonably small capital; or

13       c.    intended to incur, or believed that it would incur, debts beyond its ability to

14   pay as such debts matured.

15   ~~167.~~121.    The Debtor failed to receive reasonably equivalent value when it executed the

16   Repayment Agreement because the Repayment Agreement purported to consolidate debt owed to the

17   members of Oxford Knox into a single obligation of twenty-two million dollars ($22,000,000.00).

18   Upon information and belief, the stipulated amount of debt is inflated as (i) the Debtor was not liable

19   for some of the debts allegedly owed to the members of Oxford Knox that were reduced to a sum

20   certain in the Repayment Agreement, (ii) the debts allegedly owed to the Members represented equity

21   investments in entities related to the Debtor that were subsequently treated as debt in the Repayment

22   Agreement; and/or (iii) the debts owed to the Members consolidated in the Repayment Agreement

23   arose from illegal or otherwise voidable transactions such as file purchases.

24   ~~168.~~122.    The Repayment Agreement's requirement that the Debtor pay Oxford Knox

25   the sum of ten million dollars ($10,000,000.00) upon a sale of the business is additional evidence that

26   the debts the Members claimed to be owed were truly equity investments and not debt.

27   <u>**COUNT FOUR**</u>

28   **Avoidance, Recovery, and Preservation of Two-Year Transfers Made With Intent to Defraud**

23

**[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

169.123.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

170.124.    The Transfers were property of the Debtor's Estate prior to their conveyance to the one or more of the Oxford Knox Defendants. The Transfers to the Oxford Knox Defendants made within Two-Years of the Petition Date ("Two-Year Transfers") that are known to the Trustee are identified on **Exhibit 2** hereto and incorporated by reference herein.

171.125.    When the Two-Year Transfers were made, the Debtor was or became indebted include the Prepetition Creditors.

172.126.    The Two-Year Transfers occurred when the Debtor was insolvent or was rendered insolvent as a result of the Transfers.

173.127.    The Two-Year Transfers to the Oxford Knox Defendants were made with actual intent to hinder, delay or defraud the creditors of Debtor because the Debtor was operating a Ponzi scheme which permits the Court to infer that the Debtor's intent was fraudulent within the meaning of 11 U.S.C. section 548(a)(1).

174.128.    The Two-Year Transfers are avoidable as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, and 551 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against Debtor's Estate under 11 U.S.C. § 502, or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

175.129.    The Two-Year Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## <u>COUNT FIVE</u>

**Avoidance, Preservation, and Recovery of Constructively Fraudulent Two-Year Transfers**

**11 U.S.C. §§ 548(a)(1)(B), 550 & 551**

176.130.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

24

177.131.	The Two-Year Transfers were made within Two-Years before the Petition Date.

178.132.	Debtor did not receive reasonably value in exchange for the Two-Year Transfers because (i) the Debtor was not liable on the debts originally owed to some Defendants, (ii) the debts allegedly owed to one or more Defendants arose from equity investments in entities related to the Debtor that were subsequently treated as the Debtor's debt.

179.133.	The Two-Year Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

180.134.	When the Two-Year Transfers occurred, Debtor's business was undercapitalized, and Debtor was engaged in business for which its capital was unreasonably small.

181.135.	When the Two-Year Transfers occurred, Debtor had incurred or was about to incur debts that were beyond its ability to pay. The allegations in the preceding paragraphs are supported by the fact that the Debtor was consistently borrowing money from merchant cash advance lenders, purporting to sell the same groups of receivables to multiple parties, and as of August 2022 had begun a Ponzi scheme of borrowing through Spot On as discussed herein.

182.136.	At the time each Two-Year Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Two-Year Transfer and on the Petition Date.

183.137.	Plaintiff alleges that Defendants did not receive the Two-Year Transfers in good faith, for value, and without knowledge of their avoidability.

184.138.	Each Defendant knew that the Debtor was a law firm who was required by law to escrow client payments until earned. However, each Defendant demanded and received payment from client payments that had not been earned because they were paid by the Debtor, Vulcan, and/or Coast or were paid directly from a payment processor for the Debtor such that the funds were never conveyed to the Debtor and placed in escrow.

185.139.	Each Defendant had to know or should have known that they were being paid with client funds that had not been placed into trust and been disbursed before they were earned.

186.140.	Each Defendant knew or should have known that were receiving payment on

#62848569V1

1  a debt that was not valid or enforceable at law to the extent it arose from an alleged "purchase" of

2  receivables related to the Debtor's client files.

3       187.141.    Based on the foregoing, Plaintiff may recover and preserve the avoided Two-

4  Year Transfers from Defendant as the initial transferee or, alternatively, as the subsequent transferee

5  for the benefit of the Estate under 11 U.S.C. §§ 550 and 551 from Defendant.

6  **COUNT SIX**

7  **Avoidance, Preservation, and Recovery of Transfers Made In the Past Four Years**

8  **11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07**

9       188.142.    Plaintiff realleges and incorporates by reference each and every allegation

10  contained in the preceding paragraphs as though set forth in full herein.

11       189.143.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of

12  Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under

13  California Civil Code §§ 3439.04(a)(1) and 3439.05.

14       190.144.    The Transfers occurred within four years prior to the Petition Date and are

15  identified on **Exhibit 2**.

16       191.145.    On or after the date that such Transfer were made, entities to which Debtor was

17  or became indebted include the Prepetition Creditors.

18       192.146.    Despite Debtor's obligation to the Prepetition Creditors, Debtor made the

19  Transfers to Defendants.

20       193.147.    The Transfers to Defendants were made with actual intent to hinder, delay or

21  defraud the creditors of Debtor as the Debtor was operating a Ponzi scheme.

22       194.148.    Defendants' conduct relating to the Transfers was done with oppression, fraud

23  and malice, as defined in California Civil Code section 3294, entitling Plaintiff to exemplary and

24  punitive damages.

25       195.149.    The Transfers are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and

26  Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07 by one or more creditors who held and hold unsecured

27  claims against Debtor that were and are allowable against its Estate under 11 U.S.C. § 502 or that

28  were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the

26

1    Prepetition Creditors.

2    ~~196.~~150.    Accordingly, the Transfers should be avoided as fraudulent under 11 U.S.C.

3    §§ 544(b) and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07, and such transferred property, or the

4    value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C.

5    §§ 550 and 551 and Cal. Civ. Code § 3439.07.

6    ~~197.~~151.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of

7    Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under

8    California Civil Code §§ 3439.04(a)(2) and 3439.05.

9    ~~198.~~152.    Debtor did not receive reasonably equivalent value in exchange for the

10   Transfers. The Transfers were made to (i) entities that were not creditors of the Debtor, (ii) entities

11   that had made equity or other investments with the Debtor or in assets, and (iii) entities who claimed

12   to be owed far more than any value that was ever given to the Debtor.

13   ~~199.~~153.    At the time each Transfer was made, Debtor was engaged or was about to

14   engage in a business or a transaction for which the remaining assets of Debtor were unreasonably

15   small in relation to the business or transaction.

16   ~~200.~~154.    At the time each Transfer was made, Debtor intended to incur, or believed or

17   reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as

18   they became due.

19   ~~201.~~155.    At the time each Transfer was made, Debtor was indebted to one or more

20   creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

21   ~~202.~~156.    The Transfers were made at a time when Debtor was insolvent and/or rendered

22   insolvent by virtue of said transfers.

23   ~~203.~~157.    Plaintiff alleges that Defendants did not receive the Transfers in good faith, for

24   value, and without knowledge of their avoidability.

25   ~~204.~~158.    Each Defendant knew that the Debtor was a law firm who was required by law

26   to escrow client payments until earned. However, each Defendant demanded and received payment

27   from client payments that had not been earned because they were paid by the Debtor, Vulcan, and/or

28   Coast or were paid directly from a payment processor for the Debtor such that the funds were never

placed in trust.

205.159.    Each Defendant had to know or should have known that they were being paid with client funds that had not been placed into trust and been disbursed before they were earned.

206.160.    Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

207.161.    Based on the foregoing, Plaintiff may recover and preserve the Transfers from the Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

///

///

///

## COUNT SEVEN

**Avoidance, Recovery, and Preservation of Transfers Made in the Past Four Years**

**[11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.05, and 3439.07]**

208.162.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

209.163.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(2) and 3439.05.

210.164.    The Transfers were made within four years of the Petition Date are identified on **Exhibit 2** and incorporated as if set forth herein.

211.165.    Debtor did not receive reasonably equivalent value in exchange for the Transfers as (i) the Debtor was not liable on the debts originally owed to some Defendants, (ii) the debts allegedly owed to one or more Defendants arose from equity investments in entities related to the Debtor that were subsequently treated as the Debtor's debt.

212.166.    The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

#62848569V1

213.167.    At the time each Transfer was made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

214.168.    At the time each Transfer was made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

215.169.    At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

216.170.    Plaintiff alleges that Defendants did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

217.171.    Each Defendant knew that the Debtor was a law firm who was required by law to escrow client payments until earned.

218.172.    Each Defendant had to know or should have known that they were being paid with client funds that had not been placed into trust and been disbursed before they were earned.

219.173.    Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

220.174.    Based on the foregoing, Plaintiff may recover and preserve the Transfers from the Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

## COUNT EIGHT

**Avoidance, Recovery, and Preservation of Fraudulent Transfers Made to or for the Benefit of Defendants Gilani and Dovalina Arising from use of American Express Card**

**[11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), and 550]**

221.175.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

222.176.    On or about November 28, 2021 the Debtor applied for a business platinum card from American Express ("AmEx").

223.177.    AmEx granted the Debtor's application and opened a credit line ending in 8-

29

51001 ("Account") in the name of "LPG PC."   AmEx issued cards to three individuals on this Account:  Dovalina, Gilani, and Diab.

224.178.        From the opening of the Account in early 2022 to May and June 2022, Gilani regularly charged hundreds of thousands of dollars to the Account each month.

225.179.        While some charges to the Account may have been related to the Debtor and its operations, most of the charges do not appear to have benefitted the Debtor or were not incurred for the Debtor.

226.180.        Upon information and belief, Gilani regularly charged hundreds of thousands of dollars on the Account each month to pay vendors that do not appear to have done any work for the Debtors.

227.181.        Other expenses charged to the Account by Dovalina and/or Gilani appear personal in nature such as charges at clothing stores, tours/tickets, and dining.

228.182.        The charges made by each cardholder were itemized separately on the statements from American Express. The monthly charges on the Account for Dovalina and Gilani are stated below.

| Statement Closing Date | Gilani | Dovalina |
|---|---:|---:|
| 01.19.2022 | $14,812.41 | $1,593.83 |
| 02.16.2022 | $215,948.66 | $2,146.22 |
| 03.18.2022 | $207,846.79 | $1,413.61 |
| 04.18.2022 | $7,349.69 | $3,088.72 |
| 05.19.2022 | $29.98 | $94.55 |
|  | $445,987.53 | $8,336.93 |

229.183.        The Debtor made payments on the Account to American Express. The payments from the Debtor to American Express to pay for all charges on the Account are identified on **Exhibit 5**.

230.184.        A significant portion of the payments to Am Ex were made to or for the benefit of Gilani and/or Dovalina and provided no benefit to the Debtor. The portion of the total payments made to AmEx that were made to pay for charges made to or for the benefit of Gilani and/or Dovalina are referred to herein as the "AmEx Transfers."

#62848569V1

1        231.185.        The AmEx Transfers were made to or for the benefit of Gilani and/or Dovalina

2    to the extent they paid American Express for charges made to the Account that were only or primarily

3    for the benefit of Gilani and/or Dovalina.

4        232.186.        The funds used to make the AmEx Transfers were property of the Debtor's

5    Estate prior to their conveyance to American Express.

6        233.187.        The AmEx Transfers occurred within the Two-Years prior to the Petition Date.

7        234.188.        On or after the date that the AmEx Transfers were made the Debtor was or

8    became indebted include the Prepetition Creditors.

9        235.189.        The AmEx Transfers occurred when the Debtor was insolvent or was rendered

10    insolvent as a result of the AmEx Transfers.

11        236.190.        The AmEx Transfers were made with actual intent to hinder, delay or defraud

12    the creditors of Debtor because the Debtor was operating a Ponzi scheme which permits the Court to

13    infer that the Debtor's intent was fraudulent within the meaning of 11 U.S.C. section 548(a)(1).

14        237.191.        Debtor did not receive reasonably value in exchange for the AmEx Transfers

15    as Gilani and Dovlina were the parties that made charges on the Account for their personal benefit.

16        238.192.        When the AmEx Transfers occurred, Debtor's business was undercapitalized

17    and Debtor was engaged in business for which its capital was unreasonably small.

18        239.193.        When the AmEx Transfers occurred, Debtor had incurred or was about to incur

19    debts that were beyond its ability to pay. The allegations in the preceding paragraphs are supported

20    by the fact that the Debtor was having to borrow money regularly from merchant cash advance lenders

21    and to accept "investments" from third parties in exchange for promised future returns.

22        240.194.        At the time each AmEx Transfer was made, Debtor was indebted to one or

23    more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

24        241.195.        Based on the foregoing, the AmEx Transfers were constructively fraudulent as

25    to the Debtor's creditors to the extent they were made to or for the benefit of Gilani and/or Dovalina.

26        242.196.        Based on the foregoing, Plaintiff may avoid, preserve, and recover the avoided

27    AmEx Transfers from Gilani and Dovalina pursuant to 11 U.S.C. §§ 548(a)(1)(A) and (B); 550 and

28    551.

#62848569V1

## COUNT NINE

### Objection to Proof of Claim No. 818 of Oxford Knox, LLC

### [11 U.S.C. § 502(b) and (d)]

~~243.~~197.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

~~244.~~198.    11 U.S.C. § 502(b) permits a Bankruptcy Court to determine the amount of a proof of claim following the filing of an objection.

~~245.~~199.    The Trustee has asked the Court to avoid the Debtor's execution of the Repayment Agreement as a fraudulent conveyance pursuant to 11 U.S.C. § 548. The Repayment Agreement is the basis for Oxford Knox's Claim.

~~246.~~200.    If the Trustee's avoidance action is successful, the Repayment Agreement would not be enforceable against the Estate.

~~247.~~201.    The Oxford Knox Claim is also objected to and is subject to disallowance pursuant to 11 U.S.C. § 502(d) because Oxford Knox and its members that created the Claim received transfers that are avoidable under 11 U.S.C. §§ 544, 547, 548, and/or 549.

~~248.~~202.    The amount of the amount of the transfers identified herein has not been returned to the Estate.

**On All Claims for Relief:**

1.    Avoiding the Debtor's obligations under the Agreement and avoiding recovering, and preserving the Payments to the Defendant in such amounts as the Court may determine ("AmEx Transfers");

2.    Awarding pre-judgment and post-judgment as permitted;

3.    Granting any other and such further relief as the Court deems just and proper.

4.    Awarding attorneys' fees as provided by contract or applicable law;

5.    Awarding costs of suit incurred here; and

6.    Granting any other and further relief as the Court deems just and proper.

**On the First and Second Claims for Relief:**

1.    Avoiding, recovering, and preserving the 90 Day Transfers and Post-Petition

32

1  Transfers to the Defendants in such amounts as the Court may determine pursuant to applicable law;

2  **On the Third Claim for Relief:**

3      2.      Avoiding and preserving the Debtor's execution of the Repayment Agreement as a

4  fraudulent conveyance pursuant to 11 U.S.C. §§ 548, 550, and 551 for the reasons stated herein;

5  **On the Fourth Through Eight Claims for Relief:**

6      3.      Avoiding, recovering, and preserving the Transfers to the Defendants in such amounts

7  as the Court may determine pursuant to applicable law;

8  **On the Ninth Claim for Relief:**

9      4.      Sustaining the Plaintiff's Objection to the Claim of Oxford Knox for the reasons stated

10  herein;

11  **On All Claims for Relief:**

12      5.      Awarding punitive and exemplary damages according to proof;

13      6.      Awarding pre-judgment interest at the maximum legal rate;

14      7.      Awarding post-judgment interest at the maximum legal rate from the date of the last

15  Transfer until the judgment is paid in full;

16      8.      Awarding costs of suit incurred herein; and

17      9.      Granting any other and further relief as the Court deems just and proper.

18  Dated:  August 6, 2025~~July 15, 2025~~          Respectfully submitted,

19                                           DINSMORE & SHOHL LLP

20

21                                           By:  /s/ Tyler Powell
                                                  Tyler Powell [pro hac vice]
22                                                Yosina M. Lissebeck
                                             Special Counsel to Richard A. Marshack, Trustee of
23                                           the LPG Liquidation Trust

24

25

26

27

28

33

**PROOF OF SERVICE**

I am over the age of 18 and not a party to this case. My business address is **655 W. Broadway, Suite 800, San Diego, California 92101.**

True and correct copies of the foregoing documents:

**STIPULATION OF PLAINTIFF RICHARD A. MARSHACK, TRUSTEE OF THE LPG LIQUIDATION TRUST AND CERTAIN DEFENDANTS: (I) ALLOWING AMENDMENT OF COMPLAINT; (II) DISMISSING CERTAIN DEFENDANTS WITHOUT PREJUDICE; (III) EXTENDING REMAINING DEFENDANTS' TIME TO ANSWER AND OTHER DEADLINES; AND (IV) RESCHEDULING STATUS CONFERENCE FROM AUGUST 21, 2025 TO SEPTEMBER 2, 2025**

will be served in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 7, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Leslie A Cohen -** leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com; bryn@lesliecohenlaw.com
- **Yosina M Lissebeck -** yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com; ayrton.celentino@dinsmore.com
- **Richard A Marshack (TR)  -** pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- **Tyler Powell  -** tyler.powell@dinsmore.com, lydia.tharp@dinsmore.com; wendy.yones@dinsmore.com
- **United States Trustee (SA) -**  ustpregion16.sa.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**: On **August 7, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**The Honorable Scott C. Clarkson**
**United States Bankruptcy Court**
**Ronald Reagan Federal Building & Courthouse**
**411 West Fourth Street, Suite 5130 / Courtroom 5C**
**Santa Ana, CA 92701-4593**

**Bae Enterprises, Inc.**
**Attn: Cloud Peak Law, LLC, Registered Agent**
**1095 Sugarview Drive, Suite 500**
**Sheridan, WY 82801**

**3. BY ELECTRONIC MAIL:** On **August 7, 2025**, I caused such documents described herein to be sent to the person(s) at the e-mail addresses listed below. I did not receive within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

#63391135v2

6

1

**David M. Goodrich, Esq.**          **Attorneys for Defendants listed in Exhibit 1**
**Jeffrey I. Golden, Esq.**

2

**GOLDEN GOODRICH LLP**
**3070 Bristol St., Ste 640**

3

**Costa Mesa, CA 92626**

4

**dgoodrich@go2.law**
**jgolden@go2.law**

5

**4.    SERVED    BY    PERSONAL    DELIVERY,    OVERNIGHT    MAIL,    FACSIMILE**

6

**TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **_____**, I

7

served the following persons and/or entities by personal delivery, overnight mail service, or (for those

who consented in writing to such service method), by facsimile transmission and/or email as follows.

8

Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the

judge <u>will be completed</u> no later than 24 hours after the document is filed.

9

10

I declare under penalty of perjury under the laws of the United States that the foregoing is true

and correct.

11

12

| August 7, 2025 | Wendy A.Yones | /s/ Wendy A. Yones |
|---|---|---|
| Date | Printed Name | Signature |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

#63391135v2