1   **GOLDEN GOODRICH LLP**
    David M. Goodrich, State Bar No. 208675
2   dgoodrich@go2.law
    Anerio V. Altman, State Bar No. 228445
3   aaltman@go2.law
    3070 Bristol Street, Suite 640
4   Costa Mesa, California 92626
    Telephone:  714.966-1000
5   Facsimile:  714.966-1002

6   Attorneys for Defendants listed on Exhibit 1

7

8                **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

10  | In re: | Chapter 11 |
    
11  The Litigation Practice Group P.C.,    Case No. 8:23-bk-10571-SC

12              Debtor.    Adv No. 8:25-ap-01208-SC

13  _____    **REQUEST FOR JUDICIAL NOTICE AND
                                        DECLARATION OF DAVID M.**
    Richard A. Marshack, Trustee of the LPG    **GOODRICH IN SUPPORT THEREOF**
14  Liquidation Trust,

15              Plaintiff,    **[Filed contemporaneously with the
                              Defendants' Motion to Dismiss]**
16  v.
                              **JUDGE**
17  Oxford Knox, LLC, a Delaware limited liability    Hon. Scott Clarkson
    company; Buffalo 21 Partners, Inc., a Wyoming
18  corporation; Jason Dovalina, individually; Rachel    DATE:        October 1, 2025
    Dovalina, individually; Syed Faisal Gilani aka    TIME:        1:00 p.m.
19  Sye Gilani, individually; BAE Enterprises, Inc., a    PLACE:    Courtroom 5C/Via ZoomGov
    Wyoming corporation; Samson Ly, individually;              411 West Fourth Street
20  BEW Solar Management, LLC, a California              Santa Ana, CA 92701
    limited liability company; Lexicon Consulting,
21  LLC, a Colorado Limited Liability Company;
    United Partnerships, LLC, a Florida Limited
22  Liability Company; Ventura Consulting, LLC, a
    Nevada limited liability company; Matthew
23  Church, individually; Frank Brown, individually;
    Validation, LLC, a terminated California limited
24  liability company; Spectrum Payment Solutions,
    LLC, a California limited liability company;
25  Home Energy Solutions, Inc., a California
    corporation;  JNR Services, Inc., a California
26  corporation; C.A.T. Exteriors, Inc., an Arizona
    corporation; AZLS Enterprises, Inc, a California
27  corporation; and INVESTLINC Wealth Services,
    Inc., a California corporation,
28              Defendants.

                              1

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, PLAINTIFF AND HIS COUNSEL, AND ALL OTHER INTERESTED PARTIES:**

Defendants Lexicon Consulting, LLC, a Colorado limited liability company, United Partnerships, LLC, a Florida limited liability company, and Ventura Consulting, LLC, a Nevada limited liability company ("Defendants"), hereby requests, pursuant to Federal Rule of Evidence 201, that the Court take judicial notice of the following items:

1.      Voluntary Petition filed in the bankruptcy case on March 19, 2023 [main case dkt. 1], a true and correct copy of which is attached hereto as Exhibit 1.

2.      Complaint filed in this adversary proceeding on March 19, 2025 [A.P. case dkt. 1], a true and correct copy of which is attached hereto as Exhibit 2.

3.      First Amended Complaint filed in this adversary proceeding on March 19, 2025 [A.P. case dkt. 4], a true and correct copy of which is attached hereto as Exhibit 3.

4.      Summons and Notice of Status Conference in Adversary Proceeding [LBR 7004-1]filed in this adversary proceeding on April 14, 2025 [A.P. case dkt. 8], a true and correct copy of which is attached hereto as Exhibit 4.

5.      The docket for this adversary proceeding, a true and correct copy of which is attached hereto as Exhibit 5.

6.      Stipulation By Richard A. Marshack and Defendants I) allowing Amendment to Complaint; II) dismissing certain Defendants without Prejudice; III) extending remaining Defendants' time to Answer and other Deadlines; and IV) Rescheduling Status Conference from August 21 2025 to September 16, 2025, filed on August 8, 2025 [A.P. case dkt. 24], a true and correct copy of which is attached hereto as Exhibit 6.

7.      Second Amended Complaint filed in this adversary proceeding on August 13, 2025 [A.P. case dkt. 30], a true and correct copy of which is attached hereto as Exhibit 7.

8.      The number of days from March 19, 2025 to August 13, 2025 is 147 days.

4922-2751-4715.1

1   Dated:  August 18, 2025                    GOLDEN GOODRICH LLP

2

3                                             By:   */s/ David M. Goodrich*
                                                    David M. Goodrich
4                                                   Anerio V. Altman
                                                    Attorneys for Defendants
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4922-2751-4715.1

# DECLARATION OF DAVID M. GOODRICH

I, David M. Goodrich, declare as follows:

1.        I am a partner of Golden Goodrich LLP, attorneys of record for certain defendants in the above captioned adversary proceeding.  I am licensed to practice before this Court and the courts of the State of California.  I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.

2.        Attached hereto as Exhibit 1 is a true and correct copy of the Voluntary Petition filed in the bankruptcy case on March 19, 2023 [main case dkt. 1].

3.        Attached hereto as Exhibit 2 is a true and correct copy of the Complaint filed in this adversary proceeding on March 19, 2025 [A.P. case dkt. 1].

4.        Attached hereto as Exhibit 3 is a true and correct copy of the First Amended Complaint filed in this adversary proceeding on March 19, 2025 [A.P. case dkt. 4].

5.        Attached hereto as Exhibit 4 is a true and correct copy of the Summons and Notice of Status Conference in Adversary Proceeding [LBR 7004-1]filed in this adversary proceeding on April 14, 2025 [A.P. case dkt. 8].

6.        Attached hereto as Exhibit 5 is a true and correct copy of the docket for this adversary proceeding, a true and correct copy of which is attached hereto as Exhibit 5.

7.        Attached hereto as Exhibit 6 is a true and correct copy of the Stipulation By Richard A. Marshack and Defendants I) allowing Amendment to Complaint; II) dismissing certain Defendants without Prejudice; III) extending remaining Defendants' time to Answer and other Deadlines; and IV) Rescheduling Status Conference from August 21 2025 to September 16, 2025, filed on August 8, 2025 [A.P. case dkt. 24].

8.        Attached hereto as Exhibit 7 is a true and correct copy of the Second Amended Complaint filed in this adversary proceeding on August 13, 2025 [A.P. case dkt. 30].

/ / /

/ / /

/ / /

4922-2751-4715.1

1    9.    The number of days from March 19, 2025 to August 13, 2025 is 147 days.

2    I declare under penalty of perjury that the foregoing is true and correct.

3 Executed on this 18th day of August 2025 at Honolulu, Hawaii.

4

5                                                    /s/ David M. Goodrich

6                                                    DAVID M. GOODRICH

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4922-2751-4715.1

# Exhibit 1

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Central District of California

_____ (State)

Case number (if known): _____ Chapter _____

☐ Check if this is an amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | |
|---|---|
| **1. Debtor's name** | The Litigation Practice Group P.C. |
| **2. All other names debtor used in the last 8 years** <br> Include any assumed names, trade names, and *doing business as* names | |
| **3. Debtor's federal Employer Identification Number (EIN)** | 83 - 3885343 |

**4. Debtor's address**

| Principal place of business | | | Mailing address, if different from principal place of business | | |
|---|---|---|---|---|---|
| 17542 17th St., Ste 100 | | | | | |
| Number    Street | | | Number    Street | | |
| | | | P.O. Box | | |
| Tustin | CA | 92780 | Tustin | | |
| City | State | ZIP Code | City | State | ZIP Code |
| | | | Location of principal assets, if different from principal place of business | | |
| Orange | | | | | |
| County | | | Number    Street | | |
| | | | City | State | ZIP Code |

**5. Debtor's website (URL)**    _____

Official Form 201          Voluntary Petition for Non-Individuals Filing for Bankruptcy          page 1

**EXHIBIT 1, PAGE 6**

Debtor    The Litigation Practice Group P.C.
          Name                                           Case number (if known)_____

---

**6. Type of debtor**

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

---

**7. Describe debtor's business**

A. Check one:

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above


B. Check all that apply:

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))


C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

---

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

Check one:

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. Check all that apply:

    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, and it chooses to proceed under Subchapter V of Chapter 11. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ A plan is being filed with this petition.

    ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

---

**EXHIBIT 1, PAGE 7**

Debtor    The Litigation Practice Group P.C.          Case number (if known) _____
          Name

---

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes. District _____ When _____ Case number _____
                                      MM / DD / YYYY

        District _____ When _____ Case number _____
                                      MM / DD / YYYY

---

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☑ No

☐ Yes. Debtor _____ Relationship _____

        District _____ When _____
                                                           MM / DD / YYYY

        Case number, if known _____

---

**11. Why is the case filed in this district?**

Check all that apply:

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

    **Why does the property need immediate attention?** *(Check all that apply.)*

    ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

      What is the hazard? _____

    ☐ It needs to be physically secured or protected from the weather.

    ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

    ☐ Other _____

    **Where is the property?** _____
                                Number     Street

                                _____
                                City                        State ZIP Code

    **Is the property insured?**

    ☐ No

    ☐ Yes. Insurance agency _____

          Contact name _____

          Phone _____

---

**Statistical and administrative information**

---

**EXHIBIT 1, PAGE 8**

| Debtor | The Litigation Practice Group P.C. | Case number (if known) | |
|---|---|---|---|
| | Name | | |

**13. Debtor's estimation of available funds**

Check one:

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
|---|---|---|
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated assets**

| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

### Request for Relief, Declaration, and Signatures

**WARNING** – Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  03/20/2025
MM / DD / YYYY

X _____          Daniel S. March
Signature of authorized representative of debtor          Printed name

Title  Managing Shareholder

---

**EXHIBIT 1, PAGE 9**

| Debtor | The Litigation Practice Group P.C. | | Case number (if known) | |
| | Name | | | |

| 18. Signature of attorney | X ~~signature~~ | Date | 03/23/2023 |
| | Signature of attorney for debtor | | MM / DD / YYYY |

Joon M. Khang
Printed name

KHANG & KHANG LLP
Firm name

4000 Barranca Parkway, Suite 250
Number        Street

Irvine                                              CA        92604
City                                                State     ZIP Code

(949) 419-3834                          joon@khanglaw.com
Contact phone                           Email address

188722                                         CA
Bar number                                  State

**EXHIBIT 1, PAGE 10**

# Exhibit 2

1  Christopher Celentino (131688)
   Yosina M. Lissebeck (State Bar No. 201654)
2  Christopher B. Ghio (State Bar No. 259094)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone: 619.400.0500
   Facsimile: 619.400.0501
5  christopher.celentino@dinsmore.com
   yosina.lissebeck@dinsmore.com
6  christopher.ghio@dinsmore.com

7  Tyler Powell (Ky. Bar No. 90520 – Admitted pro hac vice)
   **DINSMORE & SHOHL, LLP**
8  100 West Main Street, Suite 900
   Lexington, KY  40507
9  Telephone:  859-425-1056
   Facsimile:  859-425-1099
10 tyler.powell@dinsmore.com

11 Special Counsel to Richard A. Marshack,
   Trustee of the LPG Liquidation Trust
12

13              **UNITED STATES BANKRUPTCY COURT**

14      **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

15 In re:                                      | Chapter 11

16 The Litigation Practice Group P.C.,         | Case No.: 8:23-bk-10571-SC
                                               | Adv. No: 8:24-ap-_____-SC
17                          Debtor(s).

18 Richard A. Marshack, Trustee of the LPG     | **TRUSTEE'S COMPLAINT FOR:**
   Liquidation Trust,
19                                             | **(1) AVOIDANCE, RECOVERY, AND
                              Plaintiff,       | PRESERVATION OF PREFERENTIAL
20                                             | TRANSFERS MADE TO OR FOR
        v.                                     | CERTAIN DEFENDANTS MADE
21                                             | WITHIN NINETY DAYS OF THE
   Oxford Knox, LLC, a Delaware limited liability | PETITION DATE;
22 company; Buffalo 21 Partners, Inc., a Wyoming |
   corporation; Rick Emmett, individually; Ryan | **(2)  AVOIDANCE, RECOVERY, AND
23 Taylor Connet, individually;  Obrik, Inc., a | PRESERVATION OF POST-PETITION
   Wyoming corporation; Albright, Inc., a Florida | TRANSFERS MADE TO OR FOR THE
24 corporation; Jason Dovalina, individually; Rachel | BENEFIT OF CERTAIN DEFENDANTS;
   Dovalina, individually; Final Season, Inc., a |
25 California corporation; Factor In, Inc., a California | **(3)  AVOIDANCE OF DEBTOR'S
   corporation; Syed Faisal Gilani aka Sye Gilani, | EXECUTION OF REPAYMENT
26 individually; BAE Enterprises, Inc., a Wyoming | AGREEMENT WITH DEFENDANT
   corporation; Rose Bianca Loli, individually; | OXFORD KNOX, LLC PURSUANT TO
27 Decacorn Holdings, Inc., a California limited | 11 U.S.C. §§ 548(a), 550, AND 551;
   liability company; Samson Ly, individually; BEW |
28 Solar Management, LLC, a California limited | **(4)  AVOIDANCE, RECOVERY, AND
                                               | PRESERVATION OF FRAUDULENT

**EXHIBIT 2, PAGE 11**

| | |
|---|---|
| liability company; Sean Stephens, individually; Lexicon Consulting, LLC, a California corporation; Daniel Lansdale, individually; United Partnerships, LLC, a California corporation; Ventura Consulting, LLC, a Nevada limited liability; Matthew Church, individually; Frank Brown, individually; Validation, Partners LLC, a Florida limited liability company; Innovative Solutions, LLC, a Wyoming corporation; MRJR20 Partners, LLC, a California limited liability company; MFCR, Investments, LLC, a Florida limited liability company; Lifesize, Inc., a Wyoming corporation.; Karrington, Inc., a Wyoming corporation; Spectrum Payment Solutions, LLC, a California limited liability company; Jason D. Williams, individually; Home Energy Solutions, Inc., a California corporation; The Coelho Irrevocable Life Insurance Trust, a California trust; JNR Services, Inc., a California corporation; C.A.T. Exteriors, Inc., an Arizona corporation; AZLS Enterprises, Inc, a California corporation; A Solution Debt Relief, Inc., a Wyoming corporation and INVESTLINC Wealth Services, Inc., a California corporation;<br><br>Defendant(s). | TRANSFER(S) PURSUANT TO 11 U.S.C. §§ 548(a)(1), 550, AND 551;<br><br>**(5) AVOIDANCE, RECOVERY, AND PRESERVATION OF FRAUDULENT TRANSFER(S) PURSUANT TO 11 U.S.C. §§ 548(a)(2), 550, AND 551;**<br><br>**(6) AVOIDANCE, PRESERVATION, AND RECOVERY OF VOIDABLE TRANSFERS MADE WITH INTENT TO DEFRAUD [11 U.S.C. §§ 544, 550, 551; CAL. CIV. CODE §§ 3439.04(a)(1) AND 3439.07];**<br><br>**(7) AVOIDANCE, PRESERVATION, AND RECOVERY OF VOIDABLE TRANSFERS MADE WITH NO INTENT TO DEFRAUD [11 U.S.C. §§ 544, 550, 551; CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05, AND 3439.07];**<br><br>**(8) AVOIDANCE, RECOVERY, AND PRESERVATION OF FRAUDULENT TRANSFERS MADE TO OR FOR THE BENEFIT OF DEFENDANTS GILANI AND DOVALINA ARISING FROM USE OF AMERICAN EXPRESS CARD; and**<br><br>**(9) OBJECTION TO PROOF OF CLAIM NO. 818 OF OXFORD KNOX, LLC**<br><br>Judge: Hon. Scott C. Clarkson<br>Dept: 5C |

For his *Complaint for (1) Avoidance, recovery, and preservation of preferential transfers made to or for certain defendants made within ninety days of the petition date; (2) Avoidance, recovery, and preservation of Post-Petition transfers made to or for certain defendants; (3) Avoidancec of Debtor's execution of repayment agreement with defendant Oxford Knox, LLC pursuant to 11 U.S.C. §§548(a), 550, and 551; (4) Avoidance, rrecovery, and preservation of fraudulent transfers(s) pursuant to 11 U.S.C. §§548(a)(1), 550, and 551; (5) Avoidance, recovery, and preservation of fraudulent transfer(s) to 11 U.S.C. §§548(a)(2), 550, and 551; (6) Avoidance, preservation, and recovery of voidable transfers made with intent to defraud [11U.S.C. §§544, 550, 551; Cal. Civ Code §§3439.04(a)(1) and 3439.07] (7)Avoidance, preservation, and recovery of voidable transfers made with no intent to defraud [11 U.S.C. §§544, 550, 551; Cal. Civ. Code*

**EXHIBIT 2, PAGE 12**

§§3439.04(a)(2), 3439.05, and 3439.07]; (8) *Avoidance, recovery, and preservation of fraudulent transfers made to or for the benefit of Defendants Gilani and Dovalina arising from use of American Express Card; and (9) Objection to Proof of Claim No. 818 of Oxford Knox, LLC* (the "Complaint"), plaintiff Richard A. Marshack, the former Chapter 11 Trustee for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") and Trustee of the LPG Liquidation Trust (collectively, "Trustee" or "Plaintiff") in the above-captioned bankruptcy case (the "Bankruptcy Case"), alleges and avers as follows:

### STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court").

2.      Regardless of whether this proceeding is core, non-core, or otherwise, the Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

3.      Defendants are hereby notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires them to plead whether consent is given to the entry of a final order and judgment by the bankruptcy court.

4.      Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to the Debtor's pending Bankruptcy Case.

### THE PARTIES

5.      Debtor LPG is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

6.      Defendant Oxford Knox, LLC is, and at all material times represented that it was, a Delaware - domestic limited liability company ("Oxford Knox").

7.      Defendant Oxford Knox may be served by first class mail postage prepaid upon its

3

**EXHIBIT 2, PAGE 13**

Partnership Representative: Richard R. Emmett, 251 Little Falls Drive, Wilmington, Delaware 19808.

8.  Defendant Buffalo 21 Partners, Inc. is, and at all material times represented that it was, a Wyoming - domestic corporation, ("Buffalo 21").

9.  Defendant Buffalo 21 may be served by first class mail postage prepaid upon its CEO: Richard R. Emmett, 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801.

10.  Defendant Rick Ronald Emmett is, and at all material times represented that he was, an individual residing in the state of California ("Emmett").

11.  Defendant Emmett may be served by first class mail postage prepaid upon himself; 10 Pointe Drive, Suite 150, Brea, California 92821.

12.  Defendant Ryan Taylor Connet is, and at all material times represented that he was, an individual residing in the state of California ("Connet").

13.  Defendant Connet may be served by first class mail postage prepaid upon himself; 4155 E. La Palma Avenue, Anaheim, California 92807.

14.  Defendant Obrik, Inc. is, and at all material times represented that it was, a Wyoming – domestic corporation ("Obrik").

15.  Defendant Obrik may be served by first class mail postage prepaid upon its registered agent: Cloud Peak Law; 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming 82801.

16.  Defendant Albright, Inc. is, and at all material times represented that it was, a Florida – domestic corporation ("Albright").

17.  Defendant Albright may be served by first class mail postage prepaid upon its registered agent: William J. Albright; 701 Aqui Esta Drive, #263, Punta Gorda, Florida, 33951.

18.  Defendant Jason Dovalina is, and at all material times represented that he was, an individual residing in the state of California ("Jason Dovalina").

19.  Defendant Jason Dovalina, may be served by first class mail postage prepaid upon himself; 128 W. Santa Fe Avenue, Suite C, Placentia, California 92870-5632.

20.  Defendant Rachel Dovalina is, and at all material times represented that she was, an individual residing in the state of California ("Rachel Dovalina").

21.  Defendant Rachel Dovalina, may be served by first class mail postage prepaid upon

4

**EXHIBIT 2, PAGE 14**

1    herself; 736 Oceanview Drive, Fullerton, California 92832.

2        22.    Defendant The Final Season, Inc. is, and at all material times represented that it was,

3    a California – domestic corporation ("Final Season").

4        23.    Defendant Final Season may be served by first class mail postage prepaid upon its

5    agent; 5716 Corsa Avenue S. 110, West Lake Village, California 91362.

6        24.    Defendant Factor In, Inc. is, and at all material times represented that it was, a

7    California – domestic corporation ("Factor In").

8        25.    Defendant Factor In may be served by first class mail postage prepaid upon its

9    registered agent: Sye Gilani; 7651 Greenock Way, Riverside, California 92508.

10        26.    Defendant Syed Faisal Gilani aka Sye Gilani is, and at all material times represented

11    that he was, an individual residing in the state of California ("Gilani").

12        27.    Defendant Gilani may be served by first class mail postage prepaid upon himself: 7651

13    Greenock Way, Riverside, California 92508.

14        28.    Defendant Bae Enterprises, Inc. is, and at all material times represented that it was, a

15    Wyoming - domestic corporation ("Bae Enterprises").

16        29.    Defendant Bae Enterprises may be served by first class mail postage prepaid upon its

17    registered agent: Cloud Peak Law, LLC, 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming

18    82801.

19        30.    Defendant Rose Bianca Loli is, and at all material times represented that she was, an

20    individual residing in the state of California ("Loli").

21        31.    Defendant Loli may be served by first class mail postage prepaid upon herself: 33741

22    Alcazar Drive, Dana Point, California 92629 or 1220 Ensenada Avenue, Laguna Beach, California

23    92651.

24        32.    Defendant Decacorn Holdings, LLC is, and at all material times represented that it

25    was, a California – domestic limited liability company ("Decacorn Holdings").

26        33.    Defendant Decacorn may be served by first class mail postage prepaid upon its

27    registered agent: Dana Fang, 2520 Venture Oaks Way, Suite 120, Sacramento, California 95833.

28        34.    Defendant Samson Ly is, and at all material times represented that he is a resident of

**EXHIBIT 2, PAGE 15**

1   California ("Ly").

2       35.    Defendant Ly may be served by first class mail postage prepaid upon himself: 208 S.

3   Moore Avenue, Apt. D, Monterey Park, California 91754.

4       36.    Defendant BEW Solar Management, LLC is, and at all material times represented that

5   it was, a California – domestic limited liability company ("BEW Solar").

6       37.    Defendant BEW Solar may be served by first class mail postage prepaid upon its

7   manager: Sean M. Stephens, 2560 N. Synergy Avenue, Eagle, Idaho 83616.

8       38.    Defendant Sean M. Stephens is, and at all material times represented that he was, an

9   individual residing in Idaho ("Stephens").

10      39.    Defendant Stephens may be served by first class mail postage prepaid upon himself:

11  2560 N Synergy Ave, Eagle, Idaho 83616.

12      40.    Defendant Lexicon Consulting, Inc. is, and at all material times represented that it was,

13  a California – domestic corporation ("Lexicon").

14      41.    Defendant Lexicon may be served by first class mail postage prepaid upon its

15  registered agent: Jamie Latshaw, 266 S Magnolia Avenue, Suite 202, El Cajon, California 92020.

16      42.    Defendant Daniel Lansdale is, and at all material times was, an individual residing in

17  the state of California ("Lansdale").

18      43.    Defendant Lansdale may be served by first class mail postage prepaid upon himself;

19  515 W. Commonwealth Avenue, Suite 211, Fullerton, California 92832.

20      44.    Defendant United Partnerships, Inc. is, and all material times represented that it was,

21  a California, - domestic corporation ("United Partnerships").

22      45.    Defendant United Partnerships may be served by first class mail postage prepaid upon

23  its registered agent: 7300 Lennox Avenue, Room J-14, Van Nuys, CA 91405.

24      46.    Defendant Ventura Consulting, LLC is, and at all material times represented that it

25  was, a Nevada - domestic limited liability company ("Ventura").

26      47.    Defendant Ventura may be served by first class mail postage prepaid upon its member

27  Matthew Church; 708 Grandview Avenue, Fullerton, California 92832 and 10620 Southern

28  Highlands Parkway, Suite 110-18, Las Vegas, Nevada 89141.

**EXHIBIT 2, PAGE 16**

1       48.    Defendant Matthew Church is, and at all material times represented that he was an

2  individual residing in the states of California and Nevada ("Church")

3       49.    Defendant Church may be served by first class postage prepaid upon himself; 708

4  Grandview Avenue, Fullerton, California 92832 and 10620 Southern Highlands Parkway, Suite 110-

5  18, Las Vegas, Nevada 89141.

6       50.    Defendant Frank Brown is, and at all material times represented that he was an

7  individual residing in the state of Nevada ("Brown").

8       51.    Defendant Brown may be served first class postage prepaid upon himself: and 10620

9  Southern Highlands Parkway, Suite 110-18, Las Vegas Nevada 89141 and 10881 Pentland Downs

10  Street, Las Vegas, Nevada 89141.

11       52.    Defendant Validation Partners, LLC is, and at all material times represented that it

12  was, a Florida – domestic limited liability company ("Validation").

13       53.    Defendant Validation may be served by first class mail postage prepaid upon its agent

14  M&M RA Solutions; 3001 SW 3rd Avenue, Miami, Florida 33129.

15       54.    Defendant Innovative Solutions, Inc. is, and at all material times represented that it

16  was a Wyoming – domestic corporation ("Innovative Solutions").

17       55.    Defendant Innovative Solutions may be served by first class mail postage prepaid upon

18  its agent Cloud Peak Law, LLC; 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming 82801.

19       56.    Defendant MRJR20 Partners, LLC, is and at all material times represented that it was

20  a California – domestic limited liability company ("MRJR20").

21       57.    Defendant MRJR20 may be served by first class mail postage prepaid upon its agent

22  Rick R. Emmett; 10 Pointe Drive, Suite 150, Brea, California 92821.

23       58.    Defendant MFCR Investments, LLC is, and at all material times represented that it

24  was a Florida – domestic limited liability company ("MFCR Investments").

25       59.    Defendant MFCR Investments may be served by first class mail postage prepaid upon

26  its agent Scott F. Penton; 1525 Clapton Drive, Deland, Florida 32720.

27       60.    Defendant Lifesize, Inc. is, and at all material times represented that it was a Wyoming

28  – domestic corporation ("Lifesize").

7

**EXHIBIT 2, PAGE 17**

61.     Defendant Lifesize may be served by first class mail postage prepaid upon its agent Cloud Peak Law, LLC; 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming 82801.

62.     Defendant Karrington, Inc. is, and at all material times represented that it was, a Wyoming - domestic corporation ("Karrington").

63.     Defendant Karrington may be served by first class mail postage prepaid upon it registered agent: Company Sage Agents, LLC; 1095 Sugarview Drive, Suite 100, Sheridan, Wyoming 82801.

64.     Defendant Spectrum Payment Solutions, LLC is, and at all material times represented that it was, a California – domestic limited liability company ("Spectrum").

65.      Defendant Spectrum may be served by first class mail postage prepaid upon its agent Samson Ly; 208 S. Moore Avenue, Apt. D, Monterey Park, California 91754.

66.     Defendant Jason D. Williams is, and at all material times represented that he was an individual residing in the state of California ("Williams").

67.     Defendant Williams may be served by first class mail postage prepaid upon himself; 4155 E. La Palma Avenue, Anaheim, California 92807.

68.     Defendant Home Energy Solutions, Inc. is, and at all material times represented that it was a California – domestic corporation ("Home Energy").

69.     Defendant Home Energy may be served by first class mail postage prepaid upon its Financial Manager: Rick R. Emmett, 300 S. Harbor Boulevard., Suite 1000, Anaheim, California 92805.

70.     Defendant The Coelho Irrevocable Life Insurance Trust is, and at all material times represented that it was a California Trust ("Coelho Trust").

71.     Defendant Coelho Trust may be served by first class mail postage prepaid upon its Trustee Rick R. Emmett: 300 S. Harbor Boulevard., Suite 1000, Anaheim, California 92805.

72.     Defendant JNR Services, Inc. is, and at all material times represented that it was a California – domestic corporation ("JNR").

73.     Defendant JNR may be served by first class mail postage prepaid upon its agent Rick R. Emmett; 10 Pointe Drive, Suite 150, Brea, California 92821.

**EXHIBIT 2, PAGE 18**

74.     Defendant C.A.T. Exteriors, Inc. is, and at all material times represented that it was an Arizona – domestic corporation ("CAT Exteriors").

75.     Defendant CAT Exteriors may be served by first class mail postage prepaid upon its agent Rick R. Emmett: 10 Pointe Drive, Suite 150, Brea, California 92821.

76.     Defendant AZLS Enterprises Inc. is, and at all material times represented that it was a California – domestic corporation ("AZLS").

77.     Defendant AZLS may be served by first class mail postage prepaid upon its agent: Hee S. Noh, 9 Traditional Place, Irvine, California 92602.

78.     Defendant A Solution Debt Relief, Inc. is, an administratively dissolved Wyoming corporation ("A Solution").

79.     Defendant A Solution may be served by first class mail postage prepaid upon its agent: Cloud Peak Law, LLC, 1095 Sugar View Drive, Suite 500, Sheridan, WY 82801.

80.     Defendant Investlinc Wealth Services, Inc. is, and at all material times represented that it was a California – domestic corporation ("Investlinc").

81.     Defendant InvestLinc may be served by first class mail postage prepaid upon its agent: West A. Cohan, 10 Pointe Drive, Suite 150, Brea, California 92821.

82.     Unless separately identified herein, all of the Defendants will collectively be referred to herein as the "Oxford Knox Defendants."

83.     As discussed herein, not all Oxford Knox Defendants are identified in the Exhibits as receiving payments. Those Oxford Knox Defendants that are not identified as receiving a payment are named herein in their capacity as (i) as a subsequent transferee of an identified transfer, (ii) the potential recipient of a not yet identified transfer, and/or (ii) the party for whose benefit a particular transfer was made that is identified herein. Specific allegations regarding the relationships of Defendants are made herein.

## GENERAL ALLEGATIONS

A.     **The Bankruptcy Case**

84.     On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

9

**EXHIBIT 2, PAGE 19**

85. The Office of the United States Trustee ("UST") filed its *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58].

86. Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

87. Trustee was not appointed until after events of the case and, therefore, bases these allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations omitted)).

88. Pursuant to the *Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation* entered September 9, 2024, and the *Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation* filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust, effective September 24, 2024. [Bankr. Docket Nos. 1646 & 1762].

**EXHIBIT 2, PAGE 20**

89. Plaintiff brings this action solely in his capacity as the Liquidating Trustee of the LPG Liquidation Trust, for the benefit of Debtor's Estate and its creditors.

**B.   Protective Order**

90. On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of Protective Order (the "Protective Order").

91. On June 3, 2024, the Court entered its *Order Granting Motion for Entry of Protective Order and the Protective Order* [Bankr. Docket No. 1270] (the "Protective Order"). A true and accurate copy of the Protective Order is attached as **Exhibit 1**, and incorporated herein.

92. By its own terms, the Protective Order applies to this adversary proceeding and governs all discovery conducted herein.

**C.   LPG's Ownership and Management**

93. Prior to the Petition Date, LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify. At all relevant times, LPG was controlled and operated by the individual named Tony Diab ("Diab").

94. The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

95. The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

96. In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

97. LPG mismanaged the consumers' monthly payments.

98. Diab and other defendants devised a plan to fraudulently transfer funds, client files, client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out of LPG to third parties prior to the filing of bankruptcy.

99. To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG in exchange for a percentage of the ACH Receivables collected by LPG from the consumers. The

11

**EXHIBIT 2, PAGE 21**

1  marketing affiliate went so far as to assist with the execution of an engagement letter between the

2  consumer and LPG.

3       100.    In exchange, LPG agreed to pay the marketing affiliates a percentage the monthly

4  payments collected by LPG from the consumers.

5       101.    Because LPG received payments from consumers over time, it often sought financing

6  by borrowing against its future cash flows. This borrowing was not only used to finance operations

7  at LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

8       102.    Many of the documents executed in connection with such financing described the

9  transactions as accounts receivable purchase agreements.

10      103.    Diab used entities he controlled including, without limitation, Vulcan Consulting, LLC

11 ("Vulcan"), B.A.T. Inc. dba Coast Processing ("Coast"), PrimeLogix, LLC ("PrimeLogix") and

12 others to divert LPG consumer funds and ACH Receivables. Diab would use numerous ACH

13 processing companies in order to easily transfer millions of dollars from Debtor to these entities he

14 controlled, without oversight or detection, and to avoid payment disputes and complications. The

15 money that flowed from Debtor through these bank account to Defendants consisted of Client Funds

16 that Debtor funneled to these entities by means of the ACH processing companies. Debtor also made

17 deposits into these entities bank account such that they received Client Funds directly from Debtor in

18 addition to direct Accounts Receivable.

19                          **SPECIFIC ALLEGATIONS**

20 **A.    Ponzi Scheme Presumption**

21      104.    The Ponzi Scheme Presumption exists in bankruptcy proceedings.

22      105.    The Ponzi Scheme Presumption can be utilized to establish a debtor's "intent to

23 defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme.

24 Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor

25 pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will

26 eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless

27 makes payments to present investors, which, by definition, are meant to attract new investors. He

28 must know all along, from the very nature of his activities, that investors at the end of the line will

**EXHIBIT 2, PAGE 22**

lose their money. Knowledge to a substantial certainty constitutes intent in the eyes of the law," *cf. Restatement (Second) of Torts § 8A* (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them. *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 114 F.4th 1148, 1153 (9th Cir. 2024) (by definition Ponzi scheme is destined to fail and the swindler and their entities often end in bankruptcy or equitable receivership); *Cf. Coleman Am. Moving Servs., Inc. v. First Nat'l Bank & Trust Co. (In re American Properties, Inc.)* 14 B.R. 637, 643 (Bankr. D. Kan. 1981) (intentionally carrying out a transaction with full knowledge that its effect will be detrimental to creditors is sufficient for actual intent to hinder, delay or defraud within the meaning of § 548(a)(1))." *Merrill v. Abbott (In re Independent Clearing House Co.)* (D. Utah 1987) 77 B.R. 843, 860. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 ("[a] trustee's action to recover assets fraudulently conveyed in the course of a Ponzi scheme does not require that the trustee also prove the Ponzi-scheme operator was subjectively aware his Ponzi scheme was destined to fail.").

106.    "But if all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share. In fact, by helping the debtor perpetuate his scheme, the transfers exacerbate the harm to creditors by increasing the amount of claims while diminishing the debtor's estate. In such a situation, the use of the defendant's money cannot objectively be called 'reasonably equivalent value.'" *In re Independent Clearing House Co.* 77 B.R. at 859. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute "property of the estate," and the trustee can recover them. *Id.* at 853 n.17 (citations omitted).

107.    Debtor was operating a Ponzi scheme that utilized affiliates and several other entities as investors to continue its unlawful business practices by using funds provided by current investors to attract new investors hoping for very high returns. Therefore, the Debtor was running a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. section 548(a)(1). This is evidenced by the Court

**EXHIBIT 2, PAGE 23**

in this Bankruptcy Case declaring that Debtor was operating a Ponzi scheme when it stated the

following:

> It is important to note that this Court has never received any significant and
> trustworthy evidence that Debtor accomplished meaningful results for its
> clients, but only anecdotal examples of viable success for its clients. By
> reviewing the Estate's claims register, there is evidence of consumer claims
> for the fraud and demanded but undelivered refunds of approximately $500
> million. There is ample evidence that the pre-petition Debtor never placed
> the collected funds into an attorney-client trust account, and that Debtor or
> its principals simply looted the payments received through the client
> automatic withdrawals, stiffing both the clients and outside attorneys who
> may have been working on client cases with the hopes of being paid. There
> is also evidence before the Court that Debtor was running a Ponzi scheme
> and paying some outside (or "network") attorneys with funds obtained from
> new clients. In this case, it appears that some of the "lenders" may have
> been serving as "investors," hoping for very high returns before "the music
> stopped." The Ninth Circuit has recently explained, "[b]y definition, a
> Ponzi scheme is destined to fail because the pool of available investors is
> not limitless. When the Ponzi scheme operator's pool of investors inevitably
> runs dry, the scheme collapses and the swindler and their entities often end
> up in bankruptcy or equitable receivership. *See generally* David R. Hague,
> Expanding the Ponzi Scheme Presumption, 64 DePaul L. Rev. 867 (2015).
> In bankruptcy, the court-appointed trustee is tasked with taking immediate
> control of the entity, ceasing ongoing fraudulent activity, locating and
> collecting assets for the bankruptcy or receivership estate, and achieving a
> final, equitable distribution of the remaining assets. *See* 11 U.S.C. § 704;
> *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 2024 U.S. App. LEXIS 21363,
> at *15 (9th Cir. Aug. 23, 2024). Finally, there is evidence that Debtor was
> encumbering (or as some creditors assert, "double or triple selling") their
> accounts or receivables to multiple lenders. With respect to Greyson's
> requested Administrative Claim [Dk. 676], and as more fully described in
> the concurrently entered order denying the claim, there has been no
> evidence presented that any work allegedly performed by Greyson assisted
> any clients or added any value to the Estate.

*See, Case 8:23-bk-10571-SC*, Doc 1545 n. 5.

108.    The Ponzi Scheme Presumption establishes a debtor's "intent to defraud future

undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme." *Merrill v.*

*Abbott* (*In re Independent Clearing House Co*.), 77 B.R. 843, 860 (D. Utah 1987). "Knowledge to a

substantial certainty constitutes intent in the eyes of the law, *cf. Restatement (Second) of Torts* § 8A

(1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish

his actual intent to defraud them." *Id*. A trustee in bankruptcy is not required to show that an operator

of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co.,*

*LLC*, 114 F.4th at 1153 (9th Cir. 2024).

14

**EXHIBIT 2, PAGE 24**

109.    "[I]f all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share." *In re Independent Clearing House Co.* 77 B.R. at 859. In such a situation, the use of the defendant's money cannot objectively be called "reasonably equivalent value." *Id*. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can recover them." *Id*. at 853 n.17 (citations omitted).

110.    In addition to the solicitation of investments and lending from the Oxford Knox Defendants, the Debtor's need for capital was so severe that it began borrowing funds through a loan broker named Spot On Consulting, Inc. ("Spot On"). Upon information and belief, Spot On would facilitate loans to LPG from individuals and corporations – sometimes for as little as $5,000 – in exchange for a ten percent (10%) commission on the principal amount of the loan. LPG would then typically promise to pay each lender as much as eight percent (8%) interest per month on the principal balance for twelve months and would then repay the original principal amount at maturity.

111.    Upon further information and belief, LPG borrowed hundreds of thousands of dollars **each week** on these terms beginning in August 2022 and continuing until filing for bankruptcy.

112.    Proof of Claim No. 91 seeking more than $66 million dollars has been filed for the outstanding balances owed on these brokered "loans". This Proof of Claim is incorporated by reference herein.

113.    Based on the Ponzi Scheme presumption the Court can infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. § 548(a)(1). Since the Transfers to the Defendants were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for such transfers, and the Trustee can avoid any such transfers because they were actually fraudulent as to the Debtor's creditors..

**B.    Prepetition Litigation and Creditors**

114.    Debtor's Schedule E/F, filed on April 4, 2023, as Dk. No. 33, lists: (a) 11 unsecured creditors with priority unsecured claims totaling $374,060.04; and (b) 58 nonpriority unsecured creditors with scheduled claims totaling $141,439,158.05.

**EXHIBIT 2, PAGE 25**

115.    The claims register in this Bankruptcy Case includes 2,554 proofs of claim, totaling in excess of $424 million of claims asserted against the Estate.

116.    At least 14 UCC-1 statements were of record securing alleged debts of the Debtor as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired or provided evidence of the assignment or sale of substantial portions of the Debtor's future income. They secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (a) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (b) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (c) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 purportedly secured by a UCC statement filed on or about May 28, 2021; and (d) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.

117.    Debtor's balance sheets for the 36 months ending December 31, 2021, show approximately $17,900,000 in total assets at its highest point in November 2021. This amount is significantly less than the $424 million of claims filed.

118.    Debtor's Statement of Financial Affairs, filed on April 4, 2023, as Dk. No. 34, reflects 15 pending lawsuits against Debtor as of the Petition Date. The lawsuits date back to October 18, 2021 (*Fundura v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 613192-2021) and are as recent as March 10, 2023 (*Diverse Capital LLC v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 135614-2023).

**C.    Debtor's Insolvency**

119.    Debtor was insolvent when the Transfers occurred as evidenced by: (a) the 14 UCC-1 statements reflecting secured liens against the Debtor's owned and after-acquired assets and the assignment or sale of substantial portions of the Debtor's future income; (b) the priority and non-priority unsecured debt of nearly $142 million listed in Debtor's schedules; (c) the $424 million of creditor claims filed in this Bankruptcy Case; and (d) Debtor's balance sheets reflecting, at its highest

16

**EXHIBIT 2, PAGE 26**

1    point, $17.9 million of assets in November 2021.

2    120.    Moreover, insolvency is presumed as a matter of law where, as in this Bankruptcy

Case, the debtor operated a Ponzi scheme. *See, e.g., Glob. Money Mgmt., L.P. v. McDonnold*, No.

06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a Ponzi

scheme is proven, then the debtor is proven insolvent from the time of its inception").

<u>**SPECIFIC ALLEGATIONS**</u>

121.    Upon information and belief, Oxford Knox and its predecessor Validation were

formed to try to meet promises made to investors and lenders to or partners of the Debtor and/or a

related entity. Whether these debts arose from traditional loans, "purchases" of receivables from a set

of client files, or investments in the Debtor or a particular venture, the Debtor, Tony Diab, and/or a

related entity was not able to fulfill the promised obligations.

122.    Some Oxford Knox Defendants appear to have lent money to Tony Diab. In the

summer of 2021, Defendants Home Energy, Ryan Connet, the Coelho Trust, Jason Williams, Samson

Ly, BEW Solar, and Spectrum collectively paid more than $1,000,000 into escrow to fund the down

payment on Tony Diab's purchase of Arash Bayrooti's shares in Coast. These escrowed funds were

ultimately paid to Mr. Bayrooti on behalf of Mr. Diab; however, the Debtor, and not Mr. Diab, was

required to make these payments.

123.    Upon information and belief, some amounts may have been repaid to these individuals

that advanced money to fund Mr. Diab's purchase of shares in Coast. These debts may have been

restructured into assignments of income from groups of files.

124.    Also in 2021, Defendants Innovative, MRJR, MFCR, Lifesize, and Karrington became

members of Validation according to its Amended and Restated Limited Liability Company

Agreement. Upon information and belief, Validation stated purpose was to support the Debtor's

marketing affiliates and/or work with law firms like the Debtor. Upon further information and belief,

Validation's true purpose and goal was the repayment of amounts owed to its members by the Debtor

or Mr. Diab.

125.    Validation was ultimately dissolved in September 2022, but while it operated, the

Debtor paid it almost one million dollars as shown herein.

**EXHIBIT 2, PAGE 27**

126. While Validation was winding down, Mr. Diab formed a new entity – Oxford Knox in late 2021. Upon information and belief, Oxford Knox was formed for the same purpose as Validation – to nominally support to the Debtor's affiliates while collecting payments from the Debtor for its members.

127. The original members of Oxford Knox were (i) Buffalo 21; (ii) Obrick, Inc.; (iii) Albright, Inc.; (iv) Final Season; (v) Factor In; (vi) Bae.; (vii) Decacorn; (viii) BEW Solar; (ix) Lexicon; (x) United Partnerships; (xi) Ventura Consulting; and (xii) Summer Cederberg.

128. Following its formation, the Debtor and/or Mr. Diab made payments directly to Oxford Knox, and/or its members using client funds paid to or collected by the Debtor.

129. Upon further information and belief, Mr. Diab would direct the Debtor or a related entity to make or direct payments to one or more of the Oxford Knox Defendants either based on invoices for services that were never performed to make the payment appear tax deductible, or paid to a third party that was owned or controlled by a member of Oxford Knox.

130. All payments to any Oxford Knox Defendant made pre-petition known to the Trustee as of the date this complaint was filed are set forth on **Exhibit 2** hereto and incorporated as if set forth herein.

131. All payments to any Oxford Knox Defendant made after the Debtor filed for bankruptcy known to the Trustee as of the date this complaint was filed are set forth on **Exhibit 3** hereto and incorporated as if set forth herein.

132. Upon further information and belief, each member of Oxford Knox contributed "debt" they claimed to be owed by the Debtor to the LLC. In turn, Oxford Knox, which was partially owned and/or controlled by Tony Diab, entered into an agreement with the Debtor that fixed the debt owed to Oxford Knox at $22,000,000 ("Repayment Agreement").

133. The Repayment Agreement is the basis of, and is attached to, the Proof of Claim No. 818 ("Claim") filed by Oxford Knox herein. A true and accurate copy of the Repayment Agreement from the Claim is attached hereto as **Exhibit 4**.

134. The Claim states that Oxford Knox received three payments totaling $1,743,686.74 on November 1, 2021, January 1, 2022, and February 1, 2022. The Trustee does not know if these

**EXHIBIT 2, PAGE 28**

1    payments reflect payments made directly to the members of Oxford Knox or to third parties on their

2    behalf or if these payments were made directly to Oxford Knox from an unknown source. They are

3    identified herein and included in the Transfers that the Trustee seeks to avoid.

4         135.    Hereinafter, any payment to any Oxford Knox Defendant identified herein will be

5    referred collectively as the "Transfers". Specific sets of Transfers such as those made during the

6    ninety-day period preceding the Petition Date may be given a certain name, but they will remain part

7    of the Transfers identified herein.

8         136.    All Transfers identified herein may not relate to the transactions and entities discussed

9    herein, and the Trustee may have filed or may file separate litigation against one or more Defendants

10    based on other transactions or relationships it had with the Debtor. All Transfers to Defendant known

11    to the Trustee are identified herein out of an abundance of caution.

12         137.    As noted above, the Debtor often made payments to unrelated parties to or for the

13    benefit of one or more Oxford Knox Defendants. As a result, some defendants named herein are not

14    identified on an Exhibit as receiving any Transfer but that does not mean that an identified Transfer

15    was not made for their benefit. The following paragraphs supplement the allegations regarding the

16    relationships of certain individuals with other Oxford Knox Defendants.

17         138.    Upon information and belief, Emmett operates or is an officer, member, or owner of

18    Buffalo 21, MRJR, and Coelho Trust. He is also the registered agent for Home Energy.

19         139.    Upon information and belief, Connet is an officer, member, or owner of Buffalo 21,

20    MRJR, and CAT Exteriors.

21         140.    Upon information and belief, Jason Dovalina is an officer, member, or owner of

22    Defendants Obrick, Albright, Karrington, JNR, and A Solution. Rachel Dovalina is related to Mr.

23    Dovalina.

24         141.    Upon information and belief, Gilani is an officer, member, or owner of Final Season,

25    Factor In, AZLS, and Lifesize.

26         142.    Upon information and belief, Ly is an officer, member, or owner of Decacorn and

27    Spectrum.

28         143.    Upon information and belief, Stephens is an officer, member, or owner of BEW Solar.

**EXHIBIT 2, PAGE 29**

144.   Upon information and belief, Lansdale is an officer, member, or owner of Lexicon.

145.   Upon information and belief, Church and Brown are officers, members, or owners of Defendants United Partnerships, Ventura, and MFCR, LLC.

146.   Upon information and belief, Williams is an officer, member, or owner of CAT Exteriors and Spectrum.

**CLAIMS FOR RELIEF**

**COUNT ONE**

**Avoidance, Recovery, and Preservation of Transfers Made Within the Ninety Day Period**

**Before the Petition Date**

**[11 U.S.C. §§ 547, 550, and 551]**

147.   Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

148.   In the ninety-day period preceding the Petition Date, the Debtor made transfers of property or payments to one or more of the Oxford Knox Defendants ("90 Day Transfers"). The 90 Day Transfers to the Oxford Knox Defendants known to the Trustee as of the filing date are identified on hereto as **Exhibit 2.**

149.   The Debtor made the 90 Day Transfers to the Oxford Knox Defendants identified on the Exhibit on account of a debt owed to that particular Defendant or to Oxford Knox.

150.   The 90 Day Transfers were made to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because the 90 Day Transfers were payments made on account of debts nominally owed by the Debtor.

151.   A transfer of the Debtor's assets occurred when the 90 Day Transfers were received by the particular Oxford Knox Defendant.

152.   The 90 Day Transfers were made on account of antecedent debt nominally owed by the Debtor to the recipient of the Transfer due to an "investment" or other document evidencing indebtedness. The Debtor's payment obligations to the transferees constituted a "debt" (as defined in the Bankruptcy Code).

153.   The 90 Day Transfers occurred when the Debtor actually was insolvent. However,

20

**EXHIBIT 2, PAGE 30**

1  Plaintiff is also entitled to the presumption of insolvency when the 90 Day Transfers were made

2  pursuant to 11 U.S.C. § 547(f).

3       154.    The 90 Day Transfers were made in the ninety-day period before the Petition Date.

4       155.    To the extent any transfers were made by the Debtor to any Oxford Knox Defendant

5  within the ninety-day period preceding the Petition Date and are not identified herein, Plaintiff

6  reserves the right to avoid and recover such transfers pursuant to 11 U.S.C. §§ 547 and 550.

7       156.    As the holder of an unsecured claim(s) or as party who has not filed a claim, the

8  payment of the 90 Day Transfers to one or more of the Oxford Knox Defendants enabled them to

9  recover more than they would have received if: (i) the Debtor's case was under chapter 7 of the

10 Bankruptcy Code; (ii) the 90 Day Transfers had not been made; and (iii) the debts owed to the Oxford

11 Knox Defendants that received the 90 Day Transfers were paid pursuant to the provisions of the

12 Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case,

13 as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets

14 to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's

15 bankruptcy estate.

16      157.    In accordance with the foregoing, the 90 Day Transfers are avoidable pursuant to 11

17 U.S.C. § 547(b), and may be recovered and preserved for the benefit of the estate pursuant to 11

18 U.S.C. §§ 550 and 551.

19                          **COUNT TWO**

20      **Avoidance, Recovery, and Preservation of Post-Petition Transfers**

21                 **[11 U.S.C. §§ 549, 550, and 551]**

22      158.    Plaintiff realleges and incorporates by reference each and every allegation contained

23 in the preceding paragraphs as though set forth in full herein.

24      159.    This is an action to pursuant to 11 U.S.C. §§ 549 and 550 to avoid and recover

25 unauthorized post-petition transfers made by Debtor to any of the Oxford Knox Defendants ("Post-

26 Petition Transfers").

27      160.    To the extent any Post-Petition Transfers were made by the Debtor to any Oxford

28 Knox Defendant following the Petition Date and are not identified herein, Plaintiff reserves the right

**EXHIBIT 2, PAGE 31**

1  to amend the Complaint to identify the Post-Petition Transfers and seek the avoidance and recovery

2  of them pursuant to 11 U.S.C. §§ 549 and 550.

3      161.    Those Post-Petition transfers to Oxford Knox Defendants that are known to the Trustee

4  at this time are identified on **Exhibit 3** hereto.

5  **COUNT THREE**

6  **Avoidance of Debtor's Execution of Repayment Agreement with Oxford Knox As a**

7  **Fraudulent Conveyance**

8  **[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

9      162.    Plaintiff realleges and incorporates by reference each and every allegation contained

10  in the preceding paragraphs as though set forth in full herein.

11      163.    11 U.S.C. § 548(a)(1)(B), in relevant part, permits a debtor or trustee to avoid "any

12  obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date

13  of the filing of the petition" if the debtor failed to receive reasonably equivalent value in exchange

14  for such transfer or obligation and if the debtor:

15      (I)    was insolvent on the date that such transfer was made or such obligation was

16  incurred, or became insolvent as a result of such transfer or obligation;

17      (II)    was engaged in business or a transaction, or was about to engage in business

18  or a transaction, for which any property remaining with the debtor was an unreasonably small

19  capital;

20      (III)    intended to incur, or believed that the debtor would incur, debts that would be

21  beyond the debtor's ability to pay as such debts matured . . .

22      164.    The Debtor executed the Repayment Agreement on or about April 15, 2022, which

23  was within Two-Years of the Petition Date.

24      165.    On or after the date that the Repayment Agreement was executed, the Debtor was or

25  became indebted to the Prepetition Creditors.

26      166.    The Repayment Agreement was executed while the Debtor:

27      a.    was insolvent or became insolvent as a result;

28      b.    was engaged or was about to engage in a transaction for which any property

22

1  remaining with Debtor was of unreasonably small capital; or

2         c.     intended to incur, or believed that it would incur, debts beyond its ability to

3  pay as such debts matured.

4        167.    The Debtor failed to receive reasonably equivalent value when it executed the

5  Repayment Agreement because the Repayment Agreement purported to consolidate debt owed to the

6  members of Oxford Knox into a single obligation of twenty-two million dollars ($22,000,000.00).

7  Upon information and belief, the stipulated amount of debt is inflated as (i) the Debtor was not liable

8  for some of the debts allegedly owed to the members of Oxford Knox that were reduced to a sum

9  certain in the Repayment Agreement, (ii) the debts allegedly owed to the Members represented equity

10  investments in entities related to the Debtor that were subsequently treated as debt in the Repayment

11  Agreement; and/or (iii) the debts owed to the Members consolidated in the Repayment Agreement

12  arose from illegal or otherwise voidable transactions such as file purchases.

13        168.    The Repayment Agreement's requirement that the Debtor pay Oxford Knox the sum

14  of ten million dollars ($10,000,000.00) upon a sale of the business is additional evidence that the

15  debts the Members claimed to be owed were truly equity investments and not debt.

16  **COUNT FOUR**

17  **Avoidance, Recovery, and Preservation of Two-Year Transfers Made With Intent to Defraud**

18  **[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

19        169.    Plaintiff realleges and incorporates by reference each and every allegation contained

20  in the preceding paragraphs as though set forth in full herein.

21        170.    The Transfers were property of the Debtor's Estate prior to their conveyance to the

22  one or more of the Oxford Knox Defendants. The Transfers to the Oxford Knox Defendants made

23  within Two-Years of the Petition Date ("Two-Year Transfers") that are known to the Trustee are

24  identified on **Exhibit 2** hereto and incorporated by reference herein.

25        171.    When the Two-Year Transfers were made, the Debtor was or became indebted include

26  the Prepetition Creditors.

27        172.    The Two-Year Transfers occurred when the Debtor was insolvent or was rendered

28  insolvent as a result of the Transfers.

23

**EXHIBIT 2, PAGE 33**

173. The Two-Year Transfers to the Oxford Knox Defendants were made with actual intent to hinder, delay or defraud the creditors of Debtor because the Debtor was operating a Ponzi scheme which permits the Court to infer that the Debtor's intent was fraudulent within the meaning of 11 U.S.C. section 548(a)(1).

174. The Two-Year Transfers are avoidable as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, and 551 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against Debtor's Estate under 11 U.S.C. § 502, or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

175. The Two-Year Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## COUNT FIVE

**Avoidance, Preservation, and Recovery of Constructively Fraudulent Two-Year Transfers**

**11 U.S.C. §§ 548(a)(1)(B), 550 & 551**

176. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

177. The Two-Year Transfers were made within Two-Years before the Petition Date.

178. Debtor did not receive reasonably value in exchange for the Two-Year Transfers because (i) the Debtor was not liable on the debts originally owed to some Defendants, (ii) the debts allegedly owed to one or more Defendants arose from equity investments in entities related to the Debtor that were subsequently treated as the Debtor's debt.

179. The Two-Year Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

180. When the Two-Year Transfers occurred, Debtor's business was undercapitalized, and Debtor was engaged in business for which its capital was unreasonably small.

181. When the Two-Year Transfers occurred, Debtor had incurred or was about to incur debts that were beyond its ability to pay. The allegations in the preceding paragraphs are supported

24

**EXHIBIT 2, PAGE 34**

1  by the fact that the Debtor was consistently borrowing money from merchant cash advance lenders,

2  purporting to sell the same groups of receivables to multiple parties, and as of August 2022 had begun

3  a Ponzi scheme of borrowing through Spot On as discussed herein.

4       182.    At the time each Two-Year Transfer was made, Debtor was indebted to one or more

5  creditors that held a claim against Debtor on the date of each Two-Year Transfer and on the Petition

6  Date.

7       183.    Plaintiff alleges that Defendants did not receive the Two-Year Transfers in good faith,

8  for value, and without knowledge of their avoidability.

9       184.    Each Defendant knew that the Debtor was a law firm who was required by law to

10  escrow client payments until earned. However, each Defendant demanded and received payment from

11  client payments that had not been earned because they were paid by the Debtor, Vulcan, and/or Coast

12  or were paid directly from a payment processor for the Debtor such that the funds were never

13  conveyed to the Debtor and placed in escrow.

14       185.    Each Defendant had to know or should have known that they were being paid with

15  client funds that had not been placed into trust and been disbursed before they were earned.

16       186.    Each Defendant knew or should have known that were receiving payment on a debt

17  that was not valid or enforceable at law to the extent it arose from an alleged "purchase" of receivables

18  related to the Debtor's client files.

19       187.    Based on the foregoing, Plaintiff may recover and preserve the avoided Two-Year

20  Transfers from Defendant as the initial transferee or, alternatively, as the subsequent transferee for

21  the benefit of the Estate under 11 U.S.C. §§ 550 and 551 from Defendant.

22  <u>**COUNT SIX**</u>

23  **Avoidance, Preservation, and Recovery of Transfers Made In the Past Four Years**

24  **11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07**

25       188.    Plaintiff realleges and incorporates by reference each and every allegation contained

26  in the preceding paragraphs as though set forth in full herein.

27       189.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor

28  which are voidable under applicable law by an unsecured creditor of Debtor, including under

**EXHIBIT 2, PAGE 35**

California Civil Code §§ 3439.04(a)(1) and 3439.05.

190. The Transfers occurred within four years prior to the Petition Date and are identified on **<u>Exhibit 2</u>**.

191. On or after the date that such Transfer were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

192. Despite Debtor's obligation to the Prepetition Creditors, Debtor made the Transfers to Defendants.

193. The Transfers to Defendants were made with actual intent to hinder, delay or defraud the creditors of Debtor as the Debtor was operating a Ponzi scheme.

194. Defendants' conduct relating to the Transfers was done with oppression, fraud and malice, as defined in California Civil Code section 3294, entitling Plaintiff to exemplary and punitive damages.

195. The Transfers are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against its Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

196. Accordingly, the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and Cal. Civ. Code § 3439.07.

197. Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(2) and 3439.05.

198. Debtor did not receive reasonably equivalent value in exchange for the Transfers. The Transfers were made to (i) entities that were not creditors of the Debtor, (ii) entities that had made equity or other investments with the Debtor or in assets, and (iii) entities who claimed to be owed far more than any value that was ever given to the Debtor.

**EXHIBIT 2, PAGE 36**

199.    At the time each Transfer was made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

200.    At the time each Transfer was made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

201.    At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

202.    The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

203.    Plaintiff alleges that Defendants did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

204.    Each Defendant knew that the Debtor was a law firm who was required by law to escrow client payments until earned. However, each Defendant demanded and received payment from client payments that had not been earned because they were paid by the Debtor, Vulcan, and/or Coast or were paid directly from a payment processor for the Debtor such that the funds were never placed in trust.

205.    Each Defendant had to know or should have known that they were being paid with client funds that had not been placed into trust and been disbursed before they were earned.

206.    Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

207.    Based on the foregoing, Plaintiff may recover and preserve the Transfers from the Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

/ / /

/ / /

/ / /

27

**EXHIBIT 2, PAGE 37**

## COUNT SEVEN

### Avoidance, Recovery, and Preservation of Transfers Made in the Past Four Years

### [11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.05, and 3439.07]

208.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

209.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(2) and 3439.05.

210.    The Transfers were made within four years of the Petition Date are identified on **Exhibit 2** and incorporated as if set forth herein.

211.    Debtor did not receive reasonably equivalent value in exchange for the Transfers as (i) the Debtor was not liable on the debts originally owed to some Defendants, (ii) the debts allegedly owed to one or more Defendants arose from equity investments in entities related to the Debtor that were subsequently treated as the Debtor's debt.

212.    The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

213.    At the time each Transfer was made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

214.    At the time each Transfer was made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

215.    At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

216.    Plaintiff alleges that Defendants did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

217.    Each Defendant knew that the Debtor was a law firm who was required by law to escrow client payments until earned.

**EXHIBIT 2, PAGE 38**

218.    Each Defendant had to know or should have known that they were being paid with client funds that had not been placed into trust and been disbursed before they were earned.

219.    Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

220.    Based on the foregoing, Plaintiff may recover and preserve the Transfers from the Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

## COUNT EIGHT

**Avoidance, Recovery, and Preservation of Fraudulent Transfers Made to or for the Benefit of Defendants Gilani and Dovalina Arising from use of American Express Card**

**[11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), and 550]**

221.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

222.    On or about November 28, 2021 the Debtor applied for a business platinum card from American Express ("AmEx").

223.    AmEx granted the Debtor's application and opened a credit line ending in 8-51001 ("Account") in the name of "LPG PC."  AmEx issued cards to three individuals on this Account: Dovalina, Gilani, and Diab.

224.    From the opening of the Account in early 2022 to May and June 2022, Gilani regularly charged hundreds of thousands of dollars to the Account each month.

225.    While some charges to the Account may have been related to the Debtor and its operations, most of the charges do not appear to have benefitted the Debtor or were not incurred for the Debtor.

226.    Upon information and belief, Gilani regularly charged hundreds of thousands of dollars on the Account each month to pay vendors that do not appear to have done any work for the Debtors.

227.    Other expenses charged to the Account by Dovalina and/or Gilani appear personal in nature such as charges at clothing stores, tours/tickets, and dining.

29

228.    The charges made by each cardholder were itemized separately on the statements from American Express. The monthly charges on the Account for Dovalina and Gilani are stated below.

| Statement Closing Date | Gilani | Dovalina |
|---|---|---|
| 01.19.2022 | $14,812.41 | $1,593.83 |
| 02.16.2022 | $215,948.66 | $2,146.22 |
| 03.18.2022 | $207,846.79 | $1,413.61 |
| 04.18.2022 | $7,349.69 | $3,088.72 |
| 05.19.2022 | $29.98 | $94.55 |
| | $445,987.53 | $8,336.93 |

229.    The Debtor made payments on the Account to American Express. The payments from the Debtor to American Express to pay for all charges on the Account are identified on **Exhibit 5**.

230.    A significant portion of the payments to Am Ex were made to or for the benefit of Gilani and/or Dovalina and provided no benefit to the Debtor. The portion of the total payments made to AmEx that were made to pay for charges made to or for the benefit of Gilani and/or Dovalina are referred to herein as the "AmEx Transfers."

231.    The AmEx Transfers were made to or for the benefit of Gilani and/or Dovalina to the extent they paid American Express for charges made to the Account that were only or primarily for the benefit of Gilani and/or Dovalina.

232.    The funds used to make the AmEx Transfers were property of the Debtor's Estate prior to their conveyance to American Express.

233.    The AmEx Transfers occurred within the Two-Years prior to the Petition Date.

234.    On or after the date that the AmEx Transfers were made the Debtor was or became indebted include the Prepetition Creditors.

235.    The AmEx Transfers occurred when the Debtor was insolvent or was rendered insolvent as a result of the AmEx Transfers.

236.    The AmEx Transfers were made with actual intent to hinder, delay or defraud the creditors of Debtor because the Debtor was operating a Ponzi scheme which permits the Court to infer that the Debtor's intent was fraudulent within the meaning of 11 U.S.C. section 548(a)(1).

237.    Debtor did not receive reasonably value in exchange for the AmEx Transfers as Gilani

30

**EXHIBIT 2, PAGE 40**

and Dovlina were the parties that made charges on the Account for their personal benefit.

238.    When the AmEx Transfers occurred, Debtor's business was undercapitalized and Debtor was engaged in business for which its capital was unreasonably small.

239.    When the AmEx Transfers occurred, Debtor had incurred or was about to incur debts that were beyond its ability to pay. The allegations in the preceding paragraphs are supported by the fact that the Debtor was having to borrow money regularly from merchant cash advance lenders and to accept "investments" from third parties in exchange for promised future returns.

240.    At the time each AmEx Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

241.    Based on the foregoing, the AmEx Transfers were constructively fraudulent as to the Debtor's creditors to the extent they were made to or for the benefit of Gilani and/or Dovalina.

242.    Based on the foregoing, Plaintiff may avoid, preserve, and recover the avoided AmEx Transfers from Gilani and Dovalina pursuant to 11 U.S.C. §§ 548(a)(1)(A) and (B); 550 and 551.

<u>COUNT NINE</u>

**Objection to Proof of Claim No. 818 of Oxford Knox, LLC**

**[11 U.S.C. § 502(b) and (d)]**

243.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

244.    11 U.S.C. § 502(b) permits a Bankruptcy Court to determine the amount of a proof of claim following the filing of an objection.

245.    The Trustee has asked the Court to avoid the Debtor's execution of the Repayment Agreement as a fraudulent conveyance pursuant to 11 U.S.C. § 548. The Repayment Agreement is the basis for Oxford Knox's Claim.

246.    If the Trustee's avoidance action is successful, the Repayment Agreement would not be enforceable against the Estate.

247.    The Oxford Knox Claim is also objected to and is subject to disallowance pursuant to 11 U.S.C. § 502(d) because Oxford Knox and its members that created the Claim received transfers that are avoidable under 11 U.S.C. §§ 544, 547, 548, and/or 549.

31

248. The amount of the amount of the transfers identified herein has not been returned to the Estate.

**On All Claims for Relief:**

1. Avoiding the Debtor's obligations under the Agreement and avoiding recovering, and preserving the Payments to the Defendant in such amounts as the Court may determine ("AmEx Transfers");

2. Awarding pre-judgment and post-judgment as permitted;

3. Granting any other and such further relief as the Court deems just and proper.

4. Awarding attorneys' fees as provided by contract or applicable law;

5. Awarding costs of suit incurred here; and

6. Granting any other and further relief as the Court deems just and proper.

**On the First and Second Claims for Relief:**

1. Avoiding, recovering, and preserving the 90 Day Transfers and Post-Petition Transfers to the Defendants in such amounts as the Court may determine pursuant to applicable law;

**On the Third Claim for Relief:**

2. Avoiding and preserving the Debtor's execution of the Repayment Agreement as a fraudulent conveyance pursuant to 11 U.S.C. §§ 548, 550, and 551 for the reasons stated herein;

**On the Fourth Through Eight Claims for Relief:**

3. Avoiding, recovering, and preserving the Transfers to the Defendants in such amounts as the Court may determine pursuant to applicable law;

**On the Ninth Claim for Relief:**

4. Sustaining the Plaintiff's Objection to the Claim of Oxford Knox for the reasons stated herein;

**On All Claims for Relief:**

5. Awarding punitive and exemplary damages according to proof;

6. Awarding pre-judgment interest at the maximum legal rate;

7. Awarding post-judgment interest at the maximum legal rate from the date of the last Transfer until the judgment is paid in full;

32

**EXHIBIT 2, PAGE 42**

8.    Awarding costs of suit incurred herein; and

9.    Granting any other and further relief as the Court deems just and proper.

Dated:  March 19, 2025                    Respectfully submitted,

DINSMORE & SHOHL LLP


By: /s/ Tyler Powell
    Tyler Powell [pro hac vice]
    Yosina M. Lissebeck
Special Counsel to Richard A. Marshack, Trustee of
the LPG Liquidation Trust

33

**EXHIBIT 2, PAGE 43**

# EXHIBIT 1

Exhibit 1
EXHIBIT 2, PAGE 44

1   CHRISTOPHER B. GHIO (259094)
    christopher.ghio@dinsmore.com
2   CHRISTOPHER CELENTINO (131688)
    christopher.celentino@dinsmore.com
3   YOSINA M. LISSEBECK (201654)
    yosina.lissebeck@dinsmore.com
4   DINSMORE & SHOHL LLP
    655 West Broadway, Suite 800
5   San Diego, California 92101
    Tele:  619.400.0500
6   Fax:  619.400.0501
7
8   Sarah S. Mattingly (Ky. Bar 94257)
    sarah.mattingly@dinsmore.com
9   DINSMORE & SHOHL, LLP
    101 S. Fifth Street, Suite 2500
10  Louisville, Kentucky 40202
    Tele: 859-425-1096
11  Fax: 502-585-2207
12  (Admitted pro hac vice)
13  Special Counsel to Richard A. Marshack

14              **UNITED STATES BANKRUPTCY COURT**

15      **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

16  In Re                           Case No: 23-bk-10571-SC

17                                  Chapter 11

18
    The Litigation Practice Group P.C.,   **ORDER GRANTING MOTION FOR
19                                          ENTRY OF PROTECTIVE ORDER AND
                    Debtor(s),              THE PROTECTIVE ORDER**
20

21                                  Date:   May 23, 2024
22                                  Time:   1:30 p.m.
                                    Judge:  Hon. Scott C. Clarkson
23                                  Place:  Courtroom 5C (via Zoom)[1]
                                            411 West Fourth Street
24                                          Santa Ana, CA 92701
25

26

27  ──────────────────

28  [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
    publicly posted hearing calendar, which may be viewed online at:
    http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

Exhibit 1

**EXHIBIT 2, PAGE 45**

FILED & ENTERED

JUN 03 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall     DEPUTY CLERK

The Court has read and considered the Notice of Motion and Motion for Entry of Protective Order (the "Motion") filed by Richard A. Marshack, in his capacity as the Chapter 11 Trustee (the "Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C., on May 2, 2024, pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c)(1), as Dk. No. 1164 ("Motion"), and has found good cause to grant the Motion.

IT IS HEREBY ORDERED that:

1.      The Motion is granted;

2.      The below Protective Order shall apply to any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future; and

3.      Govern the discovery conducted therein.

## PROTECTIVE ORDER

### 1.      DEFINITIONS

1.1      "Confidential Information" as used in this Protective Order shall mean documents and other information (regardless of how generated, stored or maintained) that a Party or non-party reasonably believes to contain or reflect non-public financial or business information, bank records, financial records, such as social security numbers, non-public financial or personal information of a Party or non-party, account numbers, sensitive digital information and identifiers, information subject to confidentiality agreements or provisions other than this Protective Order, and other non-public research, development, or commercial information that derives value or avoids injury by virtue of not being known to the public.

1.2      This "Action" is defined and hereby means any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future.

1.3      "Designating Party" means a Party or non-party that designates Confidential Information during the Action.

1.4      "Receiving Party" means a Party that receives Confidential Information during the Action.

Exhibit 1
**EXHIBIT 2, PAGE 46**

1.5    "Party" or "Parties" means person or entity subject to this Protective Order.

**2.    SCOPE OF THIS PROTECTIVE ORDER**

2.1    Unless otherwise ordered, this Protective Order shall govern certain documents and other products of discovery obtained in the Action from the Parties there to, and from third parties. As well as certain information copied or derived therefrom, excerpts, summaries or compilations thereof, including, but not limited to, documents voluntarily exchanged as part of early settlement discussions, documents produced pursuant to initial disclosures, requests authorized by the Federal Rules of Civil Procedure made applicable herein by the Federal Rules of Bankruptcy Procedure, answers to interrogatories, deposition transcripts, responses to requests for production, responses to requests for admission, subpoenas, affidavits, declarations, expert reports, and other such material and information as may be produced during the course of the Action and designated as Confidential Information.

**3.    DESIGNATION OF CONFIDENTIAL INFORMATION**

3.1    This Protective Order shall govern the production and handling of any Confidential Information in this Action. Any Party or non-party who produces Confidential Information in this Action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Protective Order. Whenever possible, the Designating Party must designate only those portions of a document, written discovery responses, deposition, transcript, or other material that contain the Confidential Information and refrain from designating entire documents. Regardless of any designations made hereunder, the Designating Party is not otherwise restricted from use or disclosure of its Confidential Information outside of this Action or for any business purposes. In addition, any Party may move to modify or seek other relief from any of the terms of this Protective Order if it has first tried in writing and in good faith to resolve its needs or disputes with the other Parties or Party as the case may be under the terms of this Protective Order. Further, nothing in this Protective Order shall prevent a Party from redacting documents consistent with the Federal Rules of Civil Procedure and utilizing the documents as needed through-out the Action.

3.2    <u>Application to Non-Parties</u>: Before a non-party is given copies of documents or materials designated as Confidential Information or Attorneys' Eyes Only as permitted hereunder, it

3

Exhibit 1
Page 47
**EXHIBIT 2, PAGE 47**

must first sign an acknowledgment to be bound to these terms that is attached hereto as <u>Exhibit A</u>; if it fails to do so, the Parties to this Action must resolve any such dispute before making disclosure of designated information as permitted hereunder to the non-party. If a non-party wishes to make designations hereunder, it must first sign attached <u>Exhibit A.</u>

3.3    <u>Timing and Provisional Protection:</u> Designations of Confidential Information may be made at any time. To avoid potential waiver of protection hereunder, the Designating Party should designate documents or materials containing Confidential Information at the time of production or disclosure, including on the record during the taking of any deposition. Deposition testimony will be deemed provisionally protected for a period of thirty (30) days after the transcript is released to the Parties by the court reporter, although the Parties may agree at any time to different timelines of provisional protection of information as Confidential or Attorneys' Eyes Only as part of one or more specific depositions. To retain any designations beyond the provisional period, a Designating Party must designate specific pages and lines of deposition testimony before the provisional period has expired. Such designations must be made in writing so that all counsel and court reporters may append the designation to all copies of the transcripts.

3.4    <u>Manner of Designation:</u> Confidential Information may be designated hereunder in any reasonable manner or method that notifies the Receiving Party of the designation level and identifies with specificity the information to which the designation applies. If made verbally, the Designating Party must promptly confirm the designation in writing. Whenever possible, the Designating Party should stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image that contains Confidential Information.

## 4.    CHALLENGES TO DESIGNATED INFORMATION

4.1    In the event that a Receiving Party disagrees at any time with any designation(s) made by the Designating Party, the Receiving Party must first try to resolve such challenge in good faith on an informal basis with the Designating Party. The Receiving Party must provide written notice of the challenge and the grounds therefor to the Designating Party, who must respond in writing to the challenge within fifteen (15) days. At all times, the Designating Party carries the burden of establishing the propriety of the designation and protection level. Unless and until the challenge is

Exhibit 1
Page 48

**EXHIBIT 2, PAGE 48**

1  resolved by the Parties or ruled upon by the Court, the designated information shall remain protected

2  under this Protective Order. The failure of any Receiving Party to challenge a designation does not

3  constitute a concession that the designation is proper or an admission that the designated information

4  is otherwise competent, relevant, or material.

5     **5.    LIMITED ACCESS/USE OF PROTECTED INFORMATION**

6     5.1    <u>Restricted Use:</u> Information that is produced or exchanged in the course of the Action

7  and designated under this Protective Order may be used for preparation for trial and preparation for

8  any appeal of any and all matters in the Action, as well as related settlement negotiations, and for no

9  other purpose, without the written consent of the Designating Party. No Confidential Information may

10  be disclosed to any person except in accordance with the terms of this Protective Order, unless the

11  parties are co-counsel or have entered into joint defense agreements. All persons in possession of

12  Confidential Information agree to exercise reasonable care with regard to the custody, use, or storage

13  of such information to ensure that its confidentiality is maintained. This obligation includes, but is

14  not limited to, the Receiving Party providing to the Designating Party prompt notice of the receipt of

15  any subpoena that seeks production or disclosure of any designated information and consulting with

16  the Designating Party before responding to the subpoena. Any use or disclosure of Confidential or

17  Attorneys' Eyes Only information in violation of the terms of this Protective Order may subject the

18  disclosing person or party to sanctions.

19     5.2    <u>Access to "Confidential" Information:</u> The Party(ies) and all persons subject to this

20  Protective Order agree that information designated as "CONFIDENTIAL" may only be accessed or

21  reviewed by the following:

22     a)    The Court, its personnel, and court reporters;

23     b)    Counsel of record, or co-counsel for any Party, or other party that has entered into a

24  joint defense agreement in the Action and their employees who assist counsel of record, or co-counsel

25  in the Action and are informed of the duties and obligations imposed hereunder;

26     c)    The Parties, including their clients, agents and employees who are assisting or have

27  reason to know of the Action;

28  / / /

Exhibit 1
**EXHIBIT 2, PAGE 49**

1       d)     Experts or consultants employed by the Parties or their counsel, or co-counsel, for

2 purposes of an Action, so long as each such expert or consultant has signed attached <u>Exhibit A;</u> and

3       e)     Other witnesses or persons with the Designating Party's consent or by court order.

4      5.3    <u>Access to "Attorneys' Eyes Only" Designations:</u> The Parties and all persons subject to

5 this Protective Order agree that information designated as "ATTORNEYS' EYES ONLY" may only

6 be accessed or reviewed by the following:

7       a)     The Court, its personnel, and court reporters;

8       b)     Counsel of record, or co-counsel for any Party, or other party that has entered into a

9 joint defense agreement in the Action and their employees who assist counsel of record in the Action

10 and are informed of the duties hereunder;

11      c)     In-house counsel for any Party in the Action and Richard A. Marshack, as Chapter 11

12 Trustee of The Litigation Practice Group P.C. who is informed of the duties and obligations imposed

13 hereunder;

14      d)     Experts or consultants employed by the Parties or their counsel, or co-counsel for

15 purposes of the Action,  and so long as each such expert or consultant has signed attached <u>Exhibit A;</u>

16 and

17      e)     Other witnesses or persons to whom the Designating Party agrees in advance of

18 disclosure or by court order.

19      5.4    <u>Non-Waiver Effect of Designations:</u> Neither the taking of, nor the failure to take, any

20 action to enforce the provisions of this Protective Order, nor the failure to object to any designation,

21 will constitute a waiver of any Party(ies)'s claim or defense in the Action or any other action or

22 proceeding, including, but not limited to, a claim or defense that any designated information is or is

23 not Confidential, is or is not entitled to particular protection, or embodies or does not embody

24 information protectable by law.

25      5.5    <u>In-Court Use of Designated Information:</u> If information designated under this

26 Protective Order will or may be offered in evidence at a hearing or trial related to any matter in the

27 Action, then the offering party must give advance notice to the party or non-party that designated

28 prior to offering the information so that any use or disclosure may be addressed in accordance with

Exhibit 1
Page 50

**EXHIBIT 2, PAGE 50**

the Court's case-management or other pre-trial order, or by a motion *in limine.* Nothing in this Protective Order shall be construed as a waiver by a Party of any objections that may be raised as to the admissibility at trial of any evidentiary materials.

## 6. CLAW-BACK REQUESTS

6.1 <u>Failure to Make Designation:</u> If, at any time, a Party or non-party discovers that it produced or disclosed Confidential Information without designation, it may promptly notify the Receiving Party and identify with particularity the Confidential Information to be designated and the level of designation (the claw-back notification). The Receiving Party may then request substitute production of the newly-designated information. Within thirty (30) days of receiving the claw-back notification, the Receiving Party must: (1) certify to the Designating Party it has appropriately marked or, if substitute production has been requested, destroyed all unmarked copies that it received, made, and/or distributed; and (2) if it was practicably unable to mark or destroy any information because disclosures occurred while the Receiving Party was under no duty of confidentiality under the terms of this Protective Order regarding that information, the Receiving Party must reasonably provide as much information as practicable to aid the Designating Party in protecting the information, consistently with the Receiving Party's attorney-client, work-product, and/or trial-preparation privileges.

6.2 <u>Inadvertent Production of Privileged Information:</u> If, at any time, a Party discovers that it produced information that it reasonably believes is subject to protection under the attorney/client, work-product, or trial-preparation privileges, then it must promptly notify each Receiving Party of the claim for protection, the basis for it, amend its privilege log accordingly, and comply with Fed. R. Civ. P. 26(b)(5). Whenever possible, the producing party must produce substitute information that redacts the information subject to the claimed protection. The Receiving Party must thereupon comply with Fed. R. Civ. P. 26(b)(5)(B) as to the information subject to the claimed protection.

/ / /

/ / /

/ / /

Exhibit 1

**EXHIBIT 2, PAGE 51**

## 7. DURATION/CONTINUED RESTRICTIONS

7.1    <u>Handling of Designated Information Upon Conclusion of the Main Bankruptcy Case:</u> Upon conclusion of the Main Bankruptcy Case, by way of dismissal or closing of the case, the Designating Party(ies) is/are responsible for ensuring that any Party or person to whom the Designating Party shared or disclosed designated information in any of the matters under the Action returns or destroys all of its copies, regardless of the medium in which it was stored. No witness or Party may retain designated information that it received from any other Party or non-party under this Protective Order; only counsel of record, or co-counsel, are the authorized agents who may retain one copy for their respective legal files, and who must also describe to the Designating Party the extra steps taken to protect its legal file containing paper and/or electronic copies of the designated information so that it is not accessed, used, or disclosed inconsistently with the obligations under this Protective Order. This provision does not apply to the Court or Court staff. Moreover, this provision does not apply to Trustee, who may retain and use – consistent with this Order – Confidential Information received in any Action during the entirety of the Bankruptcy.

7.2    <u>Continued Restrictions Under this Protective Order:</u> The restrictions on disclosure and use of Confidential Information shall survive the conclusion of the Bankruptcy case and any matter in the Action.

## 8. PRIVILEGED OR PROTECTED INFORMATION

8.1    Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, the work-product protection, or any other legally cognizable privilege (a "Privilege or Protection").  If information subject to a claim of Privilege or Protection is inadvertently produced, pursuant to Federal Rule of Evidence 502(d) such production shall not constitute a waiver of, or estoppel as to, any claim of Privilege or Protection for such information or any other information that may be protected from disclosure by a Privilege or Protection in any proceeding.

8.2    If a Party receives a document that appears to be subject to a Privilege or Protection, then it shall refrain from examining the document any more than is essential to ascertain if it is privileged or protected and shall promptly notify the producing Party in writing that the receiving

Exhibit 1

**EXHIBIT 2, PAGE 52**

Page 52

1 Party possesses material that appears to be subject to a Privilege or Protection. The producing

2 Party shall have seven (7) days after receiving such notice to assert a Privilege or Protection over the

3 identified material. If the producing Party does not assert a claim of Privilege or Protection within the

4 seven (7)-day period, the material in question shall be deemed not privileged or protected.

5       8.3    If a producing Party has produced a document subject to a claim of Privilege or

6 Protection, upon written request by the producing Party, the document for which a claim of Privilege

7 or Protection is made shall be sequestered or destroyed to the extent reasonably practicable, and the

8 receiving Party shall not use the document for any purpose other than in connection with analyzing

9 or disputing a claim of Privilege or Protection or in connection with a motion to compel the production

10 of the document.

11       8.4    The receiving Party sequestering or destroying such material may then move the Court

12 for an order compelling production of the material. The applicable producing Party bears the burden

13 of establishing the applicable Privilege or Protection of any clawed-back document or information as

14 and to the same extent that it would have borne such burden had it not produced the document or

15 information.  Nothing in this Protective Order shall limit the Court's right or any receiving Party's

16 right to request an in camera review of any information subject to a claim of Privilege or Protection.

17

18                ###

19

20

21

22

23

24   Date: June 3, 2024

Scott C. Clarkson
United States Bankruptcy Judge

25

26

27

28

Exhibit 1

**EXHIBIT 2, PAGE 53**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "A"

1

Exhibit 1
Page 54
EXHIBIT 2, PAGE 54

1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Yosina M. Lissebeck (State Bar No. 201654)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone:  619.400.0500
   Facsimile:  619.400.0501
5  christopher.ghio@dinsmore.com
   christopher.celentino@dinsmore.com
6  yosina.lissebeck@dinsmore.com

7  Sarah S. Mattingly (Ky. Bar 94257)
   DINSMORE & SHOHL, LLP
8  101 S. Fifth Street, Suite 2500
   Louisville, KY 40202
9  Telephone: 859-425-1096
   Facsimile: 502-585-2207
10 Sarah.mattingly@dinsmore.com
   (Admitted pro hac vice)
11
   Special Counsel to Richard A. Marshack,
12 Chapter 11 Trustee

13

14                **UNITED STATES BANKRUPTCY COURT**

15                **CENTRAL DISTRICT OF CALIFORNIA**

16

17 In Re                          | Case No. 8:23-BK-10571-SC
18                                |
                                  | Chapter 11
19                                |
   The Litigation Practice Group P.C., | **EXHIBIT A TO STIPULATED**
20                                | **ORDER**
            Debtor(s),            |
21                                | Date:   May 23, 2024
22                                | Time:   1:30 p.m.
                                  | Judge:  Hon. Scott C. Clarkson
23                                | Place:  Courtroom 5C[1] - Via Zoom
24                                |          411 W. Fourth Street
                                  |          Santa Ana, CA  92701
25
26
27 ─────────────────
[1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
28  publicly posted hearing calendar, which may be viewed online at:
    http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

                                    1

Exhibit 1
Page 55
**EXHIBIT 2, PAGE 55**

This is to certify that:

(a)    I am being given access to Confidential Information pursuant to the Stipulated Protective Order that was entered into the main bankruptcy case for Litigation Practice Group, but which is binding and controlling as set forth by the Court's Order on any and all contested matters and  any and all litigation commenced by Trustee;

(b)    I have read the Stipulated Protective Order; and

(c)    I agree to be bound by the terms and conditions thereof, including, without limitation, to the obligations regarding the use, non-disclosure and return of such Confidential Information. I further agree that in addition to being contractually bound by the Stipulated Protective Order, I am subject to the jurisdiction of the above reference Court for any violation thereof.

Date: _____

_____
Signature

_____
Printed Name

2

Exhibit 1
EXHIBIT 2, PAGE 56
Page 56

# EXHIBIT 2

Exhibit 2
EXHIBIT 2, PAGE 57

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| **Oxford Knox, LLC** | UnionBank | The Litigation Practice Group PC | X4858 | 12/28/2021 | | $30,179.55 | N |
| **Oxford Knox, LLC** | Chase | The Litigation Practice Group PC | X3158 | 7/29/2022 | | $10,000.00 | N |
| | | | | | **Total** | **$40,179.55** | |
| | | | | | | | |
| **Buffalo 21 Partners Inc.** | UnionBank | The Litigation Practice Group PC; IOLTA | X4874 | 1/13/2022 | 122 | $54,753.19 | N |
| | | | | | **Total** | **$54,753.19** | |
| | | | | | | | |
| **Jason Dovalina** | Chase | Vulcan Consulting Group LLC | X3588 | 4/1/2021 | 1032 | $11,250.00 | N |
| **Jason Dovalina** | Bank of the West | The Litigation Practice Group PC | X3441 | 5/4/2021 | | $55,000.00 | N |
| **Jason Dovalina** | Chase | Vulcan Consulting Group LLC | X3588 | 5/13/2021 | | $20,000.00 | N |
| **Jason Dovalina** | Chase | Vulcan Consulting Group LLC | X5909 | 8/18/2021 | | $25,000.00 | N |
| **Jason Dovalina** | American Express | LPG PC; Syed Gilani | X1001 | 12/19/2021 | | $300.00 | N |
| **Jason Dovalina** | American Express | LPG PC; Syed Gilani | X1001 | 12/19/2022 | | $350.00 | N |
| | | | | | **Total** | **$111,900.00** | |
| | | | | | | | |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 3/15/2021 | | $45,000.00 | N |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 4/1/2021 | | $45,000.00 | N |
| **Sye Gilani** | Bank of the West | The Litigation Practice Group PC | X3441 | 4/19/2021 | 1021 | $60,000.00 | N |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 5/5/2021 | 4490 | $30,000.00 | N |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 5/12/2021 | 4492 | $50,000.00 | N |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 5/13/2021 | | $90,000.00 | N |
| **Sye Gilani** | Bank of the West | The Litigation Practice Group PC | X3441 | 6/2/2021 | 1124 | $16,000.00 | N |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 6/2/2021 | 1012 | $108,000.00 | N |
| **Sye Gilani** | UnionBank | The Litigation Practice Group PC | X4858 | 2/11/2022 | | $5.02 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 2/18/2022 | | $7.16 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 2/25/2022 | | $13.82 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 3/4/2022 | | $7.52 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3158 | 3/4/2022 | 10989 | $8,000.00 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 3/18/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 3/24/2022 | | $12.18 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 4/18/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 4/21/2022 | | $5.02 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 4/28/2022 | | $14.06 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 5/19/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 6/16/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 6/30/2022 | | $14.06 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 7/8/2022 | | $7.52 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 7/14/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 7/29/2022 | | $7.16 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 8/19/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 8/26/2022 | | $7.16 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 9/9/2022 | | $7.50 | N |
| | | | | | **Total** | **$452,130.92** | |
| | | | | | | | |
| **Samson Ly** | Chase | The Litigation Practice Group PC | X3158 | 11/28/2022 | 1272 | $20,000.00 | Y |
| **Samson Ly** | Chase | The Litigation Practice Group PC | X3158 | 12/21/2022 | 1277 | $20,000.00 | Y |
| **Samson Ly** | Chase | The Litigation Practice Group PC | X3158 | 12/21/2022 | 1278 | $20,000.00 | Y |
| | | | | | **Total** | **$60,000.00** | |
| | | | | | | | |
| **Bew Solar Management LLC** | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/5/2021 | | $6,286.87 | N |
| **Bew Solar Management LLC** | Chase | The Litigation Practice Group PC | X3158 | 1/19/2022 | | $7,463.63 | N |
| **Bew Solar Management LLC** | Chase | The Litigation Practice Group PC | X3158 | 2/28/2022 | 11031 | $2,964.29 | N |
| | | | | | **Total** | **$16,714.79** | |

Exhibit 2

**EXHIBIT 2, PAGE 58**   Page 58

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| **Lexicon Consulting LLC** | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 12/2/2021 | 320 | $5,074.94 | N |
| **Lexicon Consulting LLC** | UnionBank | The Litigation Practice Group PC | X4858 | 1/10/2022 | | $180,000.00 | N |
| **Lexicon Consulting LLC** | UnionBank | The Litigation Practice Group PC | X4858 | 2/4/2022 | | $215.90 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 2/18/2022 | | $581.18 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 2/25/2022 | | $397.08 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 3/4/2022 | | $832.46 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 3/10/2022 | | $2,078.67 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 3/18/2022 | | $941.92 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 3/24/2022 | | $907.91 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 4/1/2022 | | $1,582.53 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 4/7/2022 | | $2,415.60 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 4/18/2022 | | $2,412.47 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 4/21/2022 | | $962.49 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 4/28/2022 | | $411.84 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 5/5/2022 | | $321.33 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 5/13/2022 | | $589.32 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 5/19/2022 | | $801.91 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 5/27/2022 | | $142.18 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 6/3/2022 | | $472.08 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 6/10/2022 | | $423.92 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 6/16/2022 | | $799.39 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 6/30/2022 | | $475.49 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 7/8/2022 | | $246.71 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 7/14/2022 | | $430.75 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 7/21/2022 | | $218.09 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 8/5/2022 | | $341.27 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 8/11/2022 | | $103.62 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 8/19/2022 | | $495.15 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 9/2/2022 | | $50.00 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 9/9/2022 | | $280.83 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 9/16/2022 | | $590.95 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 9/23/2022 | | $218.09 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 10/6/2022 | | $193.57 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 10/14/2022 | | $428.53 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 10/21/2022 | | $347.61 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 11/10/2022 | | $244.89 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 11/18/2022 | | $184.45 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 11/25/2022 | | $91.28 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 12/9/2022 | | $155.12 | N |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 12/19/2022 | | $283.96 | Y |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 12/27/2022 | | $81.33 | Y |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 12/30/2022 | | $9.95 | Y |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 1/6/2023 | | $155.12 | Y |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 1/24/2023 | | $283.96 | Y |
| **Lexicon Consulting LLC** | Chase | The Litigation Practice Group PC | X3133 | 2/7/2023 | | $81.33 | Y |
| **Lexicon Consulting LLC** | Bank of America | Litigation Practice Group PC | X6538 | 2/9/2023 | | $136.28 | Y |
| | | | | | **Total** | **$208,493.45** | |

Exhibit 2
**EXHIBIT 2, PAGE 59**
Page 59

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| United Partnerships LLC | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/5/2021 | | $15,149.08 | N |
| United Partnerships LLC | UnionBank | The Litigation Practice Group PC; IOLTA | X94874 | 1/14/2022 | 129 | $17,912.71 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 3/8/2022 | | $7,142.86 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 3/23/2022 | | $20,000.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 4/8/2022 | | $10,000.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 7/22/2022 | | $60,000.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/12/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/16/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/19/2022 | | $41,158.45 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/23/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/24/2022 | | $31,000.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/25/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 8/31/2022 | | $9,200.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/6/2022 | | $32,971.70 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/8/2022 | | $27,656.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/8/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/9/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/9/2022 | | $14,180.00 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 9/9/2022 | | $9,200.00 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 9/13/2022 | | $9,600.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $26,775.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $14,160.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $4,263.89 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/22/2022 | | $20,000.00 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 9/22/2022 | | $5,488.89 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 9/26/2022 | | $5,363.11 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/5/2022 | | $26,775.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/5/2022 | | $14,661.89 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/7/2022 | | $5,363.11 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 10/13/2022 | | $46,859.95 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/14/2022 | | $25,875.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/14/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/14/2022 | | $20,000.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/20/2022 | | $46,859.95 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/20/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 10/20/2022 | | $9,650.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 11/3/2022 | | $20,000.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 11/3/2022 | | $35,500.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 11/9/2022 | | $33,870.15 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 11/10/2022 | | $25,500.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 11/14/2022 | | $26,700.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 11/14/2022 | | $21,600.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 12/9/2022 | | $9,800.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 12/14/2022 | | $33,870.15 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 12/14/2022 | | $17,375.00 | N |

Exhibit 2

EXHIBIT 2, PAGE 60

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 12/14/2022 | | $13,275.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 12/20/2022 | | $35,500.00 | Y |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 12/20/2022 | | $22,075.00 | Y |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 12/23/2022 | | $11,760.00 | Y |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 1/9/2023 | | $12,510.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/10/2023 | | $17,375.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/10/2023 | | $3,406.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/12/2023 | | $31,500.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/12/2023 | | $20,000.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/12/2023 | | $20,000.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/12/2023 | | $17,375.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 2/10/2023 | | $100,000.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6486 | 2/15/2023 | | $50,000.00 | Y |
| United Partnerships LLC | UnionBank | The Litigation Practice Group PC | X4858 | 2/27/2023 | | $40,000.00 | Y |
| United Partnerships LLC | UnionBank | The Litigation Practice Group PC | X4858 | 2/28/2023 | | $11,000.00 | Y |
| United Partnerships LLC | Chase | BAT Inc. | X0830 | 3/16/2023 | | $21,000.00 | Y |
| United Partnerships LLC | UnionBank | The Litigation Practice Group PC | X4858 | 3/17/2023 | | $19,000.00 | Y |
| | | | | | Total | $1,467,532.89 | |

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| Ventura Consulting, LLC | UnionBank | The Litigation Practice Group PC | X4858 | 11/23/2021 | | $560,000.00 | N |
| Ventura Consulting, LLC | Chase | The Litigation Practice Group PC | X3158 | 3/8/2022 | | $16,678.57 | N |
| | | | | | | $576,678.57 | |

Exhibit 2
EXHIBIT 2, PAGE 61
Page 61

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/1/2020 | | $3,000.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/10/2020 | | $3,000.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/15/2020 | | $3,750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/30/2020 | | $3,750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/14/2020 | | $3,750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/30/2020 | | $3,750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/12/2020 | | $3,750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/23/2020 | | $10,000.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/30/2020 | | $3,750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/1/2020 | | $750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/7/2020 | | $3,200.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/14/2020 | | $3,750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/14/2020 | | $750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/14/2020 | | $4,500.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/30/2020 | | $4,500.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 1/5/2021 | | $1,000.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 1/6/2021 | | $14,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/15/2021 | | $5,250.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/25/2021 | | $3,275.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/29/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/29/2021 | | $2,250.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 2/2/2021 | | $10,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 2/10/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/1/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/5/2021 | | $6,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/10/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/22/2021 | | $5,000.00 | N |
| Matthew Church | Bank of the West | The Litigation Practice Group PC | X3441 | 3/29/2021 | 99007 | $1,023.89 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/29/2021 | | $5,500.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/31/2021 | | $3,750.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/2/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/5/2021 | | $2,500.00 | N |
| Matthew Church | Chase | Vulcan Consulting Group LLC | X3588 | 4/15/2021 | | $1,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/21/2021 | | $33,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 5/14/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/4/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/17/2021 | | $12,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/17/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 7/7/2021 | | $5,000.00 | N |
| | | | | | Total | $206,498.89 | |

Exhibit 2

**EXHIBIT 2, PAGE 62**
Page 62

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 8/18/2020 | | $3,750.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/1/2020 | | $8,250.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/10/2020 | | $3,000.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/15/2020 | | $11,500.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/30/2020 | | $11,500.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/14/2020 | | $11,500.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/30/2020 | | $24,000.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/12/2020 | | $24,000.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/25/2020 | | $5,000.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/30/2020 | | $24,000.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/14/2020 | | $24,000.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/30/2020 | | $24,000.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 1/4/2021 | | $4,500.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/22/2021 | | $34,000.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/29/2021 | | $34,450.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 2/4/2021 | | $180,000.00 | N |
| Frank Brown | Bank of the West | The Litigation Practice Group PC | X3441 | 3/24/2021 | | $47,500.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/6/2021 | | $47,500.00 | N |
| Frank Brown | Bank of the West | The Litigation Practice Group PC | X3441 | 4/16/2021 | | $22,500.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/16/2021 | | $13,500.00 | N |
| Frank Brown | Bank of the West | The Litigation Practice Group PC | X3441 | 5/7/2021 | | $13,500.00 | N |
| Frank Brown | Chase | Vulcan Consulting Group LLC | X3588 | 5/11/2021 | | $22,500.00 | N |
| Frank Brown | Bank of the West | The Litigation Practice Group PC | X3441 | 5/14/2021 | | $36,000.00 | N |
| Frank Brown | Bank of the West | The Litigation Practice Group PC | X3441 | 5/25/2021 | 1039 | $625.00 | N |
| Frank Brown | Bank of the West | The Litigation Practice Group PC | X3441 | 5/26/2021 | | $2,108.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/4/2021 | | $36,000.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 7/2/2021 | | $2,100.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 8/4/2021 | | $50,000.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 8/24/2021 | | $22,500.00 | N |
| Frank Brown | Chase | Vulcan Consulting Group LLC | X3588 | 9/14/2021 | | $2,108.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/20/2022 | | $10,000.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 11/15/2022 | | $150,000.00 | N |
| | | | | | Total | $905,891.00 | |

Exhibit 2
**EXHIBIT 2, PAGE 63**
Page 5

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| **Spectrum Payment Solution** | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/5/2021 | | $64,383.60 | N |
| **Spectrum Payment Solution** | UnionBank | The Litigation Practice Group PC; IOLTA | X4874 | 1/13/2022 | 132 | $50,752.68 | N |
| **Spectrum Payment Solution** | Chase | The Litigation Practice Group PC | X3158 | 3/15/2022 | 1166 | $30,357.14 | N |
| | | | | | Total | $145,493.42 | |
| | | | | | | | |
| **Home Energy Solutions Inc** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/15/2020 | | $15,000.00 | N |
| **Home Energy Solutions Inc** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 5/17/2021 | | $30,000.00 | N |
| | | | | | Total | $45,000.00 | |
| **JNR Services, Inc.** | Chase | Vulcan Consulting Group LLC | X3588 | 4/22/2021 | | $37,000.00 | N |
| **JNR Services, Inc.** | Bank of the West | The Litigation Practice Group PC | X3441 | 5/17/2021 | 1003581150 | $31,500.00 | N |
| **JNR Services, Inc.** | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/5/2021 | | $74,991.76 | N |
| **JNR Services, Inc.** | UnionBank | The Litigation Practice Group PC | X4858 | 11/23/2021 | | $250,000.00 | N |
| **JNR Services, Inc.** | UnionBank | The Litigation Practice Group PC; IOLTA | X4874 | 1/7/2022 | 124 | $40,919.74 | N |
| **JNR Services, Inc.** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/25/2022 | | $21,886.00 | N |
| **JNR Services, Inc.** | Chase | The Litigation Practice Group PC | X3158 | 2/10/2022 | | $20,000.00 | N |
| **JNR Services, Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/9/2022 | 1158 | $16,678.57 | N |
| **JNR Services, Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/22/2022 | | $25,000.00 | N |
| **JNR Services, Inc.** | Chase | The Litigation Practice Group PC | X3158 | 7/8/2022 | | $35,000.00 | N |
| **JNR Services, Inc.** | Chase | LPG VC; Alex Tarkoff | X6652 | 10/25/2022 | | $42,500.00 | N |
| **JNR Services, Inc.** | Chase | LPG VC; Alex Tarkoff | X6652 | 10/25/2022 | | $32,500.00 | N |
| **JNR Services, Inc.** | Chase | The Litigation Practice Group PC | X3158 | 11/15/2022 | | $23,000.00 | N |
| | | | | | Total | $650,976.07 | |
| | | | | | | | |
| **Cat Exteriors Inc** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 8/14/2020 | | $15,000.00 | N |
| **Cat Exteriors Inc** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/1/2020 | | $15,000.00 | N |
| **Cat Exteriors Inc** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/2/2020 | | $15,000.00 | N |
| | | | | | Total | $45,000.00 | |
| **Lifestar Products Inc** | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/5/2021 | | $55,740.48 | N |
| **Lifestar Products Inc** | UnionBank | The Litigation Practice Group PC; IOLTA | X4874 | 1/10/2022 | 126 | $53,499.17 | N |
| | | | | | Total | $109,239.65 | |
| | | | | | | | |
| **AZLS Enterprises Inc.** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 7/6/2021 | | $130,226.82 | N |
| **AZLS Enterprises Inc.** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 8/6/2021 | | $22,500.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 9/21/2021 | | $65,000.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 9/22/2021 | | $90,400.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 10/1/2021 | 10288 | $23,076.92 | N |
| **AZLS Enterprises Inc.** | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/8/2021 | | $218,400.00 | N |
| **AZLS Enterprises Inc.** | UnionBank | The Litigation Practice Group PC | X4858 | 11/23/2021 | | $250,000.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 1/3/2022 | 1121 | $100,000.00 | N |
| **AZLS Enterprises Inc.** | UnionBank | The Litigation Practice Group PC; IOLTA | X4874 | 1/7/2022 | 121 | $67,185.30 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 2/10/2022 | 1136 | $100,000.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/4/2022 | 1152 | $23,076.92 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/9/2022 | 1153 | $25,000.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/15/2022 | 1161 | $25,000.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/22/2022 | 1172 | $23,076.92 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/22/2022 | 1173 | $21,339.50 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 4/8/2022 | 1203 | $21,339.50 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 4/15/2022 | 1208 | $23,076.92 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 5/10/2022 | 1230 | $21,339.50 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 6/6/2022 | 11407 | $23,000.00 | N |
| | | | | | Total | $1,273,038.30 | |

Exhibit 2

**EXHIBIT 2, PAGE 64**

Page 64

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/1/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/15/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/30/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/14/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/29/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/12/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/30/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/14/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/30/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 1/6/2021 | | $20,000.00 | N |
| **Investlinc Wealth Services** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/19/2021 | | $6,000.00 | N |
| **Investlinc Wealth Services** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 5/7/2021 | | $6,000.00 | N |
| **Investlinc Wealth Services** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 5/14/2021 | | $1,500.00 | N |
| **Investlinc Wealth Services** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/4/2021 | | $4,500.00 | N |
| **Investlinc Wealth Services** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/17/2021 | | $4,500.00 | N |
| **Investlinc Wealth Services** | Optimum Bank | COAST PROCESSING LLC DBA LITIGATION PRACTICE GROUP | X6712 | 8/26/2021 | | $34,500.00 | N |
| | | | | | Total | $104,000.00 | |

Exhibit 2
**EXHIBIT 2, PAGE 65**    Page 65

| Bank Name | Account Name | Account Number | Date | Debit/Charge | Payee | 90 Day Transfer |
|-----------|--------------|----------------|------|--------------|-------|-----------------|
| Bank of the West | The Litigation Practice Group PC | X441 | 6/3/2021 | $26,000.00 | **Rachel Dovalina** | N |
| | | | Total | **$26,000.00** | | |

| Bank Name | Account Name | Account Number | Date | Debit/Charge | Payee | 90 Day Transfers |
|-----------|--------------|----------------|------|--------------|-------|------------------|
| Wells Fargo | Vulcan Consulting Group LLC | X3193 | 1/8/2021 | $4,667.38 | **Validation LLC** | N |
| Bank of the West | The Litigation Practice Group PC | X441 | 3/31/2021 | $4,636.69 | **Validation LLC** | N |
| Bank of the West | The Litigation Practice Group PC | X441 | 5/26/2021 | $27,325.48 | **Validation LLC** | N |
| Bank of the West | The Litigation Practice Group PC | X441 | 6/3/2021 | $32,089.32 | **Validation LLC** | N |
| Bank of the West | The Litigation Practice Group PC | X441 | 6/8/2021 | $21,772.78 | **Validation LLC** | N |
| Chase | Vulcan Consulting Group LLC | X3588 | 6/25/2021 | $41,549.28 | **Validation LLC** | N |
| Optimum Bank | World Global Fund LLC dba LPG | X6134 | 7/28/2021 | $19,319.93 | **Validation LLC** | N |
| Optimum Bank | World Global Fund LLC dba LPG | X6134 | 8/6/2021 | $28,202.28 | **Validation LLC** | N |
| Optimum Bank | World Global Fund LLC dba LPG | X6134 | 8/13/2021 | $20,785.38 | **Validation LLC** | N |
| Optimum Bank | World Global Fund LLC dba LPG | X6134 | 8/23/2021 | $30,875.12 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 8/25/2021 | $499.26 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 9/1/2021 | $3,183.27 | **Validation LLC** | N |
| Optimum Bank | World Global Fund LLC dba LPG | X6134 | 9/3/2021 | $29,569.03 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 9/9/2021 | $15,349.10 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 9/16/2021 | $32,340.55 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 9/22/2021 | $15,895.79 | **Validation LLC** | N |
| Optimum Bank | Coast Processing LLC dba LPG | X6738 | 10/5/2021 | $26,123.19 | **Validation LLC** | N |
| Optimum Bank | Coast Processing LLC dba LPG | X6738 | 10/7/2021 | $17,162.48 | **Validation LLC** | N |
| Optimum Bank | Coast Processing LLC dba LPG | X6738 | 10/14/2021 | $43,308.01 | **Validation LLC** | N |
| Optimum Bank | Coast Processing LLC dba LPG | X6738 | 10/26/2021 | $21,032.81 | **Validation LLC** | N |
| Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/12/2021 | $27,637.56 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 11/24/2021 | $202,530.00 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3158 | 12/15/2021 | $242.82 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 1/13/2022 | $1,333.61 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 1/21/2022 | $2,589.44 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 1/28/2022 | $8,796.43 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 3/10/2022 | $8,860.22 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 3/18/2022 | $31,972.14 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 3/25/2022 | $29,490.69 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 4/1/2022 | $26,981.50 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 4/7/2022 | $29,823.54 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 4/21/2022 | $26,990.78 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 5/19/2022 | $191,472.56 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 6/3/2022 | $81,008.18 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3158 | 10/18/2022 | $8,000.00 | **Validation LLC** | N |
| | | | Total | **$1,113,416.60** | | |

Exhibit 2
**EXHIBIT 2, PAGE 66**
Page 66

# EXHIBIT 3

Exhibit 3
EXHIBIT 2, PAGE 67

| Bank Name | Account Name | Account Number | Transaction Date | Debit/Charge | Payee | Post-Petition Transfer |
|---|---|---|---|---|---|---|
| Bank of America | Prime Logix LLC | X9201 | 4/6/2023 | $25,000.00 | United Partnerships LLC | Y |
| Bank of America | Prime Logix LLC | X9201 | 4/12/2023 | $20,000.00 | United Partnerships LLC | Y |
| Bank of America | Prime Logix LLC | X9201 | 5/1/2023 | $25,000.00 | United Partnerships LLC | Y |
| Bank of America | Prime Logix LLC | X9201 | 5/12/2023 | $35,000.00 | United Partnerships LLC | Y |
| | | | | | | |
| | | | **Total** | **$105,000.00** | | |

Exhibit 3

**EXHIBIT 2, PAGE 68**

# EXHIBIT 4

Exhibit 4
Page 69
EXHIBIT 2, PAGE 69

## DEBT REPAYMENT AGREEMENT

This DEBT REPAYMENT AGREEMENT (this "*Agreement*") is executed as of April 15, 2022 (the "*Effective Date*"), by and between THE LITIGATION PRACTICE GROUP PC, a California law corporation (the "*Company*"), and OXFORD KNOX, LLC, a Delaware limited liability company ("*Creditor*"). The Company and the Creditor may be collectively referred to as the "*Parties*," and individually as a "*Party*."

## RECITALS

WHEREAS, the Company is provides legal services to clients in connection with debt resolution of the clients' enrolled liabilities (the "*Business*");

WHEREAS, the Creditor has in the past provided, directly or indirectly through its members, contractors, affiliates and/or predecessors-in-interest, funding for the Company's operations, including funding for the recruitment, training and support related to marketing affiliates;

WHEREAS, despite good faith efforts, the Parties have been unable to establish the precise amount of the funding previously provided by the Creditor to the Company, and by way of compromise have agreed that Company is indebted to the Creditor in the amount of $22,000,000 (the "*Indebtedness*"); and

WHEREAS, the Company and the Creditor have further agreed that the Indebtedness shall be satisfied and paid in full by (i) monthly payments set forth on Schedule 1 through October 2027; plus (ii) a balloon payment in the amount of $10,000,000, payable solely in the event of a Sale of Business (as defined below) with respect to the Company.

NOW, THEREFORE, in consideration of the mutual promises, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    Recitals. The statements contained in the recitals set forth above are true and correct and by this reference are made a part of this Agreement.

2.    Definitions. In addition to the terms defined elsewhere in this Agreement, for all purposes of this Agreement, the following terms shall have the meanings indicated in this Section 2:

"*Net Proceeds from Sale of Business*" means the proceeds from a Sale of Business, as applicable, as determined after reduction for the following: (a) payment of all expenses related thereto, including any applicable commissions and other fees paid in connection therewith; and (ii) in the case of a Sale of Business, payments in satisfaction of any and all present and future indebtedness for borrowed money (other than the Indebtedness), obligations or liabilities of the Company.

"*Sale of Business*" means a sale, transfer, assignment, or other disposition by the Company or the Company's shareholders of all or substantially all of the Business.

3.    Debt Repayment. As payment in full of the Indebtedness, the Company agrees to make the following payments to the Creditor:

a.    Monthly Payments. The Company shall repay $12,000,000 of the Indebtedness in monthly installments in accordance with Schedule 1 through October 2027 or until a Sale of Business has occurred with respect to the Company, whichever comes first. Each such repayment installment shall be due and

Exhibit 4
**EXHIBIT 2, PAGE 70**

payable on or before the 15th business day of each month (or such other time as may be mutually agreed upon by the Parties), with the first payment having been made on November 4, 2021. The Indebtedness repayment schedule may be revised from time to time by mutual agreement of the Parties by executing and amendment to Schedule 1.

b.        Prepayments. The Company shall make monthly prepayments of the Indebtedness in the amount of Excess Cash Flow, as calculated by the Company in good faith consistent with past practice. Such prepayments shall be consistent with the Parties' agreement that the Company shall use commercially best efforts to repay the Indebtedness in its entirety by December 31, 2024.

c.        Balloon Payment. At the time of a Sale of Business, the Company shall make a balloon payment to the Creditor, in full satisfaction of the Indebtedness, in the amount of (i) $10,000,000, *plus* (b) if applicable, the principal outstanding amount at such time of the monthly installment obligations payable pursuant to Section 3(a), above together with the balance of any unpaid interest and other amounts payable thereunder (the "***Balloon Payment***"). The Balloon Payment shall be paid to the Creditor through the escrow or similar agreement, or arrangement established for such sale, provided, however, that the amount payable to the Creditor in the case of a Sale of Business pursuant to this Section 3(c) shall not exceed the Net Proceeds from Sale of Business.

4.        Representations and Warranties.

a.        The Company represents and warrants to the Creditor that (i) the Company is a California legal corporation duly organized, validly existing, and in good standing under the laws of the state of California, (ii) the Company has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, (iii) the execution and delivery of this Agreement and the performance of the terms hereof by the Company have been duly authorized by all necessary action on the part of the Company, (iv) the execution and delivery of this Agreement and the consummation of the transactions herein contemplated by the Company does not conflict in any material respect with, or constitute a material default under, the organizational documents of the Company, and does not violate any contract, instrument, or other agreement, whether written or oral to which the Company is a party or by which the Company is bound, (v) this Agreement constitutes the legal, valid, and binding obligation of the Company, enforceable against the Company in accordance with its terms, and (vi) the Company has all licenses, permits, consents and approvals required to be obtained by it from any regulatory agency exercising its authority over the Company in order for it to lawfully conduct its business, to perform its obligations hereunder and to receive the rights and benefits available to it hereunder except to the extent the failure to have any of the foregoing could not, singly or in the aggregate, reasonably be expected to have a material adverse effect on the Company.

b.        the Creditor represents and warrants to the Company that (i) the Creditor is a Delaware limited liability company duly organized, validly existing, and in good standing under the laws of the state of Delaware, (ii) the Creditor has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, (iii) the execution and delivery of this Agreement and the performance of the terms hereof by the Creditor have been duly authorized by all necessary action on the part of the Creditor, (iv) the execution and delivery of this Agreement and the consummation of the transactions herein contemplated by the Creditor does not conflict in any material respect with, or constitute a material default under, the organizational documents of the Creditor, and does not violate any contract, instrument, or other agreement, whether written or oral to which the Creditor is a party or by which the Creditor is bound, (v) this Agreement constitutes the legal, valid, and binding obligation of the Creditor, enforceable against the Company in accordance with its terms, and (vi) the Creditor has all licenses, permits, consents and approvals required to be obtained by it from any regulatory agency exercising its authority over the Creditor in order for it to lawfully conduct its business, to perform its obligations hereunder and to receive the rights

Exhibit 4

**EXHIBIT 2, PAGE 71**

and benefits available to it hereunder except to the extent the failure to have any of the foregoing could not, singly or in the aggregate, reasonably be expected to have a material adverse effect on the Creditor.

5.      Confidentiality. The Parties agree that any and all Confidential Information (as defined herein) shall be used solely for the purposes of the lawful performance of this Agreement and shall not be used or disclosed to any third party except as authorized herein or by the Parties in writing.

        a.      Definition. As used in this Agreement, "*Confidential Information*" shall include (i) all information regarding an existing or potential client of the Company, (ii) each Party's proprietary information, trade secrets or other business information that is either identified as or should otherwise be reasonably understood to be of a confidential nature, as may be disclosed to the other Party in connection with the performance of this Agreement, and (iii) this Agreement and the nature, terms and conditions of this Agreement.

        b.      Limited Use. Each Party agrees it shall not, without the prior written consent of the other Party or as permitted by the terms and conditions of this Agreement, do any of the following: (i) disclose any Confidential Information to any third party; (ii) permit any third-party access to such Confidential Information; or (iii) use Confidential Information for any purpose other than in connection with the performance of its obligations under this Agreement.

        c.      Exceptions. The confidentiality obligations imposed on the Parties by this section shall not apply to Confidential Information which, through no fault of a Party: (i) is required to be disclosed in order to comply with applicable laws and regulations, court orders or other process of law, (ii) is required to be made to any tax, banking or other regulatory authority, or legal or financial advisor of either Party, (iii) is made to such Party's current or prospective lenders or investors, (iv) was already known to that Party prior to disclosure of the same Confidential Information by the other Party or is independently discovered by the Party, or (v) subsequently becomes available to the public at large without a breach of this Agreement.

        d.      Return of Confidential Information. Upon termination of this Agreement, both Parties shall return the Confidential Information of the other Party to the Party to which the Confidential Information belongs.

        e.      Enforcement. In the event of any breach of the obligations under this section, the Parties acknowledge that the Party adversely affected by the breach would have no adequate remedy at law to protect its Confidential Information, since the harm caused by such a breach could not be easily measured and compensated for in damages, and that in addition to such remedies as may be available, a Party may obtain injunctive relief including, but not limited to, specific performance.

        f.      Confidentiality of Agreement. The Parties agree that this Agreement and its terms are strictly confidential and shall not be disclosed to any person, firm, corporation, or other entity, orally or in writing, except as may be necessary to comply with applicable laws and regulations, court orders or other process of law, confer with a financial advisor, tax preparer, or lawyer regarding the subject matter of this Agreement, or to enforce this Agreement.

        g.      Survival. The provisions of this section shall survive the expiration or any termination of this Agreement or any addendum hereto.

6.      Indemnification. The Parties agrees to be responsible for their own actions, and each Party agrees to indemnify, defend and hold harmless the other party and such other Party's directors, officers, employees and agents for, from and against all claims and losses of any type, including reasonable attorneys' fees, in connection with, in whole or in part: (a) any negligent act or omission by, or any willful misconduct on the

Exhibit 4
**EXHIBIT 2, PAGE 52**

part of, the indemnifying Party; (b) the indemnifying Party's failure to comply with any applicable federal, state, or local law; or (c) any breach of this Agreement by the indemnifying Party.

7.      Construction. The Parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any Party because of the authorship of any provision of this Agreement. Any reference to any federal, state, provincial, territorial, local, or foreign law shall be deemed also to refer to such law as amended and all rules and regulations promulgated thereunder, unless the context requires otherwise. Any reference to any contract or agreement (including schedules, exhibits and other attachments thereto), including this Agreement, shall be deemed also to refer to such contract or agreement as amended, restated, or otherwise modified, unless the context requires otherwise. The words "include," "includes," and "including" shall be deemed to be followed by "without limitation." Pronouns in masculine, feminine, and neuter genders shall be construed to include any other gender, and words in the singular form shall be construed to include the plural and vice versa, unless the context requires otherwise. The words "this Agreement," "herein," "hereof," "hereby," "hereunder," and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited. Where this Agreement states that a Party "will" or "shall" perform in some manner or otherwise act or omit to act, it means that such Party is legally obligated to do so in accordance with this Agreement. The captions, titles, and headings included in this Agreement are for convenience only and do not affect this Agreement's construction or interpretation. Any reference to an Article, Section, or Schedule in this Agreement shall refer to an Article or Section of, or Schedule to, this Agreement, unless the context otherwise requires. This Agreement is for the sole benefit of the Parties and does not, and is not intended to, confer any rights or remedies in favor of any person (including any employee, director, shareholder or third party lender or service provider of a party) other than the Parties.

8.      No Assignment by the Company. Except as set forth herein, the Company shall not assign, transfer, or otherwise alienate any or all of its rights or interest under this Agreement without the express prior written consent of the Creditor, which consent may be granted or withheld in the Creditor's sole discretion.

9.      Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersede (a) all prior oral or written proposals or agreements, (b) all contemporaneous oral proposals or agreements, and (c) all previous negotiations and all other communications or understandings between the Parties, in each case with respect to the subject matter hereof.

10.     Notices. Any notice, instruction, direction or demand under the terms of this Agreement required to be in writing shall be duly given upon delivery, if delivered by hand, facsimile, email or other generally accepted means of electronic transmission, or mail (with postage prepaid), to the following addresses:

        If to the Company, to:

                The Litigation Practice Group PC
                17542 E 17th Street
                Suite 100
                Tustin, CA 92780
                Fax No.: 949-715-0648
                Email: admin@LPGLaw.com
                Attention: Daniel S. March

4

Exhibit 4
EXHIBIT 2, PAGE 73

If to the Creditor, to:

>Oxford Knox, LLC
>c/o Rick R, Emmett
>300 S. Harbor Blvd., Suite 1000
>Anaheim, CA 92805
>Fax No.: (714) 563-1316
>Email: remmett@investlincadvisors.com
>Attention: Rick R. Emmett, Manager

or to such other addresses or telecopy numbers as may be specified by like notice to the other Party.

11.    Severability. If any term or other provision of this Agreement shall be determined by a court, governmental authority, or arbitrator to be invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability shall not render the entire Agreement invalid. Rather, this Agreement shall be construed as if not containing the particular invalid, illegal, or unenforceable provision, and all other provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to either Party. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the Parties shall negotiate in good faith to modify this Agreement so as to give effect to the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the fullest extent permitted under applicable law.

12.    Amendment. This Agreement may only be amended by a written agreement executed by both Parties.

13.    Binding Effect. This Agreement binds and benefits the Parties and their respective successors and permitted assigns. Other than those persons entitled to indemnity hereunder, there are no third-party beneficiaries having rights under or with respect to this Agreement.

14.    Waiver. A provision of this Agreement may be waived only by a writing signed by the Party intended to be bound by the waiver. A Party is not prevented from enforcing any right, remedy, or condition in the Party's favor because of any failure or delay in exercising any right or remedy or in requiring satisfaction of any condition, except to the extent that the Party specifically waives the same in writing. A written waiver given for one matter or occasion is effective only in that instance and only for the purpose stated. A waiver once given is not to be construed as a waiver for any other matter or occasion. Any enumeration of a Party's rights and remedies in this Agreement is not intended to be exclusive, and a Party's rights and remedies are intended to be cumulative to the extent permitted by law and include any rights and remedies authorized in law or in equity.

15.    Disputes.

    a.    Dispute Resolution. Except with respect to a Party's request for equitable or provisional relief or to otherwise protect its Confidential Information provided under this Agreement, no civil action, proceeding as set forth below with respect to any dispute, controversy or claim arising out of, or relating to, or in connection with, this Agreement, or the breach, termination, or validity hereof, including the validity of this dispute resolution provision (each of which dispute, controversy, or claim will be termed a "*Dispute*") between the Parties may be commenced, nor may a Party terminate any portion of this Agreement for a material breach of a material warranty, representation, covenant or obligation of this Agreement, until the Parties have first attempted to resolve the Dispute amicably in good faith.

Exhibit 4

**EXHIBIT 2, PAGE 74**

b.    <u>Arbitration of Disputes</u>. If the Parties cannot resolve a Dispute pursuant to Section 15(a) above, any and all disputes under this Agreement shall be resolved by final and binding arbitration pursuant to JAMS Rules of Arbitration. Such arbitration shall be conducted pursuant to the JAMS Streamlined Arbitration Rules & Procedures then in effect. The decision by the arbitrator shall be final and binding, may be confirmed by a court of competent jurisdiction and judgment shall be entered thereon. The arbitration shall be conducted in Orange County, California. This clause shall not preclude Parties from seeking provisional remedies in aid of arbitration (e.g., to compel arbitration) or from seeking equitable or provisional relief from a court of competent jurisdiction.

c.    <u>Confidentiality of Proceedings</u>. The Parties agree that any arbitration proceedings hereunder will be treated as the Confidential Information of both Parties and that the existence of the proceeding and any element of it (including, but not limited to, any pleadings, briefs or other documents submitted or exchanged and any testimony or other oral submissions and awards) will not be disclosed beyond the arbitration panel, except as may lawfully be required in judicial proceedings relating to the arbitration. In addition, if a Party's Confidential Information is required to be disclosed pursuant to an arbitration proceeding or other judicial proceeding, the Receiving Party shall treat the Disclosing Party's Confidential Information pursuant to the terms of Section 5 (Confidentiality).

d.    <u>Attorneys' Fees and Costs</u>. The prevailing Party in any arbitration or other legal proceeding shall be entitled to recover its reasonable fees and costs (including attorneys' fees) associated with the dispute from the other Party. The arbitrator shall determine who is the prevailing Party and award reasonable attorney fees.

e.    <u>Choice of Law</u>. This arbitration provision (including the validity and applicability of the agreement to arbitrate, the conduct of any arbitration of a Dispute, the enforcement of any arbitral award made hereunder and any other questions of arbitration law or procedure arising hereunder) and its interpretation, any and all Disputes between the Parties arising out of or relating to this Agreement in any manner, shall be governed by and construed in accordance with the substantive internal laws of the State of California, excluding its conflicts of law rules.

16.    <u>Relationship of Parties</u>. This Agreement does not create a fiduciary relationship, partnership, joint venture, or relationship of trust or agency between the Parties. Each Party shall have the obligation to supervise, manage, contract, direct, procure, perform or cause to be performed, all work to be performed under this Agreement and shall be liable for all acts or omissions of its employees and agents in performing their respective obligations hereunder. The Company understands and agrees that it has complete control over the operation and decision making of its business.

17.    <u>Further Assurances</u>. From time to time, each Party agrees to execute and deliver such additional documents and will provide such additional information and assistance as any Party may reasonably require to carry out the terms of this Agreement.

18.    <u>Survival</u>. The Parties agree that the provisions of this Agreement that by their terms or nature are intended to survive the termination of this Agreement shall survive such termination.

19.    <u>No Publicity</u>. Neither Party shall issue a press release announcing the Parties' business relationship, without the prior, written consent of the other Party as to the context and content of such materials or press release. Each Party shall have the right to terminate its consent at any time and for any reason by providing written notice to the other Party.

20.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which, when taken together, shall be one and the same document.

Exhibit 4
**EXHIBIT 2, PAGE 75**

Each Party may rely upon a "pdf" counterpart of this Agreement signed by the other Party with the same effect as if such Party had received an original counterpart signed by such other Party.

[Signatures on the following page]

Exhibit 4
EXHIBIT 2, PAGE 76

IN WITNESS WHEREOF, the Parties have executed this Debt Repayment Agreement to be effective as of the Effective Date.

**OXFORD KNOX, LLC**

By: _____

Name:  Rick R. Emmett

Title:  Manager/Secretary

**THE LITIGATION PRACTICE GROUP PC**

By: _____

Name: _DANIEL MARCH_

Title: _MANAGING SHAREHOLDER_

## SCHEDULE 1

### REPAYMENT SCHEDULE

| | |
|---|---|
| Starting Balance: | $12,000,000.00 |
| Annual Interest Rate: | 10.0% |
| Repayment Period: | 72 months |
| Start Date: | November 1, 2021 |

| Repayment Date | Repayment Installment | Remaining Balance |
|---|---|---|
| November 2021 | $757,454.09 | $11,334,950.40 |
| December 2021 | $0 | $11,431,219.84 |
| January 2022 | $629,090.35 | $10,896,899.08 |
| February 2022 | $357,142.30 | $10,620,609.71 |
| March 2022 | $0 | $10,343,421.67 |
| April 2022 | $200,000.00 | $10,226,792.26 |
| May 2022 | $200,000.00 | $10,111,951.32 |
| June 2022 | $200,000.00 | $9,993,419.41 |
| July 2022 | $200,000.00 | $9,876,596.40 |
| August 2022 | $200,000.00 | $9,758,781.19 |
| September 2022 | $200,000.00 | $9,637,346.52 |
| October 2022 | $200,000.00 | $9,517,499.32 |
| November 2022 | $200,000.00 | $9,394,081.51 |
| December 2022 | $200,000.00 | $9,272,168.23 |
| January 2023 | $200,000.00 | $9,149,219.52 |
| February 2023 | $200,000.00 | $9,017,871.07 |
| March 2023 | $200,000.00 | $8,892,762.58 |
| April 2023 | $200,000.00 | $8,764,209.94 |
| May 2023 | $200,000.00 | $8,636,947.06 |
| June 2023 | $200,000.00 | $8,506,291.83 |
| July 2023 | $200,000.00 | $8,376,838.42 |
| August 2023 | $200,000.00 | $8,246,285.54 |
| September 2023 | $200,000.00 | $8,112,419.40 |
| October 2023 | $200,000.00 | $7,979,620.77 |
| November 2023 | $200,000.00 | $7,843,562.86 |
| December 2023 | $200,000.00 | $7,708,480.79 |
| January 2024 | $200,000.00 | $7,572,251.45 |
| February 2024 | $200,000.00 | $7,428,805.70 |
| March 2024 | $200,000.00 | $7,290,201.04 |
| April 2024 | $200,000.00 | $7,148,476.66 |
| May 2024 | $200,000.00 | $7,007,491.12 |
| June 2024 | $200,000.00 | $6,863,443.11 |
| July 2024 | $200,000.00 | $6,720,036.73 |
| August 2024 | $200,000.00 | $6,575,412.39 |
| September 2024 | $200,000.00 | $6,431,306.41 |
| October 2024 | $200,000.00 | $6,287,644.25 |
| November 2024 | $200,000.00 | $6,137,679.68 |
| December 2024 | $200,000.00 | $5,988,109.29 |
| January 2025 | $200,000.00 | $5,837,268.58 |
| February 2025 | $200,000.00 | $5,680,513.38 |
| March 2025 | $200,000.00 | $5,527,060.20 |
| April 2025 | $200,000.00 | $5,370,844.26 |
| May 2025 | $200,000.00 | $5,214,761.02 |
| June 2025 | $200,000.00 | $5,055,978.23 |
| July 2025 | $200,000.00 | $4,897,220.79 |

Exhibit 4

EXHIBIT 2, PAGE 78

| August 2025 | $200,000.00 | $4,737,114.99 |
| September 2025 | $200,000.00 | $4,574,406.35 |
| October 2025 | $200,000.00 | $4,411,558.84 |
| November 2025 | $200,000.00 | $4,246,174.39 |
| December 2025 | $200,000.00 | $4,080,539.16 |
| January 2026 | $200,000.00 | $3,913,497.16 |
| February 2026 | $200,000.00 | $3,741,984.27 |
| March 2026 | $200,000.00 | $3,572,066.87 |
| April 2026 | $200,000.00 | $3,399,782.49 |
| May 2026 | $200,000.00 | $3,226,958.73 |
| June 2026 | $200,000.00 | $3,051,837.84 |
| July 2026 | $200,000.00 | $2,876,058.93 |
| August 2026 | $200,000.00 | $2,698,787.10 |
| September 2026 | $200,000.00 | $2,520,694.27 |
| October 2026 | $200,000.00 | $2,341,675.89 |
| November 2026 | $200,000.00 | $2,159,278.71 |
| December 2026 | $200,000.00 | $1,975,919.16 |
| January 2027 | $200,000.00 | $1,791,002.31 |
| February 2027 | $200,000.00 | $1,603,207.26 |
| March 2027 | $200,000.00 | $1,415,124.91 |
| April 2027 | $200,000.00 | $1,225,112.23 |
| May 2027 | $200,000.00 | $1,033,818.67 |
| June 2027 | $200,000.00 | $840,671.97 |
| July 2027 | $200,000.00 | $646,113.29 |
| August 2027 | $200,000.00 | $449,902.20 |
| September 2027 | $200,000.00 | $252,093.13 |
| October 2027 | $252,093.13 | $0.00 |

Exhibit 4
EXHIBIT 2, PAGE 79

**Oxford Knox LLC**
## LPG Loan Calculations per agreement dated April 15, 2022

**November 1, 2021 - June 30, 2023**

| From Date | To Date | Days | Total Pd | Principal | Interest | Beg Bal | Int | Annual | Per Day | Interest Amt | Ending Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/01/21 | | | | | | $12,000,000.00 | | | | | $12,000,000.00 |
| (Per Schedule 1 of agreement dated 4/15/22) | | | | | | | | | | | |
| 11/01/21 | Payment | | $757,454.09 | $665,049.60 | $92,404.49 | | | | | | $11,334,950.40 |
| 01/01/22 | Payment | | $629,090.35 | $438,051.32 | $191,039.03 | | | | | | $10,896,899.08 |
| 02/01/22 | Payment | | $357,142.30 | $276,289.37 | $80,852.93 | | | | | | $10,620,609.71 |
| 03/01/22 | 03/11/23 | 375 | | | | | 10% | $1,062,060.97 | $2,909.76 | $1,091,158.53 | $11,711,768.24 |
| 03/11/23 | Notice of Default Balloon Payment | | | | | $10,000,000.00 | | | | | $21,711,768.24 |
| 03/11/23 | 06/30/23 | 111 | | | | | 10% | $2,171,176.82 | $5,948.43 | $660,275.69 | $22,372,043.93 |
| **Totals** | | | $1,743,686.74 | $1,379,390.29 | $364,296.45 | $22,000,000.00 | | | | $1,751,434.22 | $22,372,043.93 |

*7/20/2023  Updated/jaw*

Exhibit 4
**EXHIBIT 2, PAGE 80**

# EXHIBIT 5

Exhibit 5
EXHIBIT 2, PAGE 81

# Payments to American Express

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Payment | 90 Day Transfer |
|-------|-----------|--------------|----------------|------------------|---------|-----------------|
| **LPG PC; Syed Gilani** | Chase | The Litigation Practice Group PC | X3158 | 2/11/2022 | $5,344.99 | N |
| **LPG PC; Syed Gilani** | Chase | The Litigation Practice Group PC | X3158 | 3/11/2022 | $190,271.26 | N |
| **LPG PC; Syed Gilani** | Chase | The Litigation Practice Group PC | X3158 | 4/19/2022 | $254,488.04 | N |
| **LPG PC; Syed Gilani** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 8/15/2022 | $2,638.06 | N |
| **LPG PC; Syed Gilani** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 9/2/2022 | $80,906.55 | N |
| **LPG PC; Syed Gilani** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 11/16/2022 | $84,078.06 | N |
| **LPG PC; Syed Gilani** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/13/2023 | $78,910.81 | Y |
| | | | | **Total** | **$696,637.77** | |

Exhibit 5

**EXHIBIT 2, PAGE 82**

# Adversary Cover Sheet

B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

**PLAINTIFFS**
Richard A. Marshack, Trustee of the LPG Liquidation Trust

**DEFENDANTS**
Oxford Knox, LLC; Buffalo 21 Partners, Inc.; Rick Emmett; Ryan Taylor Connet;  Obrik, Inc.; Albright, Inc.; Jason Dovalina; Rachel Dovalina; Final Season, Inc.; Factor In, Inc.; Syed Faisal Gilani aka Sye Gilani; BAE Enterprises, Inc.; Rose Bianca Loli; Decacorn Holdings, Inc.; Samson Ly; BEW Solar Management, LLC; Sean Stephens; Lexicon Consulting, LLC; Daniel Lansdale; United Partnerships, LLC; Ventura Consulting, LLC; Matthew Church; Frank Brown; Validation, Partners LLC; Innovative Solutions, LLC; MRJR20 Partners, LLC; MFCR, Investments, LLC; Lifesize, Inc.; Karrington, Inc.; Spectrum Payment Solutions, LLC; Jason D. Williams; Home Energy Solutions, Inc.; The Coelho Irrevocable Life Insurance Trust; JNR Services, Inc.; C.A.T. Exteriors, Inc.; AZLS Enterprises, Inc.; A Solution Debt Relief, Inc.; INVESTLINC Wealth Services, Inc.

**ATTORNEYS** (Firm Name, Address, and Telephone No.)
Yosina M. Lissebeck (SBN 201654)
Tyler Powell (Ky. Bar No. 90520) (*Admitted pro hac vice*)
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101    Telephone (619) 400-0500
yosina.lissebeck@dinsmore.com
tyler.powell@dinsmore.com

**ATTORNEYS** (If Known)

**PARTY** (Check One Box Only)
☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor  ☐ Other
☒ Trustee

**PARTY** (Check One Box Only)
☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor  ☐ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
(1) Avoidance, recovery, and preservation of preferential transfers made to or for certain defendants made within ninety days of the petition date; (2) Avoidance, recovery, and preservation of Post-Petition transfers made to or for certain defendants; (3) Avoidance of Debtor's execution of repayment agreement with defendant Oxford Knox, LLC; (4) Avoidance, recovery, and preservation of  fraudulent transfers(s); (5) Avoidance, recovery, and preservation of fraudulent transfer(s); (6) Avoidance, preservation, and recovery of voidable transfers made with intent to defraud; (7) Avoidance, preservation, and recovery of voidable transfers made with no intent to defraud; (8) Avoidance, recovery, and preservation of fraudulent transfers made to or for the benefit of Defendants Gilani and Dovalina arising from use of American Express Card; and (9) Objection to Proof of Claim No. 818 of Oxford Knox, LLC

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
  (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief- imposition of stay
☐ 72-Injunctive relief - other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of remove d claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 3M+ |
| Other Relief Sought | |

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>The Litigation Practice Group P.C. | BANKRUPTCY CASE NO.<br>8:23-bk-10571-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Tyler Powell | | |
| DATE<br>March 19, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Yosina M. Lissebeck<br>Tyler Powell (admitted pro hac vice)<br>Special Counsel to Richard A. Marshack, Trustee of the LPG<br>Liquidation Trust | |

## INSTRUCTIONS

      The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

      A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

      The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# Exhibit 3

<table>
<tr><td>1</td><td colspan="2">Christopher Celentino (131688)</td></tr>
</table>

1  Christopher Celentino (131688)
   Yosina M. Lissebeck (State Bar No. 201654)
2  Christopher B. Ghio (State Bar No. 259094)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone: 619.400.0500
   Facsimile: 619.400.0501
5  christopher.celentino@dinsmore.com
   yosina.lissebeck@dinsmore.com
6  christopher.ghio@dinsmore.com

7  Tyler Powell (Ky. Bar No. 90520 – Admitted pro hac vice)
   **DINSMORE & SHOHL, LLP**
8  100 West Main Street, Suite 900
   Lexington, KY  40507
9  Telephone:  859-425-1056
   Facsimile:  859-425-1099
10 tyler.powell@dinsmore.com

11 Special Counsel to Richard A. Marshack,
   Trustee of the LPG Liquidation Trust
12

13                    **UNITED STATES BANKRUPTCY COURT**

14        **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

15 In re:                                          CHAPTER 11

16 The Litigation Practice Group P.C.,             Case No.: 8:23-bk-10571-SC
                                                   Adv. No: 8:25-ap-01208-SC
17                           Debtor(s).            **TRUSTEE'S AMENDED COMPLAINT
                                                   FOR:**
18 Richard A. Marshack, Trustee of the LPG
   Liquidation Trust,                              **(1) AVOIDANCE, RECOVERY, AND
19                                                 PRESERVATION OF PREFERENTIAL
                              Plaintiff,           TRANSFERS MADE TO OR FOR
20    v.                                           CERTAIN DEFENDANTS MADE
                                                   WITHIN NINETY DAYS OF THE
21 Oxford Knox, LLC, a Delaware limited liability  PETITION DATE;**
   company; Buffalo 21 Partners, Inc., a Wyoming
22 corporation; Rick Emmett, individually; Ryan    **(2)  AVOIDANCE, RECOVERY, AND
   Taylor Connet, individually;  Obrik, Inc., a    PRESERVATION OF POST-PETITION
23 Wyoming corporation; Albright, Inc., a Florida  TRANSFERS MADE TO OR FOR THE
   corporation; Jason Dovalina, individually; Rachel BENEFIT OF CERTAIN DEFENDANTS;**
24 Dovalina, individually; Final Season, Inc., a
   California corporation.; Factor In, Inc., a California **(3)  AVOIDANCE OF DEBTOR'S
25 corporation; Syed Faisal Gilani AKA Sye Gilani, EXECUTION OF REPAYMENT
   individually; BAE Enterprises, Inc., a Wyoming  AGREEMENT WITH DEFENDANT
26 corporation; Rose Bianca Loli, individually;    OXFORD KNOX, LLC PURSUANT TO
   Decacorn Holdings, Inc., a California limited   11 U.S.C. §§ 548(a), 550, AND 551;**
27 liability company; Samson Ly, individually; BEW
   Solar Management, LLC, a California limited      **(4)  AVOIDANCE, RECOVERY, AND
28                                                  PRESERVATION OF FRAUDULENT**

                                                   **EXHIBIT 3, PAGE 86**

| | |
|---|---|
| liability company; Sean Stephens, individually; Lexicon Consulting, LLC, a California corporation; Daniel Lansdale, individually; United Partnerships, LLC, a California corporation; Ventura Consulting, LLC, a Nevada limited liability; Matthew Church, individually; Frank Brown, individually; Validation LLC, a California limited liability company; Innovative Solutions, LLC, a Wyoming corporation; MRJR20 Partners, LLC, a California limited liability company; MFCR, Investments, LLC, a Florida limited liability company; Lifesize, Inc, a Wyoming corporation.; Karrington, Inc., a Wyoming corporation; Spectrum Payment Solutions, LLC, a California limited liability company; Jason D. Williams, individually; Home Energy Solutions, Inc., a California corporation; The Coelho Irrevocable Life Insurance Trust, a California trust; JNR Services, Inc., a California corporation; C.A.T. Exteriors, Inc., an Arizona corporation; AZLS Enterprises, Inc, a California corporation; A Solution Debt Relief, Inc., a Wyoming corporation and INVESTLINC Wealth Services, Inc., a California corporation;<br><br>     Defendant(s). | TRANSFER(S) PURSUANT TO 11 U.S.C. §§ 548(a)(1), 550, AND 551;<br><br>**(5) AVOIDANCE, RECOVERY, AND PRESERVATION OF FRAUDULENT TRANSFER(S) PURSUANT TO 11 U.S.C. §§ 548(a)(2), 550, AND 551;**<br><br>**(6) AVOIDANCE, PRESERVATION, AND RECOVERY OF VOIDABLE TRANSFERS MADE WITH INTENT TO DEFRAUD [11 U.S.C. §§ 544, 550, 551; CAL. CIV. CODE §§ 3439.04(a)(1) AND 3439.07];**<br><br>**(7) AVOIDANCE, PRESERVATION, AND RECOVERY OF VOIDABLE TRANSFERS MADE WITH NO INTENT TO DEFRAUD [11 U.S.C. §§ 544, 550, 551; CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05, AND 3439.07];**<br><br>**(8)  AVOIDANCE, RECOVERY, AND PRESERVATION OF FRAUDULENT TRANSFERS MADE TO OR FOR THE BENEFIT OF DEFENDANTS GILANI AND DOVALINA ARISING FROM USE OF AMERICAN EXPRESS CARD; and**<br><br>**(9)  OBJECTION TO PROOF OF CLAIM NO. 818 OF OXFORD KNOX, LLC**<br><br>Judge: Hon. Scott C. Clarkson<br>Dept: 5C |

   For his *Amended Complaint for (1) Avoidance, recovery, and preservation of preferential transfers made to or for certain defendants made within ninety days of the petition date; (2) Avoidance, recovery, and preservation of Post-Petition transfers made to or for certain defendants; (3) Avoidance of Debtor's execution of repayment agreement with defendant Oxford Knox, LLC pursuant to 11 U.S.C. §§548(a), 550, and 551; (4) Avoidance, Recovery, and preservation of fraudulent transfers(s) pursuant to 11 U.S.C. §§548(a)(1), 550, and 551; (5) Avoidance, recovery, and preservation of fraudulent transfer(s) to 11 U.S.C. §§548(a)(2), 550, and 551; (6) Avoidance, preservation, and recovery of voidable transfers made with intent to defraud [11U.S.C. §§544, 550, 551; Cal. Civ Code §§3439.04(a)(1) and 3439.07] (7)Avoidance, preservation, and recovery of voidable transfers made with no intent to defraud [11 U.S.C.*

2

**EXHIBIT 3, PAGE 87**

§§544, 550, 551; Cal. Civ. Code §§3439.04(a)(2), 3439.05, and 3439.07]; (8) Avoidance, recovery, and preservation of fraudulent transfers made to or for the benefit of Defendants Gilani and Dovalina arising from use of American Express Card; and (9) Objection to Proof of Claim No. 818 of Oxford Knox, LLC (the "Complaint"), plaintiff Richard A. Marshack, the former Chapter 11 Trustee for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") and Trustee of the LPG Liquidation Trust (collectively, "Trustee" or "Plaintiff") in the above-captioned bankruptcy case (the "Bankruptcy Case"), alleges and avers as follows:

## STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court").

2.      Regardless of whether this proceeding is core, non-core, or otherwise, the Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

3.      Defendants are hereby notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires them to plead whether consent is given to the entry of a final order and judgment by the bankruptcy court.

4.      Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to the Debtor's pending Bankruptcy Case.

## THE PARTIES

5.      Debtor LPG is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

6.      Defendant Oxford Knox, LLC is, and at all material times represented that it was, a Delaware - domestic limited liability company ("Oxford Knox").

7.      Defendant Oxford Knox may be served by first class mail postage prepaid upon its

**EXHIBIT 3, PAGE 88**

1   Partnership Representative: Richard R. Emmett, 251 Little Falls Drive, Wilmington, Delaware 19808.

2        8.     Defendant Buffalo 21 Partners, Inc. is, and at all material times represented that it was,

3   a Wyoming - domestic corporation, ("Buffalo 21").

4        9.     Defendant Buffalo 21 may be served by first class mail postage prepaid upon its CEO:

5   Richard R. Emmett, 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801.

6       10.    Defendant Rick Ronald Emmett is, and at all material times represented that he was,

7   an individual residing in the state of California ("Emmett").

8       11.    Defendant Emmett may be served by first class mail postage prepaid upon himself; 10

9   Pointe Drive, Suite 150, Brea, California 92821.

10      12.    Defendant Ryan Taylor Connet is, and at all material times represented that he was,

11   an individual residing in the state of California ("Connet").

12      13.    Defendant Connet may be served by first class mail postage prepaid upon himself;

13   4155 E. La Palma Avenue, Anaheim, California 92807.

14      14.    Defendant Obrik, Inc. is, and at all material times represented that it was, a Wyoming

15   – domestic corporation ("Obrik").

16      15.    Defendant Obrik may be served by first class mail postage prepaid upon its registered

17   agent: Cloud Peak Law; 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming 82801.

18      16.    Defendant Albright, Inc. is, and at all material times represented that it was, a Florida

19   – domestic corporation ("Albright").

20      17.    Defendant Albright may be served by first class mail postage prepaid upon its

21   registered agent: William J. Albright; 701 Aqui Esta Drive, #263, Punta Gorda, Florida, 33951.

22      18.    Defendant Jason Dovalina is, and at all material times represented that he was, an

23   individual residing in the state of California ("Jason Dovalina").

24      19.    Defendant Jason Dovalina, may be served by first class mail postage prepaid upon

25   himself; 128 W. Santa Fe Avenue, Suite C, Placentia, California 92870-5632.

26      20.    Defendant Rachel Dovalina is, and at all material times represented that she was, an

27   individual residing in the state of California ("Rachel Dovalina").

28      21.    Defendant Rachel Dovalina, may be served by first class mail postage prepaid upon

4

**EXHIBIT 3, PAGE 89**

1  herself; 736 Oceanview Drive, Fullerton, California 92832.

2      22.    Defendant The Final Season, Inc. is, and at all material times represented that it was,

3  a California – domestic corporation ("Final Season").

4      23.    Defendant Final Season may be served by first class mail postage prepaid upon its

5  agent; 5716 Corsa Avenue S. 110, West Lake Village, California 91362.

6      24.    Defendant Factor In, Inc. is, and at all material times represented that it was, a

7  California – domestic corporation ("Factor In").

8      25.    Defendant Factor In may be served by first class mail postage prepaid upon its

9  registered agent: Sye Gilani; 7651 Greenock Way, Riverside, California 92508.

10     26.    Defendant Syed Faisal Gilani aka Sye Gilani is, and at all material times represented

11 that he was, an individual residing in the state of California ("Gilani").

12     27.    Defendant Gilani may be served by first class mail postage prepaid upon himself: 7651

13 Greenock Way, Riverside, California 92508.

14     28.    Defendant Bae Enterprises, Inc. is, and at all material times represented that it was, a

15 Wyoming - domestic corporation ("Bae Enterprises").

16     29.    Defendant Bae Enterprises may be served by first class mail postage prepaid upon its

17 registered agent: Cloud Peak Law, LLC, 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming

18 82801.

19     30.    Defendant Rose Bianca Loli is, and at all material times represented that she was, an

20 individual residing in the state of California ("Loli").

21     31.    Defendant Loli may be served by first class mail postage prepaid upon herself: 33741

22 Alcazar Drive, Dana Point, California 92629 or 1220 Ensenada Avenue, Laguna Beach, California

23 92651.

24     32.    Defendant Decacorn Holdings, LLC is, and at all material times represented that it

25 was, a California – domestic limited liability company ("Decacorn Holdings").

26     33.    Defendant Decacorn may be served by first class mail postage prepaid upon its

27 registered agent: Dana Fang, 2520 Venture Oaks Way, Suite 120, Sacramento, California 95833.

28     34.    Defendant Samson Ly is, and at all material times represented that he is a resident of

EXHIBIT 3, PAGE 90

1  California ("Ly").

2      35.    Defendant Ly may be served by first class mail postage prepaid upon himself: 208 S.

3  Moore Avenue, Apt. D, Monterey Park, California 91754.

4      36.    Defendant BEW Solar Management, LLC is, and at all material times represented that

5  it was, a California – domestic limited liability company ("BEW Solar").

6      37.    Defendant BEW Solar may be served by first class mail postage prepaid upon its

7  manager: Sean M. Stephens, 2560 N. Synergy Avenue, Eagle, Idaho 83616.

8      38.    Defendant Sean M. Stephens is, and at all material times represented that he was, an

9  individual residing in Idaho ("Stephens").

10      39.    Defendant Stephens may be served by first class mail postage prepaid upon himself:

11  2560 N Synergy Ave, Eagle, Idaho 83616.

12      40.    Defendant Lexicon Consulting, Inc. is, and at all material times represented that it was,

13  a California – domestic corporation ("Lexicon").

14      41.    Defendant Lexicon may be served by first class mail postage prepaid upon its

15  registered agent: Jamie Latshaw, 266 S Magnolia Avenue, Suite 202, El Cajon, California 92020.

16      42.    Defendant Daniel Lansdale is, and at all material times was, an individual residing in

17  the state of California ("Lansdale").

18      43.    Defendant Lansdale may be served by first class mail postage prepaid upon himself;

19  515 W. Commonwealth Avenue, Suite 211, Fullerton, California 92832.

20      44.    Defendant United Partnerships, Inc. is, and all material times represented that it was,

21  a California, - domestic corporation ("United Partnerships").

22      45.    Defendant United Partnerships may be served by first class mail postage prepaid upon

23  its registered agent: 7300 Lennox Avenue, Room J-14, Van Nuys, CA 91405.

24      46.    Defendant Ventura Consulting, LLC is, and at all material times represented that it

25  was, a Nevada - domestic limited liability company ("Ventura").

26      47.    Defendant Ventura may be served by first class mail postage prepaid upon its member

27  Matthew Church; 708 Grandview Avenue, Fullerton, California 92832 and 10620 Southern

28  Highlands Parkway, Suite 110-18, Las Vegas, Nevada 89141.

**EXHIBIT 3, PAGE 91**

1        48.     Defendant Matthew Church is, and at all material times represented that he was an

2 individual residing in the states of California and Nevada ("Church")

3        49.     Defendant Church may be served by first class postage prepaid upon himself; 708

4 Grandview Avenue, Fullerton, California 92832 and 10620 Southern Highlands Parkway, Suite 110-

5 18, Las Vegas, Nevada 89141.

6        50.     Defendant Frank Brown is, and at all material times represented that he was an

7 individual residing in the state of Nevada ("Brown").

8        51.     Defendant Brown may be served first class postage prepaid upon himself: and 10620

9 Southern Highlands Parkway, Suite 110-18, Las Vegas Nevada 89141 and 10881 Pentland Downs

10 Street, Las Vegas, Nevada 89141.

11        52.     Defendant Validation LLC is, and at all material times represented that it was, a

12 California limited liability company ("Validation").

13        53.     Defendant Validation may be served by first class mail postage prepaid upon its agent

14 Matthew Church, 17542 17th Street, Ste. 105, Tustin, CA 92780.

15        54.     Defendant Innovative Solutions, Inc. is, and at all material times represented that it

16 was a Wyoming – domestic corporation ("Innovative Solutions").

17        55.     Defendant Innovative Solutions may be served by first class mail postage prepaid upon

18 its agent Cloud Peak Law, LLC; 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming 82801.

19        56.     Defendant MRJR20 Partners, LLC, is and at all material times represented that it was

20 a California – domestic limited liability company ("MRJR20").

21        57.     Defendant MRJR20 may be served by first class mail postage prepaid upon its agent

22 Rick R. Emmett; 10 Pointe Drive, Suite 150, Brea, California 92821.

23        58.     Defendant MFCR Investments, LLC is, and at all material times represented that it

24 was a Florida – domestic limited liability company ("MFCR Investments").

25        59.     Defendant MFCR Investments may be served by first class mail postage prepaid upon

26 its agent Scott F. Penton; 1525 Clapton Drive, Deland, Florida 32720.

27        60.     Defendant Lifesize, Inc. is, and at all material times represented that it was a Wyoming

28 – domestic corporation ("Lifesize").

**EXHIBIT 3, PAGE 92**

61.     Defendant Lifesize may be served by first class mail postage prepaid upon its agent Cloud Peak Law, LLC; 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming 82801.

62.     Defendant Karrington, Inc. is, and at all material times represented that it was, a Wyoming - domestic corporation ("Karrington").

63.     Defendant Karrington may be served by first class mail postage prepaid upon it registered agent: Company Sage Agents, LLC; 1095 Sugarview Drive, Suite 100, Sheridan, Wyoming 82801.

64.     Defendant Spectrum Payment Solutions, LLC is, and at all material times represented that it was, a California – domestic limited liability company ("Spectrum").

65.      Defendant Spectrum may be served by first class mail postage prepaid upon its agent Samson Ly; 208 S. Moore Avenue, Apt. D, Monterey Park, California 91754.

66.     Defendant Jason D. Williams is, and at all material times represented that he was an individual residing in the state of California ("Williams").

67.     Defendant Williams may be served by first class mail postage prepaid upon himself; 4155 E. La Palma Avenue, Anaheim, California 92807.

68.     Defendant Home Energy Solutions, Inc. is, and at all material times represented that it was a California – domestic corporation ("Home Energy").

69.     Defendant Home Energy may be served by first class mail postage prepaid upon its Financial Manager: Rick R. Emmett, 300 S. Harbor Boulevard., Suite 1000, Anaheim, California 92805.

70.     Defendant The Coelho Irrevocable Life Insurance Trust is, and at all material times represented that it was a California Trust ("Coelho Trust").

71.     Defendant Coelho Trust may be served by first class mail postage prepaid upon its Trustee Rick R. Emmett: 300 S. Harbor Boulevard., Suite 1000, Anaheim, California 92805.

72.     Defendant JNR Services, Inc. is, and at all material times represented that it was a California – domestic corporation ("JNR").

73.     Defendant JNR may be served by first class mail postage prepaid upon its agent Rick R. Emmett; 10 Pointe Drive, Suite 150, Brea, California 92821.

**EXHIBIT 3, PAGE 93**

74.     Defendant C.A.T. Exteriors, Inc. is, and at all material times represented that it was an Arizona – domestic corporation ("CAT Exteriors").

75.     Defendant CAT Exteriors may be served by first class mail postage prepaid upon its agent Rick R. Emmett: 10 Pointe Drive, Suite 150, Brea, California 92821.

76.     Defendant AZLS Enterprises Inc. is, and at all material times represented that it was a California – domestic corporation ("AZLS").

77.     Defendant AZLS may be served by first class mail postage prepaid upon its agent: Hee S. Noh, 9 Traditional Place, Irvine, California 92602.

78.     Defendant A Solution Debt Relief, Inc. is, an administratively dissolved Wyoming corporation ("A Solution").

79.     Defendant A Solution may be served by first class mail postage prepaid upon its agent: Cloud Peak Law, LLC, 1095 Sugar View Drive, Suite 500, Sheridan, WY 82801.

80.     Defendant Investlinc Wealth Services, Inc. is, and at all material times represented that it was a California – domestic corporation ("Investlinc").

81.     Defendant InvestLinc may be served by first class mail postage prepaid upon its agent: West A. Cohan, 10 Pointe Drive, Suite 150, Brea, California 92821.

82.     Unless separately identified herein, all of the Defendants will collectively be referred to herein as the "Oxford Knox Defendants."

83.     As discussed herein, not all Oxford Knox Defendants are identified in the Exhibits as receiving payments. Those Oxford Knox Defendants that are not identified as receiving a payment are named herein in their capacity as (i) as a subsequent transferee of an identified transfer, (ii) the potential recipient of a not yet identified transfer, and/or (ii) the party for whose benefit a particular transfer was made that is identified herein. Specific allegations regarding the relationships of Defendants are made herein.

## **GENERAL ALLEGATIONS**

**A.     The Bankruptcy Case**

84.     On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

9

**EXHIBIT 3, PAGE 94**

85.    The Office of the United States Trustee ("UST") filed its *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58].

86.    Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

87.    Trustee was not appointed until after events of the case and, therefore, bases these allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations omitted)).

88.    Pursuant to the *Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation* entered September 9, 2024, and the *Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation* filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust, effective September 24, 2024. [Bankr. Docket Nos. 1646 & 1762].

**EXHIBIT 3, PAGE 95**

89.     Plaintiff brings this action solely in his capacity as the Liquidating Trustee of the LPG Liquidation Trust, for the benefit of Debtor's Estate and its creditors.

**B.    Protective Order**

90.     On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of Protective Order (the "Protective Order").

91.     On June 3, 2024, the Court entered its *Order Granting Motion for Entry of Protective Order and the Protective Order* [Bankr. Docket No. 1270] (the "Protective Order"). A true and accurate copy of the Protective Order is attached as **Exhibit 1**, and incorporated herein.

92.     By its own terms, the Protective Order applies to this adversary proceeding and governs all discovery conducted herein.

**C.    LPG's Ownership and Management**

93.     Prior to the Petition Date, LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify. At all relevant times, LPG was controlled and operated by the individual named Tony Diab ("Diab").

94.     The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

95.     The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

96.     In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

97.     LPG mismanaged the consumers' monthly payments.

98.     Diab and other defendants devised a plan to fraudulently transfer funds, client files, client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out of LPG to third parties prior to the filing of bankruptcy.

99.     To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG in exchange for a percentage of the ACH Receivables collected by LPG from the consumers. The

11

**EXHIBIT 3, PAGE 96**

1   marketing affiliate went so far as to assist with the execution of an engagement letter between the

2   consumer and LPG.

3         100.   In exchange, LPG agreed to pay the marketing affiliates a percentage the monthly

4   payments collected by LPG from the consumers.

5         101.   Because LPG received payments from consumers over time, it often sought financing

6   by borrowing against its future cash flows. This borrowing was not only used to finance operations

7   at LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

8         102.   Many of the documents executed in connection with such financing described the

9   transactions as accounts receivable purchase agreements.

10        103.   Diab used entities he controlled including, without limitation, Vulcan Consulting, LLC

11   ("Vulcan"), B.A.T. Inc. dba Coast Processing ("Coast"), PrimeLogix, LLC ("PrimeLogix") and

12   others to divert LPG consumer funds and ACH Receivables. Diab would use numerous ACH

13   processing companies in order to easily transfer millions of dollars from Debtor to these entities he

14   controlled, without oversight or detection, and to avoid payment disputes and complications. The

15   money that flowed from Debtor through these bank account to Defendants consisted of Client Funds

16   that Debtor funneled to these entities by means of the ACH processing companies. Debtor also made

17   deposits into these entities bank account such that they received Client Funds directly from Debtor in

18   addition to direct Accounts Receivable.

19                            **SPECIFIC ALLEGATIONS**

20   **A.**     **Ponzi Scheme Presumption**

21         104.   The Ponzi Scheme Presumption exists in bankruptcy proceedings.

22         105.   The Ponzi Scheme Presumption can be utilized to establish a debtor's "intent to

23   defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme.

24   Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor

25   pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will

26   eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless

27   makes payments to present investors, which, by definition, are meant to attract new investors. He

28   must know all along, from the very nature of his activities, that investors at the end of the line will

**EXHIBIT 3, PAGE 97**

1  lose their money. Knowledge to a substantial certainty constitutes intent in the eyes of the law," *cf.*

2  *Restatement (Second) of Torts § 8A* (1963 & 1964), and a debtor's knowledge that future investors

3  will not be paid is sufficient to establish his actual intent to defraud them. *Kirkland v. Rund (In re*

4  *EPD Inv. Co., LLC)*, 114 F.4th 1148, 1153 (9th Cir. 2024) (by definition Ponzi scheme is destined to

5  fail and the swindler and their entities often end in bankruptcy or equitable receivership); *Cf. Coleman*

6  *Am. Moving Servs., Inc. v. First Nat'l Bank & Trust Co. (In re American Properties, Inc.)* 14 B.R.

7  637, 643 (Bankr. D. Kan. 1981) (intentionally carrying out a transaction with full knowledge that its

8  effect will be detrimental to creditors is sufficient for actual intent to hinder, delay or defraud within

9  the meaning of § 548(a)(1))." *Merrill v. Abbott (In re Independent Clearing House Co.)* (D. Utah

10  1987) 77 B.R. 843, 860. A trustee in bankruptcy is not required to show that an operator of a Ponzi

11  scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114

12  F.4th at 1153 ("[a] trustee's action to recover assets fraudulently conveyed in the course of a Ponzi

13  scheme does not require that the trustee also prove the Ponzi-scheme operator was subjectively aware

14  his Ponzi scheme was destined to fail.").

15  106.    "But if all the debtor receives in return for a transfer is the use of the defendant's

16  money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share. In fact,

17  by helping the debtor perpetuate his scheme, the transfers exacerbate the harm to creditors by

18  increasing the amount of claims while diminishing the debtor's estate. In such a situation, the use of

19  the defendant's money cannot objectively be called 'reasonably equivalent value.'" *In re Independent*

20  *Clearing House Co.* 77 B.R. at 859. Therefore, "[t]he trustee can avoid the transfers if they were

21  preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent.

22  Therefore, they constitute "property of the estate," and the trustee can recover them. *Id.* at 853 n.17

23  (citations omitted).

24  107.    Debtor was operating a Ponzi scheme that utilized affiliates and several other entities

25  as investors to continue its unlawful business practices by using funds provided by current investors

26  to attract new investors hoping for very high returns. Therefore, the Debtor was running a Ponzi

27  scheme and the Ponzi Scheme Presumption can be utilized to infer that the Debtor had the intent to

28  defraud investors within the meaning of 11 U.S.C. section 548(a)(1). This is evidenced by the Court

**EXHIBIT 3, PAGE 98**

in this Bankruptcy Case declaring that Debtor was operating a Ponzi scheme when it stated the

following:

> It is important to note that this Court has never received any significant and trustworthy evidence that Debtor accomplished meaningful results for its clients, but only anecdotal examples of viable success for its clients. By reviewing the Estate's claims register, there is evidence of consumer claims for the fraud and demanded but undelivered refunds of approximately $500 million. There is ample evidence that the pre-petition Debtor never placed the collected funds into an attorney-client trust account, and that Debtor or its principals simply looted the payments received through the client automatic withdrawals, stiffing both the clients and outside attorneys who may have been working on client cases with the hopes of being paid. There is also evidence before the Court that Debtor was running a Ponzi scheme and paying some outside (or "network") attorneys with funds obtained from new clients. In this case, it appears that some of the "lenders" may have been serving as "investors," hoping for very high returns before "the music stopped." The Ninth Circuit has recently explained, "[b]y definition, a Ponzi scheme is destined to fail because the pool of available investors is not limitless. When the Ponzi scheme operator's pool of investors inevitably runs dry, the scheme collapses and the swindler and their entities often end up in bankruptcy or equitable receivership. *See generally* David R. Hague, Expanding the Ponzi Scheme Presumption, 64 DePaul L. Rev. 867 (2015). In bankruptcy, the court-appointed trustee is tasked with taking immediate control of the entity, ceasing ongoing fraudulent activity, locating and collecting assets for the bankruptcy or receivership estate, and achieving a final, equitable distribution of the remaining assets. *See* 11 U.S.C. § 704; *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 2024 U.S. App. LEXIS 21363, at *15 (9th Cir. Aug. 23, 2024). Finally, there is evidence that Debtor was encumbering (or as some creditors assert, "double or triple selling") their accounts or receivables to multiple lenders. With respect to Greyson's requested Administrative Claim [Dk. 676], and as more fully described in the concurrently entered order denying the claim, there has been no evidence presented that any work allegedly performed by Greyson assisted any clients or added any value to the Estate.

*See, Case 8:23-bk-10571-SC*, Doc 1545 n. 5.

108.    The Ponzi Scheme Presumption establishes a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme." *Merrill v. Abbott* (*In re Independent Clearing House Co*.), 77 B.R. 843, 860 (D. Utah 1987). "Knowledge to a substantial certainty constitutes intent in the eyes of the law, *cf. Restatement (Second) of Torts* § 8A (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them." *Id*. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 (9th Cir. 2024).

14

**EXHIBIT 3, PAGE 99**

109.    "[I]f all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share." *In re Independent Clearing House Co.* 77 B.R. at 859. In such a situation, the use of the defendant's money cannot objectively be called "reasonably equivalent value." *Id*. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can recover them." *Id*. at 853 n.17 (citations omitted).

110.    In addition to the solicitation of investments and lending from the Oxford Knox Defendants, the Debtor's need for capital was so severe that it began borrowing funds through a loan broker named Spot On Consulting, Inc. ("Spot On"). Upon information and belief, Spot On would facilitate loans to LPG from individuals and corporations – sometimes for as little as $5,000 – in exchange for a ten percent (10%) commission on the principal amount of the loan. LPG would then typically promise to pay each lender as much as eight percent (8%) interest per month on the principal balance for twelve months and would then repay the original principal amount at maturity.

111.    Upon further information and belief, LPG borrowed hundreds of thousands of dollars **each week** on these terms beginning in August 2022 and continuing until filing for bankruptcy.

112.    Proof of Claim No. 91 seeking more than $66 million dollars has been filed for the outstanding balances owed on these brokered "loans". This Proof of Claim is incorporated by reference herein.

113.    Based on the Ponzi Scheme presumption the Court can infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. § 548(a)(1). Since the Transfers to the Defendants were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for such transfers, and the Trustee can avoid any such transfers because they were actually fraudulent as to the Debtor's creditors..

**B.    Prepetition Litigation and Creditors**

114.    Debtor's Schedule E/F, filed on April 4, 2023, as Dk. No. 33, lists: (a) 11 unsecured creditors with priority unsecured claims totaling $374,060.04; and (b) 58 nonpriority unsecured creditors with scheduled claims totaling $141,439,158.05.

15

**EXHIBIT 3, PAGE 100**

115.    The claims register in this Bankruptcy Case includes 2,554 proofs of claim, totaling in excess of $424 million of claims asserted against the Estate.

116.    At least 14 UCC-1 statements were of record securing alleged debts of the Debtor as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired or provided evidence of the assignment or sale of substantial portions of the Debtor's future income. They secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (a) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (b) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (c) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 purportedly secured by a UCC statement filed on or about May 28, 2021; and (d) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.

117.    Debtor's balance sheets for the 36 months ending December 31, 2021, show approximately $17,900,000 in total assets at its highest point in November 2021. This amount is significantly less than the $424 million of claims filed.

118.    Debtor's Statement of Financial Affairs, filed on April 4, 2023, as Dk. No. 34, reflects 15 pending lawsuits against Debtor as of the Petition Date. The lawsuits date back to October 18, 2021 (*Fundura v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 613192-2021) and are as recent as March 10, 2023 (*Diverse Capital LLC v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 135614-2023).

**C.    Debtor's Insolvency**

119.    Debtor was insolvent when the Transfers occurred as evidenced by: (a) the 14 UCC-1 statements reflecting secured liens against the Debtor's owned and after-acquired assets and the assignment or sale of substantial portions of the Debtor's future income; (b) the priority and non-priority unsecured debt of nearly $142 million listed in Debtor's schedules; (c) the $424 million of creditor claims filed in this Bankruptcy Case; and (d) Debtor's balance sheets reflecting, at its highest

16

1    point, $17.9 million of assets in November 2021.

2    120.    Moreover, insolvency is presumed as a matter of law where, as in this Bankruptcy

3    Case, the debtor operated a Ponzi scheme. *See, e.g., Glob. Money Mgmt., L.P. v. McDonnold*, No.

4    06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a Ponzi

5    scheme is proven, then the debtor is proven insolvent from the time of its inception").

6                                <u>SPECIFIC ALLEGATIONS</u>

7    121.    Upon information and belief, Oxford Knox and its predecessor Validation were

8    formed to try to meet promises made to investors and lenders to or partners of the Debtor and/or a

9    related entity. Whether these debts arose from traditional loans, "purchases" of receivables from a set

10    of client files, or investments in the Debtor or a particular venture, the Debtor, Tony Diab, and/or a

11    related entity was not able to fulfill the promised obligations.

12    122.    Some Oxford Knox Defendants appear to have lent money to Tony Diab. In the

13    summer of 2021, Defendants Home Energy, Ryan Connet, the Coelho Trust, Jason Williams, Samson

14    Ly, BEW Solar, and Spectrum collectively paid more than $1,000,000 into escrow to fund the down

15    payment on Tony Diab's purchase of Arash Bayrooti's shares in Coast. These escrowed funds were

16    ultimately paid to Mr. Bayrooti on behalf of Mr. Diab; however, the Debtor, and not Mr. Diab, was

17    required to make these payments.

18    123.    Upon information and belief, some amounts may have been repaid to these individuals

19    that advanced money to fund Mr. Diab's purchase of shares in Coast. These debts may have been

20    restructured into assignments of income from groups of files.

21    124.    Also in 2021, Defendants Innovative, MRJR, MFCR, Lifesize, and Karrington became

22    members of Validation according to its Amended and Restated Limited Liability Company

23    Agreement. Upon information and belief, Validation stated purpose was to support the Debtor's

24    marketing affiliates and/or work with law firms like the Debtor. Upon further information and belief,

25    Validation's true purpose and goal was the repayment of amounts owed to its members by the Debtor

26    or Mr. Diab.

27    125.    Validation was ultimately dissolved in September 2022, but while it operated, the

28    Debtor paid it almost one million dollars as shown herein.

17

**EXHIBIT 3, PAGE 102**

126.    While Validation was winding down, Mr. Diab formed a new entity – Oxford Knox in late 2021. Upon information and belief, Oxford Knox was formed for the same purpose as Validation – to nominally support to the Debtor's affiliates while collecting payments from the Debtor for its members.

127.    The original members of Oxford Knox were (i) Buffalo 21; (ii) Obrick, Inc.; (iii) Albright, Inc.; (iv) Final Season; (v) Factor In; (vi) Bae.; (vii) Decacorn; (viii) BEW Solar; (ix) Lexicon; (x) United Partnerships; (xi) Ventura Consulting; and (xii) Summer Cederberg.

128.    Following its formation, the Debtor and/or Mr. Diab made payments directly to Oxford Knox, and/or its members using client funds paid to or collected by the Debtor.

129.    Upon further information and belief, Mr. Diab would direct the Debtor or a related entity to make or direct payments to one or more of the Oxford Knox Defendants either based on invoices for services that were never performed to make the payment appear tax deductible, or paid to a third party that was owned or controlled by a member of Oxford Knox.

130.    All payments to any Oxford Knox Defendant made pre-petition known to the Trustee as of the date this complaint was filed are set forth on **Exhibit 2** hereto and incorporated as if set forth herein.

131.    All payments to any Oxford Knox Defendant made after the Debtor filed for bankruptcy known to the Trustee as of the date this complaint was filed are set forth on **Exhibit 3** hereto and incorporated as if set forth herein.

132.    Upon further information and belief, each member of Oxford Knox contributed "debt" they claimed to be owed by the Debtor to the LLC. In turn, Oxford Knox, which was partially owned and/or controlled by Tony Diab, entered into an agreement with the Debtor that fixed the debt owed to Oxford Knox at $22,000,000 ("Repayment Agreement").

133.    The Repayment Agreement is the basis of, and is attached to, the Proof of Claim No. 818 ("Claim") filed by Oxford Knox herein. A true and accurate copy of the Repayment Agreement from the Claim is attached hereto as **Exhibit 4**.

134.    The Claim states that Oxford Knox received three payments totaling $1,743,686.74 on November 1, 2021, January 1, 2022, and February 1, 2022. The Trustee does not know if these

18

**EXHIBIT 3, PAGE 103**

1    payments reflect payments made directly to the members of Oxford Knox or to third parties on third

2    parties or if these payments were made directly to Oxford Knox from an unknown source. They are

3    identified herein and included in the Transfers that the Trustee seeks to avoid.

4        135.    Hereinafter, any payment to any Oxford Knox Defendant identified herein will be

5    referred collectively as the "Transfers". Specific sets of Transfers such as those made during the

6    ninety-day period preceding the Petition Date may be given a certain name, but they will remain part

7    of the Transfers identified herein.

8        136.    All Transfers identified herein may not relate to the transactions and entities discussed

9    herein, and the Trustee may have filed or may file separate litigation against one or more Defendants

10   based on other transactions or relationships it had with the Debtor. All Transfers to Defendant known

11   to the Trustee are identified herein out of an abundance of caution.

12       137.    As noted above, the Debtor often made payments to unrelated parties to or for the

13   benefit of one or more Oxford Knox Defendants. As a result, some defendants named herein are not

14   identified on an Exhibit as receiving any Transfer but that does not mean that an identified Transfer

15   was not made for their benefit. The following paragraphs supplement the allegations regarding the

16   relationships of certain individuals with other Oxford Knox Defendants.

17       138.    Upon information and belief, Emmett operates or is an officer, member, or owner of

18   Buffalo 21, MRJR, and Coelho Trust. He is also the registered agent for Home Energy.

19       139.    Upon information and belief, Connet is an officer, member, or owner of Buffalo 21,

20   MRJR, and CAT Exteriors.

21       140.    Upon information and belief, Jason Dovalina is an officer, member, or owner of

22   Defendants Obrick, Albright, Karrington, JNR, and A Solution. Rachel Dovalina is related to Mr.

23   Dovalina.

24       141.    Upon information and belief, Gilani is an officer, member, or owner of Final Season,

25   Factor In, AZLS, and Lifesize.

26       142.    Upon information and belief, Ly is an officer, member, or owner of Decacorn and

27   Spectrum.

28       143.    Upon information and belief, Stephens is an officer, member, or owner of BEW Solar.

**EXHIBIT 3, PAGE 104**

144.    Upon information and belief, Lansdale is an officer, member, or owner of Lexicon.

145.    Upon information and belief, Church and Brown are officers, members, or owners of Defendants United Partnerships, Ventura, and MFCR, LLC.

146.    Upon information and belief, Williams is an officer, member, or owner of CAT Exteriors and Spectrum.

## CLAIMS FOR RELIEF

## COUNT ONE

**Avoidance, Recovery, and Preservation of Transfers Made Within the Ninety Day Period**

**Before the Petition Date**

**[11 U.S.C. §§ 547, 550, and 551]**

147.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

148.    In the ninety-day period preceding the Petition Date, the Debtor made transfers of property or payments to one or more of the Oxford Knox Defendants ("90 Day Transfers"). The 90 Day Transfers to the Oxford Knox Defendants known to the Trustee as of the filing date are identified on hereto as **Exhibit 2.**

149.    The Debtor made the 90 Day Transfers to the Oxford Knox Defendants identified on the Exhibit on account of a debt owed to that particular Defendant or to Oxford Knox.

150.    The 90 Day Transfers were made to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because the 90 Day Transfers were payments made on account of debts nominally owed by the Debtor.

151.    A transfer of the Debtor's assets occurred when the 90 Day Transfers were received by the particular Oxford Knox Defendant.

152.    The 90 Day Transfers were made on account of antecedent debt nominally owed by the Debtor to the recipient of the Transfer due to an "investment" or other document evidencing indebtedness. The Debtor's payment obligations to the transferees constituted a "debt" (as defined in the Bankruptcy Code).

153.    The 90 Day Transfers occurred when the Debtor actually was insolvent. However,

20

**EXHIBIT 3, PAGE 105**

1  Plaintiff is also entitled to the presumption of insolvency when the 90 Day Transfers were made

2  pursuant to 11 U.S.C. § 547(f).

3       154.    The 90 Day Transfers were made in the ninety-day period before the Petition Date.

4       155.    To the extent any transfers were made by the Debtor to any Oxford Knox Defendant

5  within the ninety-day period preceding the Petition Date and are not identified herein, Plaintiff

6  reserves the right to avoid and recover such transfers pursuant to 11 U.S.C. §§ 547 and 550.

7       156.    As the holder of an unsecured claim(s) or as party who has not filed a claim, the

8  payment of the 90 Day Transfers to one or more of the Oxford Knox Defendants enabled them to

9  recover more than they would have received if: (i) the Debtor's case was under chapter 7 of the

10  Bankruptcy Code; (ii) the 90 Day Transfers had not been made; and (iii) the debts owed to the Oxford

11  Knox Defendants that received the 90 Day Transfers were paid pursuant to the provisions of the

12  Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case,

13  as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets

14  to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's

15  bankruptcy estate.

16       157.    In accordance with the foregoing, the 90 Day Transfers are avoidable pursuant to 11

17  U.S.C. § 547(b), and may be recovered and preserved for the benefit of the estate pursuant to 11

18  U.S.C. §§ 550 and 551.

19                              **<u>COUNT TWO</u>**

20        **Avoidance, Recovery, and Preservation of Post-Petition Transfers**

21                    **[11 U.S.C. §§ 549, 550, and 551]**

22       158.    Plaintiff realleges and incorporates by reference each and every allegation contained

23  in the preceding paragraphs as though set forth in full herein.

24       159.    This is an action to pursuant to 11 U.S.C. §§ 549 and 550 to avoid and recover

25  unauthorized post-petition transfers made by Debtor to any of the Oxford Knox Defendants ("Post-

26  Petition Transfers").

27       160.    To the extent any Post-Petition Transfers were made by the Debtor to any Oxford

28  Knox Defendant following the Petition Date and are not identified herein, Plaintiff reserves the right

21

**EXHIBIT 3, PAGE 106**

1 to amend the Complaint to identify the Post-Petition Transfers and seek the avoidance and recovery

2 of them pursuant to 11 U.S.C. §§ 549 and 550.

3     161.    Those Post-Petition transfers to Oxford Knox Defendants that are known to the Trustee

4 at this time are identified on **Exhibit 3** hereto.

5 **COUNT THREE**

6 **Avoidance of Debtor's Execution of Repayment Agreement with Oxford Knox As a**

7 **Fraudulent Conveyance**

8 **[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

9     162.    Plaintiff realleges and incorporates by reference each and every allegation contained

10 in the preceding paragraphs as though set forth in full herein.

11     163.    11 U.S.C. § 548(a)(1)(B), in relevant part, permits a debtor or trustee to avoid "any

12 obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date

13 of the filing of the petition" if the debtor failed to receive reasonably equivalent value in exchange

14 for such transfer or obligation and if the debtor:

15     (I)    was insolvent on the date that such transfer was made or such obligation was

16 incurred, or became insolvent as a result of such transfer or obligation;

17     (II)    was engaged in business or a transaction, or was about to engage in business

18 or a transaction, for which any property remaining with the debtor was an unreasonably small

19 capital;

20     (III)    intended to incur, or believed that the debtor would incur, debts that would be

21 beyond the debtor's ability to pay as such debts matured . . .

22     164.    The Debtor executed the Repayment Agreement on or about April 15, 2022, which

23 was within Two-Years of the Petition Date.

24     165.    On or after the date that the Repayment Agreement was executed, the Debtor was or

25 became indebted to the Prepetition Creditors.

26     166.    The Repayment Agreement was executed while the Debtor:

27     a.    was insolvent or became insolvent as a result;

28     b.    was engaged or was about to engage in a transaction for which any property

22

**EXHIBIT 3, PAGE 107**

1    remaining with Debtor was of unreasonably small capital; or

2              c.    intended to incur, or believed that it would incur, debts beyond its ability to

3    pay as such debts matured.

4         167.    The Debtor failed to receive reasonably equivalent value when it executed the

5    Repayment Agreement because the Repayment Agreement purported to consolidate debt owed to the

6    members of Oxford Knox into a single obligation of twenty-two million dollars ($22,000,000.00).

7    Upon information and belief, the stipulated amount of debt is inflated as (i) the Debtor was not liable

8    for some of the debts allegedly owed to the members of Oxford Knox that were reduced to a sum

9    certain in the Repayment Agreement, (ii) the debts allegedly owed to the Members represented equity

10   investments in entities related to the Debtor that were subsequently treated as debt in the Repayment

11   Agreement; and/or (iii) the debts owed to the Members consolidated in the Repayment Agreement

12   arose from illegal or otherwise voidable transactions such as file purchases.

13        168.    The Repayment Agreement's requirement that the Debtor pay Oxford Knox the sum

14   of ten million dollars ($10,000,000.00) upon a sale of the business is additional evidence that the

15   debts the Members claimed to be owed were truly equity investments and not debt.

16                              **COUNT FOUR**

17   **Avoidance, Recovery, and Preservation of Two-Year Transfers Made With Intent to Defraud**

18                      **[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

19        169.    Plaintiff realleges and incorporates by reference each and every allegation contained

20   in the preceding paragraphs as though set forth in full herein.

21        170.    The Transfers were property of the Debtor's Estate prior to their conveyance to the

22   one or more of the Oxford Knox Defendants. The Transfers to the Oxford Knox Defendants made

23   within Two-Years of the Petition Date ("Two-Year Transfers") that are known to the Trustee are

24   identified on **Exhibit 2** hereto and incorporated by reference herein.

25        171.    When the Two-Year Transfers were made, the Debtor was or became indebted include

26   the Prepetition Creditors.

27        172.    The Two-Year Transfers occurred when the Debtor was insolvent or was rendered

28   insolvent as a result of the Transfers.

                              23                    **EXHIBIT 3, PAGE 108**

173.   The Two-Year Transfers to the Oxford Knox Defendants were made with actual intent to hinder, delay or defraud the creditors of Debtor because the Debtor was operating a Ponzi scheme which permits the Court to infer that the Debtor's intent was fraudulent within the meaning of 11 U.S.C. section 548(a)(1).

174.   The Two-Year Transfers are avoidable as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, and 551 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against Debtor's Estate under 11 U.S.C. § 502, or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

175.   The Two-Year Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## COUNT FIVE

### Avoidance, Preservation, and Recovery of Constructively Fraudulent Two-Year Transfers

### 11 U.S.C. §§ 548(a)(1)(B), 550 & 551

176.   Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

177.   The Two-Year Transfers were made within Two-Years before the Petition Date.

178.   Debtor did not receive reasonably value in exchange for the Two-Year Transfers because (i) the Debtor was not liable on the debts originally owed to some Defendants, (ii) the debts allegedly owed to one or more Defendants arose from equity investments in entities related to the Debtor that were subsequently treated as the Debtor's debt.

179.   The Two-Year Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

180.   When the Two-Year Transfers occurred, Debtor's business was undercapitalized, and Debtor was engaged in business for which its capital was unreasonably small.

181.   When the Two-Year Transfers occurred, Debtor had incurred or was about to incur debts that were beyond its ability to pay. The allegations in the preceding paragraphs are supported

24

**EXHIBIT 3, PAGE 109**

1   by the fact that the Debtor was consistently borrowing money from merchant cash advance lenders,

2   purporting to sell the same groups of receivables to multiple parties, and as of August 2022 had begun

3   a Ponzi scheme of borrowing through Spot On as discussed herein.

4       182.    At the time each Two-Year Transfer was made, Debtor was indebted to one or more

5   creditors that held a claim against Debtor on the date of each Two-Year Transfer and on the Petition

6   Date.

7       183.    Plaintiff alleges that Defendants did not receive the Two-Year Transfers in good faith,

8   for value, and without knowledge of their avoidability.

9       184.    Each Defendant knew that the Debtor was a law firm who was required by law to

10  escrow client payments until earned. However, each Defendant demanded and received payment from

11  client payments that had not been earned because they were paid by the Debtor, Vulcan, and/or Coast

12  or were paid directly from a payment processor for the Debtor such that the funds were never

13  conveyed to the Debtor and placed in escrow.

14      185.    Each Defendant had to know or should have known that they were being paid with

15  client funds that had not been placed into trust and been disbursed before they were earned.

16      186.    Each Defendant knew or should have known that were receiving payment on a debt

17  that was not valid or enforceable at law to the extent it arose from an alleged "purchase" of receivables

18  related to the Debtor's client files.

19      187.    Based on the foregoing, Plaintiff may recover and preserve the avoided Two-Year

20  Transfers from Defendant as the initial transferee or, alternatively, as the subsequent transferee for

21  the benefit of the Estate under 11 U.S.C. §§ 550 and 551 from Defendant.

22              <u>**COUNT SIX**</u>

23      **Avoidance, Preservation, and Recovery of Transfers Made In the Past Four Years**

24      **11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07**

25      188.    Plaintiff realleges and incorporates by reference each and every allegation contained

26  in the preceding paragraphs as though set forth in full herein.

27      189.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor

28  which are voidable under applicable law by an unsecured creditor of Debtor, including under

25

**EXHIBIT 3, PAGE 110**

California Civil Code §§ 3439.04(a)(1) and 3439.05.

190.   The Transfers occurred within four years prior to the Petition Date and are identified on **Exhibit 2**.

191.   On or after the date that such Transfer were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

192.   Despite Debtor's obligation to the Prepetition Creditors, Debtor made the Transfers to Defendants.

193.   The Transfers to Defendants were made with actual intent to hinder, delay or defraud the creditors of Debtor as the Debtor was operating a Ponzi scheme.

194.   Defendants' conduct relating to the Transfers was done with oppression, fraud and malice, as defined in California Civil Code section 3294, entitling Plaintiff to exemplary and punitive damages.

195.   The Transfers are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against its Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

196.   Accordingly, the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and Cal. Civ. Code § 3439.07.

197.   Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(2) and 3439.05.

198.   Debtor did not receive reasonably equivalent value in exchange for the Transfers. The Transfers were made to (i) entities that were not creditors of the Debtor, (ii) entities that had made equity or other investments with the Debtor or in assets, and (iii) entities who claimed to be owed far more than any value that was ever given to the Debtor.

**EXHIBIT 3, PAGE 111**

199. At the time each Transfer was made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

200. At the time each Transfer was made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

201. At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

202. The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

203. Plaintiff alleges that Defendants did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

204. Each Defendant knew that the Debtor was a law firm who was required by law to escrow client payments until earned. However, each Defendant demanded and received payment from client payments that had not been earned because they were paid by the Debtor, Vulcan, and/or Coast or were paid directly from a payment processor for the Debtor such that the funds were never placed in trust.

205. Each Defendant had to know or should have known that they were being paid with client funds that had not been placed into trust and been disbursed before they were earned.

206. Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

207. Based on the foregoing, Plaintiff may recover and preserve the Transfers from the Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

/ / /

/ / /

/ / /

**EXHIBIT 3, PAGE 112**

## COUNT SEVEN

**Avoidance, Recovery, and Preservation of Transfers Made in the Past Four Years**

**[11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.05, and 3439.07]**

208.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

209.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(2) and 3439.05.

210.    The Transfers were made within four years of the Petition Date are identified on **Exhibit 2** and incorporated as if set forth herein.

211.    Debtor did not receive reasonably equivalent value in exchange for the Transfers as (i) the Debtor was not liable on the debts originally owed to some Defendants, (ii) the debts allegedly owed to one or more Defendants arose from equity investments in entities related to the Debtor that were subsequently treated as the Debtor's debt.

212.    The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

213.    At the time each Transfer was made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

214.    At the time each Transfer was made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

215.    At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

216.    Plaintiff alleges that Defendants did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

217.    Each Defendant knew that the Debtor was a law firm who was required by law to escrow client payments until earned.

**EXHIBIT 3, PAGE 113**

218.    Each Defendant had to know or should have known that they were being paid with client funds that had not been placed into trust and been disbursed before they were earned.

219.    Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

220.    Based on the foregoing, Plaintiff may recover and preserve the Transfers from the Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

## COUNT EIGHT

**Avoidance, Recovery, and Preservation of Fraudulent Transfers Made to or for the Benefit of Defendants Gilani and Dovalina Arising from use of American Express Card**

**[11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), and 550]**

221.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

222.    On or about November 28, 2021 the Debtor applied for a business platinum card from American Express ("AmEx").

223.    AmEx granted the Debtor's application and opened a credit line ending in 8-51001 ("Account") in the name of "LPG PC."  AmEx issued cards to three individuals on this Account: Dovalina, Gilani, and Diab.

224.    From the opening of the Account in early 2022 to May and June 2022, Gilani regularly charged hundreds of thousands of dollars to the Account each month.

225.    While some charges to the Account may have been related to the Debtor and its operations, most of the charges do not appear to have benefitted the Debtor or were not incurred for the Debtor.

226.    Upon information and belief, Gilani regularly charged hundreds of thousands of dollars on the Account each month to pay vendors that do not appear to have done any work for the Debtors.

227.    Other expenses charged to the Account by Dovalina and/or Gilani appear personal in nature such as charges at clothing stores, tours/tickets, and dining.

**EXHIBIT 3, PAGE 114**

228.    The charges made by each cardholder were itemized separately on the statements from American Express. The monthly charges on the Account for Dovalina and Gilani are stated below.

| Statement Closing Date | Gilani | Dovalina |
|---|---|---|
| 01.19.2022 | $14,812.41 | $1,593.83 |
| 02.16.2022 | $215,948.66 | $2,146.22 |
| 03.18.2022 | $207,846.79 | $1,413.61 |
| 04.18.2022 | $7,349.69 | $3,088.72 |
| 05.19.2022 | $29.98 | $94.55 |
| | $445,987.53 | $8,336.93 |

229.    The Debtor made payments on the Account to American Express. The payments from the Debtor to American Express to pay for all charges on the Account are identified on **Exhibit 5**.

230.    A significant portion of the payments to Am Ex were made to or for the benefit of Gilani and/or Dovalina and provided no benefit to the Debtor. The portion of the total payments made to AmEx that were made to pay for charges made to or for the benefit of Gilani and/or Dovalina are referred to herein as the "AmEx Transfers."

231.    The AmEx Transfers were made to or for the benefit of Gilani and/or Dovalina to the extent they paid American Express for charges made to the Account that were only or primarily for the benefit of Gilani and/or Dovalina.

232.    The funds used to make the AmEx Transfers were property of the Debtor's Estate prior to their conveyance to American Express.

233.    The AmEx Transfers occurred within the Two-Years prior to the Petition Date.

234.    On or after the date that the AmEx Transfers were made the Debtor was or became indebted include the Prepetition Creditors.

235.    The AmEx Transfers occurred when the Debtor was insolvent or was rendered insolvent as a result of the AmEx Transfers.

236.    The AmEx Transfers were made with actual intent to hinder, delay or defraud the creditors of Debtor because the Debtor was operating a Ponzi scheme which permits the Court to infer that the Debtor's intent was fraudulent within the meaning of 11 U.S.C. section 548(a)(1).

237.    Debtor did not receive reasonably value in exchange for the AmEx Transfers as Gilani

30

**EXHIBIT 3, PAGE 115**

1  and Dovlina were the parties that made charges on the Account for their personal benefit.

2      238.    When the AmEx Transfers occurred, Debtor's business was undercapitalized and

3  Debtor was engaged in business for which its capital was unreasonably small.

4      239.    When the AmEx Transfers occurred, Debtor had incurred or was about to incur debts

5  that were beyond its ability to pay. The allegations in the preceding paragraphs are supported by the

6  fact that the Debtor was having to borrow money regularly from merchant cash advance lenders and

7  to accept "investments" from third parties in exchange for promised future returns.

8      240.    At the time each AmEx Transfer was made, Debtor was indebted to one or more

9  creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

10     241.    Based on the foregoing, the AmEx Transfers were constructively fraudulent as to the

11 Debtor's creditors to the extent they were made to or for the benefit of Gilani and/or Dovalina.

12     242.    Based on the foregoing, Plaintiff may avoid, preserve, and recover the avoided AmEx

13 Transfers from Gilani and Dovalina pursuant to 11 U.S.C. §§ 548(a)(1)(A) and (B); 550 and 551.

14                          <u>COUNT NINE</u>

15          **Objection to Proof of Claim No. 818 of Oxford Knox, LLC**

16                  **[11 U.S.C. § 502(b) and (d)]**

17     243.    Plaintiff realleges and incorporates by reference each and every allegation contained

18 in the preceding paragraphs as though set forth in full herein.

19     244.    11 U.S.C. § 502(b) permits a Bankruptcy Court to determine the amount of a proof of

20 claim following the filing of an objection.

21     245.    The Trustee has asked the Court to avoid the Debtor's execution of the Repayment

22 Agreement as a fraudulent conveyance pursuant to 11 U.S.C. § 548. The Repayment Agreement is

23 the basis for Oxford Knox's Claim.

24     246.    If the Trustee's avoidance action is successful, the Repayment Agreement would not

25 be enforceable against the Estate.

26     247.    The Oxford Knox Claim is also objected to and is subject to disallowance pursuant to

27 11 U.S.C. § 502(d) because Oxford Knox and its members that created the Claim received transfers

28 that are avoidable under 11 U.S.C. §§ 544, 547, 548, and/or 549.

**EXHIBIT 3, PAGE 116**

248.    The amount of the amount of the transfers identified herein has not been returned to the Estate.

**On All Claims for Relief:**

1.    Avoiding the Debtor's obligations under the Agreement and avoiding recovering, and preserving the Payments to the Defendant in such amounts as the Court may determine ("AmEx Transfers");

2.    Awarding pre-judgment and post-judgment as permitted;

3.    Granting any other and such further relief as the Court deems just and proper.

4.    Awarding attorneys' fees as provided by contract or applicable law;

5.    Awarding costs of suit incurred here; and

6.    Granting any other and further relief as the Court deems just and proper.

**On the First and Second Claims for Relief:**

1.    Avoiding, recovering, and preserving the 90 Day Transfers and Post-Petition Transfers to the Defendants in such amounts as the Court may determine pursuant to applicable law;

**On the Third Claim for Relief:**

2.    Avoiding and preserving the Debtor's execution of the Repayment Agreement as a fraudulent conveyance pursuant to 11 U.S.C. §§ 548, 550, and 551 for the reasons stated herein;

**On the Fourth Through Eight Claims for Relief:**

3.    Avoiding, recovering, and preserving the Transfers to the Defendants in such amounts as the Court may determine pursuant to applicable law;

**On the Ninth Claim for Relief:**

4.    Sustaining the Plaintiff's Objection to the Claim of Oxford Knox for the reasons stated herein;

**On All Claims for Relief:**

5.    Awarding punitive and exemplary damages according to proof;

6.    Awarding pre-judgment interest at the maximum legal rate;

7.    Awarding post-judgment interest at the maximum legal rate from the date of the last Transfer until the judgment is paid in full;

32

**EXHIBIT 3, PAGE 117**

1    8.    Awarding costs of suit incurred herein; and

2    9.    Granting any other and further relief as the Court deems just and proper.

3

Dated:  March 19, 2025                    Respectfully submitted,

4                                          DINSMORE & SHOHL LLP

5

6                                          By: /s/ Tyler Powell
                                               Tyler Powell [pro hac vice]
7                                              Yosina M. Lissebeck
                                           Special Counsel to Richard A. Marshack, Trustee of
8                                          the LPG Liquidation Trust

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 3, PAGE 118**

# EXHIBIT 1

1   CHRISTOPHER B. GHIO (259094)
    christopher.ghio@dinsmore.com
2   CHRISTOPHER CELENTINO (131688)
    christopher.celentino@dinsmore.com
3   YOSINA M. LISSEBECK (201654)
    yosina.lissebeck@dinsmore.com
4   DINSMORE & SHOHL LLP
5   655 West Broadway, Suite 800
    San Diego, California 92101
6   Tele:  619.400.0500
    Fax:  619.400.0501
7

8   Sarah S. Mattingly (Ky. Bar 94257)
    sarah.mattingly@dinsmore.com
9   DINSMORE & SHOHL, LLP
    101 S. Fifth Street, Suite 2500
10  Louisville, Kentucky 40202
    Tele: 859-425-1096
11  Fax: 502-585-2207
12  (Admitted pro hac vice)

13  Special Counsel to Richard A. Marshack

<table>
<tr><td>
FILED & ENTERED

JUN 03 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall     DEPUTY CLERK
</td></tr>
</table>

14              **UNITED STATES BANKRUPTCY COURT**

15      **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

16  In Re                              | Case No: 23-bk-10571-SC

17                                     | Chapter 11

18                                     | **ORDER GRANTING MOTION FOR
19  The Litigation Practice Group P.C., | ENTRY OF PROTECTIVE ORDER AND
                                        | THE PROTECTIVE ORDER**
20              Debtor(s),

21                                     | Date:    May 23, 2024
                                       | Time:    1:30 p.m.
22                                     | Judge:   Hon. Scott C. Clarkson
23                                     | Place:   Courtroom 5C (via Zoom)[1]
                                       |          411 West Fourth Street
24                                     |          Santa Ana, CA 92701
25

26

27  ─────────────────

28  [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
    publicly posted hearing calendar, which may be viewed online at:
    http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

The Court has read and considered the Notice of Motion and Motion for Entry of Protective Order (the "Motion") filed by Richard A. Marshack, in his capacity as the Chapter 11 Trustee (the "Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C., on May 2, 2024, pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c)(1), as Dk. No. 1164 ("Motion"), and has found good cause to grant the Motion.

IT IS HEREBY ORDERED that:

1.    The Motion is granted;

2.    The below Protective Order shall apply to any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future; and

3.    Govern the discovery conducted therein.

## PROTECTIVE ORDER

**1.    DEFINITIONS**

1.1    "Confidential Information" as used in this Protective Order shall mean documents and other information (regardless of how generated, stored or maintained) that a Party or non-party reasonably believes to contain or reflect non-public financial or business information, bank records, financial records, such as social security numbers, non-public financial or personal information of a Party or non-party, account numbers, sensitive digital information and identifiers, information subject to confidentiality agreements or provisions other than this Protective Order, and other non-public research, development, or commercial information that derives value or avoids injury by virtue of not being known to the public.

1.2    This "Action" is defined and hereby means any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future.

1.3    "Designating Party" means a Party or non-party that designates Confidential Information during the Action.

1.4    "Receiving Party" means a Party that receives Confidential Information during the Action.

2

1.5    "Party" or "Parties" means person or entity subject to this Protective Order.

**2.      SCOPE OF THIS PROTECTIVE ORDER**

2.1    Unless otherwise ordered, this Protective Order shall govern certain documents and other products of discovery obtained in the Action from the Parties there to, and from third parties. As well as certain information copied or derived therefrom, excerpts, summaries or compilations thereof, including, but not limited to, documents voluntarily exchanged as part of early settlement discussions, documents produced pursuant to initial disclosures, requests authorized by the Federal Rules of Civil Procedure made applicable herein by the Federal Rules of Bankruptcy Procedure, answers to interrogatories, deposition transcripts, responses to requests for production, responses to requests for admission, subpoenas, affidavits, declarations, expert reports, and other such material and information as may be produced during the course of the Action and designated as Confidential Information.

**3.      DESIGNATION OF CONFIDENTIAL INFORMATION**

3.1    This Protective Order shall govern the production and handling of any Confidential Information in this Action. Any Party or non-party who produces Confidential Information in this Action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Protective Order. Whenever possible, the Designating Party must designate only those portions of a document, written discovery responses, deposition, transcript, or other material that contain the Confidential Information and refrain from designating entire documents. Regardless of any designations made hereunder, the Designating Party is not otherwise restricted from use or disclosure of its Confidential Information outside of this Action or for any business purposes. In addition, any Party may move to modify or seek other relief from any of the terms of this Protective Order if it has first tried in writing and in good faith to resolve its needs or disputes with the other Parties or Party as the case may be under the terms of this Protective Order. Further, nothing in this Protective Order shall prevent a Party from redacting documents consistent with the Federal Rules of Civil Procedure and utilizing the documents as needed through-out the Action.

3.2    <u>Application to Non-Parties:</u> Before a non-party is given copies of documents or materials designated as Confidential Information or Attorneys' Eyes Only as permitted hereunder, it

3

**EXHIBIT 3, PAGE 122**

must first sign an acknowledgment to be bound to these terms that is attached hereto as <u>Exhibit</u> A; if it fails to do so, the Parties to this Action must resolve any such dispute before making disclosure of designated information as permitted hereunder to the non-party. If a non-party wishes to make designations hereunder, it must first sign attached <u>Exhibit A.</u>

       3.3    <u>Timing and Provisional Protection:</u> Designations of Confidential Information may be made at any time. To avoid potential waiver of protection hereunder, the Designating Party should designate documents or materials containing Confidential Information at the time of production or disclosure, including on the record during the taking of any deposition. Deposition testimony will be deemed provisionally protected for a period of thirty (30) days after the transcript is released to the Parties by the court reporter, although the Parties may agree at any time to different timelines of provisional protection of information as Confidential or Attorneys' Eyes Only as part of one or more specific depositions. To retain any designations beyond the provisional period, a Designating Party must designate specific pages and lines of deposition testimony before the provisional period has expired. Such designations must be made in writing so that all counsel and court reporters may append the designation to all copies of the transcripts.

       3.4    <u>Manner of Designation:</u> Confidential Information may be designated hereunder in any reasonable manner or method that notifies the Receiving Party of the designation level and identifies with specificity the information to which the designation applies. If made verbally, the Designating Party must promptly confirm the designation in writing. Whenever possible, the Designating Party should stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image that contains Confidential Information.

       **4.**    **CHALLENGES TO DESIGNATED INFORMATION**

       4.1    In the event that a Receiving Party disagrees at any time with any designation(s) made by the Designating Party, the Receiving Party must first try to resolve such challenge in good faith on an informal basis with the Designating Party. The Receiving Party must provide written notice of the challenge and the grounds therefor to the Designating Party, who must respond in writing to the challenge within fifteen (15) days. At all times, the Designating Party carries the burden of establishing the propriety of the designation and protection level. Unless and until the challenge is

4

1 resolved by the Parties or ruled upon by the Court, the designated information shall remain protected

2 under this Protective Order. The failure of any Receiving Party to challenge a designation does not

3 constitute a concession that the designation is proper or an admission that the designated information

4 is otherwise competent, relevant, or material.

5      **5.**      **LIMITED ACCESS/USE OF PROTECTED INFORMATION**

6      5.1    <u>Restricted Use:</u> Information that is produced or exchanged in the course of the Action

7 and designated under this Protective Order may be used for preparation for trial and preparation for

8 any appeal of any and all matters in the Action, as well as related settlement negotiations, and for no

9 other purpose, without the written consent of the Designating Party. No Confidential Information may

10 be disclosed to any person except in accordance with the terms of this Protective Order, unless the

11 parties are co-counsel or have entered into joint defense agreements. All persons in possession of

12 Confidential Information agree to exercise reasonable care with regard to the custody, use, or storage

13 of such information to ensure that its confidentiality is maintained. This obligation includes, but is

14 not limited to, the Receiving Party providing to the Designating Party prompt notice of the receipt of

15 any subpoena that seeks production or disclosure of any designated information and consulting with

16 the Designating Party before responding to the subpoena. Any use or disclosure of Confidential or

17 Attorneys' Eyes Only information in violation of the terms of this Protective Order may subject the

18 disclosing person or party to sanctions.

19      5.2    <u>Access to "Confidential" Information:</u> The Party(ies) and all persons subject to this

20 Protective Order agree that information designated as "CONFIDENTIAL" may only be accessed or

21 reviewed by the following:

22      a)      The Court, its personnel, and court reporters;

23      b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a

24 joint defense agreement in the Action and their employees who assist counsel of record, or co-counsel

25 in the Action and are informed of the duties and obligations imposed hereunder;

26      c)      The Parties, including their clients, agents and employees who are assisting or have

27 reason to know of the Action;

28 / / /

**EXHIBIT 3, PAGE 124**

d)    Experts or consultants employed by the Parties or their counsel, or co-counsel, for purposes of an Action, so long as each such expert or consultant has signed attached <u>Exhibit A;</u> and

e)    Other witnesses or persons with the Designating Party's consent or by court order.

5.3   <u>Access to "Attorneys' Eyes Only" Designations:</u> The Parties and all persons subject to this Protective Order agree that information designated as "ATTORNEYS' EYES ONLY" may only be accessed or reviewed by the following:

a)    The Court, its personnel, and court reporters;

b)    Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record in the Action and are informed of the duties hereunder;

c)    In-house counsel for any Party in the Action and Richard A. Marshack, as Chapter 11 Trustee of The Litigation Practice Group P.C. who is informed of the duties and obligations imposed hereunder;

d)    Experts or consultants employed by the Parties or their counsel, or co-counsel for purposes of the Action,  and so long as each such expert or consultant has signed attached <u>Exhibit A;</u> and

e)    Other witnesses or persons to whom the Designating Party agrees in advance of disclosure or by court order.

5.4   <u>Non-Waiver Effect of Designations:</u> Neither the taking of, nor the failure to take, any action to enforce the provisions of this Protective Order, nor the failure to object to any designation, will constitute a waiver of any Party(ies)'s claim or defense in the Action or any other action or proceeding, including, but not limited to, a claim or defense that any designated information is or is not Confidential, is or is not entitled to particular protection, or embodies or does not embody information protectable by law.

5.5   <u>In-Court Use of Designated Information:</u> If information designated under this Protective Order will or may be offered in evidence at a hearing or trial related to any matter in the Action, then the offering party must give advance notice to the party or non-party that designated prior to offering the information so that any use or disclosure may be addressed in accordance with

6

**EXHIBIT 3, PAGE 125**

1    the Court's case-management or other pre-trial order, or by a motion *in limine.* Nothing in this

2    Protective Order shall be construed as a waiver by a Party of any objections that may be raised as to

3    the admissibility at trial of any evidentiary materials.

4        **6.    CLAW-BACK REQUESTS**

5        6.1    <u>Failure to Make Designation:</u> If, at any time, a Party or non-party discovers that it

6    produced or disclosed Confidential Information without designation, it may promptly notify the

7    Receiving Party and identify with particularity the Confidential Information to be designated and the

8    level of designation (the claw-back notification). The Receiving Party may then request substitute

9    production of the newly-designated information. Within thirty (30) days of receiving the claw-back

10   notification, the Receiving Party must: (1) certify to the Designating Party it has appropriately marked

11   or, if substitute production has been requested, destroyed all unmarked copies that it received, made,

12   and/or distributed; and (2) if it was practicably unable to mark or destroy any information because

13   disclosures occurred while the Receiving Party was under no duty of confidentiality under the terms

14   of this Protective Order regarding that information, the Receiving Party must reasonably provide as

15   much information as practicable to aid the Designating Party in protecting the information,

16   consistently with the Receiving Party's attorney-client, work-product, and/or trial-preparation

17   privileges.

18       6.2    <u>Inadvertent Production of Privileged Information:</u> If, at any time, a Party discovers

19   that it produced information that it reasonably believes is subject to protection under the

20   attorney/client, work-product, or trial-preparation privileges, then it must promptly notify each

21   Receiving Party of the claim for protection, the basis for it, amend its privilege log accordingly, and

22   comply with Fed. R. Civ. P. 26(b)(5). Whenever possible, the producing party must produce substitute

23   information that redacts the information subject to the claimed protection. The Receiving Party must

24   thereupon comply with Fed. R. Civ. P. 26(b)(5)(B) as to the information subject to the claimed

25   protection.

26   / / /

27   / / /

28   / / /

7

**EXHIBIT 3, PAGE 126**

## 7.    DURATION/CONTINUED RESTRICTIONS

7.1    <u>Handling of Designated Information Upon Conclusion of the Main Bankruptcy Case:</u> Upon conclusion of the Main Bankruptcy Case, by way of dismissal or closing of the case, the Designating Party(ies) is/are responsible for ensuring that any Party or person to whom the Designating Party shared or disclosed designated information in any of the matters under the Action returns or destroys all of its copies, regardless of the medium in which it was stored. No witness or Party may retain designated information that it received from any other Party or non-party under this Protective Order; only counsel of record, or co-counsel, are the authorized agents who may retain one copy for their respective legal files, and who must also describe to the Designating Party the extra steps taken to protect its legal file containing paper and/or electronic copies of the designated information so that it is not accessed, used, or disclosed inconsistently with the obligations under this Protective Order. This provision does not apply to the Court or Court staff. Moreover, this provision does not apply to Trustee, who may retain and use – consistent with this Order – Confidential Information received in any Action during the entirety of the Bankruptcy.

7.2    <u>Continued Restrictions Under this Protective Order:</u> The restrictions on disclosure and use of Confidential Information shall survive the conclusion of the Bankruptcy case and any matter in the Action.

## 8.    PRIVILEGED OR PROTECTED INFORMATION

8.1    Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, the work-product protection, or any other legally cognizable privilege (a "Privilege or Protection").  If information subject to a claim of Privilege or Protection is inadvertently produced, pursuant to Federal Rule of Evidence 502(d) such production shall not constitute a waiver of, or estoppel as to, any claim of Privilege or Protection for such information or any other information that may be protected from disclosure by a Privilege or Protection in any proceeding.

8.2    If a Party receives a document that appears to be subject to a Privilege or Protection, then it shall refrain from examining the document any more than is essential to ascertain if it is privileged or protected and shall promptly notify the producing Party in writing that the receiving

8

Party possesses material that appears to be subject to a Privilege or Protection. The producing Party shall have seven (7) days after receiving such notice to assert a Privilege or Protection over the identified material. If the producing Party does not assert a claim of Privilege or Protection within the seven (7)-day period, the material in question shall be deemed not privileged or protected.

8.3    If a producing Party has produced a document subject to a claim of Privilege or Protection, upon written request by the producing Party, the document for which a claim of Privilege or Protection is made shall be sequestered or destroyed to the extent reasonably practicable, and the receiving Party shall not use the document for any purpose other than in connection with analyzing or disputing a claim of Privilege or Protection or in connection with a motion to compel the production of the document.

8.4    The receiving Party sequestering or destroying such material may then move the Court for an order compelling production of the material. The applicable producing Party bears the burden of establishing the applicable Privilege or Protection of any clawed-back document or information as and to the same extent that it would have borne such burden had it not produced the document or information.  Nothing in this Protective Order shall limit the Court's right or any receiving Party's right to request an in camera review of any information subject to a claim of Privilege or Protection.

###

Date: June 3, 2024

Scott C. Clarkson
United States Bankruptcy Judge

9

1

2

3

4

5

6                                EXHIBIT "A"

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Yosina M. Lissebeck (State Bar No. 201654)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone:  619.400.0500
   Facsimile:  619.400.0501
5  christopher.ghio@dinsmore.com
   christopher.celentino@dinsmore.com
6  yosina.lissebeck@dinsmore.com

7  Sarah S. Mattingly (Ky. Bar 94257)
   DINSMORE & SHOHL, LLP
8  101 S. Fifth Street, Suite 2500
   Louisville, KY 40202
9  Telephone: 859-425-1096
   Facsimile: 502-585-2207
10 Sarah.mattingly@dinsmore.com
   (Admitted pro hac vice)

11
   Special Counsel to Richard A. Marshack,
12 Chapter 11 Trustee

13

14

15                 **UNITED STATES BANKRUPTCY COURT**

16                 **CENTRAL DISTRICT OF CALIFORNIA**

17

18 | In Re                                | Case No. 8:23-BK-10571-SC
19 |                                      | Chapter 11
20 | The Litigation Practice Group P.C.,  | **EXHIBIT A TO STIPULATED ORDER**
   |                  Debtor(s),          |
21 |                                      | Date:   May 23, 2024
22 |                                      | Time:   1:30 p.m.
   |                                      | Judge:  Hon. Scott C. Clarkson
23 |                                      | Place:  Courtroom 5C[1] - Via Zoom
24 |                                      |         411 W. Fourth Street
   |                                      |         Santa Ana, CA  92701
25

26

27
   _____

28 [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
   publicly posted hearing calendar, which may be viewed online at:
   http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

                                            1

This is to certify that:

    (a)    I am being given access to Confidential Information pursuant to the Stipulated Protective Order that was entered into the main bankruptcy case for Litigation Practice Group, but which is binding and controlling as set forth by the Court's Order on any and all contested matters and any and all litigation commenced by Trustee;

    (b)    I have read the Stipulated Protective Order; and

    (c)    I agree to be bound by the terms and conditions thereof, including, without limitation, to the obligations regarding the use, non-disclosure and return of such Confidential Information. I further agree that in addition to being contractually bound by the Stipulated Protective Order, I am subject to the jurisdiction of the above reference Court for any violation thereof.

Date: _____

 

                          _____
                                   Signature

                          _____
                                Printed Name

2

# EXHIBIT 2

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| **Oxford Knox, LLC** | UnionBank | The Litigation Practice Group PC | X4858 | 12/28/2021 | | $30,179.55 | N |
| **Oxford Knox, LLC** | Chase | The Litigation Practice Group PC | X3158 | 7/29/2022 | | $10,000.00 | N |
| | | | | | **Total** | **$40,179.55** | |
| | | | | | | | |
| **Buffalo 21 Partners Inc.** | UnionBank | The Litigation Practice Group PC; IOLTA | X4874 | 1/13/2022 | 122 | $54,753.19 | N |
| | | | | | **Total** | **$54,753.19** | |
| | | | | | | | |
| **Jason Dovalina** | Chase | Vulcan Consulting Group LLC | X3588 | 4/1/2021 | 1032 | $11,250.00 | N |
| **Jason Dovalina** | Bank of the West | The Litigation Practice Group PC | X3441 | 5/4/2021 | | $55,000.00 | N |
| **Jason Dovalina** | Chase | Vulcan Consulting Group LLC | X3588 | 5/13/2021 | | $20,000.00 | N |
| **Jason Dovalina** | Chase | Vulcan Consulting Group LLC | X5909 | 8/18/2021 | | $25,000.00 | N |
| **Jason Dovalina** | American Express | LPG PC; Syed Gilani | X1001 | 12/19/2021 | | $300.00 | N |
| **Jason Dovalina** | American Express | LPG PC; Syed Gilani | X1001 | 12/19/2022 | | $350.00 | N |
| | | | | | **Total** | **$111,900.00** | |
| | | | | | | | |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 3/15/2021 | | $45,000.00 | N |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 4/1/2021 | | $45,000.00 | N |
| **Sye Gilani** | Bank of the West | The Litigation Practice Group PC | X3441 | 4/19/2021 | 1021 | $60,000.00 | N |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 5/5/2021 | 4490 | $30,000.00 | N |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 5/12/2021 | 4492 | $50,000.00 | N |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 5/13/2021 | | $90,000.00 | N |
| **Sye Gilani** | Bank of the West | The Litigation Practice Group PC | X3441 | 6/2/2021 | 1124 | $16,000.00 | N |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 6/2/2021 | 1012 | $108,000.00 | N |
| **Sye Gilani** | UnionBank | The Litigation Practice Group PC | X4858 | 2/11/2022 | | $5.02 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 2/18/2022 | | $7.16 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 2/25/2022 | | $13.82 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 3/4/2022 | | $7.52 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3158 | 3/4/2022 | 10989 | $8,000.00 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 3/18/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 3/24/2022 | | $12.18 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 4/18/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 4/21/2022 | | $5.02 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 4/28/2022 | | $14.06 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 5/19/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 6/16/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 6/30/2022 | | $14.06 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 7/8/2022 | | $7.52 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 7/14/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 7/29/2022 | | $7.16 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 8/19/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 8/26/2022 | | $7.16 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 9/9/2022 | | $7.50 | N |
| | | | | | **Total** | **$452,130.92** | |
| | | | | | | | |
| **Samson Ly** | Chase | The Litigation Practice Group PC | X3158 | 11/28/2022 | 1272 | $20,000.00 | N |
| **Samson Ly** | Chase | The Litigation Practice Group PC | X3158 | 12/21/2022 | 1277 | $20,000.00 | Y |
| **Samson Ly** | Chase | The Litigation Practice Group PC | X3158 | 12/21/2022 | 1278 | $20,000.00 | Y |
| | | | | | **Total** | **$60,000.00** | |
| | | | | | | | |
| **Bew Solar Management LLC** | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/5/2021 | | $6,286.87 | N |
| **Bew Solar Management LLC** | Chase | The Litigation Practice Group PC | X3158 | 1/19/2022 | | $7,463.63 | N |
| **Bew Solar Management LLC** | Chase | The Litigation Practice Group PC | X3158 | 2/28/2022 | 11031 | $2,964.29 | N |
| | | | | | **Total** | **$16,714.79** | |

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| Lexicon Consulting LLC | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 12/2/2021 | 320 | $5,074.94 | N |
| Lexicon Consulting LLC | UnionBank | The Litigation Practice Group PC | X4858 | 1/10/2022 | | $180,000.00 | N |
| Lexicon Consulting LLC | UnionBank | The Litigation Practice Group PC | X4858 | 2/4/2022 | | $215.90 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 2/18/2022 | | $581.18 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 2/25/2022 | | $397.08 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 3/4/2022 | | $832.46 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 3/10/2022 | | $2,078.67 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 3/18/2022 | | $941.92 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 3/24/2022 | | $907.91 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 4/1/2022 | | $1,582.53 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 4/7/2022 | | $2,415.60 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 4/18/2022 | | $2,412.47 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 4/21/2022 | | $962.49 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 4/28/2022 | | $411.84 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 5/5/2022 | | $321.33 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 5/13/2022 | | $589.32 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 5/19/2022 | | $801.91 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 5/27/2022 | | $142.18 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 6/3/2022 | | $472.08 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 6/10/2022 | | $423.92 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 6/16/2022 | | $799.39 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 6/30/2022 | | $475.49 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 7/8/2022 | | $246.71 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 7/14/2022 | | $430.75 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 7/21/2022 | | $218.09 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 8/5/2022 | | $341.27 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 8/11/2022 | | $103.62 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 8/19/2022 | | $495.15 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 9/2/2022 | | $50.00 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 9/9/2022 | | $280.83 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 9/16/2022 | | $590.95 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 9/23/2022 | | $218.09 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 10/6/2022 | | $193.57 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 10/14/2022 | | $428.53 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 10/21/2022 | | $347.61 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 11/10/2022 | | $244.89 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 11/18/2022 | | $184.45 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 11/25/2022 | | $91.28 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 12/9/2022 | | $155.12 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 12/19/2022 | | $283.96 | Y |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 12/27/2022 | | $81.33 | Y |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 12/30/2022 | | $9.95 | Y |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 1/6/2023 | | $155.12 | Y |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 1/24/2023 | | $283.96 | Y |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 2/7/2023 | | $81.33 | Y |
| Lexicon Consulting LLC | Bank of America | Litigation Practice Group PC | X6538 | 2/9/2023 | | $136.28 | Y |
| | | | | | Total | $208,493.45 | |

**EXHIBIT 3, PAGE 134**

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| United Partnerships LLC | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/5/2021 | | $15,149.08 | N |
| United Partnerships LLC | UnionBank | The Litigation Practice Group PC; IOLTA | X94874 | 1/14/2022 | 129 | $17,912.71 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 3/8/2022 | | $7,142.86 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 3/23/2022 | | $20,000.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 4/8/2022 | | $10,000.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 7/22/2022 | | $60,000.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/12/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/16/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/19/2022 | | $41,158.45 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/23/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/24/2022 | | $31,000.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/25/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 8/31/2022 | | $9,200.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/6/2022 | | $32,971.70 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/8/2022 | | $27,656.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/8/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/9/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/9/2022 | | $14,180.00 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 9/9/2022 | | $9,200.00 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 9/13/2022 | | $9,600.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $26,775.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $14,160.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $4,263.89 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/22/2022 | | $20,000.00 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 9/22/2022 | | $5,488.89 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 9/26/2022 | | $5,363.11 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/5/2022 | | $26,775.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/5/2022 | | $14,661.89 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/7/2022 | | $5,363.11 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 10/13/2022 | | $46,859.95 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/14/2022 | | $25,875.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/14/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/14/2022 | | $20,000.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/20/2022 | | $46,859.95 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/20/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 10/20/2022 | | $9,650.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 11/3/2022 | | $20,000.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 11/3/2022 | | $35,500.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 11/9/2022 | | $33,870.15 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 11/10/2022 | | $25,500.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 11/14/2022 | | $26,700.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 11/14/2022 | | $21,600.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 12/9/2022 | | $9,800.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 12/14/2022 | | $33,870.15 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 12/14/2022 | | $17,375.00 | N |

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 12/14/2022 | | $13,275.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 12/20/2022 | | $35,500.00 | Y |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 12/20/2022 | | $22,075.00 | Y |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 12/23/2022 | | $11,760.00 | Y |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 1/9/2023 | | $12,510.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/10/2023 | | $17,375.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/10/2023 | | $3,406.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/12/2023 | | $31,500.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/12/2023 | | $20,000.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/12/2023 | | $20,000.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/12/2023 | | $17,375.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 2/10/2023 | | $100,000.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6486 | 2/15/2023 | | $50,000.00 | Y |
| United Partnerships LLC | UnionBank | The Litigation Practice Group PC | X4858 | 2/27/2023 | | $40,000.00 | Y |
| United Partnerships LLC | UnionBank | The Litigation Practice Group PC | X4858 | 2/28/2023 | | $11,000.00 | Y |
| United Partnerships LLC | Chase | BAT Inc. | X0830 | 3/16/2023 | | $21,000.00 | Y |
| United Partnerships LLC | UnionBank | The Litigation Practice Group PC | X4858 | 3/17/2023 | | $19,000.00 | Y |
| | | | | | Total | $1,467,532.89 | |

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| Ventura Consulting, LLC | UnionBank | The Litigation Practice Group PC | X4858 | 11/23/2021 | | $560,000.00 | N |
| Ventura Consulting, LLC | Chase | The Litigation Practice Group PC | X3158 | 3/8/2022 | | $16,678.57 | N |
| | | | | | | $576,678.57 | |

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/1/2020 | | $3,000.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/10/2020 | | $3,000.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/15/2020 | | $3,750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/30/2020 | | $3,750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/14/2020 | | $3,750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/30/2020 | | $3,750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/12/2020 | | $3,750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/23/2020 | | $10,000.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/30/2020 | | $3,750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/1/2020 | | $750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/7/2020 | | $3,200.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/14/2020 | | $3,750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/14/2020 | | $750.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/14/2020 | | $4,500.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/30/2020 | | $4,500.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 1/5/2021 | | $1,000.00 | N |
| Matthew Church | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 1/6/2021 | | $14,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/15/2021 | | $5,250.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/25/2021 | | $3,275.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/29/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/29/2021 | | $2,250.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 2/2/2021 | | $10,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 2/10/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/1/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/5/2021 | | $6,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/10/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/22/2021 | | $5,000.00 | N |
| Matthew Church | Bank of the West | The Litigation Practice Group PC | X3441 | 3/29/2021 | 99007 | $1,023.89 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/29/2021 | | $5,500.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/31/2021 | | $3,750.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/2/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/5/2021 | | $2,500.00 | N |
| Matthew Church | Chase | Vulcan Consulting Group LLC | X3588 | 4/15/2021 | | $1,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/21/2021 | | $33,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 5/14/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/4/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/17/2021 | | $12,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/17/2021 | | $5,000.00 | N |
| Matthew Church | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 7/7/2021 | | $5,000.00 | N |
| | | | | | Total | $206,498.89 | |

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| **Frank Brown** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 8/18/2020 | | $3,750.00 | N |
| **Frank Brown** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/1/2020 | | $8,250.00 | N |
| **Frank Brown** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/10/2020 | | $3,000.00 | N |
| **Frank Brown** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/15/2020 | | $11,500.00 | N |
| **Frank Brown** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/30/2020 | | $11,500.00 | N |
| **Frank Brown** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/14/2020 | | $11,500.00 | N |
| **Frank Brown** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/30/2020 | | $24,000.00 | N |
| **Frank Brown** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/12/2020 | | $24,000.00 | N |
| **Frank Brown** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/25/2020 | | $5,000.00 | N |
| **Frank Brown** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/30/2020 | | $24,000.00 | N |
| **Frank Brown** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/14/2020 | | $24,000.00 | N |
| **Frank Brown** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/30/2020 | | $24,000.00 | N |
| **Frank Brown** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 1/4/2021 | | $4,500.00 | N |
| **Frank Brown** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/22/2021 | | $34,000.00 | N |
| **Frank Brown** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/29/2021 | | $34,450.00 | N |
| **Frank Brown** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 2/4/2021 | | $180,000.00 | N |
| **Frank Brown** | Bank of the West | The Litigation Practice Group PC | X3441 | 3/24/2021 | | $47,500.00 | N |
| **Frank Brown** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/6/2021 | | $47,500.00 | N |
| **Frank Brown** | Bank of the West | The Litigation Practice Group PC | X3441 | 4/16/2021 | | $22,500.00 | N |
| **Frank Brown** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/16/2021 | | $13,500.00 | N |
| **Frank Brown** | Bank of the West | The Litigation Practice Group PC | X3441 | 5/7/2021 | | $13,500.00 | N |
| **Frank Brown** | Chase | Vulcan Consulting Group LLC | X3588 | 5/11/2021 | | $22,500.00 | N |
| **Frank Brown** | Bank of the West | The Litigation Practice Group PC | X3441 | 5/14/2021 | | $36,000.00 | N |
| **Frank Brown** | Bank of the West | The Litigation Practice Group PC | X3441 | 5/25/2021 | 1039 | $625.00 | N |
| **Frank Brown** | Bank of the West | The Litigation Practice Group PC | X3441 | 5/26/2021 | | $2,108.00 | N |
| **Frank Brown** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/4/2021 | | $36,000.00 | N |
| **Frank Brown** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 7/2/2021 | | $2,100.00 | N |
| **Frank Brown** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 8/4/2021 | | $50,000.00 | N |
| **Frank Brown** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 8/24/2021 | | $22,500.00 | N |
| **Frank Brown** | Chase | Vulcan Consulting Group LLC | X3588 | 9/14/2021 | | $2,108.00 | N |
| **Frank Brown** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/20/2022 | | $10,000.00 | N |
| **Frank Brown** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 11/15/2022 | | $150,000.00 | N |
| | | | | | **Total** | **$905,891.00** | |

**EXHIBIT 3, PAGE 138**

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| **Spectrum Payment Solution** | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/5/2021 | | $64,383.60 | N |
| **Spectrum Payment Solution** | UnionBank | The Litigation Practice Group PC; IOLTA | X4874 | 1/13/2022 | 132 | $50,752.68 | N |
| **Spectrum Payment Solution** | UnionBank | The Litigation Practice Group PC | X3158 | 3/15/2022 | 1166 | $30,357.14 | N |
| | | | | | Total | $145,493.42 | |
| | | | | | | | |
| **Home Energy Solutions Inc** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/15/2020 | | $15,000.00 | N |
| **Home Energy Solutions Inc** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 5/17/2021 | | $30,000.00 | N |
| | | | | | Total | $45,000.00 | |
| **JNR Services, Inc.** | Chase | Vulcan Consulting Group LLC | X3588 | 4/22/2021 | | $37,000.00 | N |
| **JNR Services, Inc.** | Bank of the West | The Litigation Practice Group PC | X3441 | 5/17/2021 | 1003581150 | $31,500.00 | N |
| **JNR Services, Inc.** | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/5/2021 | | $74,991.76 | N |
| **JNR Services, Inc.** | UnionBank | The Litigation Practice Group PC | X4858 | 11/23/2021 | | $250,000.00 | N |
| **JNR Services, Inc.** | UnionBank | The Litigation Practice Group PC; IOLTA | X4874 | 1/7/2022 | 124 | $40,919.74 | N |
| **JNR Services, Inc.** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/25/2022 | | $21,886.00 | N |
| **JNR Services, Inc.** | Chase | The Litigation Practice Group PC | X3158 | 2/10/2022 | | $20,000.00 | N |
| **JNR Services, Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/9/2022 | 1158 | $16,678.57 | N |
| **JNR Services, Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/22/2022 | | $25,000.00 | N |
| **JNR Services, Inc.** | Chase | The Litigation Practice Group PC | X3158 | 7/8/2022 | | $35,000.00 | N |
| **JNR Services, Inc.** | Chase | LPG VC; Alex Tarkoff | X6652 | 10/25/2022 | | $42,500.00 | N |
| **JNR Services, Inc.** | Chase | LPG VC; Alex Tarkoff | X6652 | 10/25/2022 | | $32,500.00 | N |
| **JNR Services, Inc.** | Chase | The Litigation Practice Group PC | X3158 | 11/15/2022 | | $23,000.00 | N |
| | | | | | Total | $650,976.07 | |
| | | | | | | | |
| **Cat Exteriors Inc** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 8/14/2020 | | $15,000.00 | N |
| **Cat Exteriors Inc** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/1/2020 | | $15,000.00 | N |
| **Cat Exteriors Inc** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/2/2020 | | $15,000.00 | N |
| | | | | | Total | $45,000.00 | |
| **Lifestar Products Inc** | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/5/2021 | | $55,740.48 | N |
| **Lifestar Products Inc** | UnionBank | The Litigation Practice Group PC; IOLTA | X4874 | 1/10/2022 | 126 | $53,499.17 | N |
| | | | | | Total | $109,239.65 | |
| | | | | | | | |
| **AZLS Enterprises Inc.** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 7/6/2021 | | $130,226.82 | N |
| **AZLS Enterprises Inc.** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 8/6/2021 | | $22,500.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 9/21/2021 | | $65,000.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 9/22/2021 | | $90,400.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 10/1/2021 | 10288 | $23,076.92 | N |
| **AZLS Enterprises Inc.** | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/8/2021 | | $218,400.00 | N |
| **AZLS Enterprises Inc.** | UnionBank | The Litigation Practice Group PC | X4858 | 11/23/2021 | | $250,000.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 1/3/2022 | 1121 | $100,000.00 | N |
| **AZLS Enterprises Inc.** | UnionBank | The Litigation Practice Group PC; IOLTA | X4874 | 1/7/2022 | 121 | $67,185.30 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 2/10/2022 | 1136 | $100,000.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/4/2022 | 1152 | $23,076.92 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/9/2022 | 1153 | $25,000.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/15/2022 | 1161 | $25,000.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/22/2022 | 1172 | $23,076.92 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/22/2022 | 1173 | $21,339.50 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 4/8/2022 | 1203 | $21,339.50 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 4/15/2022 | 1208 | $23,076.92 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 5/10/2022 | 1230 | $21,339.50 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 6/6/2022 | 11407 | $23,000.00 | N |
| | | | | | Total | $1,273,038.30 | |

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| **Investline Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/1/2020 | | $3,000.00 | N |
| **Investline Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/15/2020 | | $3,000.00 | N |
| **Investline Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/30/2020 | | $3,000.00 | N |
| **Investline Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/14/2020 | | $3,000.00 | N |
| **Investline Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/29/2020 | | $3,000.00 | N |
| **Investline Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/12/2020 | | $3,000.00 | N |
| **Investline Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/30/2020 | | $3,000.00 | N |
| **Investline Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/14/2020 | | $3,000.00 | N |
| **Investline Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/30/2020 | | $3,000.00 | N |
| **Investline Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 1/6/2021 | | $20,000.00 | N |
| **Investline Wealth Services** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/19/2021 | | $6,000.00 | N |
| **Investline Wealth Services** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 5/7/2021 | | $6,000.00 | N |
| **Investline Wealth Services** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 5/14/2021 | | $1,500.00 | N |
| **Investline Wealth Services** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/4/2021 | | $4,500.00 | N |
| **Investline Wealth Services** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/17/2021 | | $4,500.00 | N |
| **Investline Wealth Services** | Optimum Bank | COAST PROCESSING LLC DBA LITIGATION PRACTICE GROUP | X6712 | 8/26/2021 | | $34,500.00 | N |
| | | | | | Total | $104,000.00 | |

| Bank Name | Account Name | Account Number | Date | Debit/Charge | Payee | 90 Day Transfer |
|---|---|---|---|---|---|---|
| Bank of the West | The Litigation Practice Group PC | X441 | 6/3/2021 | $26,000.00 | **Rachel Dovalina** | N |
| | | | Total | **$26,000.00** | | |

| Bank Name | Account Name | Account Number | Date | Debit/Charge | Payee | 90 Day Transfers |
|---|---|---|---|---|---|---|
| Wells Fargo | Vulcan Consulting Group LLC | X3193 | 1/8/2021 | $4,667.38 | **Validation LLC** | N |
| Bank of the West | The Litigation Practice Group PC | X441 | 3/31/2021 | $4,636.69 | **Validation LLC** | N |
| Bank of the West | The Litigation Practice Group PC | X441 | 5/26/2021 | $27,325.48 | **Validation LLC** | N |
| Bank of the West | The Litigation Practice Group PC | X441 | 6/3/2021 | $32,089.32 | **Validation LLC** | N |
| Bank of the West | The Litigation Practice Group PC | X441 | 6/8/2021 | $21,772.78 | **Validation LLC** | N |
| Chase | Vulcan Consulting Group LLC | X3588 | 6/25/2021 | $41,549.28 | **Validation LLC** | N |
| Optimum Bank | World Global Fund LLC dba LPG | X6134 | 7/28/2021 | $19,319.93 | **Validation LLC** | N |
| Optimum Bank | World Global Fund LLC dba LPG | X6134 | 8/6/2021 | $28,202.28 | **Validation LLC** | N |
| Optimum Bank | World Global Fund LLC dba LPG | X6134 | 8/13/2021 | $20,785.38 | **Validation LLC** | N |
| Optimum Bank | World Global Fund LLC dba LPG | X6134 | 8/23/2021 | $30,875.12 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 8/25/2021 | $499.26 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 9/1/2021 | $3,183.27 | **Validation LLC** | N |
| Optimum Bank | World Global Fund LLC dba LPG | X6134 | 9/3/2021 | $29,569.03 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 9/9/2021 | $15,349.10 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 9/16/2021 | $32,340.55 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 9/22/2021 | $15,895.79 | **Validation LLC** | N |
| Optimum Bank | Coast Processing LLC dba LPG | X6738 | 10/5/2021 | $26,123.19 | **Validation LLC** | N |
| Optimum Bank | Coast Processing LLC dba LPG | X6738 | 10/7/2021 | $17,162.48 | **Validation LLC** | N |
| Optimum Bank | Coast Processing LLC dba LPG | X6738 | 10/14/2021 | $43,308.01 | **Validation LLC** | N |
| Optimum Bank | Coast Processing LLC dba LPG | X6738 | 10/26/2021 | $21,032.81 | **Validation LLC** | N |
| Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/12/2021 | $27,637.56 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 11/24/2021 | $202,530.00 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3158 | 12/15/2021 | $242.82 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 1/13/2022 | $1,333.61 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 1/21/2022 | $2,589.44 | **Validation LLC** | N |
| UnionBank | The Litigation Practice Group PC | X4858 | 1/28/2022 | $8,796.43 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 3/10/2022 | $8,860.22 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 3/18/2022 | $31,972.14 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 3/25/2022 | $29,490.69 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 4/1/2022 | $26,981.50 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 4/7/2022 | $29,823.54 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 4/21/2022 | $26,990.78 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 5/19/2022 | $191,472.56 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3133 | 6/3/2022 | $81,008.18 | **Validation LLC** | N |
| Chase | The Litigation Practice Group PC | X3158 | 10/18/2022 | $8,000.00 | **Validation LLC** | N |
| | | | Total | **$1,113,416.60** | | |

# EXHIBIT 3

| Bank Name | Account Name | Account Number | Transaction Date | Debit/Charge | Payee | Post-Petition Transfer |
|---|---|---|---|---|---|---|
| Bank of America | Prime Logix LLC | X9201 | 4/6/2023 | $25,000.00 | United Partnerships LLC | Y |
| Bank of America | Prime Logix LLC | X9201 | 4/12/2023 | $20,000.00 | United Partnerships LLC | Y |
| Bank of America | Prime Logix LLC | X9201 | 5/1/2023 | $25,000.00 | United Partnerships LLC | Y |
| Bank of America | Prime Logix LLC | X9201 | 5/12/2023 | $35,000.00 | United Partnerships LLC | Y |
| | | | | | | |
| | | | **Total** | **$105,000.00** | | |

# EXHIBIT 4

## DEBT REPAYMENT AGREEMENT

This DEBT REPAYMENT AGREEMENT (this *"Agreement"*) is executed as of April 15, 2022 (the *"Effective Date"*), by and between THE LITIGATION PRACTICE GROUP PC, a California law corporation (the *"Company"*), and   OXFORD KNOX, LLC, a Delaware limited liability company (*"Creditor"*). The Company and the Creditor may be collectively referred to as the *"Parties,"* and individually as a *"Party."*

### RECITALS

WHEREAS, the Company is provides legal services to clients in connection with debt resolution of the clients' enrolled liabilities (the *"Business"*);

WHEREAS, the Creditor has in the past provided, directly or indirectly through its members, contractors, affiliates and/or predecessors-in-interest, funding for the Company's operations, including funding for the recruitment, training and support related to marketing affiliates;

WHEREAS, despite good faith efforts, the Parties have been unable to establish the precise amount of the funding previously provided by the Creditor to the Company, and by way of compromise have agreed that Company is indebted to the Creditor in the amount of $22,000,000 (the *"Indebtedness"*); and

WHEREAS,  the Company and the Creditor have further agreed that the Indebtedness shall be satisfied and paid in full by (i) monthly payments set forth on Schedule 1 through October 2027; plus (ii) a balloon payment in the amount of $10,000,000, payable solely in the event of a Sale of Business (as defined below) with respect to the Company.

NOW, THEREFORE, in consideration of the mutual promises, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    Recitals. The statements contained in the recitals set forth above are true and correct and by this reference are made a part of this Agreement.

2.    Definitions. In addition to the terms defined elsewhere in this Agreement, for all purposes of this Agreement, the following terms shall have the meanings indicated in this Section 2:

*"Net Proceeds from Sale of Business"* means the proceeds from a Sale of Business, as applicable, as determined after reduction for the following: (a) payment of all expenses related thereto, including any applicable commissions and other fees paid in connection therewith; and (ii) in the case of a Sale of Business, payments in satisfaction of any and all present and future indebtedness for borrowed money (other than the Indebtedness), obligations or liabilities of the Company.

*"Sale of Business"* means a sale, transfer, assignment, or other disposition by the Company or the Company's shareholders of all or substantially all of the Business.

3.    Debt Repayment. As payment in full of the Indebtedness, the Company agrees to make the following payments to the Creditor:

a.    Monthly Payments. The Company shall repay $12,000,000 of the Indebtedness in monthly installments in accordance with Schedule 1 through October 2027 or until a Sale of Business has occurred with respect to the Company, whichever comes first. Each such repayment installment shall be due and

payable on or before the 15th business day of each month (or such other time as may be mutually agreed upon by the Parties), with the first payment having been made on November 4, 2021. The Indebtedness repayment schedule may be revised from time to time by mutual agreement of the Parties by executing and amendment to Schedule 1.

b.     Prepayments. The Company shall make monthly prepayments of the Indebtedness in the amount of Excess Cash Flow, as calculated by the Company in good faith consistent with past practice. Such prepayments shall be consistent with the Parties' agreement that the Company shall use commercially best efforts to repay the Indebtedness in its entirety by December 31, 2024.

c.     Balloon Payment. At the time of a Sale of Business, the Company shall make a balloon payment to the Creditor, in full satisfaction of the Indebtedness, in the amount of (i) $10,000,000, *plus* (b) if applicable, the principal outstanding amount at such time of the monthly installment obligations payable pursuant to Section 3(a), above together with the balance of any unpaid interest and other amounts payable thereunder (the "***Balloon Payment***"). The Balloon Payment shall be paid to the Creditor through the escrow or similar agreement, or arrangement established for such sale, provided, however, that the amount payable to the Creditor in the case of a Sale of Business pursuant to this Section 3(c) shall not exceed the Net Proceeds from Sale of Business.

4.     Representations and Warranties.

a.     The Company represents and warrants to the Creditor that (i) the Company is a California legal corporation duly organized, validly existing, and in good standing under the laws of the state of California, (ii) the Company has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, (iii) the execution and delivery of this Agreement and the performance of the terms hereof by the Company have been duly authorized by all necessary action on the part of the Company, (iv) the execution and delivery of this Agreement and the consummation of the transactions herein contemplated by the Company does not conflict in any material respect with, or constitute a material default under, the organizational documents of the Company, and does not violate any contract, instrument, or other agreement, whether written or oral to which the Company is a party or by which the Company is bound, (v) this Agreement constitutes the legal, valid, and binding obligation of the Company, enforceable against the Company in accordance with its terms, and (vi) the Company has all licenses, permits, consents and approvals required to be obtained by it from any regulatory agency exercising its authority over the Company in order for it to lawfully conduct its business, to perform its obligations hereunder and to receive the rights and benefits available to it hereunder except to the extent the failure to have any of the foregoing could not, singly or in the aggregate, reasonably be expected to have a material adverse effect on the Company.

b.     the Creditor represents and warrants to the Company that (i) the Creditor is a Delaware limited liability company duly organized, validly existing, and in good standing under the laws of the state of Delaware, (ii) the Creditor has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, (iii) the execution and delivery of this Agreement and the performance of the terms hereof by the Creditor have been duly authorized by all necessary action on the part of the Creditor, (iv) the execution and delivery of this Agreement and the consummation of the transactions herein contemplated by the Creditor does not conflict in any material respect with, or constitute a material default under, the organizational documents of the Creditor, and does not violate any contract, instrument, or other agreement, whether written or oral to which the Creditor is a party or by which the Creditor is bound, (v) this Agreement constitutes the legal, valid, and binding obligation of the Creditor, enforceable against the Company in accordance with its terms, and (vi) the Creditor has all licenses, permits, consents and approvals required to be obtained by it from any regulatory agency exercising its authority over the Creditor in order for it to lawfully conduct its business, to perform its obligations hereunder and to receive the rights

2

and benefits available to it hereunder except to the extent the failure to have any of the foregoing could not, singly or in the aggregate, reasonably be expected to have a material adverse effect on the Creditor.

5.    Confidentiality. The Parties agree that any and all Confidential Information (as defined herein) shall be used solely for the purposes of the lawful performance of this Agreement and shall not be used or disclosed to any third party except as authorized herein or by the Parties in writing.

    a.    Definition. As used in this Agreement, *"Confidential Information"* shall include (i) all information regarding an existing or potential client of the Company, (ii) each Party's proprietary information, trade secrets or other business information that is either identified as or should otherwise be reasonably understood to be of a confidential nature, as may be disclosed to the other Party in connection with the performance of this Agreement, and (iii) this Agreement and the nature, terms and conditions of this Agreement.

    b.    Limited Use. Each Party agrees it shall not, without the prior written consent of the other Party or as permitted by the terms and conditions of this Agreement, do any of the following: (i) disclose any Confidential Information to any third party; (ii) permit any third-party access to such Confidential Information; or (iii) use Confidential Information for any purpose other than in connection with the performance of its obligations under this Agreement.

    c.    Exceptions. The confidentiality obligations imposed on the Parties by this section shall not apply to Confidential Information which, through no fault of a Party: (i) is required to be disclosed in order to comply with applicable laws and regulations, court orders or other process of law, (ii) is required to be made to any tax, banking or other regulatory authority, or to legal or financial advisor of either Party, (iii) is made to such Party's current or prospective lenders or investors, (iv) was already known to that Party prior to disclosure of the same Confidential Information by the other Party or is independently discovered by the Party, or (v) subsequently becomes available to the public at large without a breach of this Agreement.

    d.    Return of Confidential Information. Upon termination of this Agreement, both Parties shall return the Confidential Information of the other Party to the Party to which the Confidential Information belongs.

    e.    Enforcement. In the event of any breach of the obligations under this section, the Parties acknowledge that the Party adversely affected by the breach would have no adequate remedy at law to protect its Confidential Information, since the harm caused by such a breach could not be easily measured and compensated for in damages, and that in addition to such remedies as may be available, a Party may obtain injunctive relief including, but not limited to, specific performance.

    f.    Confidentiality of Agreement. The Parties agree that this Agreement and its terms are strictly confidential and shall not be disclosed to any person, firm, corporation, or other entity, orally or in writing, except as may be necessary to comply with applicable laws and regulations, court orders or other process of law, confer with a financial advisor, tax preparer, or lawyer regarding the subject matter of this Agreement, or to enforce this Agreement.

    g.    Survival. The provisions of this section shall survive the expiration or any termination of this Agreement or any addendum hereto.

6.    Indemnification. The Parties agrees to be responsible for their own actions, and each Party agrees to indemnify, defend and hold harmless the other party and such other Party's directors, officers, employees and agents for, from and against all claims and losses of any type, including reasonable attorneys' fees, in connection with, in whole or in part: (a) any negligent act or omission by, or any willful misconduct on the

3

part of, the indemnifying Party; (b) the indemnifying Party's failure to comply with any applicable federal, state, or local law; or (c) any breach of this Agreement by the indemnifying Party.

7.    Construction. The Parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any Party because of the authorship of any provision of this Agreement. Any reference to any federal, state, provincial, territorial, local, or foreign law shall be deemed also to refer to such law as amended and all rules and regulations promulgated thereunder, unless the context requires otherwise. Any reference to any contract or agreement (including schedules, exhibits and other attachments thereto), including this Agreement, shall be deemed also to refer to such contract or agreement as amended, restated, or otherwise modified, unless the context requires otherwise. The words "include," "includes," and "including" shall be deemed to be followed by "without limitation." Pronouns in masculine, feminine, and neuter genders shall be construed to include any other gender, and words in the singular form shall be construed to include the plural and vice versa, unless the context requires otherwise. The words "this Agreement," "herein," "hereof," "hereby," "hereunder," and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited. Where this Agreement states that a Party "will" or "shall" perform in some manner or otherwise act or omit to act, it means that such Party is legally obligated to do so in accordance with this Agreement. The captions, titles, and headings included in this Agreement are for convenience only and do not affect this Agreement's construction or interpretation. Any reference to an Article, Section, or Schedule in this Agreement shall refer to an Article or Section of, or Schedule to, this Agreement, unless the context otherwise requires. This Agreement is for the sole benefit of the Parties and does not, and is not intended to, confer any rights or remedies in favor of any person (including any employee, director, shareholder or third party lender or service provider of a party) other than the Parties.

8.    No Assignment by the Company. Except as set forth herein, the Company shall not assign, transfer, or otherwise alienate any or all of its rights or interest under this Agreement without the express prior written consent of the Creditor, which consent may be granted or withheld in the Creditor's sole discretion.

9.    Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersede (a) all prior oral or written proposals or agreements, (b) all contemporaneous oral proposals or agreements, and (c) all previous negotiations and all other communications or understandings between the Parties, in each case with respect to the subject matter hereof.

10.    Notices. Any notice, instruction, direction or demand under the terms of this Agreement required to be in writing shall be duly given upon delivery, if delivered by hand, facsimile, email or other generally accepted means of electronic transmission, or mail (with postage prepaid), to the following addresses:

    If to the Company, to:

        The Litigation Practice Group PC
        17542 E 17th Street
        Suite 100
        Tustin, CA 92780
        Fax No.: 949-715-0648
        Email: admin@LPGLaw.com
        Attention: Daniel S. March

4

If to the Creditor, to:

> Oxford Knox, LLC
> c/o Rick R, Emmett
> 300 S. Harbor Blvd., Suite 1000
> Anaheim, CA 92805
> Fax No.: (714) 563-1316
> Email: remmett@investlincadvisors.com
> Attention: Rick R. Emmett, Manager

or to such other addresses or telecopy numbers as may be specified by like notice to the other Party.

11.    Severability. If any term or other provision of this Agreement shall be determined by a court, governmental authority, or arbitrator to be invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability shall not render the entire Agreement invalid. Rather, this Agreement shall be construed as if not containing the particular invalid, illegal, or unenforceable provision, and all other provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to either Party. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the Parties shall negotiate in good faith to modify this Agreement so as to give effect to the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the fullest extent permitted under applicable law.

12.    Amendment. This Agreement may only be amended by a written agreement executed by both Parties.

13.    Binding Effect. This Agreement binds and benefits the Parties and their respective successors and permitted assigns. Other than those persons entitled to indemnity hereunder, there are no third-party beneficiaries having rights under or with respect to this Agreement.

14.    Waiver. A provision of this Agreement may be waived only by a writing signed by the Party intended to be bound by the waiver. A Party is not prevented from enforcing any right, remedy, or condition in the Party's favor because of any failure or delay in exercising any right or remedy or in requiring satisfaction of any condition, except to the extent that the Party specifically waives the same in writing. A written waiver given for one matter or occasion is effective only in that instance and only for the purpose stated. A waiver once given is not to be construed as a waiver for any other matter or occasion. Any enumeration of a Party's rights and remedies in this Agreement is not intended to be exclusive, and a Party's rights and remedies are intended to be cumulative to the extent permitted by law and include any rights and remedies authorized in law or in equity.

15.    Disputes.

a.    Dispute Resolution. Except with respect to a Party's request for equitable or provisional relief or to otherwise protect its Confidential Information provided under this Agreement, no civil action, proceeding as set forth below with respect to any dispute, controversy or claim arising out of, or relating to, or in connection with, this Agreement, or the breach, termination, or validity hereof, including the validity of this dispute resolution provision (each of which dispute, controversy, or claim will be termed a "*Dispute*") between the Parties may be commenced, nor may a Party terminate any portion of this Agreement for a material breach of a material warranty, representation, covenant or obligation of this Agreement, until the Parties have first attempted to resolve the Dispute amicably in good faith.

5

     b.    Arbitration of Disputes. If the Parties cannot resolve a Dispute pursuant to Section 15(a) above, any and all disputes under this Agreement shall be resolved by final and binding arbitration pursuant to JAMS Rules of Arbitration. Such arbitration shall be conducted pursuant to the JAMS Streamlined Arbitration Rules & Procedures then in effect. The decision by the arbitrator shall be final and binding, may be confirmed by a court of competent jurisdiction and judgment shall be entered thereon. The arbitration shall be conducted in Orange County, California. This clause shall not preclude Parties from seeking provisional remedies in aid of arbitration (e.g., to compel arbitration) or from seeking equitable or provisional relief from a court of competent jurisdiction.

     c.    Confidentiality of Proceedings. The Parties agree that any arbitration proceedings hereunder will be treated as the Confidential Information of both Parties and that the existence of the proceeding and any element of it (including, but not limited to, any pleadings, briefs or other documents submitted or exchanged and any testimony or other oral submissions and awards) will not be disclosed beyond the arbitration panel, except as may lawfully be required in judicial proceedings relating to the arbitration. In addition, if a Party's Confidential Information is required to be disclosed pursuant to an arbitration proceeding or other judicial proceeding, the Receiving Party shall treat the Disclosing Party's Confidential Information pursuant to the terms of Section 5 (Confidentiality).

     d.    Attorneys' Fees and Costs. The prevailing Party in any arbitration or other legal proceeding shall be entitled to recover its reasonable fees and costs (including attorneys' fees) associated with the dispute from the other Party. The arbitrator shall determine who is the prevailing Party and award reasonable attorney fees.

     e.    Choice of Law. This arbitration provision (including the validity and applicability of the agreement to arbitrate, the conduct of any arbitration of a Dispute, the enforcement of any arbitral award made hereunder and any other questions of arbitration law or procedure arising hereunder) and its interpretation, any and all Disputes between the Parties arising out of or relating to this Agreement in any manner, shall be governed by and construed in accordance with the substantive internal laws of the State of California, excluding its conflicts of law rules.

16.    Relationship of Parties. This Agreement does not create a fiduciary relationship, partnership, joint venture, or relationship of trust or agency between the Parties. Each Party shall have the obligation to supervise, manage, contract, direct, procure, perform or cause to be performed, all work to be performed under this Agreement and shall be liable for all acts or omissions of its employees and agents in performing their respective obligations hereunder. The Company understands and agrees that it has complete control over the operation and decision making of its business.

17.    Further Assurances. From time to time, each Party agrees to execute and deliver such additional documents and will provide such additional information and assistance as any Party may reasonably require to carry out the terms of this Agreement.

18.    Survival. The Parties agree that the provisions of this Agreement that by their terms or nature are intended to survive the termination of this Agreement shall survive such termination.

19.    No Publicity. Neither Party shall issue a press release announcing the Parties' business relationship, without the prior, written consent of the other Party as to the context and content of such materials or press release. Each Party shall have the right to terminate its consent at any time and for any reason by providing written notice to the other Party.

20.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which, when taken together, shall be one and the same document.

Each Party may rely upon a "pdf" counterpart of this Agreement signed by the other Party with the same effect as if such Party had received an original counterpart signed by such other Party.

[Signatures on the following page]

7

IN WITNESS WHEREOF, the Parties have executed this Debt Repayment Agreement to be effective as of the Effective Date.

**OXFORD KNOX, LLC**

By: _____

Name: Rick R. Emmett

Title: Manager/Secretary

**THE LITIGATION PRACTICE GROUP PC**

By: _____

Name: DANIEL MARCH

Title: MANAGING SHAREHOLDER

## SCHEDULE 1

### REPAYMENT SCHEDULE

Starting Balance:    $12,000,000.00
Annual Interest Rate:    10.0%
Repayment Period:    72 months
Start Date:    November 1, 2021

| Repayment Date | Repayment Installment | Remaining Balance |
| --- | --- | --- |
| November 2021 | $757,454.09 | $11,334,950.40 |
| December 2021 | $0 | $11,431,219.84 |
| January 2022 | $629,090.35 | $10,896,899.08 |
| February 2022 | $357,142.30 | $10,620,609.71 |
| March 2022 | $0 | $10,343,421.67 |
| April 2022 | $200,000.00 | $10,226,792.26 |
| May 2022 | $200,000.00 | $10,111,951.32 |
| June 2022 | $200,000.00 | $9,993,419.41 |
| July 2022 | $200,000.00 | $9,876,596.40 |
| August 2022 | $200,000.00 | $9,758,781.19 |
| September 2022 | $200,000.00 | $9,637,346.52 |
| October 2022 | $200,000.00 | $9,517,499.32 |
| November 2022 | $200,000.00 | $9,394,081.51 |
| December 2022 | $200,000.00 | $9,272,168.23 |
| January 2023 | $200,000.00 | $9,149,219.52 |
| February 2023 | $200,000.00 | $9,017,871.07 |
| March 2023 | $200,000.00 | $8,892,762.58 |
| April 2023 | $200,000.00 | $8,764,209.94 |
| May 2023 | $200,000.00 | $8,636,947.06 |
| June 2023 | $200,000.00 | $8,506,291.83 |
| July 2023 | $200,000.00 | $8,376,838.42 |
| August 2023 | $200,000.00 | $8,246,285.54 |
| September 2023 | $200,000.00 | $8,112,419.40 |
| October 2023 | $200,000.00 | $7,979,620.77 |
| November 2023 | $200,000.00 | $7,843,562.86 |
| December 2023 | $200,000.00 | $7,708,480.79 |
| January 2024 | $200,000.00 | $7,572,251.45 |
| February 2024 | $200,000.00 | $7,428,805.70 |
| March 2024 | $200,000.00 | $7,290,201.04 |
| April 2024 | $200,000.00 | $7,148,476.66 |
| May 2024 | $200,000.00 | $7,007,491.12 |
| June 2024 | $200,000.00 | $6,863,443.11 |
| July 2024 | $200,000.00 | $6,720,036.73 |
| August 2024 | $200,000.00 | $6,575,412.39 |
| September 2024 | $200,000.00 | $6,431,306.41 |
| October 2024 | $200,000.00 | $6,287,644.25 |
| November 2024 | $200,000.00 | $6,137,679.68 |
| December 2024 | $200,000.00 | $5,988,109.29 |
| January 2025 | $200,000.00 | $5,837,268.58 |
| February 2025 | $200,000.00 | $5,680,513.38 |
| March 2025 | $200,000.00 | $5,527,060.20 |
| April 2025 | $200,000.00 | $5,370,844.26 |
| May 2025 | $200,000.00 | $5,214,761.02 |
| June 2025 | $200,000.00 | $5,055,978.23 |
| July 2025 | $200,000.00 | $4,897,220.79 |

| | | |
|---|---|---|
| August 2025 | $200,000.00 | $4,737,114.99 |
| September 2025 | $200,000.00 | $4,574,406.35 |
| October 2025 | $200,000.00 | $4,411,558.84 |
| November 2025 | $200,000.00 | $4,246,174.39 |
| December 2025 | $200,000.00 | $4,080,539.16 |
| January 2026 | $200,000.00 | $3,913,497.16 |
| February 2026 | $200,000.00 | $3,741,984.27 |
| March 2026 | $200,000.00 | $3,572,066.87 |
| April 2026 | $200,000.00 | $3,399,782.49 |
| May 2026 | $200,000.00 | $3,226,958.73 |
| June 2026 | $200,000.00 | $3,051,837.84 |
| July 2026 | $200,000.00 | $2,876,058.93 |
| August 2026 | $200,000.00 | $2,698,787.10 |
| September 2026 | $200,000.00 | $2,520,694.27 |
| October 2026 | $200,000.00 | $2,341,675.89 |
| November 2026 | $200,000.00 | $2,159,278.71 |
| December 2026 | $200,000.00 | $1,975,919.16 |
| January 2027 | $200,000.00 | $1,791,002.31 |
| February 2027 | $200,000.00 | $1,603,207.26 |
| March 2027 | $200,000.00 | $1,415,124.91 |
| April 2027 | $200,000.00 | $1,225,112.23 |
| May 2027 | $200,000.00 | $1,033,818.67 |
| June 2027 | $200,000.00 | $840,671.97 |
| July 2027 | $200,000.00 | $646,113.29 |
| August 2027 | $200,000.00 | $449,902.20 |
| September 2027 | $200,000.00 | $252,093.13 |
| October 2027 | $252,093.13 | $0.00 |

**Oxford Knox LLC**
**LPG Loan Calculations per agreement dated April 15, 2022**

November 1, 2021 - June 30, 2023

| From Date | To Date | Days | Total Pd | Principal | Interest | Beg Bal | Int | Annual | Per Day | Interest Amt | Ending Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/01/21 | | | | | | $12,000,000.00 | | | | | $12,000,000.00 |
| (Per Schedule 1 of agreement dated 4/15/22) | | | | | | | | | | | |
| 11/01/21 | Payment | | $757,454.09 | $665,049.60 | $92,404.49 | | | | | | $11,334,950.40 |
| 01/02/22 | Payment | | $629,090.35 | $438,051.32 | $191,039.03 | | | | | | $10,896,899.08 |
| 02/02/22 | Payment | | $357,142.30 | $276,289.37 | $80,852.93 | | | | | | $10,620,609.71 |
| 03/01/22 | 03/11/23 | 375 | | | | | 10% | $1,062,060.97 | $2,909.76 | $1,091,158.53 | $11,711,768.24 |
| 03/11/23 | Notice of Default Balloon Payment | | | | | $10,000,000.00 | | | | | $21,711,768.24 |
| 03/11/23 | 06/30/23 | 111 | | | | | 10% | $2,171,176.82 | $5,948.43 | $660,275.69 | $22,372,043.93 |
| Totals | | | $1,743,686.74 | $1,379,390.29 | $364,296.45 | $22,000,000.00 | | | | $1,751,434.22 | $22,372,043.93 |

*7/20/2023  Updated/jaw*

# EXHIBIT 5

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|
| **LPG PC; Syed Gilani** | Chase | The Litigation Practice Group PC | X3158 | 2/11/2022 | $5,344.99 | N |
| **LPG PC; Syed Gilani** | Chase | The Litigation Practice Group PC | X3158 | 3/11/2022 | $190,271.26 | N |
| **LPG PC; Syed Gilani** | Chase | The Litigation Practice Group PC | X3158 | 4/19/2022 | $254,488.04 | N |
| **LPG PC; Syed Gilani** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 8/15/2022 | $2,638.06 | N |
| **LPG PC; Syed Gilani** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 9/2/2022 | $80,906.55 | N |
| **LPG PC; Syed Gilani** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 11/16/2022 | $84,078.06 | N |
| **LPG PC; Syed Gilani** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/13/2023 | $78,910.81 | Y |
| | | | | **Total** | **$696,637.77** | |

**EXHIBIT 3, PAGE 157**

B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Richard A. Marshack, Trustee of the LPG Liquidation Trust | DEFENDANTS<br>Oxford Knox, LLC; Buffalo 21 Partners, Inc.; Rick Emmett; Ryan Taylor Connet;   Obrik, Inc.; Albright, Inc.; Jason Dovalina; Rachel Dovalina; Final Season, Inc.; Factor In, Inc.; Syed Faisal Gilani aka Sye Gilani; BAE Enterprises, Inc.; Rose Bianca Loli; Decacorn Holdings, Inc.; Samson Ly; BEW Solar Management, LLC; Sean Stephens; Lexicon Consulting, LLC; Daniel Lansdale; United Partnerships, LLC; Ventura Consulting, LLC; Matthew Church; Frank Brown; Validation LLC; Innovative Solutions, LLC; MRJR20 Partners, LLC; MFCR, Investments, LLC; Lifesize, Inc.; Karrington, Inc.; Spectrum Payment Solutions, LLC; Jason D. Williams; Home Energy Solutions, Inc.; The Coelho Irrevocable Life Insurance Trust; JNR Services, Inc.; C.A.T. Exteriors, Inc.; AZLS Enterprises, Inc.; A Solution Debt Relief, Inc.; INVESTLINC Wealth Services, Inc. |
|---|---|

**ATTORNEYS** (Firm Name, Address, and Telephone No.)
Yosina M. Lissebeck (SBN 201654)
Tyler Powell (Ky. Bar No. 90520) (*Admitted pro hac vice*)
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101    Telephone (619) 400-0500
yosina.lissebeck@dinsmore.com
tyler.powell@dinsmore.com

**ATTORNEYS** (If Known)

| PARTY (Check One Box Only) | |
|---|---|
| ☐ Debtor | ☐ U.S. Trustee/Bankruptcy Admin |
| ☐ Creditor | ☐ Other |
| ☒ Trustee | |

| PARTY (Check One Box Only) | |
|---|---|
| ☐ Debtor | ☐ U.S. Trustee/Bankruptcy Admin |
| ☐ Creditor | ☐ Other |
| ☐ Trustee | |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
((1) Avoidance, Recovery, and Preservation of Transfers Made Within the Ninety Day Period Before the Petition Date; (2) Avoidance, Recovery, and Preservation of Post-Petition Transfers; (3) Avoidance, Recovery, and Preservation of Transfers Made With Intent to Defraud; (4) Avoidance, Preservation, and Recovery of Constructively Fraudulent Two-Year Transfers; (5) Avoidance, Preservation, and Recovery of Transfers Within Four Years ; and (6) Avoidance, Recovery, and Preservation of Transfers Made Within Four Years

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
          (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief- imposition of stay
☐ 72-Injunctive relief - other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of remove d claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court
          if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 0.00 |
| Other Relief Sought | |

**EXHIBIT 3, PAGE 158**

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| NAME OF DEBTOR<br>The Litigation Practice Group P.C. | BANKRUPTCY CASE NO.<br>8:23-bk-10571-SC |||
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana || NAME OF JUDGE<br>Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) ||||
| PLAINTIFF | DEFENDANT || ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE || NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Tyler Powell ||||
| DATE<br>March 19, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Yosina M. Lissebeck<br>Tyler Powell (admitted pro hac vice)<br>Special Counsel to Richard A. Marshack, Trustee of the LPG<br>Liquidation Trust |||

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**EXHIBIT 3, PAGE 159**

# Exhibit 4

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Tyler Powell<br>Dinsmore & Shohl LLP<br>100 W Main St Ste 900<br>Suite 900<br>Lexington, KY 40507<br><br>859-425-1046<br><br><br><br><br>*Plaintiff or Attorney for Plaintiff* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA**

| In re:<br><br><br>The Litigation Practice Group P.C.<br><br><br><br>Debtor(s). | CASE NO.: 8:23-bk-10571-SC<br><br>CHAPTER: 11<br><br>ADVERSARY NUMBER: 8:25-ap-01208-SC |
|---|---|
| Richard A. Marshack<br><br><br>Plaintiff(s)<br>Versus<br><br>Oxford Knox, LLC<br><br>**(See Attachment A for names of additional defendants)**<br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is **05/07/2025.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| Date: | **June 5, 2025** |
| Time: | **01:30 PM** |
| Hearing Judge: | **Scott C Clarkson** |
| Location: | **411 W Fourth St., Crtrm 5C, Santa Ana, CA 92701** |

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*          Page 1          **F 7004–1.SUMMONS.ADV.PROC**

**EXHIBIT 4, PAGE 160**

You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference. All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: <u>April 7, 2025</u>

By: <u>"s/" Nickie Bolte</u>

Deputy Clerk



This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**EXHIBIT 4, PAGE 161**

# ATTACHMENT A
## Names of plaintiffs and defendants

| Plaintiff(s): | Defendant(s): |
|---|---|
| Richard A. Marshack | Oxford Knox, LLC |
| | Buffalo 21 Partners, Inc. |
| | Rick Emmett |
| | Ryan Taylor Connet |
| | Obrik, Inc. |
| | Albright, Inc. |
| | Jason Dovalina |
| | Rachel Dovalina |
| | Factor In, Inc. |
| | Syed Faisal Gilani |
| | Bae Enterprises, Inc. |
| | Rose Bianca Loli |
| | Decacorn Holdings, LLC |
| | Samson Ly |
| | BEW Solar Management, LLC |
| | Sean M Stephens |
| | Lexicon Consulting, Inc. |
| | Daniel Lansdale |
| | United Partnerships, Inc. |
| | Ventura Consulting, LLC |
| | Matthew Church |
| | Frank Brown |
| | Validation Partners, LLC |
| | MRJR20 Partners, LLC |
| | MFCR Investments, LLC |
| | Lifesize, Inc. |
| | Karrington, Inc. |
| | Spectrum Payment Solutions, LLC |
| | Jason D Williams |
| | Home Energy Solutions, Inc. |
| | The Coelho Irrevocable Life Insurance Trust |
| | JNR Services, Inc. |
| | C.A.T. Exteriors, Inc. |
| | AZLS Enterprises Inc. |
| | A Solution Debt Relief, Inc. |
| | Validation LLC |
| | Innovative Solutions, LLC |
| | INVESTLINC Wealth Services, Inc. |
| | Final Season, Inc. |
| | Sye Gilani |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## ATTACHMENT A

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**655 West Broadway, Suite 800, San Diego, CA 92101**

A true and correct copy (1) of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

**COMPLAINT; ORDER RE EARLY MEETING OF COUNSEL, STATUS CONFERENCE INSTRUCTIONS AND**

**GENERAL PROCEDURES; and NOTICE OF REQUIRED COMPLIANCE WITH RULE 7026**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On *(date)*
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**2. SERVED BY UNITED STATES MAIL**:
On *(date)* April 14, 2025_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**SEE ATTACHED SERVICE LIST**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on *(date)* _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 14, 2025 | Wendy A. Yones | |
|---|---|---|
| Date | Printed Name | Signature |

**EXHIBIT 4, PAGE 163**

Oxford Knox, LLC
Attn: Richard R Emmett, Partnership Representative
251 Little Falls Drive
Wilmington, Delaware 19808

Buffalo 21 Partners, Inc.
Attn: Richard R Emmett, CEO
10 Pointe Drive, Suite 150
Brea, CA 92821

Rick Ronald Emmett
10 Pointe Drive, Suite 150
Brea, CA 92821

Ryan Taylor Connet
4155 E La Palma Avenue
Anaheim, CA 92807

Obrik, Inc
Attn: Cloud Peak Law, Registered Agent
1095 Sugarview Drive, Suite 500
Sheridan, Wyoming 82801

Jason Dovalina
128 W Santa Fe Avenue, Suite C
Placentia, CA 92870-5632

Rachel Dovalina
736 Oceanview Drive
Fullerton, CA 92832

Factor In, Inc.
Attn: Sye Gilani, Registered Agent
7651 Greenock Way, Riverside, CA 92508

Syed Faisal Gilani aka Sye Gilani
7651 Greenock Way
Riverside, CA 92508

Bae Enterprises, Inc.
Attn: Cloud Peak Law, LLC, Registered Agent
1095 Sugarview Drive, Suite 500
Sheridan, Wyoming 82801

Rose Bianca Loli
33741 Alcazar Drive
Dana Point, CA 92629

Rose Bianca Loli
1220 Ensenada Avenue
Laguna Beach, CA 92651

Samson Ly
208 S Moore Avenue, Apt D
Monterey Park, CA 91754

BEW Solar Management, LLC
Attn: Sean M Stephens, Manager
2560 N Synergy Avenue
Eagle, Idaho 83616

Sean M Stephens
2560 N Synergy Ave
Eagle, Idaho 83616

Daniel Lansdale
515 W Commonwealth Avenue, Suite 211
Fullerton, CA 92832

United Partnerships, Inc.
7300 Lennox Avenue, Room J-14
Van Nuys, CA 91405

Ventura Consulting, LLC
Attn: Matthew Church, Managing Member
708 Grandview Avenue
Fullerton, CA 92832

Ventura Consulting, LLC
Attn: Matthew Church, Managing Member
10620 Southern Highlands Parkway, Suite 110-18
Las Vegas, NV 89141

Matthew Church
708 Grandview Avenue
Fullerton, CA 92832

Matthew Church
10620 Southern Highlands Parkway, Suite 110-18
Las Vegas, NV 89141

Frank Brown
10620 Southern Highlands Parkway, Suite 110-18
Las Vegas NV 89141

Frank Brown
10881 Pentland Downs Street
Las Vegas, NV 89141

Validation, LLC
Attn: Matthew Church
708 Grandview Avenue
Fullerton, CA 92832

Validation, LLC
Attn: Matthew Church
10620 Southern Highlands Parkway, Suite 110-18
Las Vegas, NV 89141

Innovative Solutions, Inc.
Attn: Cloud Peak Law, LLC, Registered Agent
1095 Sugarview Drive, Suite 500
Sheridan, Wyoming 82801

MRJR20 Partners, LLC
Attn: Rick R Emmett, Registered Agent
10 Pointe Drive, Suite 150
Brea, CA 92821

Lifesize, Inc.
Attn: Cloud Peak Law, LLC, Registered Agent
1095 Sugarview Drive, Suite 500
Sheridan, Wyoming 82801

Karrington, Inc.
Attn: Company Sage Agents, LLC, Registered Agent
1095 Sugarview Drive, Suite 100
Sheridan, Wyoming 82801

Spectrum Payment Solutions, LLC
Attn: Samson Ly
208 S Moore Avenue, Apt D
Monterey Park, CA 91754

Jason D Williams
4155 E La Palma Avenue
Anaheim, CA 92807

Home Energy Solutions, Inc.
Attn: Rick R Emmett, Financial Manager
300 S Harbor Boulevard, Suite 1000
Anaheim, CA 92805

The Coelho Irrevocable Life Insurance Trust
Attn: Rick R Emmett
300 S Harbor Boulevard, Suite 1000
Anaheim, CA 92805

JNR Services, Inc.
Attn: Rick R Emmett
10 Pointe Drive, Suite 150
Brea, CA 92821

CAT Exteriors, Inc.
Attn: Rick R Emmett
10 Pointe Drive, Suite 150
Brea, CA 92821

AZLS Enterprises Inc.
Attn:  Hee S Noh
9 Traditional Place
Irvine, CA 92602

A Solution Debt Relief, Inc.
Attn: Cloud Peak Law, LLC, Registered Agent
1095 Sugar View Drive, Suite 500
Sheridan, WY 82801

Investlinc Wealth Services, Inc.
Attn: West A Cohan
10 Pointe Drive, Suite 150
Brea, CA 92821

**EXHIBIT 4, PAGE 166**

# Exhibit 5

Printed on Aug 18 2025 5:33 pm

## 8:25-ap-01208 - Marshack v. Oxford Knox, LLC et al

Docket Header Last Updated: 8/18/2025 5:33 pm

**U.S. Bankruptcy Court**

**Central District of California (Santa Ana)**

**Adversary Proceeding #: 8:25-ap-01208-SC**

*Assigned to:* Scott C Clarkson

*Lead BK Case:* **23-10571**

*Lead BK Title:* The Litigation Practice Group P.C.

*Lead BK Chapter:* 11

Show Associated Cases

*Date Filed:* 03/19/25

*Demand:* $3000000

*Nature[s] of Suit:* 13 Recovery of money/property - 548 fraudulent transfer
14 Recovery of money/property - other
02 Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy)

*Plaintiff*

-----------------------

**Richard A. Marshack**
870 Roosevelt
Irvine, CA 92620

represented by **Yosina M Lissebeck**
Dinsmore & Shohl, LLP
655 W. Broadway
Suite 800
San Diego, CA 92101
619-400-0473
Fax : 619-400-0501
Email: Yosina.Lissebeck@Dinsmore.com

**Tyler Powell**
Dinsmore & Shohl LLP
100 W Main St Ste 900
Suite 900
Lexington, KY 40507
859-425-1046
Fax : 859-425-1099
Email: tyler.powell@dinsmore.com

V.

*Defendant*

-----------------------

**Oxford Knox, LLC, a Delaware limited liability company**
c/o Richard R. Emmett, Registered Agent

represented by **Oxford Knox, LLC**
PRO SE

**EXHIBIT 5, PAGE 167**

251 Little Falls Dr
Wilmington, DE 19808

*Defendant*
-----------------------
**Buffalo 21 Partners, Inc., a *Wyoming corporation***                    represented by **Buffalo 21 Partners, Inc.**
c/o Richard R. Emmett                                                                              PRO SE
1309 Coffeen Ave Ste 1200
Sheridan, WY 82801

*Defendant*
-----------------------
**Ryan Taylor Connet**                                                                represented by **Ryan Taylor Connet**
4155 E. La Palma Ave                                                                              PRO SE
Anaheim, CA 92807

*Defendant*
-----------------------
**Obrik, Inc., a *Wyoming corporation***                               represented by **Obrik, Inc.**
c/o Cloud Peak Law, Registered Agent                                              PRO SE
1095 Sugarview Dr Ste 500
Sheridan, WY 82801

*Defendant*
-----------------------
**Albright, Inc., a *Florida corporation***                            represented by **Albright, Inc.**
c/o William J. Albright, Registered Agen                                          PRO SE
701 Esta Dr #263
Punta Gorda, FL 33951

*Defendant*
-----------------------
**Jason Dovalina**                                                                    represented by **Jason Dovalina**
128 W. Santa Fe Ave Ste C                                                                        PRO SE
Placentia, CA 92870-5632

*Defendant*
-----------------------
**Rachel Dovalina**                                                                   represented by **Rachel Dovalina**
736 Oceanview Dr                                                                                 PRO SE

**EXHIBIT 5, PAGE 168**

Fullerton, CA 92832

*Defendant*
----------------------
**Factor In, Inc., *a California corporation***                    represented by **Factor In, Inc.**
c/o Sye Gilani                                                                          PRO SE
7651 Greenock Way
Riverside, CA 92508

*Defendant*
----------------------
**Syed Faisal Gilani**                                               represented by **Syed Faisal Gilani**
7651 Greenock Way                                                                 PRO SE
Riverside, CA 92508
*aka* Sye Gilani

*Defendant*
----------------------
**Bae Enterprises, Inc., *a Wyoming corporation***             represented by **Bae Enterprises, Inc.**
Cloud Peak Law, LLC, Registered Agent                                   PRO SE
1095 Sugarview Dr Ste 500
Sheridan, WY 82801

*Defendant*
----------------------
**Rose Bianca Loli**                                                 represented by **Leslie A Cohen**
33741 Alcazar Dr                                                                      Leslie Cohen Law PC
Dana Point, CA 92629                                                               1615-A Montana Ave
                                                                                                Santa Monica, CA 90403
                                                                                                310-394-5900
                                                                                                Fax : 310-394-9280
                                                                                                Email: leslie@lesliecohenlaw.com

*Defendant*
----------------------
**Decacorn Holdings, LLC, *a California limited liability***   represented by **Decacorn Holdings, LLC**
*company*                                                                              PRO SE
c/o Dana Fang, Registered Agent
2520 Venture Oaks Way Ste 120
Sacramento, CA 95833

*Defendant*
----------------------

**EXHIBIT 5, PAGE 169**

**Samson Ly**
208 S. Moore Ave Apt D
Monterey Park, CA 91754

**Samson Ly**

represented by PRO SE

---

**Defendant**
-----------------------
**BEW Solar Management, LLC, a California limited**
**liability company**
c/o Sean M. Stephens, Manager
2560 N. Synergy Ave
Eagle, ID 83616

represented by **BEW Solar Management, LLC**
PRO SE

---

**Defendant**
-----------------------
**Sean M Stephens**
2560 N. Synergy Ave
Eagle, ID 83616

represented by **Sean M Stephens**
PRO SE

---

**Defendant**
-----------------------
**Lexicon Consulting, Inc., a California corporation**
c/o Jamie Latshaw
266 S Magnolia Ave Ste 202
El Cajon, CA 92020

represented by **Lexicon Consulting, Inc.**
PRO SE

---

**Defendant**
-----------------------
**Daniel Lansdale**
515 W Commonwealth Ave Ste 211
Fullerton, CA 92832

represented by **Daniel Lansdale**
PRO SE

---

**Defendant**
-----------------------
**United Partnerships, Inc., a California corporation**
7300 Lennox Ave Rm J-14
Van Nuys, CA 91405

represented by **United Partnerships, Inc.**
PRO SE

---

**Defendant**
-----------------------

**EXHIBIT 5, PAGE 170**

**Ventura Consulting, LLC, a *Nevada limited liability***
***company***
c/o Matthew Church, Registered Agent
708 Grandview Ave
Fullerton, CA 92832

**Ventura Consulting, LLC**
represented by PRO SE

---

*Defendant*
-----------------------
**Matthew Church**
708 Grandview Ave
Fullerton, CA 92832

represented by **Matthew Church**
PRO SE

---

*Defendant*
-----------------------
**Frank Brown**
10620 Southern Highlands Pkwy Ste 110-18
Las Vegas, NV 89141

represented by **Frank Brown**
PRO SE

---

*Defendant*
-----------------------
**Validation Partners, LLC, a *Florida limited liability***
***company***
c/o M&M RA Solutions, Registered Agent
3001 SW 3rd Ave
Miami, FL 33129

represented by **Validation Partners, LLC**
PRO SE

---

*Defendant*
-----------------------
**MRJR20 Partners, LLC, a *California limited liability***
***company***
c/o Rick R. Emmett, Registered Agent
10 Pointe Dr Ste 150
Brea, CA 92821

represented by **MRJR20 Partners, LLC**
PRO SE

---

*Defendant*
-----------------------
**MFCR Investments, LLC, a *Florida limited liability***
***company***
c/o Scott F. Penton Registered Agent
1525 Clapton Dr
Deland, FL 32720

represented by **MFCR Investments, LLC**
PRO SE

**EXHIBIT 5, PAGE 171**

**Defendant**
-----------------------

**Lifesize, Inc.,** *a Wyoming corporation*                represented by **Lifesize, Inc.**
c/o Cloud Peak Law LLC, Registered Agent                   PRO SE
1095 Sugarview Dr Ste 500
Sheridan, WY 82801


**Defendant**
-----------------------

**Karrington, Inc.,** *a Wyoming corporation*              represented by **Karrington, Inc.**
c/o Company Sage Agents LLC                                PRO SE
1095 Sugarview Dr Ste 500
Sheridan, WY 82801


**Defendant**
-----------------------

**Spectrum Payment Solutions, LLC,** *a California limited*   represented by **Spectrum Payment Solutions, LLC**
*liability company*                                          PRO SE
c/o Samson Ly, Registered Agent
208 S. Moore Ave Apt D
Monterey Park, CA 91754


**Defendant**
-----------------------

**Jason D Williams**                                       represented by **Jason D Williams**
4155 E. La Palma Ave                                       PRO SE
Anaheim, CA 92807


**Defendant**
-----------------------

**Home Energy Solutions, Inc.,** *a California corporation*   represented by **Home Energy Solutions, Inc.**
c/o Rick R. Emmett, Manager                                PRO SE
300 S Harbor Blvd Ste 1000
Anaheim, CA 92805


**Defendant**
-----------------------

**The Coelho Irrevocable Life Insurance Trust,** *a California*   represented by **The Coelho Irrevocable Life Insurance Trust**
*Trust*                                                          PRO SE
Rick R. Emmett, Trustee
300 S Harbor Blvd Ste 1000

**EXHIBIT 5, PAGE 172**

Anaheim, CA 92805

**Defendant**
-----------------------
**JNR Services, Inc., *a California corporation***
c/o Rick R. Emmett
10 Pointe Dr Ste 150
Brea, CA 92821

represented by **JNR Services, Inc.**
PRO SE

**Defendant**
-----------------------
**C.A.T. Exteriors, Inc., *an Arizona corporation***
c/o Rick R. Emmett, Registered Agent
10 Pointe Dr Ste 150
Brea, CA 92821

represented by **C.A.T. Exteriors, Inc.**
PRO SE

**Defendant**
-----------------------
**AZLS Enterprises Inc., *a California corporation***
c/o Hee S. Noh, Registered Agent
9 Traditional Pl
Irvine, CA 92602

represented by **AZLS Enterprises Inc.**
PRO SE

**Defendant**
-----------------------
**A Solution Debt Relief, Inc., *a Wyoming corporation***
c/o Cloud Peak Law LLC, Registered Agent
1095 Sugarview Dr Ste 500
Sheridan, WY 82801

represented by **A Solution Debt Relief, Inc.**
PRO SE

**Defendant**
-----------------------
**Validation LLC, *a California limited liability company***
c/o Agent for Service of Process
Matthew Church
17542 17th Street Ste 105
Tustin, CA 92780

represented by **Validation LLC**
PRO SE

**Defendant**
-----------------------
**Rick Emmett**
10 Point Dr Ste 150

represented by **Rick Emmett**
PRO SE

**EXHIBIT 5, PAGE 173**

Brea, CA 92821

*Defendant*
-----------------------
**Innovative Solutions, LLC,** *a Wyoming corporation*
c/o Cloud Peak Law LLC, Registert Agen
1095 Sugarview Dr Ste 500
Sheridan, WY 82801

represented by **Innovative Solutions, LLC**
PRO SE

*Defendant*
-----------------------
**INVESTLINC Wealth Services, Inc.,** *a California corporation*
c/o West A. Cohen, Registered Agent
10 Pointe Dr Ste 150
Brea, CA 92821

represented by **INVESTLINC Wealth Services, Inc.**
PRO SE

*Defendant*
-----------------------
**Final Season, Inc.,** *a California corporation*
5716 Corsa Ave S. 110
Lake Village, CA 91362

represented by **Final Season, Inc.**
PRO SE

*Trustee*
-----------------------
**Richard A Marshack (TR)**
Marshack Hays Wood LLP
870 Roosevelt
Irvine, CA 92620
949-333-7777

*U.S. Trustee*
-----------------------
**United States Trustee (SA)**
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4593
(714) 338-3400

| Date Filed | # | Docket Text |
|---|---|---|
| 08/15/2025 | 32 | Errata to *Notice of Voluntary Dismissal of Certain Defendants; Proof of Service* Filed by Plaintiff Richard A. Marshack (RE: related document(s)29 Notice). (Powell, Tyler) (Entered: 08/15/2025) |

**EXHIBIT 5, PAGE 174**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/14/2025 | 31 | Notice to Filer of Error and/or Deficient Document Incorrect hearing date/time/location was selected. THE FILER IS INSTRUCTED TO FILE A NOTICE OF ERRATA WITH THE CORRECT HEARING INFORMATION, WHICH IS: SEPTEMBER 18, 2025 AT 11:00 A.M. IN COURTROOM 5C, LOCATED AT 411 WEST FOURTH STREET, SANTA ANA, CA 92701. (RE: related document(s)29 Notice filed by Plaintiff Richard A. Marshack) (NB8) (Entered: 08/14/2025) |
| 08/13/2025 | 30 | Amended Complaint - Second Amended Complaint; Proof of Service by Tyler Powell on behalf of Richard A. Marshack against Richard A. Marshack. (RE: related document(s)1 Adversary case 8:25-ap-01208. Complaint by Richard A. Marshack against Oxford Knox, LLC, Buffalo 21 Partners, Inc., Richard Ronald Emmett, Ryan Taylor Connet, Obrik, Inc., Albright, Inc., Jason Dovalina, Rachel Dovalina, The Final Season, Inc., Factor In, Inc., Syed Faisal Gilani, Bae Enterprises, Inc., Rose Bianca Loli, Decacorn Holdings, LLC, Samson Ly, BEW Solar Management, LLC, Sean M Stephens, Lexicon Consulting, Inc., Daniel Lansdale, United Partnerships, Inc., Ventura Consulting, LLC, Matthew Church, Frank Brown, Validation Partners, LLC, Innovative Solutions, Inc., MRJR20 Partners, LLC, MFCR Investments, LLC, Lifesize, Inc., Karrington, Inc., Spectrum Payment Solutions, LLC, Jason D Williams, Home Energy Solutions, Inc., The Coelho Irrevocable Life Insurance Trust, JNR Services, LLC, C.A.T. Exteriors, Inc., AZLS Enterprises Inc., A Solution Debt Relief, Inc., Investlinc Wealth Services, Inc.. Fee Amount $350 for (1) Avoidance, recovery, and preservation of preferential transfers made to or for certain defendants made within ninety days of the petition date; (2) Avoidance, recovery, and preservation of Post-Petition transfers made to or for certain defendants; (3) Avoidance of Debtors execution of repayment agreement with defendant Oxford Knox, LLC pursuant to 11 U.S.C. §§548(a), 550, and 551; (4) Avoidance, recovery, and preservation of fraudulent transfers(s) pursuant to 11 U.S.C. §§548(a)(1), 550, and 551; (5) Avoidance, recovery, and preservation of fraudulent transfer(s) to 11 U.S.C. §§548(a)(2), 550, and 551; (6) Avoidance, preservation, and recovery of voidable transfers made with intent to defraud [11U.S.C. §§544, 550, 551; Cal. Civ Code §§3439.04(a)(1) and 3439.07] (7)Avoidance, preservation, and recovery of voidable transfers made with no intent to defraud [11 U.S.C. §§544, 550, 551; Cal. Civ. Code §§3439.04(a)(2), 3439.05, and 3439.07]; (8) Avoidance, recovery, and preservation of fraudulent transfers made to or for the benefit of Defendants Gilani and Dovalina arising from use of American Express Card; and (9) Objection to Proof of Claim No. 818 of Oxford Knox, LLC; Adversary Cover Sheet Nature of Suit: (13 (Recovery of money/property - 548 fraudulent transfer)),(14 (Recovery of money/property - other)),(02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy)) filed by Plaintiff Richard A. Marshack). (Powell, Tyler) (Entered: 08/13/2025) |
| 08/13/2025 | 29 | Notice of Voluntary Dismissal of Certain Defendants without Prejudice pursuant to FRCP 41 made Applicable herein by FRBP 7041; Proof of Service Filed by Plaintiff Richard A. Marshack. (Powell, Tyler) - See docket entry no.: 31 for corrections Modified on 8/14/2025 (NB8). (Entered: 08/13/2025) |
| 08/10/2025 | 26 | BNC Certificate of Notice - PDF Document. (RE: related document(s)25 Order (Generic) (BNC-PDF)) No. of Notices: 39. Notice Date 08/10/2025. (Admin.) (Entered: 08/10/2025) |
| 08/08/2025 | 25 | Order On Stipulation Between Plaintiff Richard A. Marshack, Trustee Of The LPG Liquidation Trust And Certain Defendants: (I) allowing Amendment To Complaint; (II) Dismissing Certain Defendants Without Prejudice; (III) Extending Remaining Defendants' Time To Answer And Other Deadlines; And (IV) Rescheduling Status Conference From August 21 2025 To September 16, 2025. IT IS ORDERED: 1. The Stipulation is APPROVED for the reasons stated therein. 2. Following entry of this Order, Plaintiff is authorized to file a Notice of Dismissal Without Prejudice of Rick Emmett, Ryan Taylor Connet, Obrick, Inc., Albright, Inc., Final Season, Inc., Factor In, Inc., Sean Stephens, Decacorn Holdings, Inc., Daniel Lansdale, Innovative Solutions, LLC, MFCR investments, LLC, MRJR20 Partners, LLC, Lifesize, Inc., Karrington, Inc., Jason D Williams, The Coelho Irrevocable Life Insurance Trust, and A Solution Debt Relief, Inc. 3. Plaintiff is directed to file his Second Amended Complaint within three (3) business days of the entry of this order. When Plaintiff files his Second Amended Complaint, he is authorized to change the caption to reflect the previous dismissal of defendants so those parties will no longer be identified as a defendant herein. 4. The GG Parties identified as Defendants in the Second Amended Complaint have agreed and shall both accept service of process of the Second Amended Complaint through their counsel and file an answer or other responsive pleading to the Second Amended Complaint on or before August 18, 2025. 5. The STATUS CONFERENCE currently set for 1:30 p.m. on August 21, 2025 is RESCHEDULED TO STATUS CONFERENCE AT 11:00 A.M. on SEPTEMBER 18, 2025. A status report will be filed in accordance with the local rules and the Parties will hold a timely Rule 26(f) meeting. 6. The reservation of rights in the Stipulation is acknowledged. 7. The Court retains jurisdiction to interpret and implement the terms of the Stipulation and this Order. (BNC-PDF) Signed on 8/8/2025 (RE: related document(s)24 Stipulation filed by Plaintiff Richard A. Marshack). (NB8) (Entered: 08/08/2025) |
| 08/07/2025 | 24 | Stipulation By Richard A. Marshack and and Defendants I) allowing Amendment to Complaint; II) dismissing certain Defendants without Prejudice; III) extending remaining Defendants' time to Asnwer and other Deadlines; and IV) Rescheduling Status Conference from August 21 2025 to September 16, 2025; Proof of Service Filed by Plaintiff Richard A. Marshack (Powell, Tyler) (Entered: 08/07/2025) |
| 07/17/2025 | 28 | Hearing Continued Status Conference (RE: related document(s)1 Trustee's Amended Complaint For: (1) Avoidance, Recovery, And Preservation Of Preferential Transfers Made To Or for Certain Defendants Made Within Ninety Days Of The Petition Date; (2) Avoidance, Recovery, And Preservation Of Post-Petition Transfers Made To Or For The Benefit Of Certain Defendants;(3) Avoidance Of Debtor's Execution Of Repayment Agreement With Defendant Oxford Know, LLC Pursuant To 11 U.S.C. Sections 548(a), 550, And 551;(4) Avoidance, Recovery, And Preservation Of Fraudulent Transfer(s) Pursuant To 11 U.S.C. Sections 548(a)(1), 550, And 551; (5) Avoidance, Recovery, And Preservation Of Fraudulent Transfer(s) Pursuant To 11 U.S.C. Sections 548(a)(2), 550, And 551;(6) Avoidance, Preservation, And Recovery Of Voidable Transfers Made WithIntent To Defraud [11 U.S.C. Sections 544, 550, 551; Cal. Civl Code Sections3439.04(a)(1) And 3439.07];(7) Avoidance, Preservation, And Recovery Of Voidable Transfers Made With No Intent To Defraud [11 U.S.C. Sections 544, 550, 551; Cal. Civl Code Sections 3439.04(a)(2) And 3439.07]; (8) Avoidance, Recovery, And Preservation Of Fraudulent Transfers Made To Or For The Benefit Of Defendants Gilani And Dovalina Arising From Use Of American Express Card; And(9) Objection To Proof Of Claim No. 818 Of Oxford Knox, LLC filed by Plaintiff Richard A. Marshack) - STATUS CONFERENCE HEARING CONTINUED TO AUGUST 21, 2025 AT 1:30 P.M. IN COURTROOM 5C, LOCATED AT 411 WEST FOURTH STREET, SANTA ANA, CA 92701; STATUS REPORT DUE 14 DAYS IN ADVANCE The case judge is Scott C Clarkson (NB8) (Entered: 08/12/2025) |
| 07/17/2025 | 27 | Hearing Held RE: Defendant Rose Bianca Loli Motion To Dismiss Adversary Proceeding And Amended Complaint (RE: related document(s)9 Motion to Dismiss Adversary Proceeding filed by Defendant Rose Bianca Loli) - OFF CALENDAR PER ORDER ON STIPULATION BETWEEN PLAINTIFF RICHARD A. MARSHACK, TRUSTEE OF THE LPG LIQUIDATION TRUST, AND DEFENDANT ROSA BIANCA LOLI DISMISSING LOLI ONLY FROM THECOMPLAINT AND VACATING HEARING DATE FOR HER PENDING MOTION TO DISMISS ENTERED 6-11-2025 - (DOCKET NO. 20) (NB8) (Entered: 08/12/2025) |
| 07/03/2025 | 23 | Status report Notice of Filing of Omnibus Status Report on Certain Adversary Cases Filed by Plaintiff Richard A. Marshack (RE: related document(s)1 Complaint). (Lissebeck, Yosina) (Entered: 07/03/2025) |
| 06/13/2025 | 22 | BNC Certificate of Notice - PDF Document. (RE: related document(s)20 Order on Generic Motion (BNC-PDF)) No. of Notices: 39. Notice Date 06/13/2025. (Admin.) (Entered: 06/13/2025) |
| 06/11/2025 | 20 | Order On Stipulation Between Plaintiff Richard A. Marshack, Trustee Of The LPG Liquidation Trust, And Defendant Rosa Bianca Loli Dismissing Loli Only From The Complaint And Vacating Hearing Date For Her Pending Motion To Dismiss. IT IS ORDERED: 1. The Stipulation Is APPROVED For The Reasons Stated Therein. 2. MS. LOLI Will Be DISMISSED As A Party From This Adversary Proceeding. This DISMISSAL IS WITH PREJUDICE As To Any Claims The Plaintiff Has Or May Have Against Ms. Loli Related To Oxford Knox, LLC. Ms. Loli's Dismissal From This Adversary Will Have No Impact Or Effect On Her Status As A Defendant In The Other Adversaries As That Term Is Defined In The Stipulation. 3. Ms. Loli's Motion To Dismiss Is Moot Upon Entry Of This Order And The Hearing On The MOTION TO DISMISS Presently Scheduled For July 17, 2025, At 1:30 |

**EXHIBIT 5, PAGE 175**

| Date Filed | # | Docket Text |
|---|---|---|
| | | **P.M.** Is VACATED. 4. The Reservation Of Rights In The Stipulation Is Acknowledged. 5. The Court Retains Jurisdiction To Interpret And Implement The Terms Of The Stipulation And This Order. (BNC-PDF) (Related Doc # 19 ) Signed on 6/11/2025 (N8) (Entered: 06/11/2025) |
| 06/10/2025 | 19 | Stipulation By Richard A. Marshack and Stipulation between Plaintiff Richard A. Marshack, Trustee of The LPG Liquidation Trust, and Defendant Rosa Bianca Loli Dismissing Loli Only from the Complaint and Vacating Hearing Date for her Pending Motion to Dismiss Filed by Plaintiff Richard A. Marshack (Powell, Tyler) (Entered: 06/10/2025) |
| 06/05/2025 | 21 | Hearing Continued On Status Conference (RE: related document(s)4 Amended Complaint For:(1) Avoidance, Recovery, And Preservation Of Preferential Transfers Made To Or For Certain Defendants Made Within Ninety Days Of The Petition Date; (2) Avoidance, Recovery, And Preservation Of Post-Petition Transfers Made To Or For The Benefit Of Certain Defendants; (3) Avoidance Of Debtor's Execution Of Repayment Agreement With Defendant Oxford Knox, LLC Pursuant To 11 U.S.C. Sections 548(a), 550, And 551; (4) Avoidance, Recovery, And Preservation Of Fraudulent Transfer(s) Pursuant To 11 U.S.C. Sections 548(a)(1), 550, And 551; (5) Avoidance, Recovery, And Preservation Of Fraudulent Transfer(s) Pursuant To 11 U.S.C. Sections 548(a)(2), 550, And 551;(6) Avoidance, Recovery, And Preservation Of Voidable Transfers Made WithIntent To Defraud [11 U.S.C. Sections 544, 550, 551; Cal. Civil Code Sections3439.04(a)(1) And 3439.07]; (7) Avoidance, Preservation, And Recovery Of Voidable Transfers Made With No Intent To Defraud [11 U.S.C. Sections 544, 550, 551; Cal. Civil Code Sections 3439.04(a)(2) And 3439.07]; (8) Avoidance, Recovery, And Preservation Of Fraudulent Transfers Made To Or For The Benefit Of Defendants Gilani And Dovalina Arising From Use Of American Express Card; And(9) Objection To Proof Of Claim No. 818 Of Oxford Knox, LLC filed by Plaintiff Richard A. Marshack) - STATUS CONFERENCE HEARING CONTINUED TO JULY 17, 2025 At 1:30 P.M. IN COURTROOM 5C, LOCATED AT 411 WEST FOURTH STREET, SANTA ANA, CA 92701 PER ORDER ON JOINT STIPULATION - PLAINTIFF RICHARD A. MARSHACK TRUSTEE OF THE LPG LIQUIDATION TRUST AND ALL DEFENDANTS EXCLUDING BAE ENTERPRISES, INC. AND ROSE BIANCA LOLI EXTENDING PRE-TRIAL DEADLINES AND RESCHEDULE PRE-TRIAL CONFERENCE ENTERED 5-19-2025 - (DOCKET NO.12) The case judge is Scott C Clarkson (GD) (Entered: 06/13/2025) |
| 05/22/2025 | 18 | BNC Certificate of Notice (RE: related document(s)15 Notice that Clerk Has Entered Default (BNC)) No. of Notices: 39. Notice Date 05/22/2025. (Admin.) (Entered: 05/22/2025) |
| 05/22/2025 | 17 | BNC Certificate of Notice (RE: related document(s)14 Notice that Clerk Has Entered Default (BNC)) No. of Notices: 39. Notice Date 05/22/2025. (Admin.) (Entered: 05/22/2025) |
| 05/21/2025 | 16 | BNC Certificate of Notice - PDF Document. (RE: related document(s)12 ORDER to continue/reschedule hearing (BNC-PDF)) No. of Notices: 39. Notice Date 05/21/2025. (Admin.) (Entered: 05/21/2025) |
| 05/20/2025 | 15 | Notice That Clerk Has Entered Default Against Defendant(s) BAE Enterprises, Inc., a Wyoming corporation (RE: related document(s)13 Request for Entry of Default (Local BK Rule 7055-1) filed by Plaintiff Richard A. Marshack) (GD) (Entered: 05/20/2025) |
| 05/20/2025 | 14 | Notice That Clerk Has Entered Default Against Defendant(s) BAE Enterprises, Inc., a Wyoming corporation (RE: related document(s)13 Request for Entry of Default (Local BK Rule 7055-1) filed by Plaintiff Richard A. Marshack) (N8) (Entered: 05/20/2025) |
| 05/20/2025 | 13 | Request for Entry of Default Under Local Bankruptcy Rule 7055-1, as to BAE Enterprises, Inc., a Wyoming corporation Filed by Plaintiff Richard A. Marshack. (Powell, Tyler) (Entered: 05/20/2025) |
| 05/19/2025 | 12 | Order On Joint Stipulation Between Plaintiff Richard A. Marshack, Trustee Of The LPG Liquidation Trust And Defendants Excluding Bae Enterprises, Inc. And Rose Bianca Loli Extending Pre-Trial Deadlines And Reschedule Pre-Trial Conference. IT IS ORDERED: 1. The Stipulation Is APPROVED For The Reasons Stated Herein. 2. The Oxford Knox Defendants, As Defined Herein, Are Deemed To Have Waived Service Of Process Of The Complaint. The Oxford Knox Defendants Shall Have Until June 6, 2025 To Answer Or Otherwise Respond To The Complaint. 3. The STATUS CONFERENCE Currently Set For May 28, 2025 Is CONTINUED TO JULY 17, 2025 At 1:30 P.M. ("Continued Status Conference") For All Defendants. A Status Report Shall Be Filed Fourteen Days Before The Continued Status Conference, And The Parties Shall Hold Their Rule 26(f) Meeting On Or Before June 26, 2025 With An Exchange Of Initial Disclosures To Occur On Or Before June 30, 2025. . A Status Report Shall Be Filed Fourteen Days Before The Continued Status Conference, And The Parties Shall Hold Their Rule 26(f) Meeting On Or Before June 26, 2025 With An Exchange Of Initial Disclosures To Occur On Or Before June 30, 2025. 4. The Reservation Of Rights In The Stipulation Is Acknowledged. 5. The Court Retains Jurisdiction To Interpret And Implement The Terms Of The Stipulation And This Order. (BNC-PDF) (Related Doc # 11 ) Signed on 5/19/2025 (N8) (Entered: 05/19/2025) |
| 05/16/2025 | 11 | Stipulation By Richard A. Marshack and All Defendants excluding BAE Enterprises Inc. and Rose Bianca Loli for Extension of Deadlines and to Continue/Reschedule Pre-Trial Conference; Proof of Service Filed by Plaintiff Richard A. Marshack (Powell, Tyler) (Entered: 05/16/2025) |
| 05/07/2025 | 10 | Hearing Set (RE: related document(s)9 Motion To Dismiss Adversary Proceeding And Amended Complaint filed by Defendant Rose Bianca Loli) The Hearing date is set for 7/17/2025 at 01:30 PM at Crtrm 5C, 411 W Fourth St., Santa Ana, CA 92701. The case judge is Scott C Clarkson (N8) (Entered: 05/08/2025) |
| 05/07/2025 | 9 | Motion to Dismiss Adversary Proceeding And Notice Thereof Filed by Defendant Rose Bianca Loli (Cohen, Leslie) (Entered: 05/07/2025) |
| 04/14/2025 | 8 | Summons Service Executed on A Solution Debt Relief, Inc. 4/14/2025; AZLS Enterprises Inc. 4/14/2025; BEW Solar Management, LLC 4/14/2025; Bae Enterprises, Inc. 4/14/2025; Frank Brown 4/14/2025; Buffalo 21 Partners, Inc. 4/14/2025; C.A.T. Exteriors, Inc. 4/14/2025; Matthew Church 4/14/2025; Ryan Taylor Connet 4/14/2025; Jason Dovalina 4/14/2025; Rachel Dovalina 4/14/2025; Rick Emmett 4/14/2025; Factor In, Inc. 4/14/2025; Syed Faisal Gilani 4/14/2025; Home Energy Solutions, Inc. 4/14/2025; INVESTLINC Wealth Services, Inc. 4/14/2025; Innovative Solutions, LLC 4/14/2025; JNR Services, Inc. 4/14/2025; Karrington, Inc. 4/14/2025; Daniel Lansdale 4/14/2025; Lifesize, Inc. 4/14/2025; Rose Bianca Loli 4/14/2025; Samson Ly 4/14/2025; MRJR20 Partners, LLC 4/14/2025; Obrik, Inc. 4/14/2025; Oxford Knox, LLC 4/14/2025; Spectrum Payment Solutions, LLC 4/14/2025; Sean M Stephens 4/14/2025; The Coelho Irrevocable Life Insurance Trust 4/14/2025; United Partnerships, Inc. 4/14/2025; Validation LLC 4/14/2025; Ventura Consulting, LLC 4/14/2025; Jason D Williams 4/14/2025 (Powell, Tyler) (Entered: 04/14/2025) |
| 04/09/2025 | 7 | BNC Certificate of Notice - PDF Document. (RE: related document(s)5 Order (Generic) (BNC-PDF)) No. of Notices: 39. Notice Date 04/09/2025. (Admin.) (Entered: 04/09/2025) |
| 04/07/2025 | 6 | Summons Issued on A Solution Debt Relief, Inc. Date Issued 4/7/2025, Answer Due 5/7/2025; AZLS Enterprises, Inc. Date Issued 4/7/2025, Answer Due 5/7/2025; Albright, Inc. Date Issued 4/7/2025, Answer Due 5/7/2025; BEW Solar Management, LLC Date Issued 4/7/2025, Answer Due 5/7/2025; Bae Enterprises, Inc. Date Issued 4/7/2025, Answer Due 5/7/2025; Frank Brown Date Issued 4/7/2025, Answer Due 5/7/2025; Buffalo 21 Partners, Inc. Date Issued 4/7/2025, Answer Due 5/7/2025; C.A.T. Exteriors, Inc. Date Issued 4/7/2025, Answer Due 5/7/2025; Matthew Church Date Issued 4/7/2025, Answer Due 5/7/2025; Ryan Taylor Connet Date Issued 4/7/2025, Answer Due 5/7/2025; Decacorn Holdings, LLC Date Issued 4/7/2025, Answer Due 5/7/2025; Jason Dovalina Date Issued 4/7/2025, Answer Due 5/7/2025; Rachel Dovalina Date Issued 4/7/2025, Answer Due 5/7/2025; Rick Emmett Date Issued 4/7/2025, Answer Due 5/7/2025; Factor In, Inc. Date Issued 4/7/2025, Answer Due 5/7/2025; Final Season, Inc. Date Issued |

| Date Filed | # | Docket Text |
|---|---|---|

4/7/2025; Answer Due **5/7/2025**; Syed Faisal Gilani Date Issued **4/7/2025**, Answer Due **5/7/2025**; Home Energy Solutions, Inc. Date Issued **4/7/2025**, Answer Due **5/7/2025**; INVESTLINC Wealth Services, Inc. Date Issued **4/7/2025**, Answer Due **5/7/2025**; Innovative Solutions, LLC Date Issued **4/7/2025**, Answer Due **5/7/2025**; JNR Services, Inc. Date Issued **4/7/2025**, Answer Due **5/7/2025**; Karrington, Inc. Date Issued **4/7/2025**, Answer Due **5/7/2025**; Daniel Lansdale Date Issued **4/7/2025**, Answer Due **5/7/2025**; Lexicon Consulting, Inc. Date Issued **4/7/2025**, Answer Due **5/7/2025**; Lifesize, Inc. Date Issued **4/7/2025**, Answer Due **5/7/2025**; Rose Bianca Loli Date Issued **4/7/2025**, Answer Due **5/7/2025**; Samson Ly Date Issued **4/7/2025**, Answer Due **5/7/2025**; MFCR Investments, LLC Date Issued **4/7/2025**, Answer Due **5/7/2025**; MRJR20 Partners, LLC Date Issued **4/7/2025**, Answer Due **5/7/2025**; Obrik, Inc. Date Issued **4/7/2025**, Answer Due **5/7/2025**; Oxford Knox, LLC Date Issued **4/7/2025**, Answer Due **5/7/2025**; Spectrum Payment Solutions, LLC Date Issued **4/7/2025**, Answer Due **5/7/2025**; Sean M Stephens Date Issued **4/7/2025**, Answer Due **5/7/2025**; The Coelho Irrevocable Life Insurance Trust Date Issued **4/7/2025**, Answer Due **5/7/2025**; United Partnerships, Inc. Date Issued **4/7/2025**, Answer Due **5/7/2025**; Validation LLC Date Issued **4/7/2025**, Answer Due **5/7/2025**; Ventura Consulting, LLC Date Issued **4/7/2025**, Answer Due **5/7/2025**; Jason D Williams Date Issued **4/7/2025**, Answer Due **5/7/2025** (RE: related document(s)4 Amended Complaint filed by Plaintiff Richard A. Marshack) Status Conference hearing to be held on **6/5/2025** at **01:30 PM** at Crtrm 5C, 411 W Fourth St., Santa Ana, CA 92701. The case judge is Scott C Clarkson (NB8) (Entered: 04/07/2025)

| 04/07/2025 | 5 | Order RE: Early Meeting Of Counsel, Status Conference Instructions, And General Procedures. IT IS ORDERED: The Court Finds It Appropriate To Issue The Following Order In Lieu Of Its Early Meeting Of Counsel And Status Conference Instructions. The Specific Date For A Particular Status Conference Will Be Identified In The Applicable Summons, To Be Served With The Complaint. (All Status Conferences Will Be Conducted IN PERSON In Courtroom 5C, Located At 411 West Fourth Street, Santa Ana, CA 92701. Any Out-Of-District Attorney Admitted Pro Hac Vice Must Also Have Local Counsel Present. No Virtual Or Telephonic Appearances Will Be Permitted.) (SEE ORDER FOR FURTHER RULING.) (BNC-PDF) (Related Doc # 4 ) Signed on 4/7/2025 (NB8) (Entered: 04/07/2025) |

| 03/19/2025 | 4 | Amended Complaint by Tyler Powell on behalf of Richard A. Marshack against Validation LLC. (RE: related document(s)1 Adversary case 8:25-ap-01208. Complaint by Richard A. Marshack against Oxford Knox, LLC, Buffalo 21 Partners, Inc., Richard Ronald Emmett, Ryan Taylor Connet, Obrik, Inc., Albright, Inc., Jason Dovalina, Rachel Dovalina, The Final Season, Inc., Factor In, Inc., Syed Faisal Gilani, Bae Enterprises, Inc., Rose Bianca Loli, Decacorn Holdings, LLC, Samson Ly, BEW Solar Management, LLC, Sean M Stephens, Lexicon Consulting, Inc., Daniel Lansdale, United Partnerships, Inc., Ventura Consulting, LLC, Matthew Church, Frank Brown, Validation Partners, LLC, Innovative Solutions, Inc., MRJR20 Partners, LLC, MFCR Investments, LLC, Lifesize, Inc., Karrington, Inc., Spectrum Payment Solutions, LLC, Jason D Williams, Home Energy Solutions, Inc., The Coelho Irrevocable Life Insurance Trust, JNR Services, Inc., C.A.T. Exteriors, Inc., AZLS Enterprises Inc., A Solution Debt Relief, Inc., InvestlInc Wealth Services, Inc.. Fee Amount $350 for (1) Avoidance, recovery, and preservation of preferential transfers made to or for certain defendants made within ninety days of the petition date; (2) Avoidance, recovery, and preservation of Post-Petition transfers made to or for certain defendants; (3) Avoidance of Debtors execution of repayment agreement with defendant Oxford Knox, LLC pursuant to 11 U.S.C. §§548(a), 550, and 551; (4) Avoidance, recovery, and preservation of fraudulent transfer(s) to 11 U.S.C. §§548(a)(1), 550, and 551; (5) Avoidance, recovery, and preservation of fraudulent transfer(s) to 11 U.S.C. §§548(a)(2), 550, and 551; (6) Avoidance, preservation, and recovery of voidable transfers made with intent to defraud [11 U.S.C. §§544, 550, 551; Cal. Civ Code §§3439.04(a)(1) and 3439.07] (7)Avoidance, preservation, and recovery of voidable transfers made with no intent to defraud [11 U.S.C. §§544, 550, 551; Cal. Civ Code §§3439.04(a)(2), 3439.05, and 3439.07]; (8) Avoidance, recovery, and preservation of fraudulent transfers made to or for the benefit of Defendants Gilani and Dovalina arising from use of American Express Card; and (9) Objection to Proof of Claim No. 818 of Oxford Knox, LLC; Adversary Cover Sheet Nature of Suit: (13 (Recovery of money/property - 548 fraudulent transfer),(14 (Recovery of money/property - other)),(02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy))) filed by Plaintiff Richard A. Marshack). (Powell, Tyler) (Entered: 03/19/2025) |

| 03/19/2025 | 3 | Notice of Dismissal as to Defendant Validation, Partners LLC, a Florida Limited Liability Company Filed by Plaintiff Richard A. Marshack. (Powell, Tyler) (Entered: 03/19/2025) |

| 03/19/2025 | 2 | Notice of Required Compliance with Rule 7026 Filed by Plaintiff Richard A. Marshack (RE: related document(s)1 Adversary case 8:25-ap-01208. Complaint by Richard A. Marshack against Oxford Knox, LLC, Buffalo 21 Partners, Inc., Richard Ronald Emmett, Ryan Taylor Connet, Obrik, Inc., Albright, Inc., Jason Dovalina, Rachel Dovalina, The Final Season, Inc., Factor In, Inc., Syed Faisal Gilani, Bae Enterprises, Inc., Rose Bianca Loli, Decacorn Holdings, LLC, Samson Ly, BEW Solar Management, LLC, Sean M Stephens, Lexicon Consulting, Inc., Daniel Lansdale, United Partnerships, Inc., Ventura Consulting, LLC, Matthew Church, Frank Brown, Validation Partners, LLC, Innovative Solutions, Inc., MRJR20 Partners, LLC, MFCR Investments, LLC, Lifesize, Inc., Karrington, Inc., Spectrum Payment Solutions, LLC, Jason D Williams, Home Energy Solutions, Inc., The Coelho Irrevocable Life Insurance Trust, JNR Services, Inc., C.A.T. Exteriors, Inc., AZLS Enterprises Inc., A Solution Debt Relief, Inc., InvestlInc Wealth Services, Inc.. Fee Amount $350 for (1) Avoidance, recovery, and preservation of preferential transfers made to or for certain defendants made within ninety days of the petition date; (2) Avoidance, recovery, and preservation of Post-Petition transfers made to or for certain defendants; (3) Avoidance of Debtors execution of repayment agreement with defendant Oxford Knox, LLC pursuant to 11 U.S.C. §§548(a), 550, and 551; (4) Avoidance, recovery, and preservation of fraudulent transfer(s) pursuant to 11 U.S.C. §§548(a)(1), 550, and 551; (5) Avoidance, recovery, and preservation of fraudulent transfer(s) to 11 U.S.C. §§548(a)(2), 550, and 551; (6) Avoidance, preservation, and recovery of voidable transfers made with intent to defraud [11U.S.C. §§544, 550, 551; Cal. Civ Code §§3439.04(a)(1) and 3439.07] (7)Avoidance, preservation, and recovery of voidable transfers made with no intent to defraud [11 U.S.C. §§544, 550, 551; Cal. Civ Code §§3439.04(a)(2), 3439.05, and 3439.07]; (8) Avoidance, recovery, and preservation of fraudulent transfers made to or for the benefit of Defendants Gilani and Dovalina arising from use of American Express Card; and (9) Objection to Proof of Claim No. 818 of Oxford Knox, LLC; Adversary Cover Sheet Nature of Suit: (13 (Recovery of money/property - 548 fraudulent transfer),(14 (Recovery of money/property - other)),(02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy))) filed by Plaintiff Richard A. Marshack). (Powell, Tyler) (Entered: 03/19/2025) |

| 03/19/2025 | | Receipt of Complaint( 8:25-ap-01208-SC) [cmp,cmp] ( 350.00) Filing Fee. Receipt number A58181697. Fee amount 350.00. (re: Doc# 1) (U.S. Treasury) (Entered: 03/19/2025) |

| 03/19/2025 | 1 | Adversary case 8:25-ap-01208. Complaint by Richard A. Marshack against Oxford Knox, LLC, Buffalo 21 Partners, Inc., Richard Ronald Emmett, Ryan Taylor Connet, Obrik, Inc., Albright, Inc., Jason Dovalina, Rachel Dovalina, The Final Season, Inc., Factor In, Inc., Syed Faisal Gilani, Bae Enterprises, Inc., Rose Bianca Loli, Decacorn Holdings, LLC, Samson Ly, BEW Solar Management, LLC, Sean M Stephens, Lexicon Consulting, Inc., Daniel Lansdale, United Partnerships, Inc., Ventura Consulting, LLC, Matthew Church, Frank Brown, Validation Partners, LLC, Innovative Solutions, Inc., MRJR20 Partners, LLC, MFCR Investments, LLC, Lifesize, Inc., Karrington, Inc., Spectrum Payment Solutions, LLC, Jason D Williams, Home Energy Solutions, Inc., The Coelho Irrevocable Life Insurance Trust, JNR Services, Inc., C.A.T. Exteriors, Inc., AZLS Enterprises Inc., A Solution Debt Relief, Inc., InvestlInc Wealth Services, Inc.. Fee Amount $350 for (1) Avoidance, recovery, and preservation of preferential transfers made to or for certain defendants made within ninety days of the petition date; (2) Avoidance, recovery, and preservation of Post-Petition transfers made to or for certain defendants; (3) Avoidance of Debtors execution of repayment agreement with defendant Oxford Knox, LLC pursuant to 11 U.S.C. §§548(a), 550, and 551; (4) Avoidance, recovery, and preservation of fraudulent transfer(s) pursuant to 11 U.S.C. §§548(a)(1), 550, and 551; (5) Avoidance, recovery, and preservation of fraudulent transfer(s) to 11 U.S.C. §§548(a)(2), 550, and 551; (6) Avoidance, preservation, and recovery of voidable transfers made with intent to defraud [11U.S.C. §§544, 550, 551; Cal. Civ Code §§3439.04(a)(1) and 3439.07] (7)Avoidance, preservation, and recovery of voidable transfers made with no intent to defraud [11 U.S.C. §§544, 550, 551; Cal. Civ. Code §§3439.04(a)(2), 3439.05, and 3439.07]; (8) Avoidance, recovery, and preservation of fraudulent transfers made to or for the benefit of Defendants Gilani and Dovalina arising from use of American Express Card; and (9) Objection to Proof of Claim No. 818 of Oxford Knox, LLC; Adversary Cover Sheet Nature of Suit: (13 (Recovery of money/property - 548 fraudulent transfer),(14 (Recovery of money/property - other)),(02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy))) (Powell, Tyler) (Entered: 03/19/2025) |

# Exhibit 6

1  Christopher Celentino (SBN 131688)
   Yosina M. Lissebeck (SBN 201654)
2  **DINSMORE & SHOHL LLP**
   655 West Broadway, Suite 800
3  San Diego, CA 92101
   Tel: (619) 400-0500
4  Fax: (619) 400-0501
   christopher.celentino@dinsmore.com
5  yosina.lissebeck@dinsmore.com

6  Tyler Powell (Ky. Bar No. 90520 – Admitted pro hac vice)
   **DINSMORE & SHOHL LLP**
7  100 West Main Street, Suite 900
   Lexington, KY  40507
8  Tel: (859) 425-1046
   Fax: (859) 425-1099
9  tyler.powell@dinsmore.com

10 Attorneys for Richard A. Marshack,
   Trustee of the LPG Liquidation Trust

11

12             **UNITED STATES BANKRUPTCY COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14                    **SANTA ANA DIVISION**

15 | In re:                                    | Chapter 11

16 | The Litigation Practice Group P.C.,       | Case No. 8:23-bk-10571-SC
                                               | Adv No. 8:25-ap-01208-SC
17 |                    Debtor.

18 | _____          | **STIPULATION OF PLAINTIFF RICHARD
                                               | A. MARSHACK, TRUSTEE OF THE LPG
19 | Richard A. Marshack, Trustee of the LPG   | LIQUIDATION TRUST AND CERTAIN
   | Liquidation Trust,                        | DEFENDANTS: (I) ALLOWING
20 |                                           | AMENDMENT OF COMPLAINT; (II)
                                               | DISMISSING CERTAIN DEFENDANTS
21 |                    Plaintiff,             | WITHOUT PREJUDICE; (III) EXTENDING
                                               | REMAINING DEFENDANTS' TIME TO
22 | v.                                        | ANSWER AND OTHER DEADLINES; AND
                                               | (IV) RESCHEDULING STATUS
23 | Oxford Knox, LLC, *et. al.*               | CONFERENCE FROM AUGUST 21, 2025
                                               | TO SEPTEMBER 16, 2025
24 |                    Defendants.            |
                                               | Honorable Scott C. Clarkson
25 |                                           |
                                               | **Status Conference:**
26 |                                           | Date:   August 21, 2025
                                               | Time:  1:30 P.M.
27 |                                           | Place:  411 West Fourth Street #5C, Santa Ana,
                                               | CA 92701 (by Zoom.gov)
28

                              1

                                    **EXHIBIT 6, PAGE 178**

1   TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY

2   JUDGE, TO THE UNITED STATES TRUSTEE AND TO ALL OTHER INTERESTED

3   PARTIES AND THEIR ATTORNEYS OF RECORD:

4       This Stipulation ("Stipulation") is entered into by and between Plaintiff Richard A. Marshack,

5   the Trustee of the Liquidating Trust ("Trustee" and/or "Plaintiff") for the bankruptcy estate ("Estate")

6   of the Debtor "The Litigation Practice Group PC" ("Debtor" or "LPG") in the above captioned

7   bankruptcy and certain defendants who have not been dismissed or had a default entered against them,

8   represented by their counsel, Golden Goodrich, LLP, pursuant to LBR 7016-1(a)(5),  with regard to

9   the following.

10                          **RECITALS**

11      A.      On or about March 19, 2025, the Trustee filed the above captioned adversary

12  proceeding against multiple Defendants. Pursuant to the issued summons, the Defendants' answers

13  were due on or before May 7, 2025.

14      B.      On April 7, 2025, the Court entered an Order Scheduling a Status Conference on June

15  5, 2025 [Dkt. No. 5]. The Order also established meet and confer and other deadlines for counsel in

16  advance of the Status Conference.

17      C.      Golden Goodrich, LLP has stated it represents the parties listed on the attached

18  Exhibit 1 ("GG Parties").  Golden Goodrich, LLP. has agreed to appear on behalf of the GG Parties

19  that are or will be named in the second amended Complaint ("Second Amended Complaint"). [1]

20      D.      The Parties previously agreed to extend the time of the GG Parties to answer or

21  otherwise respond to the operative complaint until June 6, 2025 and to extend other deadlines in

22  advance of a status conference scheduled for July 17, 2025 ("Order Extending Time") [Dkt. No. 12].

23      E.      Plaintiff has asked the GG Parties to consent to the filing of a Second Amended

24  Complaint after the dismissal of certain defendants without prejudice and to correct typographical and

25  other mistakes in the caption and the Complaint and First Amended Complaint.  No additional claims

26  or causes of action are being added.  A separate notice of dismissal will be filed.  A redlined copy of

---

[1] Golden Goodrich, LLP never appeared or represented Defendants BAE, Inc., who has had a default entered against it
[Dkt. No. 14] and Rose Bianca Loli, who has been dismissed as a party [Dkt. No. 20].

**EXHIBIT 6, PAGE 179**

1  the Plaintiff's proposed Second Amended Complaint (without exhibits) is attached hereto as **Exhibit**

2  **2**.

3       F.       Plaintiff and the GG Parties (Collectively "Parties") agree that the GG Parties' consent

4  to the filing of Plaintiff's Second Amended Complaint is without prejudice to the GG Parties' rights

5  to assert any and all defenses to the Second Amended Complaint and any subsequently filed

6  complaint, including defenses relating to the addition of certain GG Parties as defendants to the

7  Complaint after the deadlines set for in 11 U.S.C. §§ 108(a) and 546(a).

8       G.       Based on the proposed amendment of the First Amended Complaint and to provide

9  additional time to gather information and discuss the litigation, the Parties believe it will be beneficial

10  to further extend the deadlines set in the Order Extending Time.

11       H.       The Parties agree that the Court will retain the ability to enforce the promises and

12  representations of the parties set forth in this Stipulation as may be needed.

13            WHEREFORE, the Parties agree and stipulate, subject to Court approval, to the following:

14       1.       Upon entry of an order approving this stipulation, Plaintiff will file a Notice of

15  Dismissal Without Prejudice of Rick Emmett, Ryan Taylor Connet, Obrick, Inc., Albright, Inc., Final

16  Season, Inc., Factor In, Inc., Sean Stephens, Decacorn Holdings, Inc., Daniel Lansdale, Innovative

17  Solutions, LLC, MFCR Investments, LLC, MRJR20 Partners, LLC, Lifesize, Inc., Karrington, Inc.,

18  Jason D. Williams, The Coelho Irrevocable Life Insurance Trust, and A Solution Debt Relief, Inc.

19       2.       Plaintiff will file his Second Amended Complaint within three (3) business days of

20  entry of an order approving this Stipulation.  When the Second Amended Complaint is filed, the

21  Parties ask that the Court approve the amendment of the caption and complaint to reflect the dismissal

22  of parties so they are no longer connected to this litigation.

23       3.       The remaining GG Parties will waive service of process of the Second Amended

24  Complaint and acknowledge service of the complaint through their undersigned counsel. The GG

25  Parties shall have until August 18th, 2025 to answer or otherwise respond to the Plaintiff's Second

26  Amended Complaint.

27       4.       The Parties agree to reschedule the status conference currently set for 1:30 p.m. on

28

#63391135v2

**EXHIBIT 6, PAGE 180**

1  August 21, 2025 to a status conference at 1:30 p.m. on September 16th,        2025 or any other

2  date that is convenient to the Court.  A status report will be filed in accordance with the local rules

3  and the Parties will hold a timely Rule 26(f) meeting.

4      5.      Except as set forth herein, the Parties reserve all rights and claims against the other.

5      6.      This Stipulation may be executed in one or more counterparts, and facsimile or

6  electronic signatures may be used in filing this document with the Court.

7  Dated: August 7, 2025          DINSMORE & SHOHL LLP

8

9                                 By: /s/ Tyler Powell
                                   YOSINA M. LISSEBECK
10                                  TYLER POWELL (pro hac vice)
                                   Attorneys for Plaintiff Richard A. Marshack, Trustee of
11                                  the LPG Liquidation Trust

12
   Dated: August 7, 2025          GOLDEN GOODRICH LLP
13

14
                                   By: _____
15                                  JEFFREY GOLDEN
                                   DAVID GOODRICH
16                                  *Counsel for Defendants listed on Exhibit 1.*

17

18

19

20

21

22

23

24

25

26

27

28

4                               **EXHIBIT 6, PAGE 181**

#63391135v1

# EXHIBIT 1

1

**EXHIBIT 1**

2      Daniel Lansdale

3      Lexicon Consulting, Inc.

       Frank Brown

4      United Partnerships, Inc.

       Jason D. Williams

5      A Solution Debt Relief Inc.

6      Jason Dovalina

       JNR Services, Inc.

7      Karrington, Inc.

8      Obrik, Inc.

       Albright, Inc.

9      Matthew Church

10     Ventura Consulting, LLC.

       MFCR Investments, LLC.

11     Rachel Dovalina

12     Buffalo 21 Partners, Inc.

       C.A.T. Exteriors, Inc.

13     Rick Emmett

14     Home Energy Solutions, Inc.

       Investlinc Wealth Services, Inc.

15     MRjR20 Partners, LLC.

16     Oxford Knox, LLC.

       The Coelho Irrevocable Life Insurance Trust

17     Validation LLC

18     Ryan Taylor Connet

       Samson Ly

19     Spectrum Payment Solutions, LLC.

20     Decacorn Holdings, LLC

       BEW Solar Management LLC.

21     Sean M. Stephens

22     AZLS Enterprises, Inc.

       Factor In, Inc.

23     Syed Faisal Gilani

24     Innovative Solutions, LLC

       Final Season, Inc.

25     Lifesize, Inc.

26

27

28

5

**EXHIBIT 6, PAGE 183**

# EXHIBIT 2

EXHIBIT 6, PAGE 184

1  Christopher Celentino (State Bar No. 131688)
   Yosina M. Lissebeck (State Bar No. 201654)
2  Christopher B. Ghio (State Bar No. 259094)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone:  619.400.0500
   Facsimile:  619.400.0501
5  christopher.celentino@dinsmore.com
   yosina.lissebeck@dinsmore.com
6  christopher.ghio@dinsmore.com

7  Tyler Powell (Ky. Bar No. 90520 – Admitted pro hac vice)
   **DINSMORE & SHOHL, LLP**
8  100 West Main Street, Suite 900
   Lexington, KY  40507
9  Telephone:  859-425-1456
   Facsimile:  859-425-1099
10 tyler.powell@dinsmore.com

11 ~~Special Counsel~~Attorneys for ~~to~~ Richard A. Marshack,
   Trustee of the LPG Liquidation Trust
12

13              **UNITED STATES BANKRUPTCY COURT**

14        **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

15 | In re:                                    | Chapter 11
   |
16 | The Litigation Practice Group P.C.,       | Case No.: 8:23-bk-10571-SC
   |                                           | Adv. No: 8:24-ap-01208------SC
17 |                            Debtor(s).     |
   |                                           | **TRUSTEE'S   SECOND   AMENDED**
18 | Richard A. Marshack, Trustee of the LPG   | **COMPLAINT FOR:**
   | Liquidation Trust,                        |
19 |                                           | **(1) AVOIDANCE, RECOVERY, AND**
   |                            Plaintiff,     | **PRESERVATION OF PREFERENTIAL**
20 |                                           | **TRANSFERS MADE TO OR FOR**
   |         v.                                | **CERTAIN DEFENDANTS MADE**
21 |                                           | **WITHIN NINETY DAYS OF THE**
   | Oxford Knox, LLC, a Delaware limited liability | **PETITION DATE;**
22 | company; Buffalo 21 Partners, Inc., a Wyoming |
   | corporation; ~~Rick Emmett, individually; Ryan~~ | **(2)  AVOIDANCE, RECOVERY, AND**
23 | ~~Taylor Connet, individually;  Obrik, Inc., a~~ | **PRESERVATION OF POST-PETITION**
   | ~~Wyoming corporation; Albright, Inc., a Florida~~ | **TRANSFERS MADE TO OR FOR THE**
24 | ~~corporation;~~ Jason Dovalina, individually; Rachel | **BENEFIT OF CERTAIN DEFENDANTS;**
   | Dovalina, individually; ~~Final Season, Inc., a~~ |
25 | ~~California corporation; Factor In, Inc., a California~~ | **(3)  AVOIDANCE OF DEBTOR'S**
   | ~~corporation;~~ Syed Faisal Gilani aka Sye Gilani, | **EXECUTION OF REPAYMENT**
26 | individually; BAE Enterprises, Inc., a Wyoming | **AGREEMENT WITH DEFENDANT**
   | corporation; Rose Bianca Loli, individually; | **OXFORD KNOX, LLC PURSUANT TO**
27 | ~~Decacorn Holdings, Inc., a California limited~~ | **11 U.S.C. §§ 548(a), 550, AND 551;**
   | ~~liability company;~~ Samson Ly, individually; BEW |
28 | Solar Management, LLC, a California limited | **(4)  AVOIDANCE, RECOVERY, AND**
   |                                           | **PRESERVATION OF FRAUDULENT**

**EXHIBIT 6, PAGE 185**

| | | |
|---|---|---|
| 1 | liability company; ~~Sean Stephens, individually~~; Lexicon Consulting, LLC, a ~~California~~ Colorado limited liability company~~corporation; Daniel Lansdale, individually~~; United Partnerships, LLC, a ~~California~~ Florida limited liability company;~~corporation;~~ Ventura Consulting, LLC, a Nevada limited liability company; Matthew Church, individually; Frank Brown, individually; Validation, LLC, a terminated California limited liability company; ~~Innovative Solutions, LLC, a Wyoming corporation; MRJR20 Partners, LLC, a California limited liability company; MFCR, Investments, LLC, a Florida limited liability company; Lifesize, Inc., a Wyoming corporation.; Karrington, Inc., a Wyoming corporation;~~ Spectrum Payment Solutions, LLC, a California limited liability company; ~~Jason D. Williams, individually;~~ Home Energy Solutions, Inc., a California corporation; ~~The Coelho Irrevocable Life Insurance Trust, a California trust;~~ JNR Services, Inc., a California corporation; C.A.T. Exteriors, Inc., an Arizona corporation; AZLS Enterprises, Inc, a California corporation; ~~A Solution Debt Relief, Inc., a Wyoming corporation~~ and INVESTLINC Wealth Services, Inc., a California corporation;<br><br>Defendant(s). | **TRANSFER(S) PURSUANT TO 11 U.S.C. §§ 548(a)(1), 550, AND 551;**<br><br>**(5) AVOIDANCE, RECOVERY, AND PRESERVATION OF FRAUDULENT TRANSFER(S) PURSUANT TO 11 U.S.C. §§ 548(a)(2), 550, AND 551;**<br><br>**(6) AVOIDANCE, PRESERVATION, AND RECOVERY OF VOIDABLE TRANSFERS MADE WITH INTENT TO DEFRAUD [11 U.S.C. §§ 544, 550, 551; CAL. CIV. CODE §§ 3439.04(a)(1) AND 3439.07];**<br><br>**(7) AVOIDANCE, PRESERVATION, AND RECOVERY OF VOIDABLE TRANSFERS MADE WITH NO INTENT TO DEFRAUD [11 U.S.C. §§ 544, 550, 551; CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05, AND 3439.07];**<br><br>**(8) AVOIDANCE, RECOVERY, AND PRESERVATION OF FRAUDULENT TRANSFERS MADE TO OR FOR THE BENEFIT OF DEFENDANTS GILANI AND DOVALINA ARISING FROM USE OF AMERICAN EXPRESS CARD; and**<br><br>**(9) OBJECTION TO PROOF OF CLAIM NO. 818 OF OXFORD KNOX, LLC**<br><br>Judge: Hon. Scott C. Clarkson<br>Dept: 5C |

For his *Second Amended* Complaint for (1) Avoidance, recovery, and preservation of preferential transfers made to or for certain defendants made within ninety days of the petition date; (2) Avoidance, recovery, and preservation of Post-Petition transfers made to or for certain defendants; (3) Avoidancec of Debtor's execution of repayment agreement with defendant Oxford Knox, LLC pursuant to 11 U.S.C. §§548(a), 550, and 551; (4) Avoidance, rrecovery, and preservation of fraudulent transfers(s) pursuant to 11 U.S.C. §§548(a)(1), 550, and 551; (5) Avoidance, recovery, and preservation of fraudulent transfer(s) to 11 U.S.C. §§548(a)(2), 550, and 551; (6) Avoidance, preservation, and recovery of voidable transfers made with intent to defraud [11 U.S.C. §§544, 550, 551; Cal. Civ Code §§3439.04(a)(1) and 3439.07] (7)Avoidance, preservation, and recovery of voidable transfers made with no intent to defraud [11 U.S.C. §§544, 550, 551; Cal. Civ. Code

#62848569V1

**EXHIBIT 6, PAGE 186**

§§3439.04(a)(2), 3439.05, and 3439.07]; (8) *Avoidance, recovery, and preservation of fraudulent transfers made to or for the benefit of Defendants Gilani and Dovalina arising from use of American Express Card; and (9) Objection to Proof of Claim No. 818 of Oxford Knox, LLC* (the "Complaint"), plaintiff Richard A. Marshack, the former Chapter 11 Trustee for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") and Trustee of the LPG Liquidation Trust (collectively, "Trustee" or "Plaintiff") in the above-captioned bankruptcy case (the "Bankruptcy Case"), alleges and avers as follows:

### STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court").

2. Regardless of whether this proceeding is core, non-core, or otherwise, the Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

3. Defendants are hereby notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires them to plead whether consent is given to the entry of a final order and judgment by the bankruptcy court.

4. Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to the Debtor's pending Bankruptcy Case.

### THE PARTIES

5. Debtor LPG is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

6. Defendant Oxford Knox, LLC is, and at all material times represented that it was, a Delaware - domestic limited liability company ("Oxford Knox").

7. Defendant Oxford Knox may be served by first class mail postage prepaid upon its

3

**EXHIBIT 6, PAGE 187**

1  Partnership Representative: Richard R. Emmett, 251 Little Falls Drive, Wilmington, Delaware 19808.

2      8.    Defendant Buffalo 21 Partners, Inc. is, and at all material times represented that it was,

3  a Wyoming - domestic corporation, ("Buffalo 21").

4      9.    Defendant Buffalo 21 may be served by first class mail postage prepaid upon its CEO:

5  Richard R. Emmett, 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801.

6      10.    Defendant Rick Ronald Emmett is, and at all material times represented that he was,

7  an individual residing in the state of California ("Emmett").

8      11.    Defendant Emmett may be served by first class mail postage prepaid upon himself; 10

9  Pointe Drive, Suite 150, Brea, California 92821.

10     12.    Defendant Ryan Taylor Connet is, and at all material times represented that he was,

11 an individual residing in the state of California ("Connet").

12     13.    Defendant Connet may be served by first class mail postage prepaid upon himself;

13 4155 E. La Palma Avenue, Anaheim, California 92807.

14     14.    Defendant Obrik, Inc. is, and at all material times represented that it was, a Wyoming

15 - domestic corporation ("Obrik").

16     15.    Defendant Obrik may be served by first class mail postage prepaid upon its registered

17 agent: Cloud Peak Law; 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming 82801.

18     16.    Defendant Albright, Inc. is, and at all material times represented that it was, a Florida

19 - domestic corporation ("Albright").

20     17.    Defendant Albright may be served by first class mail postage prepaid upon its

21 registered agent: William J. Albright; 701 Aqui Esta Drive, #263, Punta Gorda, Florida, 33951.

22     18.10.  Defendant Jason Dovalina is, and at all material times represented that he was, an

23 individual residing in the state of California ("Jason Dovalina").

24     19.11.  Defendant Jason Dovalina, may be served by first class mail postage prepaid upon

25 himself; 128 W. Santa Fe Avenue, Suite C, Placentia, California 92870-5632.

26     20.12.  Defendant Rachel Dovalina is, and at all material times represented that she was, an

27 individual residing in the state of California ("Rachel Dovalina").

28     21.13.  Defendant Rachel Dovalina, may be served by first class mail postage prepaid upon

4

**EXHIBIT 6, PAGE 188**

1  herself; 736 Oceanview Drive, Fullerton, California 92832.

2  ~~22.   Defendant The Final Season, Inc. is, and at all material times represented that it was,~~

3  ~~a California   domestic corporation ("Final Season").~~

4  ~~23.   Defendant Final Season may be served by first class mail postage prepaid upon its~~

5  ~~agent; 5716 Corsa Avenue S. 110, West Lake Village, California 91362.~~

6  ~~24.   Defendant Factor In, Inc. is, and at all material times represented that it was, a~~

7  ~~California   domestic corporation ("Factor In").~~

8  ~~25.   Defendant Factor In may be served by first class mail postage prepaid upon its~~

9  ~~registered agent: Sye Gilani; 7651 Greenock Way, Riverside, California 92508.~~

10  ~~26.~~14.  Defendant Syed Faisal Gilani aka Sye Gilani is, and at all material times represented

11  that he was, an individual residing in the state of California ("Gilani").

12  ~~27.~~15.  Defendant Gilani may be served by first class mail postage prepaid upon himself: 7651

13  Greenock Way, Riverside, California 92508.

14  ~~28.~~16.  Defendant Bae Enterprises, Inc. is, and at all material times represented that it was, a

15  Wyoming - domestic corporation ("Bae Enterprises").

16  ~~29.~~17.  Defendant Bae Enterprises may be served by first class mail postage prepaid upon its

17  registered agent: Cloud Peak Law, LLC, 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming

18  82801.

19  18.   ~~Defendant~~ Rose Bianca Loli was named as a Defendant but has subsequently been

20  dismissed as a party [Dkt. No. 20].

21  ~~30.   is, and at all material times represented that she was, an individual residing in the state~~

22  ~~of California ("Loli").~~

23  ~~31.   Defendant Loli may be served by first class mail postage prepaid upon herself: 33741~~

24  ~~Alcazar Drive, Dana Point, California 92629 or 1220 Ensenada Avenue, Laguna Beach, California~~

25  ~~92651.~~

26  ~~32.   Defendant Decacorn Holdings, LLC is, and at all material times represented that it~~

27  ~~was, a California   domestic limited liability company ("Decacorn Holdings").~~

28  ~~33.   Defendant Decacorn may be served by first class mail postage prepaid upon its~~

**EXHIBIT 6, PAGE 189**

#62848569V1

1    ~~registered agent: Dana Fang, 2520 Venture Oaks Way, Suite 120, Sacramento, California 95833.~~

2    ~~34.~~19.  Defendant Samson Ly is, and at all material times represented that he is a resident of

3    California ("Ly").

4    ~~35.~~20.  Defendant Ly may be served by first class mail postage prepaid upon himself: 208 S.

5    Moore Avenue, Apt. D, Monterey Park, California 91754.

6    ~~36.~~21.  Defendant BEW Solar Management, LLC is, and at all material times represented that

7    it was, a California – domestic limited liability company ("BEW Solar").

8    ~~37.~~22.  Defendant BEW Solar may be served by first class mail postage prepaid upon its

9    manager: Sean M. Stephens, 2560 N. Synergy Avenue, Eagle, Idaho 83616.

10   ~~38.      Defendant Sean M. Stephens is, and at all material times represented that he was, an~~

11   ~~individual residing in Idaho ("Stephens").~~

12   ~~39.      Defendant Stephens may be served by first class mail postage prepaid upon himself:~~

13   ~~2560 N Synergy Ave, Eagle, Idaho 83616.~~

14   ~~40.~~23.  Defendant Lexicon Consulting, ~~Inc~~LLC. is, and at all material times represented that

15   it was, a Colorado limited liability company~~California – domestic corporation~~ ("Lexicon").

16   ~~41.~~24.  Defendant Lexicon may be served by first class mail postage prepaid upon its

17   registered agent: Vanghagen Law, PC, 44 Cook Street, Suite 110 Denver CO 80206. ~~Jamie Latshaw,~~

18   ~~266 S Magnolia Avenue, Suite 202, El Cajon, California 92020.~~

19   ~~42.      Defendant Daniel Lansdale is, and at all material times was, an individual residing in~~

20   ~~the state of California ("Lansdale").~~

21   ~~43.      Defendant Lansdale may be served by first class mail postage prepaid upon himself:~~

22   ~~515 W. Commonwealth Avenue, Suite 211, Fullerton, California 92832.~~

23   ~~44.~~25.  Defendant United Partnerships, ~~Inc~~LLC. is, and all material times represented that it

24   was, a ~~California~~Florida limited liability company ~~, – domestic corporation~~ ("United Partnerships").

25   ~~45.~~26.  Defendant United Partnerships may be served by first class mail postage prepaid upon

26   its registered agent: ~~7300~~ Frank Brown, 215 New River Drive East 910, Fort Lauderdale, FL 33301.

27   ~~Lennox Avenue, Room J-14, Van Nuys, CA 91405.~~

28   ~~46.~~27.  Defendant Ventura Consulting, LLC is, and at all material times represented that it

6

**EXHIBIT 6, PAGE 190**

#62848569V1

1  was, a Nevada - domestic limited liability company ("Ventura").

2    47.28.  Defendant Ventura may be served by first class mail postage prepaid upon its member

3  Matthew Church; 708 Grandview Avenue, Fullerton, California 92832 and/or 10620 Southern

4  Highlands Parkway, Suite 110-18, Las Vegas, Nevada 89141.

5    48.29.  Defendant Matthew Church is, and at all material times represented that he was an

6  individual residing in the states of California and Nevada ("Church")

7    49.30.  Defendant Church may be served by first class postage prepaid upon himself; 708

8  Grandview Avenue, Fullerton, California 92832 and 10620 Southern Highlands Parkway, Suite 110-

9  18, Las Vegas, Nevada 89141.

10    50.31.  Defendant Frank Brown is, and at all material times represented that he was an

11  individual residing in the state of Nevada ("Brown").

12    51.32.  Defendant Brown may be served first class postage prepaid upon himself: and 10620

13  Southern Highlands Parkway, Suite 110-18, Las Vegas Nevada 89141 and 10881 Pentland Downs

14  Street, Las Vegas, Nevada 89141.

15    52.33.  Defendant Validation, LLC is currently a terminated California limited liability

16  company that dissolved on September 19, 2022 ("Validation").

17    53.34.  Defendant Validation may be served by first class mail postage prepaid delivered to

18  its last registered agent Matthew Church at either 708 Grandview Avenue, Fullerton, California 92832

19  and 10620 Southern Highlands Parkway, Suite 110-18, Las Vegas, Nevada 89141.

20    54.    Defendant Innovative Solutions, Inc. is, and at all material times represented that it

21  was a Wyoming - domestic corporation ("Innovative Solutions").

22    55.    Defendant Innovative Solutions may be served by first class mail postage prepaid upon

23  its agent Cloud Peak Law, LLC; 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming 82801.

24    56.    Defendant MRJR20 Partners, LLC, is and at all material times represented that it was

25  a California - domestic limited liability company ("MRJR20").

26    57.    Defendant MRJR20 may be served by first class mail postage prepaid upon its agent

27  Rick R. Emmett; 10 Pointe Drive, Suite 150, Brea, California 92821.

28    58.    Defendant MFCR Investments, LLC is, and at all material times represented that it

7

**EXHIBIT 6, PAGE 191**

1  was a Florida – domestic limited liability company ("MFCR Investments").

2  59.    Defendant MFCR Investments may be served by first class mail postage prepaid upon

3  its agent Scott F. Penton; 1525 Clapton Drive, Deland, Florida 32720.

4  60.    Defendant Lifesize, Inc. is, and at all material times represented that it was a Wyoming

5  – domestic corporation ("Lifesize").

6  61.    Defendant Lifesize may be served by first class mail postage prepaid upon its agent

7  Cloud Peak Law, LLC; 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming 82801.

8  62.    Defendant Karrington, Inc. is, and at all material times represented that it was, a

9  Wyoming – domestic corporation ("Karrington").

10  63.    Defendant Karrington may be served by first class mail postage prepaid upon it

11  registered agent: Company Sage Agents, LLC; 1095 Sugarview Drive, Suite 100, Sheridan, Wyoming

12  82801.

13  64.35.  Defendant Spectrum Payment Solutions, LLC is, and at all material times represented

14  that it was, a California – domestic limited liability company ("Spectrum").

15  65.36.   Defendant Spectrum may be served by first class mail postage prepaid upon its agent

16  Samson Ly; 208 S. Moore Avenue, Apt. D, Monterey Park, California 91754.

17  66.    Defendant Jason D. Williams is, and at all material times represented that he was an

18  individual residing in the state of California ("Williams").

19  67.    Defendant Williams may be served by first class mail postage prepaid upon himself;

20  4155 E. La Palma Avenue, Anaheim, California 92807.

21  68.37.  Defendant Home Energy Solutions, Inc. is, and at all material times represented that

22  it was a California – domestic corporation ("Home Energy").

23  69.38.  Defendant Home Energy may be served by first class mail postage prepaid upon its

24  Financial Manager: Rick R. Emmett, 300 S. Harbor Boulevard., Suite 1000, Anaheim, California

25  92805.

26  70.    Defendant The Coelho Irrevocable Life Insurance Trust is, and at all material times

27  represented that it was a California Trust ("Coelho Trust").

28  71.    Defendant Coelho Trust may be served by first class mail postage prepaid upon its

8

EXHIBIT 6, PAGE 192

#62848569V1

1  ~~Trustee Rick R. Emmett: 300 S. Harbor Boulevard., Suite 1000, Anaheim, California 92805.~~

2  ~~72.~~39.  Defendant JNR Services, Inc. is, and at all material times represented that it was a

3  California – domestic corporation ("JNR").

4  ~~73.~~40.  Defendant JNR may be served by first class mail postage prepaid upon its agent Rick

5  R. Emmett; 10 Pointe Drive, Suite 150, Brea, California 92821.

6  ~~74.~~41.  Defendant C.A.T. Exteriors, Inc. is, and at all material times represented that it was an

7  Arizona – domestic corporation ("CAT Exteriors").

8  ~~75.~~42.  Defendant CAT Exteriors may be served by first class mail postage prepaid upon its

9  agent Rick R. Emmett: 10 Pointe Drive, Suite 150, Brea, California 92821.

10  ~~76.~~43.  Defendant AZLS Enterprises Inc. is, and at all material times represented that it was a

11  California – domestic corporation ("AZLS").

12  ~~77.~~44.  Defendant AZLS may be served by first class mail postage prepaid upon its agent: Hee

13  S. Noh, 9 Traditional Place, Irvine, California 92602.

14  ~~78.    Defendant A Solution Debt Relief, Inc. is, an administratively dissolved Wyoming~~

15  ~~corporation ("A Solution").~~

16  ~~79.    Defendant A Solution may be served by first class mail postage prepaid upon its agent:~~

17  ~~Cloud Peak Law, LLC, 1095 Sugar View Drive, Suite 500, Sheridan, WY 82801.~~

18  ~~80.~~45.  Defendant Investlinc Wealth Services, Inc. is, and at all material times represented that

19  it was a California – domestic corporation ("Investlinc").

20  ~~81.~~46.  Defendant InvestLinc may be served by first class mail postage prepaid upon its agent:

21  West A. Cohan, 10 Pointe Drive, Suite 150, Brea, California 92821.

22  ~~82.~~47.  Unless separately identified herein, all of the Defendants will collectively be referred

23  to herein as the "Oxford Knox Defendants."

24  ~~83.    As discussed herein, not all Oxford Knox Defendants are identified in the Exhibits as~~

25  ~~receiving payments. Those Oxford Knox Defendants that are not identified as receiving a payment~~

26  ~~are named herein in their capacity as (i) as a subsequent transferee of an identified transfer, (ii) the~~

27  ~~potential recipient of a not yet identified transfer, and/or (ii) the party for whose benefit a particular~~

28  ~~transfer was made that is identified herein. Specific allegations regarding the relationships of~~

9

**EXHIBIT 6, PAGE 193**

1    ~~Defendants are made herein.~~

2                              **GENERAL ALLEGATIONS**

3    **A.    The Bankruptcy Case**

4            ~~84.~~48.  On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under

5    Chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

6            ~~85.~~49.  The Office of the United States Trustee ("UST") filed its *Motion by United States*

7    *Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and

8    creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the

9    *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, &*

10   *1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No.

11   44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter*

12   *11 Trustee* [Bankr. Docket No. 58].

13           ~~86.~~50.  Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No.

14   63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy

15   Case. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's*

16   *Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

17           ~~87.~~51.  Trustee was not appointed until after events of the case and, therefore, bases these

18   allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir.

19   2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged

20   upon information and belief where the facts are peculiarly within the possession and control of the

21   defendant or where the belief is based on factual information that makes the inference of culpability

22   plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at

23   *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was

24   allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013

25   U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules

26   of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have

27   evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations

28   omitted)).

#62848569V1
**EXHIBIT 6, PAGE 194**

88.52.  Pursuant to the *Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation* entered September 9, 2024, and the *Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation* filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust, effective September 24, 2024. [Bankr. Docket Nos. 1646 & 1762].

89.53.  Plaintiff brings this action solely in his capacity as the Liquidating Trustee of the LPG Liquidation Trust, for the benefit of Debtor's Estate and its creditors.

**B.     Protective Order**

90.54.  On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of Protective Order (the "Protective Order").

91.55.  On June 3, 2024, the Court entered its *Order Granting Motion for Entry of Protective Order and the Protective Order* [Bankr. Docket No. 1270] (the "Protective Order"). A true and accurate copy of the Protective Order is attached as **Exhibit 1**, and incorporated herein.

92.56.  By its own terms, the Protective Order applies to this adversary proceeding and governs all discovery conducted herein.

**C.     LPG's Ownership and Management**

93.57.  Prior to the Petition Date, LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify. At all relevant times, LPG was controlled and operated by the individual named Tony Diab ("Diab").

94.58.  The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

95.59.  The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

96.60.  In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

97.61.  LPG mismanaged the consumers' monthly payments.

98.62.  Diab and other defendants devised a plan to fraudulently transfer funds, client files,

11

**EXHIBIT 6, PAGE 195**

1    client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts

2    Receivable") out of LPG to third parties prior to the filing of bankruptcy.

3        99.63.    To obtain consumer clients, LPG contracted with marketing companies, who

4    engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG

5    in exchange for a percentage of the ACH Receivables collected by LPG from the consumers. The

6    marketing affiliate went so far as to assist with the execution of an engagement letter between the

7    consumer and LPG.

8        100.64.    In exchange, LPG agreed to pay the marketing affiliates a percentage the

9    monthly payments collected by LPG from the consumers.

10        101.65.    Because LPG received payments from consumers over time, it often sought

11    financing by borrowing against its future cash flows. This borrowing was not only used to finance

12    operations at LPG, but also to pay the fees owed to the marketing companies for providing the client

13    referrals.

14        102.66.    Many of the documents executed in connection with such financing described

15    the transactions as accounts receivable purchase agreements.

16        103.67.    Diab used entities he controlled including, without limitation, Vulcan

17    Consulting, LLC ("Vulcan"), B.A.T. Inc. dba Coast Processing ("Coast"), PrimeLogix, LLC

18    ("PrimeLogix") and others to divert LPG consumer funds and ACH Receivables. Diab would use

19    numerous ACH processing companies in order to easily transfer millions of dollars from Debtor to

20    these entities he controlled, without oversight or detection, and to avoid payment disputes and

21    complications. The money that flowed from Debtor through these bank account to Defendants

22    consisted of Client Funds that Debtor funneled to these entities by means of the ACH processing

23    companies. Debtor also made deposits into these entities bank account such that they received Client

24    Funds directly from Debtor in addition to direct Accounts Receivable.

25                        **SPECIFIC ALLEGATIONS**

26    **A.    Ponzi Scheme Presumption**

27        104.68.    The Ponzi Scheme Presumption exists in bankruptcy proceedings.

28        105.69.    The Ponzi Scheme Presumption can be utilized to establish a debtor's "intent

**EXHIBIT 6, PAGE 196**

1   to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme.

2   Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor

3   pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will

4   eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless

5   makes payments to present investors, which, by definition, are meant to attract new investors. He

6   must know all along, from the very nature of his activities, that investors at the end of the line will

7   lose their money. Knowledge to a substantial certainty constitutes intent in the eyes of the law," *cf.*

8   *Restatement (Second) of Torts § 8A* (1963 & 1964), and a debtor's knowledge that future investors

9   will not be paid is sufficient to establish his actual intent to defraud them. *Kirkland v. Rund (In re*

10  *EPD Inv. Co., LLC)*, 114 F.4th 1148, 1153 (9th Cir. 2024) (by definition Ponzi scheme is destined to

11  fail and the swindler and their entities often end in bankruptcy or equitable receivership); *Cf. Coleman*

12  *Am. Moving Servs., Inc. v. First Nat'l Bank & Trust Co. (In re American Properties, Inc.)* 14 B.R.

13  637, 643 (Bankr. D. Kan. 1981) (intentionally carrying out a transaction with full knowledge that its

14  effect will be detrimental to creditors is sufficient for actual intent to hinder, delay or defraud within

15  the meaning of § 548(a)(1))." *Merrill v. Abbott (In re Independent Clearing House Co.)* (D. Utah

16  1987) 77 B.R. 843, 860. A trustee in bankruptcy is not required to show that an operator of a Ponzi

17  scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114

18  F.4th at 1153 ("[a] trustee's action to recover assets fraudulently conveyed in the course of a Ponzi

19  scheme does not require that the trustee also prove the Ponzi-scheme operator was subjectively aware

20  his Ponzi scheme was destined to fail.").

21          106.70.        "But if all the debtor receives in return for a transfer is the use of the

22  defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to

23  share. In fact, by helping the debtor perpetuate his scheme, the transfers exacerbate the harm to

24  creditors by increasing the amount of claims while diminishing the debtor's estate. In such a situation,

25  the use of the defendant's money cannot objectively be called 'reasonably equivalent value.'" *In re*

26  *Independent Clearing House Co.* 77 B.R. at 859. Therefore, "[t]he trustee can avoid the transfers if

27  they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and

28  fraudulent. Therefore, they constitute "property of the estate," and the trustee can recover them. *Id.* at

13

#62848569V1

**EXHIBIT 6, PAGE 197**

853 n.17 (citations omitted).

~~107.~~71.        Debtor was operating a Ponzi scheme that utilized affiliates and several other

entities as investors to continue its unlawful business practices by using funds provided by current

investors to attract new investors hoping for very high returns. Therefore, the Debtor was running a

Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer that the Debtor had the

intent to defraud investors within the meaning of 11 U.S.C. section 548(a)(1). This is evidenced by

the Court in this Bankruptcy Case declaring that Debtor was operating a Ponzi scheme when it stated

the following:

> It is important to note that this Court has never received any significant and
> trustworthy evidence that Debtor accomplished meaningful results for its
> clients, but only anecdotal examples of viable success for its clients. By
> reviewing the Estate's claims register, there is evidence of consumer claims
> for the fraud and demanded but undelivered refunds of approximately $500
> million. There is ample evidence that the pre-petition Debtor never placed
> the collected funds into an attorney-client trust account, and that Debtor or
> its principals simply looted the payments received through the client
> automatic withdrawals, stiffing both the clients and outside attorneys who
> may have been working on client cases with the hopes of being paid. There
> is also evidence before the Court that Debtor was running a Ponzi scheme
> and paying some outside (or "network") attorneys with funds obtained from
> new clients. In this case, it appears that some of the "lenders" may have
> been serving as "investors," hoping for very high returns before "the music
> stopped."   The Ninth Circuit has recently explained, "[b]y definition, a
> Ponzi scheme is destined to fail because the pool of available investors is
> not limitless. When the Ponzi scheme operator's pool of investors inevitably
> runs dry, the scheme collapses and the swindler and their entities often end
> up in bankruptcy or equitable receivership. *See generally* David R. Hague,
> Expanding the Ponzi Scheme Presumption, 64 DePaul L. Rev. 867 (2015).
> In bankruptcy, the court-appointed trustee is tasked with taking immediate
> control of the entity, ceasing ongoing fraudulent activity, locating and
> collecting assets for the bankruptcy or receivership estate, and achieving a
> final, equitable distribution of the remaining assets. *See* 11 U.S.C. § 704;
> *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 2024 U.S. App. LEXIS 21363,
> at *15 (9th Cir. Aug. 23, 2024). Finally, there is evidence that Debtor was
> encumbering (or as some creditors assert, "double or triple selling") their
> accounts or receivables to multiple lenders. With respect to Greyson's
> requested Administrative Claim [Dk. 676], and as more fully described in
> the concurrently entered order denying the claim, there has been no
> evidence presented that any work allegedly performed by Greyson assisted
> any clients or added any value to the Estate.

> *See, Case 8:23-bk-10571-SC*, Doc 1545 n. 5.

~~108.~~72.        The Ponzi Scheme Presumption establishes a debtor's "intent to defraud future

undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme." *Merrill v.*

**EXHIBIT 6, PAGE 198**

1   *Abbott* (*In re Independent Clearing House Co.*), 77 B.R. 843, 860 (D. Utah 1987). "Knowledge to a

2   substantial certainty constitutes intent in the eyes of the law, *cf. Restatement (Second) of Torts* § 8A

3   (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish

4   his actual intent to defraud them." *Id.* A trustee in bankruptcy is not required to show that an operator

5   of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co.,*

6   *LLC*, 114 F.4th at 1153 (9th Cir. 2024).

7       ~~109.~~73.        "[I]f all the debtor receives in return for a transfer is the use of the defendant's

8   money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share." *In re*

9   *Independent Clearing House Co.* 77 B.R. at 859. In such a situation, the use of the defendant's money

10  cannot objectively be called "reasonably equivalent value." *Id.* Therefore, "[t]he trustee can avoid the

11  transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are

12  preferential and fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can

13  recover them." *Id.* at 853 n.17 (citations omitted).

14      ~~110.~~74.        In addition to the solicitation of investments and lending from the Oxford Knox

15  Defendants, the Debtor's need for capital was so severe that it began borrowing funds through a loan

16  broker named Spot On Consulting, Inc. ("Spot On"). Upon information and belief, Spot On would

17  facilitate loans to LPG from individuals and corporations – sometimes for as little as $5,000 – in

18  exchange for a ten percent (10%) commission on the principal amount of the loan. LPG would then

19  typically promise to pay each lender as much as eight percent (8%) interest per month on the principal

20  balance for twelve months and would then repay the original principal amount at maturity.

21      ~~111.~~75.        Upon further information and belief, LPG borrowed hundreds of thousands of

22  dollars **each week** on these terms beginning in August 2022 and continuing until filing for

23  bankruptcy.

24      ~~112.~~76.        Proof of Claim No. 91 seeking more than $66 million dollars has been filed for

25  the outstanding balances owed on these brokered "loans". This Proof of Claim is incorporated by

26  reference herein.

27      ~~113.~~77.        Based on the Ponzi Scheme presumption the Court can infer that the Debtor

28  had the intent to defraud investors within the meaning of 11 U.S.C. § 548(a)(1). Since the Transfers

#62848569V1

**EXHIBIT 6, PAGE 199**

1   to the Defendants were made with the intent to further the Ponzi scheme, the Debtor did not receive

2   an objectively reasonable equivalent value for such transfers, and the Trustee can avoid any such

3   transfers because they were actually fraudulent as to the Debtor's creditors..

4   **B.     Prepetition Litigation and Creditors**

5       ~~114.~~78.       Debtor's Schedule E/F, filed on April 4, 2023, as Dk. No. 33, lists: (a) 11

6   unsecured creditors with priority unsecured claims totaling $374,060.04; and (b) 58 nonpriority

7   unsecured creditors with scheduled claims totaling $141,439,158.05.

8       ~~115.~~79.       The claims register in this Bankruptcy Case includes 2,554 proofs of claim,

9   totaling in excess of $424 million of claims asserted against the Estate.

10      ~~116.~~80.       At least 14 UCC-1 statements were of record securing alleged debts of the

11  Debtor as of the Petition Date. These statements either reflected secured liens against the Debtor's

12  assets then owned or thereafter acquired or provided evidence of the assignment or sale of substantial

13  portions of the Debtor's future income. They secured the repayment of the following claimed amounts

14  that are currently known to Trustee and are allegedly owed by the Debtor: (a) $2,374,004.82 owed to

15  Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC

16  statement filed on or about May 19, 2021; (b) approximately $15 million dollars owed to MNS

17  Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement

18  filed on or about May 28, 2021; (c) approximately $5,000,000 owed to Azzure Capital, LLC as

19  evidenced by Proof of Claim No. 127 purportedly secured by a UCC statement filed on or about May

20  28, 2021; and (d) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly

21  secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.

22      ~~117.~~81.       Debtor's balance sheets for the 36 months ending December 31, 2021, show

23  approximately $17,900,000 in total assets at its highest point in November 2021. This amount is

24  significantly less than the $424 million of claims filed.

25      ~~118.~~82.       Debtor's Statement of Financial Affairs, filed on April 4, 2023, as Dk. No. 34,

26  reflects 15 pending lawsuits against Debtor as of the Petition Date. The lawsuits date back to October

27  18, 2021 (*Fundura v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index

28  No. 613192-2021) and are as recent as March 10, 2023 (*Diverse Capital LLC v. The Litigation*

#62848569V1

**EXHIBIT 6, PAGE 200**

*Practice Group P.C. et al.*, Supreme Court of New York Index No. 135614-2023).

**C.    Debtor's Insolvency**

~~119.~~83.        Debtor was insolvent when the Transfers occurred as evidenced by: (a) the 14 UCC-1 statements reflecting secured liens against the Debtor's owned and after-acquired assets and the assignment or sale of substantial portions of the Debtor's future income; (b) the priority and non-priority unsecured debt of nearly $142 million listed in Debtor's schedules; (c) the $424 million of creditor claims filed in this Bankruptcy Case; and (d) Debtor's balance sheets reflecting, at its highest point, $17.9 million of assets in November 2021.

~~120.~~84.        Moreover, insolvency is presumed as a matter of law where, as in this Bankruptcy Case, the debtor operated a Ponzi scheme. *See, e.g., Glob. Money Mgmt., L.P. v. McDonnold*, No. 06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a Ponzi scheme is proven, then the debtor is proven insolvent from the time of its inception").

**SPECIFIC ALLEGATIONS**

~~121.~~85.        Upon information and belief, Oxford Knox and its predecessor Validation were formed to try to meet promises made to investors and lenders to or partners of the Debtor and/or a related entity. Whether these debts arose from traditional loans, "purchases" of receivables from a set of client files, or investments in the Debtor or a particular venture, the Debtor, Tony Diab, and/or a related entity was not able to fulfill the promised obligations.

~~122.~~86.        Some Oxford Knox Defendants appear to have lent money to Tony Diab. In the summer of 2021, Defendants Home Energy, ~~Ryan Connet, the Coelho Trust, Jason Williams~~, Samson Ly, BEW Solar, ~~and~~ Spectrum, and others collectively paid more than $1,000,000 into escrow to fund the down payment on Tony Diab's purchase of Arash Bayrooti's shares in Coast. These escrowed funds were ultimately paid to Mr. Bayrooti on behalf of Mr. Diab; however, the Debtor, and not Mr. Diab, was required to make these payments.

~~123.~~87.        Upon information and belief, some amounts may have been repaid to these individuals that advanced money to fund Mr. Diab's purchase of shares in Coast. These debts may have been restructured into assignments of income from groups of files.

17

**EXHIBIT 6, PAGE 201**

1   124.88.    Also in 2021, ~~Defendants~~ Validation LLC was formed and entities affiliated

2   with some or all of the Defendants were named as members.  ~~Innovative, MRJR, MFCR, Lifesize,~~

3   ~~and Karrington became members of Validation according to its Amended and Restated Limited~~

4   ~~Liability Company Agreement.~~ Upon information and belief, Validation's stated purpose was to

5   support the Debtor's marketing affiliates and/or work with law firms like the Debtor. Upon further

6   information and belief, Validation's true purpose and goal was the repayment of amounts owed to its

7   members by the Debtor or Mr. Diab.

8   125.89.    Validation was ultimately dissolved in September 2022, but while it operated,

9   the Debtor paid it almost one million dollars as shown herein.

10   126.90.    While Validation was winding down, Mr. Diab formed a new entity – Oxford

11   Knox in late 2021. Upon information and belief, Oxford Knox was formed for the same purpose as

12   Validation – to nominally support to the Debtor's affiliates while collecting payments from the Debtor

13   for its members.

14   127.91.    The initial ~~original~~ members of Oxford Knox were (i) Buffalo 21; (ii) Obrick,

15   Inc.; (iii) Albright, Inc.; (iv) Final Season, Inc.; (v) Factor In, Inc.; (vi) Bae Enterprises, Inc.; (vii)

16   Decacorn Holdings; (viii) BEW Solar; (ix) Lexicon Consulting, LLC; (x) United Partnerships; (xi)

17   Ventura Consulting; and (xii) Summer Cederberg.

18   128.92.    Following its formation, the Debtor and/or Mr. Diab made payments directly

19   to Oxford Knox, and/or its members using client funds paid to or collected by the Debtor.

20   129.93.    Upon further information and belief, Mr. Diab would direct the Debtor or a

21   related entity to make or direct payments to one or more of the Oxford Knox Defendants either based

22   on invoices for services that were never performed to make the payment appear tax deductible, or

23   paid to a third party that was owned or controlled by a member of Oxford Knox.

24   130.94.    All payments to any Oxford Knox Defendant made pre-petition known to the

25   Trustee as of the date this complaint was filed are set forth on **Exhibit 2** hereto and incorporated as

26   if set forth herein.

27   131.95.    All payments to any Oxford Knox Defendant made after the Debtor filed for

28   bankruptcy known to the Trustee as of the date this complaint was filed are set forth on **Exhibit 3**

18

**EXHIBIT 6, PAGE 202**

hereto and incorporated as if set forth herein.

132.96.    Upon further information and belief, each member of Oxford Knox contributed "debt" they claimed to be owed by the Debtor to the LLC. In turn, Oxford Knox, which was partially owned and/or controlled by Tony Diab, entered into an agreement with the Debtor that fixed the debt owed to Oxford Knox at $22,000,000 ("Repayment Agreement").

133.97.    The Repayment Agreement is the basis of, and is attached to, the Proof of Claim No. 818 ("Claim") filed by Oxford Knox herein. A true and accurate copy of the Repayment Agreement from the Claim is attached hereto as **Exhibit 4**.

134.98.    The Claim states that Oxford Knox received three payments totaling $1,743,686.74 on November 1, 2021, January 1, 2022, and February 1, 2022. The Trustee does not know if these payments reflect payments made directly to the members of Oxford Knox or to third parties on their behalf or if these payments were made directly to Oxford Knox from an unknown source. They are identified herein and included in the Transfers that the Trustee seeks to avoid.

135.99.    Hereinafter, any payment to any Oxford Knox Defendant identified herein will be referred collectively as the "Transfers". Specific sets of Transfers such as those made during the ninety-day period preceding the Petition Date may be given a certain name, but they will remain part of the Transfers identified herein.

136.100.    All Transfers identified herein may not relate to the transactions and entities discussed herein, and the Trustee may have filed or may file separate litigation against one or more Defendants based on other transactions or relationships it had with the Debtor. All Transfers to Defendant known to the Trustee are identified herein out of an abundance of caution.

137.    As noted above, the Debtor often made payments to unrelated parties to or for the benefit of one or more Oxford Knox Defendants. As a result, some defendants named herein are not identified on an Exhibit as receiving any Transfer but that does not mean that an identified Transfer was not made for their benefit. The following paragraphs supplement the allegations regarding the relationships of certain individuals with other Oxford Knox Defendants.

138.    Upon information and belief, Emmett operates or is an officer, member, or owner of Buffalo 21, MRJR, and Coelho Trust. He is also the registered agent for Home Energy.

139. Upon information and belief, Connet is an officer, member, or owner of Buffalo 21, MRJR, and CAT Exteriors.

140. Upon information and belief, Jason Dovalina is an officer, member, or owner of Defendants Obrick, Albright, Karrington, JNR, and A Solution. Rachel Dovalina is related to Mr. Dovalina.

141. Upon information and belief, Gilani is an officer, member, or owner of Final Season, Factor In, AZLS, and Lifesize.

142. Upon information and belief, Ly is an officer, member, or owner of Decacorn and Spectrum.

143. Upon information and belief, Stephens is an officer, member, or owner of BEW Solar.

144. Upon information and belief, Lansdale is an officer, member, or owner of Lexicon.

145. Upon information and belief, Church and Brown are officers, members, or owners of Defendants United Partnerships, Ventura, and MFCR, LLC.

146. Upon information and belief, Williams is an officer, member, or owner of CAT Exteriors and Spectrum.

## CLAIMS FOR RELIEF

## COUNT ONE

**Avoidance, Recovery, and Preservation of Transfers Made Within the Ninety Day Period**

**Before the Petition Date**

**[11 U.S.C. §§ 547, 550, and 551]**

~~147.~~101. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

~~148.~~102. In the ninety-day period preceding the Petition Date, the Debtor made transfers of property or payments to one or more of the Oxford Knox Defendants ("90 Day Transfers"). The 90 Day Transfers to the Oxford Knox Defendants known to the Trustee as of the filing date are identified on hereto as **Exhibit 2.**

~~149.~~103. The Debtor made the 90 Day Transfers to the Oxford Knox Defendants identified on the Exhibit on account of a debt owed to that particular Defendant or to Oxford Knox.

**EXHIBIT 6, PAGE 204**

150.104.    The 90 Day Transfers were made to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because the 90 Day Transfers were payments made on account of debts nominally owed by the Debtor.

151.105.    A transfer of the Debtor's assets occurred when the 90 Day Transfers were received by the particular Oxford Knox Defendant.

152.106.    The 90 Day Transfers were made on account of antecedent debt nominally owed by the Debtor to the recipient of the Transfer due to an "investment" or other document evidencing indebtedness. The Debtor's payment obligations to the transferees constituted a "debt" (as defined in the Bankruptcy Code).

153.107.    The 90 Day Transfers occurred when the Debtor actually was insolvent. However, Plaintiff is also entitled to the presumption of insolvency when the 90 Day Transfers were made pursuant to 11 U.S.C. § 547(f).

154.108.    The 90 Day Transfers were made in the ninety-day period before the Petition Date.

155.109.    To the extent any transfers were made by the Debtor to any Oxford Knox Defendant within the ninety-day period preceding the Petition Date and are not identified herein, Plaintiff reserves the right to avoid and recover such transfers pursuant to 11 U.S.C. §§ 547 and 550.

156.110.    As the holder of an unsecured claim(s) or as party who has not filed a claim, the payment of the 90 Day Transfers to one or more of the Oxford Knox Defendants enabled them to recover more than they would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the 90 Day Transfers had not been made; and (iii) the debts owed to the Oxford Knox Defendants that received the 90 Day Transfers were paid pursuant to the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case, as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's bankruptcy estate.

157.111.    In accordance with the foregoing, the 90 Day Transfers are avoidable pursuant to 11 U.S.C. § 547(b), and may be recovered and preserved for the benefit of the estate pursuant to

21

**EXHIBIT 6, PAGE 205**

11 U.S.C. §§ 550 and 551.

**COUNT TWO**

**Avoidance, Recovery, and Preservation of Post-Petition Transfers**

**[11 U.S.C. §§ 549, 550, and 551]**

~~158.~~112.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

~~159.~~113.    This is an action to pursuant to 11 U.S.C. §§ 549 and 550 to avoid and recover unauthorized post-petition transfers made by Debtor to any of the Oxford Knox Defendants ("Post-Petition Transfers").

~~160.~~114.    To the extent any Post-Petition Transfers were made by the Debtor to any Oxford Knox Defendant following the Petition Date and are not identified herein, Plaintiff reserves the right to amend the Complaint to identify the Post-Petition Transfers and seek the avoidance and recovery of them pursuant to 11 U.S.C. §§ 549 and 550.

~~161.~~115.    Those Post-Petition transfers to Oxford Knox Defendants that are known to the Trustee at this time are identified on **Exhibit 3** hereto.

**COUNT THREE**

**Avoidance of Debtor's Execution of Repayment Agreement with Oxford Knox As a**

**Fraudulent Conveyance**

**[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

~~162.~~116.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

~~163.~~117.    11 U.S.C. § 548(a)(1)(B), in relevant part, permits a debtor or trustee to avoid "any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition" if the debtor failed to receive reasonably equivalent value in exchange for such transfer or obligation and if the debtor:

(I)    was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II)    was engaged in business or a transaction, or was about to engage in business

#62848569V1

**EXHIBIT 6, PAGE 206**

or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

       (III)    intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured . . .

~~164.~~118.    The Debtor executed the Repayment Agreement on or about April 15, 2022, which was within Two-Years of the Petition Date.

~~165.~~119.    On or after the date that the Repayment Agreement was executed, the Debtor was or became indebted to the Prepetition Creditors.

~~166.~~120.    The Repayment Agreement was executed while the Debtor:

    a.    was insolvent or became insolvent as a result;

    b.    was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

    c.    intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

~~167.~~121.    The Debtor failed to receive reasonably equivalent value when it executed the Repayment Agreement because the Repayment Agreement purported to consolidate debt owed to the members of Oxford Knox into a single obligation of twenty-two million dollars ($22,000,000.00). Upon information and belief, the stipulated amount of debt is inflated as (i) the Debtor was not liable for some of the debts allegedly owed to the members of Oxford Knox that were reduced to a sum certain in the Repayment Agreement, (ii) the debts allegedly owed to the Members represented equity investments in entities related to the Debtor that were subsequently treated as debt in the Repayment Agreement; and/or (iii) the debts owed to the Members consolidated in the Repayment Agreement arose from illegal or otherwise voidable transactions such as file purchases.

~~168.~~122.    The Repayment Agreement's requirement that the Debtor pay Oxford Knox the sum of ten million dollars ($10,000,000.00) upon a sale of the business is additional evidence that the debts the Members claimed to be owed were truly equity investments and not debt.

<u>**COUNT FOUR**</u>

**Avoidance, Recovery, and Preservation of Two-Year Transfers Made With Intent to Defraud**

23

**[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

~~169.~~123.        Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

~~170.~~124.        The Transfers were property of the Debtor's Estate prior to their conveyance to the one or more of the Oxford Knox Defendants. The Transfers to the Oxford Knox Defendants made within Two-Years of the Petition Date ("Two-Year Transfers") that are known to the Trustee are identified on **Exhibit 2** hereto and incorporated by reference herein.

~~171.~~125.        When the Two-Year Transfers were made, the Debtor was or became indebted include the Prepetition Creditors.

~~172.~~126.        The Two-Year Transfers occurred when the Debtor was insolvent or was rendered insolvent as a result of the Transfers.

~~173.~~127.        The Two-Year Transfers to the Oxford Knox Defendants were made with actual intent to hinder, delay or defraud the creditors of Debtor because the Debtor was operating a Ponzi scheme which permits the Court to infer that the Debtor's intent was fraudulent within the meaning of 11 U.S.C. section 548(a)(1).

~~174.~~128.        The Two-Year Transfers are avoidable as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, and 551 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against Debtor's Estate under 11 U.S.C. § 502, or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

~~175.~~129.        The Two-Year Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

<u>COUNT FIVE</u>

**Avoidance, Preservation, and Recovery of Constructively Fraudulent Two-Year Transfers**

**11 U.S.C. §§ 548(a)(1)(B), 550 & 551**

~~176.~~130.        Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

24

**EXHIBIT 6, PAGE 208**

#62848569V1

1    177.131.          The Two-Year Transfers were made within Two-Years before the Petition

2    Date.

3    178.132.          Debtor did not receive reasonably value in exchange for the Two-Year

4    Transfers because (i) the Debtor was not liable on the debts originally owed to some Defendants, (ii)

5    the debts allegedly owed to one or more Defendants arose from equity investments in entities related

6    to the Debtor that were subsequently treated as the Debtor's debt.

7    179.133.          The Two-Year Transfers were made at a time when Debtor was insolvent

8    and/or rendered insolvent by virtue of said transfers.

9    180.134.          When the Two-Year Transfers occurred, Debtor's business was

10   undercapitalized, and Debtor was engaged in business for which its capital was unreasonably small.

11   181.135.          When the Two-Year Transfers occurred, Debtor had incurred or was about to

12   incur debts that were beyond its ability to pay. The allegations in the preceding paragraphs are

13   supported by the fact that the Debtor was consistently borrowing money from merchant cash advance

14   lenders, purporting to sell the same groups of receivables to multiple parties, and as of August 2022

15   had begun a Ponzi scheme of borrowing through Spot On as discussed herein.

16   182.136.          At the time each Two-Year Transfer was made, Debtor was indebted to one or

17   more creditors that held a claim against Debtor on the date of each Two-Year Transfer and on the

18   Petition Date.

19   183.137.          Plaintiff alleges that Defendants did not receive the Two-Year Transfers in

20   good faith, for value, and without knowledge of their avoidability.

21   184.138.          Each Defendant knew that the Debtor was a law firm who was required by law

22   to escrow client payments until earned. However, each Defendant demanded and received payment

23   from client payments that had not been earned because they were paid by the Debtor, Vulcan, and/or

24   Coast or were paid directly from a payment processor for the Debtor such that the funds were never

25   conveyed to the Debtor and placed in escrow.

26   185.139.          Each Defendant had to know or should have known that they were being paid

27   with client funds that had not been placed into trust and been disbursed before they were earned.

28   186.140.          Each Defendant knew or should have known that were receiving payment on

25

**EXHIBIT 6, PAGE 209**

1  a debt that was not valid or enforceable at law to the extent it arose from an alleged "purchase" of

2  receivables related to the Debtor's client files.

3  ~~187.~~141.      Based on the foregoing, Plaintiff may recover and preserve the avoided Two-

4  Year Transfers from Defendant as the initial transferee or, alternatively, as the subsequent transferee

5  for the benefit of the Estate under 11 U.S.C. §§ 550 and 551 from Defendant.

6  **COUNT SIX**

7  **Avoidance, Preservation, and Recovery of Transfers Made In the Past Four Years**

8  **11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07**

9  ~~188.~~142.      Plaintiff realleges and incorporates by reference each and every allegation

10 contained in the preceding paragraphs as though set forth in full herein.

11 ~~189.~~143.      Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of

12 Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under

13 California Civil Code §§ 3439.04(a)(1) and 3439.05.

14 ~~190.~~144.      The Transfers occurred within four years prior to the Petition Date and are

15 identified on **Exhibit 2**.

16 ~~191.~~145.      On or after the date that such Transfer were made, entities to which Debtor was

17 or became indebted include the Prepetition Creditors.

18 ~~192.~~146.      Despite Debtor's obligation to the Prepetition Creditors, Debtor made the

19 Transfers to Defendants.

20 ~~193.~~147.      The Transfers to Defendants were made with actual intent to hinder, delay or

21 defraud the creditors of Debtor as the Debtor was operating a Ponzi scheme.

22 ~~194.~~148.      Defendants' conduct relating to the Transfers was done with oppression, fraud

23 and malice, as defined in California Civil Code section 3294, entitling Plaintiff to exemplary and

24 punitive damages.

25 ~~195.~~149.      The Transfers are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and

26 Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07 by one or more creditors who held and hold unsecured

27 claims against Debtor that were and are allowable against its Estate under 11 U.S.C. § 502 or that

28 were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the

26

1    Prepetition Creditors.

2    ~~196.~~150.    Accordingly, the Transfers should be avoided as fraudulent under 11 U.S.C.

3    §§ 544(b) and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07, and such transferred property, or the

4    value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C.

5    §§ 550 and 551 and Cal. Civ. Code § 3439.07.

6    ~~197.~~151.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of

7    Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under

8    California Civil Code §§ 3439.04(a)(2) and 3439.05.

9    ~~198.~~152.    Debtor did not receive reasonably equivalent value in exchange for the

10   Transfers. The Transfers were made to (i) entities that were not creditors of the Debtor, (ii) entities

11   that had made equity or other investments with the Debtor or in assets, and (iii) entities who claimed

12   to be owed far more than any value that was ever given to the Debtor.

13   ~~199.~~153.    At the time each Transfer was made, Debtor was engaged or was about to

14   engage in a business or a transaction for which the remaining assets of Debtor were unreasonably

15   small in relation to the business or transaction.

16   ~~200.~~154.    At the time each Transfer was made, Debtor intended to incur, or believed or

17   reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as

18   they became due.

19   ~~201.~~155.    At the time each Transfer was made, Debtor was indebted to one or more

20   creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

21   ~~202.~~156.    The Transfers were made at a time when Debtor was insolvent and/or rendered

22   insolvent by virtue of said transfers.

23   ~~203.~~157.    Plaintiff alleges that Defendants did not receive the Transfers in good faith, for

24   value, and without knowledge of their avoidability.

25   ~~204.~~158.    Each Defendant knew that the Debtor was a law firm who was required by law

26   to escrow client payments until earned. However, each Defendant demanded and received payment

27   from client payments that had not been earned because they were paid by the Debtor, Vulcan, and/or

28   Coast or were paid directly from a payment processor for the Debtor such that the funds were never

27

**EXHIBIT 6, PAGE 211**

#62848569V1

placed in trust.

205.159.        Each Defendant had to know or should have known that they were being paid with client funds that had not been placed into trust and been disbursed before they were earned.

206.160.        Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

207.161.        Based on the foregoing, Plaintiff may recover and preserve the Transfers from the Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

///

///

///

## COUNT SEVEN

**Avoidance, Recovery, and Preservation of Transfers Made in the Past Four Years**

**[11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.05, and 3439.07]**

208.162.        Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

209.163.        Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(2) and 3439.05.

210.164.        The Transfers were made within four years of the Petition Date are identified on **Exhibit 2** and incorporated as if set forth herein.

211.165.        Debtor did not receive reasonably equivalent value in exchange for the Transfers as (i) the Debtor was not liable on the debts originally owed to some Defendants, (ii) the debts allegedly owed to one or more Defendants arose from equity investments in entities related to the Debtor that were subsequently treated as the Debtor's debt.

212.166.        The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

**EXHIBIT 6, PAGE 212**

#62848569V1

213.167.　At the time each Transfer was made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

214.168.　At the time each Transfer was made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

215.169.　At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

216.170.　Plaintiff alleges that Defendants did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

217.171.　Each Defendant knew that the Debtor was a law firm who was required by law to escrow client payments until earned.

218.172.　Each Defendant had to know or should have known that they were being paid with client funds that had not been placed into trust and been disbursed before they were earned.

219.173.　Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

220.174.　Based on the foregoing, Plaintiff may recover and preserve the Transfers from the Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

## COUNT EIGHT

**Avoidance, Recovery, and Preservation of Fraudulent Transfers Made to or for the Benefit of Defendants Gilani and Dovalina Arising from use of American Express Card**

**[11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), and 550]**

221.175.　Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

222.176.　On or about November 28, 2021 the Debtor applied for a business platinum card from American Express ("AmEx").

223.177.　AmEx granted the Debtor's application and opened a credit line ending in 8-

29

**EXHIBIT 6, PAGE 213**

51001 ("Account") in the name of "LPG PC." AmEx issued cards to three individuals on this Account: Dovalina, Gilani, and Diab.

224.178.    From the opening of the Account in early 2022 to May and June 2022, Gilani regularly charged hundreds of thousands of dollars to the Account each month.

225.179.    While some charges to the Account may have been related to the Debtor and its operations, most of the charges do not appear to have benefitted the Debtor or were not incurred for the Debtor.

226.180.    Upon information and belief, Gilani regularly charged hundreds of thousands of dollars on the Account each month to pay vendors that do not appear to have done any work for the Debtors.

227.181.    Other expenses charged to the Account by Dovalina and/or Gilani appear personal in nature such as charges at clothing stores, tours/tickets, and dining.

228.182.    The charges made by each cardholder were itemized separately on the statements from American Express. The monthly charges on the Account for Dovalina and Gilani are stated below.

| Statement Closing Date | Gilani | Dovalina |
|---|---|---|
| 01.19.2022 | $14,812.41 | $1,593.83 |
| 02.16.2022 | $215,948.66 | $2,146.22 |
| 03.18.2022 | $207,846.79 | $1,413.61 |
| 04.18.2022 | $7,349.69 | $3,088.72 |
| 05.19.2022 | $29.98 | $94.55 |
| | $445,987.53 | $8,336.93 |

229.183.    The Debtor made payments on the Account to American Express. The payments from the Debtor to American Express to pay for all charges on the Account are identified on **Exhibit 5**.

230.184.    A significant portion of the payments to Am Ex were made to or for the benefit of Gilani and/or Dovalina and provided no benefit to the Debtor. The portion of the total payments made to AmEx that were made to pay for charges made to or for the benefit of Gilani and/or Dovalina are referred to herein as the "AmEx Transfers."

#62848569V1

**EXHIBIT 6, PAGE 214**

231.185.    The AmEx Transfers were made to or for the benefit of Gilani and/or Dovalina to the extent they paid American Express for charges made to the Account that were only or primarily for the benefit of Gilani and/or Dovalina.

232.186.    The funds used to make the AmEx Transfers were property of the Debtor's Estate prior to their conveyance to American Express.

233.187.    The AmEx Transfers occurred within the Two-Years prior to the Petition Date.

234.188.    On or after the date that the AmEx Transfers were made the Debtor was or became indebted include the Prepetition Creditors.

235.189.    The AmEx Transfers occurred when the Debtor was insolvent or was rendered insolvent as a result of the AmEx Transfers.

236.190.    The AmEx Transfers were made with actual intent to hinder, delay or defraud the creditors of Debtor because the Debtor was operating a Ponzi scheme which permits the Court to infer that the Debtor's intent was fraudulent within the meaning of 11 U.S.C. section 548(a)(1).

237.191.    Debtor did not receive reasonably value in exchange for the AmEx Transfers as Gilani and Dovlina were the parties that made charges on the Account for their personal benefit.

238.192.    When the AmEx Transfers occurred, Debtor's business was undercapitalized and Debtor was engaged in business for which its capital was unreasonably small.

239.193.    When the AmEx Transfers occurred, Debtor had incurred or was about to incur debts that were beyond its ability to pay. The allegations in the preceding paragraphs are supported by the fact that the Debtor was having to borrow money regularly from merchant cash advance lenders and to accept "investments" from third parties in exchange for promised future returns.

240.194.    At the time each AmEx Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

241.195.    Based on the foregoing, the AmEx Transfers were constructively fraudulent as to the Debtor's creditors to the extent they were made to or for the benefit of Gilani and/or Dovalina.

242.196.    Based on the foregoing, Plaintiff may avoid, preserve, and recover the avoided AmEx Transfers from Gilani and Dovalina pursuant to 11 U.S.C. §§ 548(a)(1)(A) and (B); 550 and 551.

31

**COUNT NINE**

**Objection to Proof of Claim No. 818 of Oxford Knox, LLC**

**[11 U.S.C. § 502(b) and (d)]**

243.197.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

244.198.    11 U.S.C. § 502(b) permits a Bankruptcy Court to determine the amount of a proof of claim following the filing of an objection.

245.199.    The Trustee has asked the Court to avoid the Debtor's execution of the Repayment Agreement as a fraudulent conveyance pursuant to 11 U.S.C. § 548. The Repayment Agreement is the basis for Oxford Knox's Claim.

246.200.    If the Trustee's avoidance action is successful, the Repayment Agreement would not be enforceable against the Estate.

247.201.    The Oxford Knox Claim is also objected to and is subject to disallowance pursuant to 11 U.S.C. § 502(d) because Oxford Knox and its members that created the Claim received transfers that are avoidable under 11 U.S.C. §§ 544, 547, 548, and/or 549.

248.202.    The amount of the amount of the transfers identified herein has not been returned to the Estate.

**On All Claims for Relief:**

1.    Avoiding the Debtor's obligations under the Agreement and avoiding recovering, and preserving the Payments to the Defendant in such amounts as the Court may determine ("AmEx Transfers");

2.    Awarding pre-judgment and post-judgment as permitted;

3.    Granting any other and such further relief as the Court deems just and proper.

4.    Awarding attorneys' fees as provided by contract or applicable law;

5.    Awarding costs of suit incurred here; and

6.    Granting any other and further relief as the Court deems just and proper.

**On the First and Second Claims for Relief:**

1.    Avoiding, recovering, and preserving the 90 Day Transfers and Post-Petition

32

**EXHIBIT 6, PAGE 216**

1  Transfers to the Defendants in such amounts as the Court may determine pursuant to applicable law;

2  **On the Third Claim for Relief:**

3  2.  Avoiding and preserving the Debtor's execution of the Repayment Agreement as a

4  fraudulent conveyance pursuant to 11 U.S.C. §§ 548, 550, and 551 for the reasons stated herein;

5  **On the Fourth Through Eight Claims for Relief:**

6  3.  Avoiding, recovering, and preserving the Transfers to the Defendants in such amounts

7  as the Court may determine pursuant to applicable law;

8  **On the Ninth Claim for Relief:**

9  4.  Sustaining the Plaintiff's Objection to the Claim of Oxford Knox for the reasons stated

10  herein;

11  **On All Claims for Relief:**

12  5.  Awarding punitive and exemplary damages according to proof;

13  6.  Awarding pre-judgment interest at the maximum legal rate;

14  7.  Awarding post-judgment interest at the maximum legal rate from the date of the last

15  Transfer until the judgment is paid in full;

16  8.  Awarding costs of suit incurred herein; and

17  9**.**  Granting any other and further relief as the Court deems just and proper.

18  Dated:  August 6, 2025~~July 15, 2025~~          Respectfully submitted,

19                                                 DINSMORE & SHOHL LLP

20

21                                          By:  /s/ Tyler Powell
                                                 Tyler Powell [pro hac vice]
22                                               Yosina M. Lissebeck
                                             Special Counsel to Richard A. Marshack, Trustee of
23                                           the LPG Liquidation Trust

24

25

26

27

28

**EXHIBIT 6, PAGE 217**

#62848569V1

**PROOF OF SERVICE**

I am over the age of 18 and not a party to this case. My business address is **655 W. Broadway, Suite 800, San Diego, California 92101.**

True and correct copies of the foregoing documents:

**STIPULATION OF PLAINTIFF RICHARD A. MARSHACK, TRUSTEE OF THE LPG LIQUIDATION TRUST AND CERTAIN DEFENDANTS: (I) ALLOWING AMENDMENT OF COMPLAINT; (II) DISMISSING CERTAIN DEFENDANTS WITHOUT PREJUDICE; (III) EXTENDING REMAINING DEFENDANTS' TIME TO ANSWER AND OTHER DEADLINES; AND (IV) RESCHEDULING STATUS CONFERENCE FROM AUGUST 21, 2025 TO SEPTEMBER 2, 2025**

will be served in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 7, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Leslie A Cohen -** leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com; bryn@lesliecohenlaw.com
- **Yosina M Lissebeck -** yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com; ayrton.celentino@dinsmore.com
- **Richard A Marshack (TR)  -** pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- **Tyler Powell  -** tyler.powell@dinsmore.com, lydia.tharp@dinsmore.com; wendy.yones@dinsmore.com
- **United States Trustee (SA) -**  ustpregion16.sa.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**: On **August 7, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**The Honorable Scott C. Clarkson**
**United States Bankruptcy Court**
**Ronald Reagan Federal Building & Courthouse**
**411 West Fourth Street, Suite 5130 / Courtroom 5C**
**Santa Ana, CA 92701-4593**

**Bae Enterprises, Inc.**
**Attn: Cloud Peak Law, LLC, Registered Agent**
**1095 Sugarview Drive, Suite 500**
**Sheridan, WY 82801**

**3. BY ELECTRONIC MAIL:** On **August 7, 2025**, I caused such documents described herein to be sent to the person(s) at the e-mail addresses listed below. I did not receive within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

#63391135v2

**EXHIBIT 6, PAGE 218**

**David M. Goodrich, Esq.**          **Attorneys for Defendants listed in Exhibit 1**
**Jeffrey I. Golden, Esq.**
**GOLDEN GOODRICH LLP**
**3070 Bristol St., Ste 640**
**Costa Mesa, CA 92626**
**dgoodrich@go2.law**
**jgolden@go2.law**

**4.   SERVED   BY   PERSONAL   DELIVERY,   OVERNIGHT   MAIL,   FACSIMILE
TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I
served the following persons and/or entities by personal delivery, overnight mail service, or (for those
who consented in writing to such service method), by facsimile transmission and/or email as follows.
Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the
judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true
and correct.

| August 7, 2025 | Wendy A.Yones | /s/ Wendy A. Yones |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

#63391135v2                              **EXHIBIT 6, PAGE 219**

# Exhibit 7

Christopher Celentino (SBN 131688)
Yosina M. Lissebeck (SBN 201654)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Tel: (619) 400-0500
Fax: (619) 400-0501
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com

Tyler Powell (Ky. Bar No. 90520 – Admitted pro hac vice)
**DINSMORE & SHOHL, LLP**
100 West Main Street, Suite 900
Lexington, KY 40507
Tel: (859) 425-1046
Fax: (859) 425-1099
tyler.powell@dinsmore.com

Attorneys for Richard A. Marshack,
Trustee of the LPG Liquidation Trust

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>The Litigation Practice Group P.C.,<br><br>               Debtor.<br>_____<br>Richard A. Marshack, Trustee of the LPG<br>Liquidation Trust,<br><br>               Plaintiff,<br><br>v.<br><br>Oxford Knox, LLC, a Delaware limited liability company; Buffalo 21 Partners, Inc., a Wyoming corporation; Jason Dovalina, individually; Rachel Dovalina, individually; Syed Faisal Gilani aka Sye Gilani, individually; BAE Enterprises, Inc., a Wyoming corporation; Samson Ly, individually; BEW Solar Management, LLC, a California limited liability company; Lexicon Consulting, LLC, a Colorado limited liability company; United Partnerships, LLC, a Florida limited liability company; Ventura Consulting, LLC, a Nevada limited liability company; Matthew Church, individually; Frank Brown, individually; Validation, LLC, a terminated California limited | Chapter 11<br><br>Case No.: 8:23-bk-10571-SC<br>Adv. No: 8:25-ap-01208-SC<br><br>**TRUSTEE'S SECOND AMENDED COMPLAINT FOR:**<br><br>**(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF PREFERENTIAL TRANSFERS MADE TO OR FOR CERTAIN DEFENDANTS MADE WITHIN NINETY DAYS OF THE PETITION DATE;**<br><br>**(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF POST-PETITION TRANSFERS MADE TO OR FOR THE BENEFIT OF CERTAIN DEFENDANTS;**<br><br>**(3) AVOIDANCE OF DEBTOR'S EXECUTION OF REPAYMENT AGREEMENT WITH DEFENDANT OXFORD KNOX, LLC PURSUANT TO 11 U.S.C. §§ 548(a), 550, AND 551;**<br><br>**(4) AVOIDANCE, RECOVERY, AND PRESERVATION OF FRAUDULENT TRANSFER(S) PURSUANT TO 11 U.S.C. §§** |

1

**EXHIBIT 7, PAGE 220**

1  liability company; Spectrum Payment Solutions,
   LLC, a California limited liability company; Home
2  Energy Solutions, Inc., a California corporation;
   JNR Services, Inc., a California corporation;
3  C.A.T. Exteriors, Inc., an Arizona corporation;
   AZLS Enterprises, Inc, a California corporation;
4  and INVESTLINC Wealth Services, Inc., a
   California corporation.
5
6                              Defendants.
7
8
9
10
11
12
13
14
15
16
17
18
19

**548(a)(1), 550, AND 551;**

**(5) AVOIDANCE, RECOVERY, AND
PRESERVATION OF FRAUDULENT
TRANSFER(S) PURSUANT TO 11 U.S.C. §§
548(a)(2), 550, AND 551;**

**(6) AVOIDANCE, PRESERVATION, AND
RECOVERY OF VOIDABLE TRANSFERS
MADE WITH INTENT TO DEFRAUD [11
U.S.C. §§ 544, 550, 551; CAL. CIV. CODE §§
3439.04(a)(1) AND 3439.07];**

**(7) AVOIDANCE, PRESERVATION,
AND RECOVERY OF VOIDABLE
TRANSFERS MADE WITH NO INTENT
TO DEFRAUD [11 U.S.C. §§ 544, 550, 551;
CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05,
AND 3439.07];**

**(8)  AVOIDANCE, RECOVERY, AND
PRESERVATION OF FRAUDULENT
TRANSFERS MADE TO OR FOR THE
BENEFIT OF DEFENDANTS GILANI AND
DOVALINA ARISING FROM USE OF
AMERICAN EXPRESS CARD; and**

**(9) OBJECTION TO PROOF OF CLAIM
NO. 818 OF OXFORD KNOX, LLC**

Honorable Scott C. Clarkson
Dept. 5C

20      For his *Second Amended Complaint for: (1) Avoidance, recovery, and preservation of*

21  *preferential transfers made to or for certain defendants made within ninety days of the petition date;*

22  *(2) Avoidance, recovery, and preservation of Post-Petition transfers made to or for certain*

23  *defendants; (3) Avoidance of Debtor's execution of repayment agreement with defendant Oxford*

24  *Knox, LLC pursuant to 11 U.S.C. §§548(a), 550, and 551; (4) Avoidance, rrecovery, and preservation*

25  *of fraudulent transfers(s) pursuant to 11 U.S.C. §§548(a)(1), 550, and 551; (5) Avoidance, recovery,*

26  *and preservation of fraudulent transfer(s) to 11 U.S.C. §§548(a)(2), 550, and 551; (6) Avoidance,*

27  *preservation, and recovery of voidable transfers made with intent to defraud [11 U.S.C. §§544, 550,*

28  *551; Cal. Civ Code §§3439.04(a)(1) and 3439.07;] (7)Avoidance, preservation, and recovery of*

2

**EXHIBIT 7, PAGE 221**

voidable transfers made with no intent to defraud [11 U.S.C. §§544, 550, 551; Cal. Civ. Code §§3439.04(a)(2), 3439.05, and 3439.07]; (8) Avoidance, recovery, and preservation of fraudulent transfers made to or for the benefit of Defendants Gilani and Dovalina arising from use of American Express Card; and (9) Objection to Proof of Claim No. 818 of Oxford Knox, LLC  (the "Complaint"), plaintiff Richard A. Marshack, the former Chapter 11 Trustee for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") and Trustee of the LPG Liquidation Trust (collectively, "Trustee" or "Plaintiff") in the above-captioned bankruptcy case (the "Bankruptcy Case"), alleges and avers as follows:

**STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE**

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court").

2.      Regardless of whether this proceeding is core, non-core, or otherwise, the Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

3.      Defendants are hereby notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires them to plead whether consent is given to the entry of a final order and judgment by the bankruptcy court.

4.      Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to the Debtor's pending Bankruptcy Case.

**THE PARTIES**

5.      Debtor LPG is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

6.      Defendant Oxford Knox, LLC is, and at all material times represented that it was, a Delaware - domestic limited liability company ("Oxford Knox").

3

#63391135v2

7.     Defendant Oxford Knox may be served by first class mail postage prepaid upon its Partnership Representative: Richard R. Emmett, 251 Little Falls Drive, Wilmington, Delaware 19808.

8.     Defendant Buffalo 21 Partners, Inc. is, and at all material times represented that it was, a Wyoming - domestic corporation, ("Buffalo 21").

9.     Defendant Buffalo 21 may be served by first class mail postage prepaid upon its CEO: Richard R. Emmett, 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801.

10.     Defendant Jason Dovalina is, and at all material times represented that he was, an individual residing in the state of California ("Jason Dovalina").

11.     Defendant Jason Dovalina, may be served by first class mail postage prepaid upon himself; 128 W. Santa Fe Avenue, Suite C, Placentia, California 92870-5632.

12.     Defendant Rachel Dovalina is, and at all material times represented that she was, an individual residing in the state of California ("Rachel Dovalina").

13.     Defendant Rachel Dovalina, may be served by first class mail postage prepaid upon herself; 736 Oceanview Drive, Fullerton, California 92832.

14.     Defendant Syed Faisal Gilani aka Sye Gilani is, and at all material times represented that he was, an individual residing in the state of California ("Gilani").

15.     Defendant Gilani may be served by first class mail postage prepaid upon himself: 7651 Greenock Way, Riverside, California 92508.

16.     Defendant Bae Enterprises, Inc. is, and at all material times represented that it was, a Wyoming - domestic corporation ("Bae Enterprises").

17.     Defendant Bae Enterprises may be served by first class mail postage prepaid upon its registered agent: Cloud Peak Law, LLC, 1095 Sugarview Drive, Suite 500, Sheridan, Wyoming 82801.

18.     Defendant Samson Ly is, and at all material times represented that he is a resident of California ("Ly").

19.     Defendant Ly may be served by first class mail postage prepaid upon himself: 208 S. Moore Avenue, Apt. D, Monterey Park, California 91754.

20.     Defendant BEW Solar Management, LLC is, and at all material times represented that

4

EXHIBIT 7, PAGE 223

it was, a California – domestic limited liability company ("BEW Solar").

21.    Defendant BEW Solar may be served by first class mail postage prepaid upon its manager: Sean M. Stephens, 2560 N. Synergy Avenue, Eagle, Idaho 83616.

22.    Defendant Lexicon Consulting, LLC is, and at all material times represented that it was, a Colorado limited liability company ("Lexicon").

23.    Defendant Lexicon may be served by first class mail postage prepaid upon its registered agent: Vanghagen Law, PC, 44 Cook Street, Suite 110 Denver CO 80206.

24.    Defendant United Partnerships, LLC. is, and all material times represented that it was, a Florida limited liability company ("United Partnerships").

25.    Defendant United Partnerships may be served by first class mail postage prepaid upon its registered agent: Frank Brown, 215 New River Drive East 910, Fort Lauderdale, FL 33301.

26.    Defendant Ventura Consulting, LLC is, and at all material times represented that it was, a Nevada - domestic limited liability company ("Ventura").

27.    Defendant Ventura may be served by first class mail postage prepaid upon its member Matthew Church; 708 Grandview Avenue, Fullerton, California 92832 and/or 10620 Southern Highlands Parkway, Suite 110-18, Las Vegas, Nevada 89141.

28.    Defendant Matthew Church is, and at all material times represented that he was an individual residing in the states of California and Nevada ("Church")

29.    Defendant Church may be served by first class postage prepaid upon himself; 708 Grandview Avenue, Fullerton, California 92832 and 10620 Southern Highlands Parkway, Suite 110-18, Las Vegas, Nevada 89141.

30.    Defendant Frank Brown is, and at all material times represented that he was an individual residing in the state of Nevada ("Brown").

31.    Defendant Brown may be served first class postage prepaid upon himself: and 10620 Southern Highlands Parkway, Suite 110-18, Las Vegas Nevada 89141 and 10881 Pentland Downs Street, Las Vegas, Nevada 89141.

32.    Defendant Validation, LLC is currently a terminated California limited liability company that dissolved on September 19, 2022 ("Validation").

#63391135v2

33.    Defendant Validation may be served by first class mail postage prepaid delivered to its last registered agent Matthew Church at either 708 Grandview Avenue, Fullerton, California 92832 and 10620 Southern Highlands Parkway, Suite 110-18, Las Vegas, Nevada 89141.

34.    Defendant Spectrum Payment Solutions, LLC is, and at all material times represented that it was, a California – domestic limited liability company ("Spectrum").

35.    Defendant Spectrum may be served by first class mail postage prepaid upon its agent Samson Ly; 208 S. Moore Avenue, Apt. D, Monterey Park, California 91754.

36.    Defendant Home Energy Solutions, Inc. is, and at all material times represented that it was a California – domestic corporation ("Home Energy").

37.    Defendant Home Energy may be served by first class mail postage prepaid upon its Financial Manager: Rick R. Emmett, 300 S. Harbor Boulevard., Suite 1000, Anaheim, California 92805.

38.    Defendant JNR Services, Inc. is, and at all material times represented that it was a California – domestic corporation ("JNR").

39.    Defendant JNR may be served by first class mail postage prepaid upon its agent Rick R. Emmett; 10 Pointe Drive, Suite 150, Brea, California 92821.

40.    Defendant C.A.T. Exteriors, Inc. is, and at all material times represented that it was an Arizona – domestic corporation ("CAT Exteriors").

41.    Defendant CAT Exteriors may be served by first class mail postage prepaid upon its agent Rick R. Emmett: 10 Pointe Drive, Suite 150, Brea, California 92821.

42.    Defendant AZLS Enterprises Inc. is, and at all material times represented that it was a California – domestic corporation ("AZLS").

43.    Defendant AZLS may be served by first class mail postage prepaid upon its agent: Hee S. Noh, 9 Traditional Place, Irvine, California 92602.

44.    Defendant Investlinc Wealth Services, Inc. is, and at all material times represented that it was a California – domestic corporation ("Investlinc").

45.    Defendant InvestLinc may be served by first class mail postage prepaid upon its agent: West A. Cohan, 10 Pointe Drive, Suite 150, Brea, California 92821.

6

46.     Unless separately identified herein, all of the Defendants will collectively be referred to herein as the "Oxford Knox Defendants."

## GENERAL ALLEGATIONS

### A.     The Bankruptcy Case

47.     On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

48.     The Office of the United States Trustee ("UST") filed its *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58].

49.     Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

50.     Trustee was not appointed until after events of the case and, therefore, bases these allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations

7

EXHIBIT 7, PAGE 226

omitted)).

51.     Pursuant to the *Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation* entered September 9, 2024, and the *Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation* filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust, effective September 24, 2024. [Bankr. Docket Nos. 1646 & 1762].

52.     Plaintiff brings this action solely in his capacity as the Liquidating Trustee of the LPG Liquidation Trust, for the benefit of Debtor's Estate and its creditors.

**B.      Protective Order**

53.     On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of Protective Order (the "Protective Order").

54.     On June 3, 2024, the Court entered its *Order Granting Motion for Entry of Protective Order and the Protective Order* [Bankr. Docket No. 1270] (the "Protective Order"). A true and accurate copy of the Protective Order is attached as **Exhibit 1**, and incorporated herein.

55.     By its own terms, the Protective Order applies to this adversary proceeding and governs all discovery conducted herein.

**C.      LPG's Ownership and Management**

56.     Prior to the Petition Date, LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify. At all relevant times, LPG was controlled and operated by the individual named Tony Diab ("Diab").

57.     The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

58.     The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

59.     In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

60.     LPG mismanaged the consumers' monthly payments.

8

#63391135v2

61.     Diab and other defendants devised a plan to fraudulently transfer funds, client files, client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out of LPG to third parties prior to the filing of bankruptcy.

62.     To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG in exchange for a percentage of the ACH Receivables collected by LPG from the consumers. The marketing affiliate went so far as to assist with the execution of an engagement letter between the consumer and LPG.

63.     In exchange, LPG agreed to pay the marketing affiliates a percentage the monthly payments collected by LPG from the consumers.

64.     Because LPG received payments from consumers over time, it often sought financing by borrowing against its future cash flows. This borrowing was not only used to finance operations at LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

65.     Many of the documents executed in connection with such financing described the transactions as accounts receivable purchase agreements.

66.     Diab used entities he controlled including, without limitation, Vulcan Consulting, LLC ("Vulcan"), B.A.T. Inc. dba Coast Processing ("Coast"), PrimeLogix, LLC ("PrimeLogix") and others to divert LPG consumer funds and ACH Receivables. Diab would use numerous ACH processing companies in order to easily transfer millions of dollars from Debtor to these entities he controlled, without oversight or detection, and to avoid payment disputes and complications. The money that flowed from Debtor through these bank account to Defendants consisted of Client Funds that Debtor funneled to these entities by means of the ACH processing companies. Debtor also made deposits into these entities bank account such that they received Client Funds directly from Debtor in addition to direct Accounts Receivable.

## SPECIFIC ALLEGATIONS

**A.     Ponzi Scheme Presumption**

67.     The Ponzi Scheme Presumption exists in bankruptcy proceedings.

68.     The Ponzi Scheme Presumption can be utilized to establish a debtor's "intent to

9

EXHIBIT 7, PAGE 228

defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless makes payments to present investors, which, by definition, are meant to attract new investors. He must know all along, from the very nature of his activities, that investors at the end of the line will lose their money. Knowledge to a substantial certainty constitutes intent in the eyes of the law," *cf. Restatement (Second) of Torts § 8A* (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them. *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 114 F.4th 1148, 1153 (9th Cir. 2024) (by definition Ponzi scheme is destined to fail and the swindler and their entities often end in bankruptcy or equitable receivership); *Cf. Coleman Am. Moving Servs., Inc. v. First Nat'l Bank & Trust Co. (In re American Properties, Inc.)* 14 B.R. 637, 643 (Bankr. D. Kan. 1981) (intentionally carrying out a transaction with full knowledge that its effect will be detrimental to creditors is sufficient for actual intent to hinder, delay or defraud within the meaning of § 548(a)(1))." *Merrill v. Abbott (In re Independent Clearing House Co.)* (D. Utah 1987) 77 B.R. 843, 860. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 ("[a] trustee's action to recover assets fraudulently conveyed in the course of a Ponzi scheme does not require that the trustee also prove the Ponzi-scheme operator was subjectively aware his Ponzi scheme was destined to fail.").

69.    "But if all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share. In fact, by helping the debtor perpetuate his scheme, the transfers exacerbate the harm to creditors by increasing the amount of claims while diminishing the debtor's estate. In such a situation, the use of the defendant's money cannot objectively be called 'reasonably equivalent value.'" *In re Independent Clearing House Co.* 77 B.R. at 859. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute "property of the estate," and the trustee can recover them. *Id.* at 853 n.17

10

(citations omitted).

70.    Diab improperly used Debtor to operate a Ponzi scheme that utilized affiliates and several other entities as investors to continue its unlawful business practices by using funds provided by current investors to attract new investors hoping for very high returns. Therefore, the Debtor was running a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. section 548(a)(1). This is evidenced by the Court in this Bankruptcy Case declaring that Debtor was operating a Ponzi scheme when it stated the following:

It is important to note that this Court has never received any significant and trustworthy evidence that Debtor accomplished meaningful results for its clients, but only anecdotal examples of viable success for its clients. By reviewing the Estate's claims register, there is evidence of consumer claims for the fraud and demanded undelivered refunds of approximately $500 million. There is ample evidence that the pre-petition Debtor never placed the collected funds into an attorney-client trust account, and that Debtor or its principals simply looted the payments received through the client automatic withdrawals, stiffing both the clients and outside attorneys who may have been working on client cases with the hopes of being paid. There is also evidence before the Court that Debtor was running a Ponzi scheme and paying some outside (or "network") attorneys with funds obtained from new clients. In this case, it appears that some of the "lenders" may have been serving as "investors," hoping for very high returns before "the music stopped."  The Ninth Circuit has recently explained, "[b]y definition, a Ponzi scheme is destined to fail because the pool of available investors is not limitless. When the Ponzi scheme operator's pool of investors inevitably runs dry, the scheme collapses and the swindler and their entities often end up in bankruptcy or equitable receivership. *See generally* David R. Hague, Expanding the Ponzi Scheme Presumption, 64 DePaul L. Rev. 867 (2015). In bankruptcy, the court-appointed trustee is tasked with taking immediate control of the entity, ceasing ongoing fraudulent activity, locating and collecting assets for the bankruptcy or receivership estate, and achieving a final, equitable distribution of the remaining assets. *See* 11 U.S.C. § 704; *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 2024 U.S. App. LEXIS 21363, at *15 (9th Cir. Aug. 23, 2024). Finally, there is evidence that Debtor was encumbering (or as some creditors assert, "double or triple selling") their accounts or receivables to multiple lenders. With respect to Greyson's requested Administrative Claim [Dk. 676], and as more fully described in the concurrently entered order denying the claim, there has been no evidence presented that any work allegedly performed by Greyson assisted any clients or added any value to the Estate.

11

1    *See, Case 8:23-bk-10571-SC*, Doc 1545 n. 5.

2

3    71.    The Ponzi Scheme Presumption establishes a debtor's "intent to defraud future

4    undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme." *Merrill v.*

5    *Abbott* (*In re Independent Clearing House Co*.), 77 B.R. 843, 860 (D. Utah 1987). "Knowledge to a

6    substantial certainty constitutes intent in the eyes of the law, *cf. Restatement (Second) of Torts* § 8A

7    (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish

8    his actual intent to defraud them." *Id*. A trustee in bankruptcy is not required to show that an operator

9    of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co.,*

10   *LLC*, 114 F.4th at 1153 (9th Cir. 2024).

11   72.    "[I]f all the debtor receives in return for a transfer is the use of the defendant's money

12   to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share." *In re*

13   *Independent Clearing House Co.* 77 B.R. at 859. In such a situation, the use of the defendant's money

14   cannot objectively be called "reasonably equivalent value." *Id*. Therefore, "[t]he trustee can avoid the

15   transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are

16   preferential and fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can

17   recover them." *Id*. at 853 n.17 (citations omitted).

18   73.    In addition to the solicitation of investments and lending from the Oxford Knox

19   Defendants, the Debtor's need for capital was so severe that it began borrowing funds through a loan

20   broker named Spot On Consulting, Inc. ("Spot On"). Upon information and belief, Spot On would

21   facilitate loans to LPG from individuals and corporations – sometimes for as little as $5,000 – in

22   exchange for a ten percent (10%) commission on the principal amount of the loan. LPG would then

23   typically promise to pay each lender as much as eight percent (8%) interest per month on the principal

24   balance for twelve months and would then repay the original principal amount at maturity.

25   74.    Upon further information and belief, LPG borrowed hundreds of thousands of dollars

26   **each week** on these terms beginning in August 2022 and continuing until filing for bankruptcy.

27   75.    Proof of Claim No. 91 seeking more than $66 million dollars has been filed for the

28   outstanding balances owed on these brokered "loans". This Proof of Claim is incorporated by

12

#63391135v2

reference herein.

76.    Based on the Ponzi Scheme presumption the Court can infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. § 548(a)(1). Since the Transfers to the Defendants were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for such transfers, and the Trustee can avoid any such transfers because they were actually fraudulent as to the Debtor's creditors..

**B.    Prepetition Litigation and Creditors**

77.    Debtor's Schedule E/F, filed on April 4, 2023, as Dk. No. 33, lists: (a) 11 unsecured creditors with priority unsecured claims totaling $374,060.04; and (b) 58 nonpriority unsecured creditors with scheduled claims totaling $141,439,158.05.

78.    The claims register in this Bankruptcy Case includes 2,554 proofs of claim, totaling in excess of $424 million of claims asserted against the Estate.

79.    At least 14 UCC-1 statements were of record securing alleged debts of the Debtor as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired or provided evidence of the assignment or sale of substantial portions of the Debtor's future income. They secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (a) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (b) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (c) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 purportedly secured by a UCC statement filed on or about May 28, 2021; and (d) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.

80.    Debtor's balance sheets for the 36 months ending December 31, 2021, show approximately $17,900,000 in total assets at its highest point in November 2021. This amount is significantly less than the $424 million in claims filed.

81.    Debtor's Statement of Financial Affairs, filed on April 4, 2023, as Dk. No. 34, reflects

13

15 pending lawsuits against Debtor as of the Petition Date. The lawsuits date back to October 18, 2021 (*Fundura v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 613192-2021) and are as recent as March 10, 2023 (*Diverse Capital LLC v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 135614-2023).

**C.**   **Debtor's Insolvency**

82.   Debtor was insolvent when the Transfers occurred as evidenced by: (a) the 14 UCC-1 statements reflecting secured liens against the Debtor's owned and after-acquired assets and the assignment or sale of substantial portions of the Debtor's future income; (b) the priority and non-priority unsecured debt of nearly $142 million listed in Debtor's schedules; (c) the $424 million of creditor claims filed in this Bankruptcy Case; and (d) Debtor's balance sheets reflecting, at its highest point, $17.9 million of assets in November 2021.

83.   Moreover, insolvency is presumed as a matter of law where, as in this Bankruptcy Case, the debtor operated a Ponzi scheme. *See, e.g., Glob. Money Mgmt., L.P. v. McDonnold*, No. 06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a Ponzi scheme is proven, then the debtor is proven insolvent from the time of its inception").

**SPECIFIC ALLEGATIONS**

84.   Upon information and belief, Oxford Knox and its predecessor Validation were formed to try to meet promises made to investors and lenders to or partners of the Debtor and/or a related entity. Whether these debts arose from traditional loans, "purchases" of receivables from a set of client files, or investments in the Debtor or a particular venture, the Debtor, Tony Diab, and/or a related entity was not able to fulfill the promised obligations.

85.   Some Oxford Knox Defendants appear to have lent money to Tony Diab. In the summer of 2021, Defendants Home Energy, Samson Ly, BEW Solar, Spectrum, and others collectively paid more than $1,000,000 into escrow to fund the down payment on Tony Diab's purchase of Arash Bayrooti's shares in Coast. These escrowed funds were ultimately paid to Mr. Bayrooti on behalf of Mr. Diab; however, the Debtor, and not Mr. Diab, was required to make these payments.

86.   Upon information and belief, some amounts may have been repaid to these individuals

14

**EXHIBIT 7, PAGE 233**

that advanced money to fund Mr. Diab's purchase of shares in Coast. These debts may have been restructured into assignments of income from groups of files.

87.    Also in 2021, Validation LLC was formed and entities affiliated with some or all of the Defendants were named as members.  Upon information and belief, Validation's stated purpose was to support the Debtor's marketing affiliates and/or work with law firms like the Debtor. Upon further information and belief, Validation's true purpose and goal was the repayment of amounts owed to its members by the Debtor or Mr. Diab.

88.    Validation was ultimately dissolved in September 2022, but while it operated, the Debtor paid it almost one million dollars as shown herein.

89.    While Validation was winding down, Mr. Diab formed a new entity – Oxford Knox – in late 2021. Upon information and belief, Oxford Knox was formed for the same purpose as Validation – to nominally support to the Debtor's affiliates while collecting payments from the Debtor for its members.

90.    The initial members of Oxford Knox were (i) Buffalo 21; (ii) Obrick, Inc.; (iii) Albright, Inc.; (iv) Final Season, Inc.; (v) Factor In, Inc.; (vi) Bae Enterprises, Inc.; (vii) Decacorn Holdings; (viii) BEW Solar; (ix) Lexicon Consulting, LLC; (x) United Partnerships; (xi) Ventura Consulting; and (xii) Summer Cederberg.

91.    Following its formation, the Debtor and/or Mr. Diab made payments directly to Oxford Knox, and/or its members using client funds paid to or collected by the Debtor.

92.    Upon further information and belief, Mr. Diab would direct the Debtor or a related entity to make or direct payments to one or more of the Oxford Knox Defendants either based on invoices for services that were never performed to make the payment appear tax deductible, or paid to a third party that was owned or controlled by a member of Oxford Knox.

93.    All payments to any Oxford Knox Defendant made pre-petition known to the Trustee as of the date the original complaint was filed are set forth on **Exhibit 2** hereto and incorporated as if set forth herein.

94.    All payments to any Oxford Knox Defendant made after the Debtor filed for bankruptcy known to the Trustee as of the date this complaint was filed are set forth on **Exhibit 3**

15

1  hereto and incorporated as if set forth herein.

2      95.    Upon further information and belief, each member of Oxford Knox contributed "debt"

3  they claimed to be owed by the Debtor to the LLC. In turn, Oxford Knox, which was partially owned

4  and/or controlled by Tony Diab, entered into an agreement with the Debtor that fixed the debt owed

5  to Oxford Knox at $22,000,000 ("Repayment Agreement").

6      96.    The Repayment Agreement is the basis of, and is attached to, the Proof of Claim No.

7  818 ("Claim") filed by Oxford Knox herein. A true and accurate copy of the Repayment Agreement

8  from the Claim is attached hereto as **Exhibit 4**.

9      97.    The Claim states that Oxford Knox received three payments totaling $1,743,686.74 on

10  November 1, 2021, January 1, 2022, and February 1, 2022. The Trustee does not know if these

11  payments reflect payments made directly to the members of Oxford Knox or to third parties on their

12  behalf or if these payments were made directly to Oxford Knox from an unknown source. They are

13  identified herein and included in the Transfers that the Trustee seeks to avoid.

14      98.    Hereinafter, any payment to any Oxford Knox Defendant identified herein will be

15  referred collectively as the "Transfers". Specific sets of Transfers such as those made during the

16  ninety-day period preceding the Petition Date may be given a certain name, but they will remain part

17  of the Transfers identified herein.

18      99.    All Transfers identified herein may not relate to the transactions and entities discussed

19  herein, and the Trustee may have filed or may file separate litigation against one or more Defendants

20  based on other transactions or relationships it had with the Debtor. All Transfers to Defendant known

21  to the Trustee are identified herein out of an abundance of caution.

22                              **CLAIMS FOR RELIEF**

23                                  **COUNT ONE**

24  **Avoidance, Recovery, and Preservation of Transfers Made Within the Ninety Day Period**

25                          **Before the Petition Date**

26                      **[11 U.S.C. §§ 547, 550, and 551]**

27      100.    Plaintiff realleges and incorporates by reference each and every allegation contained

28  in the preceding paragraphs as though set forth in full herein.

16

101.    In the ninety-day period preceding the Petition Date, the Debtor made transfers of property or payments to one or more of the Oxford Knox Defendants ("90 Day Transfers"). The 90 Day Transfers to the Oxford Knox Defendants known to the Trustee as of the filing date are identified on hereto as **Exhibit 2.**

102.    The Debtor made the 90 Day Transfers to the Oxford Knox Defendants identified on the Exhibit on account of a debt owed to that particular Defendant or to Oxford Knox.

103.    The 90 Day Transfers were made to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because the 90 Day Transfers were payments made on account of debts nominally owed by the Debtor.

104.    A transfer of the Debtor's assets occurred when the 90 Day Transfers were received by the particular Oxford Knox Defendant.

105.    The 90 Day Transfers were made on account of antecedent debt nominally owed by the Debtor to the recipient of the Transfer due to an "investment" or other document evidencing indebtedness. The Debtor's payment obligations to the transferees constituted a "debt" (as defined in the Bankruptcy Code).

106.    The 90 Day Transfers occurred when the Debtor actually was insolvent. However, Plaintiff is also entitled to the presumption of insolvency when the 90 Day Transfers were made pursuant to 11 U.S.C. § 547(f).

107.    The 90 Day Transfers were made in the ninety-day period before the Petition Date.

108.    To the extent any transfers were made by the Debtor to any Oxford Knox Defendant within the ninety-day period preceding the Petition Date and are not identified herein, Plaintiff reserves the right to avoid and recover such transfers pursuant to 11 U.S.C. §§ 547 and 550.

109.    As the holder of an unsecured claim(s) or as party who has not filed a claim, the payment of the 90 Day Transfers to one or more of the Oxford Knox Defendants enabled them to recover more than they would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the 90 Day Transfers had not been made; and (iii) the debts owed to the Oxford Knox Defendants that received the 90 Day Transfers were paid pursuant to the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case,

EXHIBIT 7, PAGE 236

as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's bankruptcy estate.

110.    In accordance with the foregoing, the 90 Day Transfers are avoidable pursuant to 11 U.S.C. § 547(b), and may be recovered and preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551.

## COUNT TWO

### Avoidance, Recovery, and Preservation of Post-Petition Transfers

### [11 U.S.C. §§ 549, 550, and 551]

111.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

112.    This is an action to pursuant to 11 U.S.C. §§ 549 and 550 to avoid and recover unauthorized post-petition transfers made by Debtor to any of the Oxford Knox Defendants ("Post-Petition Transfers").

113.    To the extent any Post-Petition Transfers were made by the Debtor to any Oxford Knox Defendant following the Petition Date and are not identified herein, Plaintiff reserves the right to amend the Complaint to identify the Post-Petition Transfers and seek the avoidance and recovery of them pursuant to 11 U.S.C. §§ 549 and 550.

114.    Those Post-Petition transfers to Oxford Knox Defendants that are known to the Trustee at this time are identified on **Exhibit 3** hereto.

## COUNT THREE

### Avoidance of Debtor's Execution of Repayment Agreement with Oxford Knox As a

### Fraudulent Conveyance

### [11 U.S.C. §§ 548(a)(1)(B), 550, and 551]

115.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

116.    11 U.S.C. § 548(a)(1)(B), in relevant part, permits a debtor or trustee to avoid "any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date

18

of the filing of the petition" if the debtor failed to receive reasonably equivalent value in exchange for such transfer or obligation and if the debtor:

(I)      was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II)      was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III)      intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured . . .

117.    The Debtor executed the Repayment Agreement on or about April 15, 2022, which was within Two-Years of the Petition Date.

118.    On or after the date that the Repayment Agreement was executed, the Debtor was or became indebted to the Prepetition Creditors.

119.    The Repayment Agreement was executed while the Debtor:

a.      was insolvent or became insolvent as a result;

b.      was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

c.      intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

120.    The Debtor failed to receive reasonably equivalent value when it executed the Repayment Agreement because the Repayment Agreement purported to consolidate debt owed to the members of Oxford Knox into a single obligation of twenty-two million dollars ($22,000,000.00). Upon information and belief, the stipulated amount of debt is inflated as (i) the Debtor was not liable for some of the debts allegedly owed to the members of Oxford Knox that were reduced to a sum certain in the Repayment Agreement, (ii) the debts allegedly owed to the Members represented equity investments in entities related to the Debtor that were subsequently treated as debt in the Repayment Agreement; and/or (iii) the debts owed to the Members consolidated in the Repayment Agreement arose from illegal or otherwise voidable transactions such as file purchases.

19

121.    The Repayment Agreement's requirement that the Debtor pay Oxford Knox the sum of ten million dollars ($10,000,000.00) upon a sale of the business is additional evidence that the debts the Members claimed to be owed were truly equity investments and not debt.

**COUNT FOUR**

**Avoidance, Recovery, and Preservation of Two-Year Transfers Made With Intent to Defraud**

**[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

122.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

123.    The Transfers were property of the Debtor's Estate prior to their conveyance to the one or more of the Oxford Knox Defendants. The Transfers to the Oxford Knox Defendants made within Two-Years of the Petition Date ("Two-Year Transfers") that are known to the Trustee are identified on **Exhibit 2** hereto and incorporated by reference herein.

124.    When the Two-Year Transfers were made, the Debtor was or became indebted include the Prepetition Creditors.

125.    The Two-Year Transfers occurred when the Debtor was insolvent or was rendered insolvent as a result of the Transfers.

126.    The Two-Year Transfers to the Oxford Knox Defendants were made with actual intent to hinder, delay or defraud the creditors of Debtor because the Debtor was operating a Ponzi scheme which permits the Court to infer that the Debtor's intent was fraudulent within the meaning of 11 U.S.C. section 548(a)(1).

127.    The Two-Year Transfers are avoidable as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, and 551 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against Debtor's Estate under 11 U.S.C. § 502, or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

128.    The Two-Year Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

20

**COUNT FIVE**

**Avoidance, Preservation, and Recovery of Constructively Fraudulent Two-Year Transfers**

**11 U.S.C. §§ 548(a)(1)(B), 550 & 551**

129.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

130.    The Two-Year Transfers were made within Two-Years before the Petition Date.

131.    Debtor did not receive reasonably value in exchange for the Two-Year Transfers because (i) the Debtor was not liable on the debts originally owed to some Defendants, (ii) the debts allegedly owed to one or more Defendants arose from equity investments in entities related to the Debtor that were subsequently treated as the Debtor's debt.

132.    The Two-Year Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

133.    When the Two-Year Transfers occurred, Debtor's business was undercapitalized, and Debtor was engaged in business for which its capital was unreasonably small.

134.    When the Two-Year Transfers occurred, Debtor had incurred or was about to incur debts that were beyond its ability to pay. The allegations in the preceding paragraphs are supported by the fact that the Debtor was consistently borrowing money from merchant cash advance lenders, purporting to sell the same groups of receivables to multiple parties, and as of August 2022 had begun a Ponzi scheme of borrowing through Spot On as discussed herein.

135.    At the time each Two-Year Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Two-Year Transfer and on the Petition Date.

136.    Plaintiff alleges that Defendants did not receive the Two-Year Transfers in good faith, for value, and without knowledge of their avoidability.

137.    Each Defendant knew that the Debtor was a law firm who was required by law to escrow client payments until earned. However, each Defendant demanded and received payment from client payments that had not been earned because they were paid by the Debtor, Vulcan, and/or Coast or were paid directly from a payment processor for the Debtor such that the funds were never

21

conveyed to the Debtor and placed in escrow.

138.    Each Defendant had to know or should have known that they were being paid with client funds that had not been placed into trust and been disbursed before they were earned.

139.    Each Defendant knew or should have known that were receiving payment on a debt that was not valid or enforceable at law to the extent it arose from an alleged "purchase" of receivables related to the Debtor's client files.

140.    Based on the foregoing, Plaintiff may recover and preserve the avoided Two-Year Transfers from Defendant as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate under 11 U.S.C. §§ 550 and 551 from Defendant.

## COUNT SIX

**Avoidance, Preservation, and Recovery of Transfers Made In the Past Four Years**

**11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07**

141.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

142.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(1) and 3439.05.

143.    The Transfers occurred within four years prior to the Petition Date and are identified on **Exhibit 2**.

144.    On or after the date that such Transfer were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

145.    Despite Debtor's obligation to the Prepetition Creditors, Debtor made the Transfers to Defendants.

146.    The Transfers to Defendants were made with actual intent to hinder, delay or defraud the creditors of Debtor as the Debtor was operating a Ponzi scheme.

147.    Defendants' conduct relating to the Transfers was done with oppression, fraud and malice, as defined in California Civil Code section 3294, entitling Plaintiff to exemplary and punitive damages.

#63391135v2

EXHIBIT 7, PAGE 241

148.    The Transfers are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against its Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

149.    Accordingly, the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and Cal. Civ. Code § 3439.07.

150.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(2) and 3439.05.

151.    Debtor did not receive reasonably equivalent value in exchange for the Transfers. The Transfers were made to (i) entities that were not creditors of the Debtor, (ii) entities that had made equity or other investments with the Debtor or in assets, and (iii) entities who claimed to be owed far more than any value that was ever given to the Debtor.

152.    At the time each Transfer was made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

153.    At the time each Transfer was made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

154.    At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

155.    The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

156.    Plaintiff alleges that Defendants did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

23

157.    Each Defendant knew that the Debtor was a law firm who was required by law to escrow client payments until earned. However, each Defendant demanded and received payment from client payments that had not been earned because they were paid by the Debtor, Vulcan, and/or Coast or were paid directly from a payment processor for the Debtor such that the funds were never placed in trust.

158.    Each Defendant had to know or should have known that they were being paid with client funds that had not been placed into trust and been disbursed before they were earned.

159.    Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

160.    Based on the foregoing, Plaintiff may recover and preserve the Transfers from the Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

## COUNT SEVEN

**Avoidance, Recovery, and Preservation of Transfers Made in the Past Four Years**

**[11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.05, and 3439.07]**

161.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

162.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(2) and 3439.05.

163.    The Transfers were made within four years of the Petition Date are identified on **Exhibit 2** and incorporated as if set forth herein.

164.    Debtor did not receive reasonably equivalent value in exchange for the Transfers as (i) the Debtor was not liable on the debts originally owed to some Defendants, (ii) the debts allegedly owed to one or more Defendants arose from equity investments in entities related to the Debtor that were subsequently treated as the Debtor's debt.

165.    The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

24

166. At the time each Transfer was made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

167. At the time each Transfer was made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

168. At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

169. Plaintiff alleges that Defendants did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

170. Each Defendant knew that the Debtor was a law firm who was required by law to escrow client payments until earned.

171. Each Defendant had to know or should have known that they were being paid with client funds that had not been placed into trust and been disbursed before they were earned.

172. Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

173. Based on the foregoing, Plaintiff may recover and preserve the Transfers from the Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

## COUNT EIGHT

**Avoidance, Recovery, and Preservation of Fraudulent Transfers Made to or for the Benefit of Defendants Gilani and Dovalina Arising from use of American Express Card**

**[11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), and 550]**

174. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

175. On or about November 28, 2021 the Debtor applied for a business platinum card from American Express ("AmEx").

176. AmEx granted the Debtor's application and opened a credit line ending in 8-51001

25

("Account") in the name of "LPG PC." AmEx issued cards to three individuals on this Account: Dovalina, Gilani, and Diab.

177. From the opening of the Account in early 2022 to May and June 2022, Gilani regularly charged hundreds of thousands of dollars to the Account each month.

178. While some charges to the Account may have been related to the Debtor and its operations, most of the charges do not appear to have benefitted the Debtor or were not incurred for the Debtor.

179. Upon information and belief, Gilani regularly charged hundreds of thousands of dollars on the Account each month to pay vendors that do not appear to have done any work for the Debtors.

180. Other expenses charged to the Account by Dovalina and/or Gilani appear personal in nature such as charges at clothing stores, tours/tickets, and dining.

181. The charges made by each cardholder were itemized separately on the statements from American Express. The monthly charges on the Account for Dovalina and Gilani are stated below.

| Statement Closing Date | Gilani | Dovalina |
|---|---|---|
| 01.19.2022 | $14,812.41 | $1,593.83 |
| 02.16.2022 | $215,948.66 | $2,146.22 |
| 03.18.2022 | $207,846.79 | $1,413.61 |
| 04.18.2022 | $7,349.69 | $3,088.72 |
| 05.19.2022 | $29.98 | $94.55 |
| | $445,987.53 | $8,336.93 |

182. The Debtor made payments on the Account to American Express. The payments from the Debtor to American Express to pay for all charges on the Account are identified on **Exhibit 5**.

183. A significant portion of the payments to Am Ex were made to or for the benefit of Gilani and/or Dovalina and provided no benefit to the Debtor. The portion of the total payments made to AmEx that were made to pay for charges made to or for the benefit of Gilani and/or Dovalina are referred to herein as the "AmEx Transfers."

184. The AmEx Transfers were made to or for the benefit of Gilani and/or Dovalina to the extent they paid American Express for charges made to the Account that were only or primarily for the benefit of Gilani and/or Dovalina.

26

185.    The funds used to make the AmEx Transfers were property of the Debtor's Estate prior to their conveyance to American Express.

186.    The AmEx Transfers occurred within the Two-Years prior to the Petition Date.

187.    On or after the date that the AmEx Transfers were made the Debtor was or became indebted include the Prepetition Creditors.

188.    The AmEx Transfers occurred when the Debtor was insolvent or was rendered insolvent as a result of the AmEx Transfers.

189.    The AmEx Transfers were made with actual intent to hinder, delay or defraud the creditors of Debtor because the Debtor was operating a Ponzi scheme which permits the Court to infer that the Debtor's intent was fraudulent within the meaning of 11 U.S.C. section 548(a)(1).

190.    Debtor did not receive reasonably value in exchange for the AmEx Transfers as Gilani and Dovlina were the parties that made charges on the Account for their personal benefit.

191.    When the AmEx Transfers occurred, Debtor's business was undercapitalized and Debtor was engaged in business for which its capital was unreasonably small.

192.    When the AmEx Transfers occurred, Debtor had incurred or was about to incur debts that were beyond its ability to pay. The allegations in the preceding paragraphs are supported by the fact that the Debtor was having to borrow money regularly from merchant cash advance lenders and to accept "investments" from third parties in exchange for promised future returns.

193.    At the time each AmEx Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

194.    Based on the foregoing, the AmEx Transfers were constructively fraudulent as to the Debtor's creditors to the extent they were made to or for the benefit of Gilani and/or Dovalina.

195.    Based on the foregoing, Plaintiff may avoid, preserve, and recover the avoided AmEx Transfers from Gilani and Dovalina pursuant to 11 U.S.C. §§ 548(a)(1)(A) and (B); 550 and 551.

<u>**COUNT NINE**</u>

**Objection to Proof of Claim No. 818 of Oxford Knox, LLC**

**[11 U.S.C. § 502(b) and (d)]**

196.    Plaintiff realleges and incorporates by reference each and every allegation contained

27

1  in the preceding paragraphs as though set forth in full herein.

2      197.    11 U.S.C. § 502(b) permits a Bankruptcy Court to determine the amount of a proof of

3  claim following the filing of an objection.

4      198.    The Trustee has asked the Court to avoid the Debtor's execution of the Repayment

5  Agreement as a fraudulent conveyance pursuant to 11 U.S.C. § 548. The Repayment Agreement is

6  the basis for Oxford Knox's Claim.

7      199.    If the Trustee's avoidance action is successful, the Repayment Agreement would not

8  be enforceable against the Estate.

9      200.    The Oxford Knox Claim is also objected to and is subject to disallowance pursuant to

10  11 U.S.C. § 502(d) because Oxford Knox and its members that created the Claim received transfers

11  that are avoidable under 11 U.S.C. §§ 544, 547, 548, and/or 549.

12      201.    The amount of the amount of the transfers identified herein has not been returned to

13  the Estate.

14      **On All Claims for Relief:**

15      1.    Avoiding the Debtor's obligations under the Agreement and avoiding recovering, and

16  preserving the Payments to the Defendant in such amounts as the Court may determine ("AmEx

17  Transfers");

18      2.    Awarding pre-judgment and post-judgment as permitted;

19      3.    Granting any other and such further relief as the Court deems just and proper.

20      4.    Awarding attorneys' fees as provided by contract or applicable law;

21      5.    Awarding costs of suit incurred here; and

22      6.    Granting any other and further relief as the Court deems just and proper.

23      **On the First and Second Claims for Relief:**

24      1.    Avoiding, recovering, and preserving the 90 Day Transfers and Post-Petition

25  Transfers to the Defendants in such amounts as the Court may determine pursuant to applicable law;

26      **On the Third Claim for Relief:**

27      2.    Avoiding and preserving the Debtor's execution of the Repayment Agreement as a

28  fraudulent conveyance pursuant to 11 U.S.C. §§ 548, 550, and 551 for the reasons stated herein;

28

1    **On the Fourth Through Eight Claims for Relief:**

2    3.    Avoiding, recovering, and preserving the Transfers to the Defendants in such amounts

3    as the Court may determine pursuant to applicable law;

4    **On the Ninth Claim for Relief:**

5    4.    Sustaining the Plaintiff's Objection to the Claim of Oxford Knox for the reasons stated

6    herein;

7    **On All Claims for Relief:**

8    5.    Awarding punitive and exemplary damages according to proof;

9    6.    Awarding pre-judgment interest at the maximum legal rate;

10    7.    Awarding post-judgment interest at the maximum legal rate from the date of the last

11    Transfer until the judgment is paid in full;

12    8.    Awarding costs of suit incurred herein; and

13    9.    Granting any other and further relief as the Court deems just and proper.

14    Dated:  August 13, 2025                    Respectfully submitted,

15                                              DINSMORE & SHOHL LLP

16

17                                              By:  /s/ Tyler Powell
                                                     Tyler Powell (pro hac vice)
                                                     Yosina M. Lissebeck
18                                              Attorneys for Richard A. Marshack, Trustee of the
                                                LPG Liquidation Trust

19

20

21

22

23

24

25

26

27

28

29

**EXHIBIT 7, PAGE 248**

# EXHIBIT 1

Exhibit 1
Page 30
**EXHIBIT 7, PAGE 249**

CHRISTOPHER B. GHIO (259094)
christopher.ghio@dinsmore.com
CHRISTOPHER CELENTINO (131688)
christopher.celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
yosina.lissebeck@dinsmore.com
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, California 92101
Tele: 619.400.0500
Fax:  619.400.0501

Sarah S. Mattingly (Ky. Bar 94257)
sarah.mattingly@dinsmore.com
DINSMORE & SHOHL, LLP
101 S. Fifth Street, Suite 2500
Louisville, Kentucky 40202
Tele: 859-425-1096
Fax: 502-585-2207
(Admitted pro hac vice)

Special Counsel to Richard A. Marshack

**FILED & ENTERED**

**JUN 03 2024**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall     DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

In Re

The Litigation Practice Group P.C.,

                 Debtor(s),

Case No: 23-bk-10571-SC

Chapter 11

**ORDER GRANTING MOTION FOR ENTRY OF PROTECTIVE ORDER AND THE PROTECTIVE ORDER**

Date:    May 23, 2024
Time:    1:30 p.m.
Judge:   Hon. Scott C. Clarkson
Place:   Courtroom 5C (via Zoom)[1]
        411 West Fourth Street
        Santa Ana, CA 92701

---

[1] Video and audio connection information for each hearing will be provided on Judge Clarkson's publicly posted hearing calendar, which may be viewed online at: http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

Exhibit 1
Page 31

**EXHIBIT 7, PAGE 250**

1    The Court has read and considered the Notice of Motion and Motion for Entry of Protective

2    Order (the "Motion") filed by Richard A. Marshack, in his capacity as the Chapter 11 Trustee (the

3    "Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C., on May 2, 2024,

4    pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c)(1),

5    as Dk. No. 1164 ("Motion"), and has found good cause to grant the Motion.

6        IT IS HEREBY ORDERED that:

7        1.        The Motion is granted;

8        2.        The below Protective Order shall apply to any contested matter arising

9        in the main bankruptcy case and in all adversary proceedings filed by or against Trustee,

10       present and future; and

11       3.        Govern the discovery conducted therein.

12

13                              **PROTECTIVE ORDER**

14       **1.        DEFINITIONS**

15       1.1    "Confidential Information" as used in this Protective Order shall mean documents and

16   other information (regardless of how generated, stored or maintained) that a Party or non-party

17   reasonably believes to contain or reflect non-public financial or business information, bank records,

18   financial records, such as social security numbers, non-public financial or personal information of a

19   Party or non-party, account numbers, sensitive digital information and identifiers, information subject

20   to confidentiality agreements or provisions other than this Protective Order, and other non-public

21   research, development, or commercial information that derives value or avoids injury by virtue of not

22   being known to the public.

23       1.2    This "Action" is defined and hereby means any contested matter arising in the main

24   bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future.

25       1.3    "Designating Party" means a Party or non-party that designates Confidential

26   Information during the Action.

27       1.4    "Receiving Party" means a Party that receives Confidential Information during the

28   Action.

1.5    "Party" or "Parties" means person or entity subject to this Protective Order.

**2.    SCOPE OF THIS PROTECTIVE ORDER**

2.1    Unless otherwise ordered, this Protective Order shall govern certain documents and other products of discovery obtained in the Action from the Parties there to, and from third parties. As well as certain information copied or derived therefrom, excerpts, summaries or compilations thereof, including, but not limited to, documents voluntarily exchanged as part of early settlement discussions, documents produced pursuant to initial disclosures, requests authorized by the Federal Rules of Civil Procedure made applicable herein by the Federal Rules of Bankruptcy Procedure, answers to interrogatories, deposition transcripts, responses to requests for production, responses to requests for admission, subpoenas, affidavits, declarations, expert reports, and other such material and information as may be produced during the course of the Action and designated as Confidential Information.

**3.    DESIGNATION OF CONFIDENTIAL INFORMATION**

3.1    This Protective Order shall govern the production and handling of any Confidential Information in this Action. Any Party or non-party who produces Confidential Information in this Action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Protective Order. Whenever possible, the Designating Party must designate only those portions of a document, written discovery responses, deposition, transcript, or other material that contain the Confidential Information and refrain from designating entire documents. Regardless of any designations made hereunder, the Designating Party is not otherwise restricted from use or disclosure of its Confidential Information outside of this Action or for any business purposes. In addition, any Party may move to modify or seek other relief from any of the terms of this Protective Order if it has first tried in writing and in good faith to resolve its needs or disputes with the other Parties or Party as the case may be under the terms of this Protective Order. Further, nothing in this Protective Order shall prevent a Party from redacting documents consistent with the Federal Rules of Civil Procedure and utilizing the documents as needed through-out the Action.

3.2    <u>Application to Non-Parties:</u> Before a non-party is given copies of documents or materials designated as Confidential Information or Attorneys' Eyes Only as permitted hereunder, it

must first sign an acknowledgment to be bound to these terms that is attached hereto as <u>Exhibit</u> A; if it fails to do so, the Parties to this Action must resolve any such dispute before making disclosure of designated information as permitted hereunder to the non-party. If a non-party wishes to make designations hereunder, it must first sign attached <u>Exhibit A.</u>

3.3    <u>Timing and Provisional Protection:</u> Designations of Confidential Information may be made at any time. To avoid potential waiver of protection hereunder, the Designating Party should designate documents or materials containing Confidential Information at the time of production or disclosure, including on the record during the taking of any deposition. Deposition testimony will be deemed provisionally protected for a period of thirty (30) days after the transcript is released to the Parties by the court reporter, although the Parties may agree at any time to different timelines of provisional protection of information as Confidential or Attorneys' Eyes Only as part of one or more specific depositions. To retain any designations beyond the provisional period, a Designating Party must designate specific pages and lines of deposition testimony before the provisional period has expired. Such designations must be made in writing so that all counsel and court reporters may append the designation to all copies of the transcripts.

3.4    <u>Manner of Designation:</u> Confidential Information may be designated hereunder in any reasonable manner or method that notifies the Receiving Party of the designation level and identifies with specificity the information to which the designation applies. If made verbally, the Designating Party must promptly confirm the designation in writing. Whenever possible, the Designating Party should stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image that contains Confidential Information.

**4.    CHALLENGES TO DESIGNATED INFORMATION**

4.1    In the event that a Receiving Party disagrees at any time with any designation(s) made by the Designating Party, the Receiving Party must first try to resolve such challenge in good faith on an informal basis with the Designating Party. The Receiving Party must provide written notice of the challenge and the grounds therefor to the Designating Party, who must respond in writing to the challenge within fifteen (15) days. At all times, the Designating Party carries the burden of establishing the propriety of the designation and protection level. Unless and until the challenge is

4

Exhibit 1
Page 34
**EXHIBIT 7, PAGE 253**

resolved by the Parties or ruled upon by the Court, the designated information shall remain protected under this Protective Order. The failure of any Receiving Party to challenge a designation does not constitute a concession that the designation is proper or an admission that the designated information is otherwise competent, relevant, or material.

### 5.    LIMITED ACCESS/USE OF PROTECTED INFORMATION

5.1    <u>Restricted Use:</u> Information that is produced or exchanged in the course of the Action and designated under this Protective Order may be used for preparation for trial and preparation for any appeal of any and all matters in the Action, as well as related settlement negotiations, and for no other purpose, without the written consent of the Designating Party. No Confidential Information may be disclosed to any person except in accordance with the terms of this Protective Order, unless the parties are co-counsel or have entered into joint defense agreements. All persons in possession of Confidential Information agree to exercise reasonable care with regard to the custody, use, or storage of such information to ensure that its confidentiality is maintained. This obligation includes, but is not limited to, the Receiving Party providing to the Designating Party prompt notice of the receipt of any subpoena that seeks production or disclosure of any designated information and consulting with the Designating Party before responding to the subpoena. Any use or disclosure of Confidential or Attorneys' Eyes Only information in violation of the terms of this Protective Order may subject the disclosing person or party to sanctions.

5.2    <u>Access to "Confidential" Information:</u> The Party(ies) and all persons subject to this Protective Order agree that information designated as "CONFIDENTIAL" may only be accessed or reviewed by the following:

a)    The Court, its personnel, and court reporters;

b)    Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record, or co-counsel in the Action and are informed of the duties and obligations imposed hereunder;

c)    The Parties, including their clients, agents and employees who are assisting or have reason to know of the Action;

/ / /

5

Exhibit 1
Page 35
EXHIBIT 7, PAGE 254

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel, for purposes of an Action, so long as each such expert or consultant has signed attached <u>Exhibit A;</u> and

e)      Other witnesses or persons with the Designating Party's consent or by court order.

5.3      <u>Access to "Attorneys' Eyes Only" Designations:</u> The Parties and all persons subject to this Protective Order agree that information designated as "ATTORNEYS' EYES ONLY" may only be accessed or reviewed by the following:

a)      The Court, its personnel, and court reporters;

b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record in the Action and are informed of the duties hereunder;

c)      In-house counsel for any Party in the Action and Richard A. Marshack, as Chapter 11 Trustee of The Litigation Practice Group P.C. who is informed of the duties and obligations imposed hereunder;

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel for purposes of the Action,  and so long as each such expert or consultant has signed attached <u>Exhibit A;</u> and

e)      Other witnesses or persons to whom the Designating Party agrees in advance of disclosure or by court order.

5.4      <u>Non-Waiver Effect of Designations:</u> Neither the taking of, nor the failure to take, any action to enforce the provisions of this Protective Order, nor the failure to object to any designation, will constitute a waiver of any Party(ies)'s claim or defense in the Action or any other action or proceeding, including, but not limited to, a claim or defense that any designated information is or is not Confidential, is or is not entitled to particular protection, or embodies or does not embody information protectable by law.

5.5      <u>In-Court Use of Designated Information:</u> If information designated under this Protective Order will or may be offered in evidence at a hearing or trial related to any matter in the Action, then the offering party must give advance notice to the party or non-party that designated prior to offering the information so that any use or disclosure may be addressed in accordance with

the Court's case-management or other pre-trial order, or by a motion *in limine.* Nothing in this Protective Order shall be construed as a waiver by a Party of any objections that may be raised as to the admissibility at trial of any evidentiary materials.

### 6.    CLAW-BACK REQUESTS

6.1    <u>Failure to Make Designation:</u> If, at any time, a Party or non-party discovers that it produced or disclosed Confidential Information without designation, it may promptly notify the Receiving Party and identify with particularity the Confidential Information to be designated and the level of designation (the claw-back notification). The Receiving Party may then request substitute production of the newly-designated information. Within thirty (30) days of receiving the claw-back notification, the Receiving Party must: (1) certify to the Designating Party it has appropriately marked or, if substitute production has been requested, destroyed all unmarked copies that it received, made, and/or distributed; and (2) if it was practicably unable to mark or destroy any information because disclosures occurred while the Receiving Party was under no duty of confidentiality under the terms of this Protective Order regarding that information, the Receiving Party must reasonably provide as much information as practicable to aid the Designating Party in protecting the information, consistently with the Receiving Party's attorney-client, work-product, and/or trial-preparation privileges.

6.2    <u>Inadvertent Production of Privileged Information:</u> If, at any time, a Party discovers that it produced information that it reasonably believes is subject to protection under the attorney/client, work-product, or trial-preparation privileges, then it must promptly notify each Receiving Party of the claim for protection, the basis for it, amend its privilege log accordingly, and comply with Fed. R. Civ. P. 26(b)(5). Whenever possible, the producing party must produce substitute information that redacts the information subject to the claimed protection. The Receiving Party must thereupon comply with Fed. R. Civ. P. 26(b)(5)(B) as to the information subject to the claimed protection.

/ / /

/ / /

/ / /

**7.    DURATION/CONTINUED RESTRICTIONS**

7.1    <u>Handling of Designated Information Upon Conclusion of the Main Bankruptcy Case:</u> Upon conclusion of the Main Bankruptcy Case, by way of dismissal or closing of the case, the Designating Party(ies) is/are responsible for ensuring that any Party or person to whom the Designating Party shared or disclosed designated information in any of the matters under the Action returns or destroys all of its copies, regardless of the medium in which it was stored. No witness or Party may retain designated information that it received from any other Party or non-party under this Protective Order; only counsel of record, or co-counsel, are the authorized agents who may retain one copy for their respective legal files, and who must also describe to the Designating Party the extra steps taken to protect its legal file containing paper and/or electronic copies of the designated information so that it is not accessed, used, or disclosed inconsistently with the obligations under this Protective Order. This provision does not apply to the Court or Court staff. Moreover, this provision does not apply to Trustee, who may retain and use – consistent with this Order – Confidential Information received in any Action during the entirety of the Bankruptcy.

7.2    <u>Continued Restrictions Under this Protective Order:</u> The restrictions on disclosure and use of Confidential Information shall survive the conclusion of the Bankruptcy case and any matter in the Action.

**8.    PRIVILEGED OR PROTECTED INFORMATION**

8.1    Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, the work-product protection, or any other legally cognizable privilege (a "Privilege or Protection").  If information subject to a claim of Privilege or Protection is inadvertently produced, pursuant to Federal Rule of Evidence 502(d) such production shall not constitute a waiver of, or estoppel as to, any claim of Privilege or Protection for such information or any other information that may be protected from disclosure by a Privilege or Protection in any proceeding.

8.2    If a Party receives a document that appears to be subject to a Privilege or Protection, then it shall refrain from examining the document any more than is essential to ascertain if it is privileged or protected and shall promptly notify the producing Party in writing that the receiving

Exhibit 1
Page 38

1    Party possesses material that appears to be subject to a Privilege or Protection. The producing Party

2    shall have seven (7) days after receiving such notice to assert a Privilege or Protection over the

3    identified material. If the producing Party does not assert a claim of Privilege or Protection within the

4    seven (7)-day period, the material in question shall be deemed not privileged or protected.

5    8.3    If a producing Party has produced a document subject to a claim of Privilege or

6    Protection, upon written request by the producing Party, the document for which a claim of Privilege

7    or Protection is made shall be sequestered or destroyed to the extent reasonably practicable, and the

8    receiving Party shall not use the document for any purpose other than in connection with analyzing

9    or disputing a claim of Privilege or Protection or in connection with a motion to compel the production

10    of the document.

11    8.4    The receiving Party sequestering or destroying such material may then move the Court

12    for an order compelling production of the material. The applicable producing Party bears the burden

13    of establishing the applicable Privilege or Protection of any clawed-back document or information as

14    and to the same extent that it would have borne such burden had it not produced the document or

15    information.  Nothing in this Protective Order shall limit the Court's right or any receiving Party's

16    right to request an in camera review of any information subject to a claim of Privilege or Protection.

17

18                                            ###

19

20

21

22

23

24    Date: June 3, 2024                    Scott C. Clarkson
                                            United States Bankruptcy Judge

25

26

27

28

                                            9

Exhibit 1
Page 39

EXHIBIT 7, PAGE 258

1

2

3

4

5

6

7                            EXHIBIT "A"

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Exhibit 1
Page 40
EXHIBIT 7, PAGE 259

1   Christopher B. Ghio (State Bar No. 259094)
    Christopher Celentino (State Bar No. 131688)
2   Yosina M. Lissebeck (State Bar No. 201654)
    **DINSMORE & SHOHL LLP**
3   655 West Broadway, Suite 800
    San Diego, CA 92101
4   Telephone:  619.400.0500
    Facsimile:  619.400.0501
5   christopher.ghio@dinsmore.com
    christopher.celentino@dinsmore.com
6   yosina.lissebeck@dinsmore.com

7   Sarah S. Mattingly (Ky. Bar 94257)
    DINSMORE & SHOHL, LLP
8   101 S. Fifth Street, Suite 2500
    Louisville, KY 40202
9   Telephone: 859-425-1096
    Facsimile: 502-585-2207
10  Sarah.mattingly@dinsmore.com
    (Admitted pro hac vice)
11
    Special Counsel to Richard A. Marshack,
12  Chapter 11 Trustee

13

14
                    **UNITED STATES BANKRUPTCY COURT**
15
                    **CENTRAL DISTRICT OF CALIFORNIA**
16

17
    In Re                                | Case No. 8:23-BK-10571-SC
18
                                         | Chapter 11
19
    The Litigation Practice Group P.C.,  | **EXHIBIT A TO STIPULATED**
20                                        | **ORDER**
                    Debtor(s),            |
21                                        | Date:  May 23, 2024
                                         | Time:  1:30 p.m.
22                                        | Judge:  Hon. Scott C. Clarkson
                                         | Place:  Courtroom 5C[1] - Via Zoom
23                                        |         411 W. Fourth Street
24                                        |         Santa Ana, CA  92701
25

26

27  _____

28  [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
    publicly posted hearing calendar, which may be viewed online at:
    http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

                              1                            Exhibit 1
                                                           Page 41
                                    **EXHIBIT 7, PAGE 260**

This is to certify that:

(a)    I am being given access to Confidential Information pursuant to the Stipulated Protective Order that was entered into the main bankruptcy case for Litigation Practice Group, but which is binding and controlling as set forth by the Court's Order on any and all contested matters and  any and all litigation commenced by Trustee;

(b)    I have read the Stipulated Protective Order; and

(c)    I agree to be bound by the terms and conditions thereof, including, without limitation, to the obligations regarding the use, non-disclosure and return of such Confidential Information. I further agree that in addition to being contractually bound by the Stipulated Protective Order, I am subject to the jurisdiction of the above reference Court for any violation thereof.

Date: _____

_____
Signature

_____
Printed Name

Exhibit 1
Page 42

**EXHIBIT 7, PAGE 261**

# EXHIBIT 2

Exhibit 2
Page 43
EXHIBIT 7, PAGE 262

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| **Oxford Knox, LLC** | UnionBank | The Litigation Practice Group PC | X4858 | 12/28/2021 | | $30,179.55 | N |
| **Oxford Knox, LLC** | Chase | The Litigation Practice Group PC | X3158 | 7/29/2022 | | $10,000.00 | N |
| | | | | | Total | **$40,179.55** | |
| **Buffalo 21 Partners Inc.** | UnionBank | The Litigation Practice Group PC; IOLTA | X4874 | 1/13/2022 | 122 | $54,753.19 | N |
| | | | | | Total | **$54,753.19** | |
| **Jason Dovalina** | Chase | Vulcan Consulting Group LLC | X3588 | 4/1/2021 | 1032 | $11,250.00 | N |
| **Jason Dovalina** | Bank of the West | The Litigation Practice Group PC | X3441 | 5/4/2021 | | $55,000.00 | N |
| **Jason Dovalina** | Chase | Vulcan Consulting Group LLC | X3588 | 5/13/2021 | | $20,000.00 | N |
| **Jason Dovalina** | Chase | Vulcan Consulting Group LLC | X5909 | 8/18/2021 | | $25,000.00 | N |
| **Jason Dovalina** | American Express | LPG PC; Syed Gilani | X1001 | 12/19/2021 | | $300.00 | N |
| **Jason Dovalina** | American Express | LPG PC; Syed Gilani | X1001 | 12/19/2021 | | $350.00 | N |
| | | | | | Total | **$111,900.00** | |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 3/15/2021 | | $45,000.00 | N |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 4/1/2021 | | $45,000.00 | N |
| **Sye Gilani** | Bank of the West | The Litigation Practice Group PC | X3441 | 4/19/2021 | 1021 | $60,000.00 | N |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 5/5/2021 | 4490 | $30,000.00 | N |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 5/12/2021 | 4492 | $50,000.00 | N |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 5/13/2021 | | $90,000.00 | N |
| **Sye Gilani** | Bank of the West | The Litigation Practice Group PC | X3441 | 6/2/2021 | 1124 | $16,000.00 | N |
| **Sye Gilani** | Chase | Vulcan Consulting Group LLC | X3588 | 6/2/2021 | 1012 | $108,000.00 | N |
| **Sye Gilani** | UnionBank | The Litigation Practice Group PC | X4858 | 2/11/2022 | | $5.02 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 2/18/2022 | | $7.16 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 2/25/2022 | | $13.82 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 3/4/2022 | | $7.52 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3158 | 3/4/2022 | 10989 | $8,000.00 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 3/18/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 3/24/2022 | | $12.18 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 4/18/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 4/21/2022 | | $5.02 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 4/28/2022 | | $14.06 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 5/19/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 6/16/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 6/30/2022 | | $14.06 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 7/8/2022 | | $7.52 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 7/14/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 7/29/2022 | | $7.16 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 8/19/2022 | | $3.79 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 8/26/2022 | | $7.16 | N |
| **Sye Gilani** | Chase | The Litigation Practice Group PC | X3133 | 9/2/2022 | | $7.50 | N |
| | | | | | Total | **$452,130.92** | |
| **Samson Ly** | Chase | The Litigation Practice Group PC | X3158 | 11/28/2022 | 1272 | $20,000.00 | N |
| **Samson Ly** | Chase | The Litigation Practice Group PC | X3158 | 12/21/2022 | 1277 | $20,000.00 | Y |
| **Samson Ly** | Chase | The Litigation Practice Group PC | X3158 | 12/21/2022 | 1278 | $20,000.00 | Y |
| | | | | | Total | **$60,000.00** | |
| **Bew Solar Management LLC** | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/5/2021 | | $6,286.87 | N |
| **Bew Solar Management LLC** | Chase | The Litigation Practice Group PC | X3158 | 1/19/2022 | | $7,463.63 | N |
| **Bew Solar Management LLC** | Chase | The Litigation Practice Group PC | X3158 | 2/28/2022 | 11031 | $2,964.29 | N |
| | | | | | Total | **$16,714.79** | |

Exhibit 2
Page 44

Exhibit 2
Page 45
EXHIBIT 7, PAGE 264

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|-------|-----------|-------------|----------------|------------------|--------------|---------|-----------------|
| Lexicon Consulting LLC | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 12/2/2021 | 320 | $5,074.94 | N |
| Lexicon Consulting LLC | UnionBank | The Litigation Practice Group PC | X4858 | 1/10/2022 | | $180,000.00 | N |
| Lexicon Consulting LLC | UnionBank | The Litigation Practice Group PC | X4858 | 2/4/2022 | | $215.90 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 2/18/2022 | | $581.18 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 2/25/2022 | | $397.08 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 3/4/2022 | | $832.46 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 3/10/2022 | | $2,078.67 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 3/18/2022 | | $941.92 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 3/24/2022 | | $907.91 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 4/1/2022 | | $1,582.53 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 4/7/2022 | | $2,415.60 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 4/18/2022 | | $2,412.47 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 4/21/2022 | | $962.49 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 4/28/2022 | | $411.84 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 5/5/2022 | | $321.33 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 5/13/2022 | | $589.32 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 5/19/2022 | | $801.91 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 5/27/2022 | | $142.18 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 6/3/2022 | | $472.08 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 6/10/2022 | | $423.92 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 6/16/2022 | | $799.39 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 6/30/2022 | | $475.49 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 7/8/2022 | | $246.71 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 7/14/2022 | | $430.75 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 7/21/2022 | | $218.09 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 8/5/2022 | | $341.27 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 8/11/2022 | | $103.62 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 8/19/2022 | | $495.15 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 9/2/2022 | | $50.00 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 9/9/2022 | | $280.83 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 9/16/2022 | | $590.95 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 9/23/2022 | | $218.09 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 10/6/2022 | | $193.57 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 10/14/2022 | | $428.53 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 10/21/2022 | | $347.61 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 11/10/2022 | | $244.89 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 11/18/2022 | | $184.45 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 11/25/2022 | | $91.28 | N |

Exhibit 2
Page 46

**EXHIBIT 7, PAGE 265**

| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 12/9/2022 | | $155.12 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 12/19/2022 | | $283.96 | Y |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 12/27/2022 | | $81.33 | Y |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 12/30/2022 | | $9.95 | Y |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 1/6/2023 | | $155.12 | N |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 1/24/2023 | | $283.96 | Y |
| Lexicon Consulting LLC | Chase | The Litigation Practice Group PC | X3133 | 2/7/2023 | | $81.33 | Y |
| Lexicon Consulting LLC | Bank of America | Litigation Practice Group PC | X6538 | 2/9/2023 | | $136.28 | Y |
| | | | | | Total | $208,493.45 | |

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| United Partnerships LLC | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/5/2021 | | $15,149.08 | N |
| United Partnerships LLC | UnionBank | The Litigation Practice Group PC; IOLTA | X94874 | 1/14/2022 | 129 | $17,912.71 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 3/8/2022 | | $7,142.86 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 3/23/2022 | | $20,000.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 4/8/2022 | | $10,000.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 7/22/2022 | | $60,000.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/12/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/16/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/19/2022 | | $41,158.45 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/23/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/24/2022 | | $31,000.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 8/25/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 8/31/2022 | | $9,200.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/6/2022 | | $32,971.70 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/8/2022 | | $27,656.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/8/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/9/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/9/2022 | | $14,180.00 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 9/9/2022 | | $9,200.00 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 9/13/2022 | | $9,600.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $26,775.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $14,160.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/21/2022 | | $4,263.89 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 9/22/2022 | | $20,000.00 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 9/22/2022 | | $5,488.39 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 9/26/2022 | | $5,363.11 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/5/2022 | | $26,775.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/5/2022 | | $14,661.89 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/7/2022 | | $5,363.11 | N |

Exhibit 2
Page 47

EXHIBIT 7, PAGE 266

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 10/13/2022 | | $46,859.95 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/14/2022 | | $25,875.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/14/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/14/2022 | | $20,000.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/20/2022 | | $46,859.95 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 10/20/2022 | | $20,025.00 | N |
| United Partnerships LLC | Chase | LPG; Alex Tarkoff | X0935 | 10/20/2022 | | $9,650.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 11/3/2022 | | $20,000.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 11/3/2022 | | $35,500.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 11/9/2022 | | $33,870.15 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 11/10/2022 | | $25,500.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 11/14/2022 | | $26,700.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 11/14/2022 | | $21,600.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 12/9/2022 | | $9,800.00 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 12/14/2022 | | $33,870.15 | N |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 12/14/2022 | | $17,375.00 | N |
| **Payee** | **Bank Name** | **Account Name** | **Account Number** | **Transaction Date** | **Check Number** | **Payment** | **90 Day Transfer** |
| United Partnerships LLC | Chase | The Litigation Practice Group PC | X3158 | 12/14/2022 | | $13,275.00 | N |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 12/20/2022 | | $35,500.00 | Y |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 12/20/2022 | | $22,075.00 | Y |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 12/23/2022 | | $11,760.00 | Y |
| United Partnerships LLC | Bank of America | Prime Logix LLC | X9201 | 1/9/2023 | | $12,510.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/10/2023 | | $17,375.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/10/2023 | | $3,406.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/12/2023 | | $31,500.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/12/2023 | | $20,000.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/12/2023 | | $20,000.00 | Y |
| United Partnerships LLC | Bank of America | Litigation Practice Group PC | X6457 | 1/12/2023 | | $17,375.00 | Y |

Exhibit 2
Page 48

EXHIBIT 7, PAGE 267

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| **United Partnerships LLC** | Bank of America | Litigation Practice Group PC | X6457 | 2/10/2023 | | $100,000.00 | Y |
| **United Partnerships LLC** | Bank of America | Litigation Practice Group PC | X6486 | 2/15/2023 | | $50,000.00 | Y |
| **United Partnerships LLC** | UnionBank | The Litigation Practice Group PC | X4858 | 2/27/2023 | | $40,000.00 | Y |
| **United Partnerships LLC** | UnionBank | The Litigation Practice Group PC | X4858 | 2/28/2023 | | $11,000.00 | Y |
| **United Partnerships LLC** | Chase | BAT Inc. | X0830 | 3/16/2023 | | $21,000.00 | Y |
| **United Partnerships LLC** | UnionBank | The Litigation Practice Group PC | X4858 | 3/17/2023 | | $19,000.00 | Y |
| | | | | | **Total** | **$1,467,532.89** | |

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| **Ventura Consulting, LLC** | UnionBank | The Litigation Practice Group PC | X4858 | 11/23/2021 | | $560,000.00 | N |
| **Ventura Consulting, LLC** | Chase | The Litigation Practice Group PC | X3158 | 3/8/2022 | | $16,678.57 | N |
| | | | | | | **$576,678.57** | |

Exhibit 2
Page 49

**EXHIBIT 7, PAGE 268**

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/1/2020 | | $3,000.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/10/2020 | | $3,000.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/15/2020 | | $3,750.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/30/2020 | | $3,750.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/14/2020 | | $3,750.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/30/2020 | | $3,750.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/12/2020 | | $3,750.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/23/2020 | | $10,000.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/30/2020 | | $3,750.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/1/2020 | | $750.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/7/2020 | | $3,200.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/14/2020 | | $3,750.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/14/2020 | | $750.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/14/2020 | | $4,500.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/30/2020 | | $4,500.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 1/5/2021 | | $1,000.00 | N |
| **Matthew Church** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 1/6/2021 | | $14,000.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/15/2021 | | $5,250.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/25/2021 | | $3,275.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/29/2021 | | $5,000.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/29/2021 | | $2,250.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 2/2/2021 | | $10,000.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 2/10/2021 | | $5,000.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/1/2021 | | $5,000.00 | |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/5/2021 | | $6,000.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/10/2021 | | $5,000.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/22/2021 | | $5,000.00 | N |
| **Matthew Church** | Bank of the West | The Litigation Practice Group PC | X3441 | 3/29/2021 | 99007 | $1,023.89 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/29/2021 | | $5,500.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 3/31/2021 | | $3,750.00 | |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/2/2021 | | $5,000.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/5/2021 | | $2,500.00 | N |
| **Matthew Church** | Chase | Vulcan Consulting Group LLC | X3588 | 4/15/2021 | | $1,000.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/21/2021 | | $33,000.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 5/14/2021 | | $5,000.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/4/2021 | | $5,000.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/17/2021 | | $12,000.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/17/2021 | | $5,000.00 | N |
| **Matthew Church** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 7/7/2021 | | $5,000.00 | N |
| | | | | | **Total** | **$206,498.89** | |

Exhibit 2
Page 50

**EXHIBIT 7, PAGE 269**

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 8/18/2020 | | $3,750.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/1/2020 | | $8,250.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/10/2020 | | $3,000.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/15/2020 | | $11,500.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/30/2020 | | $11,500.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/14/2020 | | $11,500.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/30/2020 | | $24,000.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/12/2020 | | $24,000.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/25/2020 | | $5,000.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/30/2020 | | $24,000.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/14/2020 | | $24,000.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/30/2020 | | $24,000.00 | N |
| Frank Brown | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 1/4/2021 | | $4,500.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/22/2021 | | $34,000.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/29/2021 | | $34,450.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 2/4/2021 | | $180,000.00 | N |
| Frank Brown | Bank of the West | The Litigation Practice Group PC | X3441 | 3/24/2021 | | $47,500.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/6/2021 | | $47,500.00 | N |
| Frank Brown | Bank of the West | The Litigation Practice Group PC | X3441 | 4/16/2021 | | $22,500.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/16/2021 | | $13,500.00 | N |
| Frank Brown | Bank of the West | The Litigation Practice Group PC | X3441 | 5/7/2021 | | $13,500.00 | N |
| Frank Brown | Chase | Vulcan Consulting Group LLC | X3588 | 5/11/2021 | | $22,500.00 | N |
| Frank Brown | Bank of the West | The Litigation Practice Group PC | X3441 | 5/14/2021 | | $36,000.00 | N |
| Frank Brown | Bank of the West | The Litigation Practice Group PC | X3441 | 5/25/2021 | 1039 | $625.00 | N |
| Frank Brown | Bank of the West | The Litigation Practice Group PC | X3441 | 5/26/2021 | | $2,108.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/4/2021 | | $36,000.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 7/2/2021 | | $2,100.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 8/4/2021 | | $50,000.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 8/24/2021 | | $22,500.00 | N |
| Frank Brown | Chase | Vulcan Consulting Group LLC | X3588 | 9/14/2021 | | $2,108.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/20/2022 | | $10,000.00 | N |
| Frank Brown | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 11/15/2022 | | $150,000.00 | N |
| | | | | | Total | $905,891.00 | |

Exhibit 2
Page 51

EXHIBIT 7, PAGE 270

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| **Spectrum Payment Solution** | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/5/2021 | | $64,383.60 | N |
| **Spectrum Payment Solution** | UnionBank | The Litigation Practice Group PC; IOLTA | X4874 | 1/13/2022 | 132 | $50,752.68 | N |
| **Spectrum Payment Solution** | Chase | The Litigation Practice Group PC | X3158 | 3/15/2022 | 1166 | $30,357.14 | N |
| | | | | | Total | **$145,493.42** | |
| | | | | | | | |
| **Home Energy Solutions Inc** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/15/2020 | | $15,000.00 | N |
| **Home Energy Solutions Inc** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 5/17/2021 | | $30,000.00 | N |
| | | | | | Total | **$45,000.00** | |
| | | | | | | | |
| **JNR Services, Inc.** | Chase | Vulcan Consulting Group LLC | X3588 | 4/22/2021 | | $37,000.00 | N |
| **JNR Services, Inc.** | Bank of the West | The Litigation Practice Group PC | X3441 | 5/17/2021 | 1.004E+09 | $31,500.00 | N |
| **JNR Services, Inc.** | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/5/2021 | | $74,991.76 | N |
| **JNR Services, Inc.** | UnionBank | The Litigation Practice Group PC | X4858 | 11/23/2021 | | $250,000.00 | N |
| **JNR Services, Inc.** | UnionBank | The Litigation Practice Group PC; IOLTA | X4874 | 1/7/2022 | 124 | $40,919.74 | N |
| **JNR Services, Inc.** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/25/2022 | | $21,886.00 | N |
| **JNR Services, Inc.** | Chase | The Litigation Practice Group PC | X3158 | 2/10/2022 | | $20,000.00 | N |
| **JNR Services, Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/9/2022 | 1158 | $16,678.57 | N |
| **JNR Services, Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/22/2022 | | $25,000.00 | N |
| **JNR Services, Inc.** | Chase | The Litigation Practice Group PC | X3158 | 7/8/2022 | | $35,000.00 | N |
| **JNR Services, Inc.** | Chase | LPG VC; Alex Tarkoff | X6652 | 10/25/2022 | | $42,500.00 | N |
| **JNR Services, Inc.** | Chase | LPG VC; Alex Tarkoff | X6652 | 10/25/2022 | | $32,500.00 | N |
| **JNR Services, Inc.** | Chase | The Litigation Practice Group PC | X3158 | 11/15/2022 | | $23,000.00 | N |
| | | | | | Total | **$650,976.07** | |
| | | | | | | | |
| **Cat Exteriors Inc** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 8/14/2020 | | $15,000.00 | N |
| **Cat Exteriors Inc** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/1/2020 | | $15,000.00 | N |
| **Cat Exteriors Inc** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/2/2020 | | $15,000.00 | N |
| | | | | | Total | **$45,000.00** | |
| | | | | | | | |
| **AZLS Enterprises Inc.** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 7/6/2021 | | $130,226.82 | N |
| **AZLS Enterprises Inc.** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 8/6/2021 | | $22,500.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 9/21/2021 | | $65,000.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 9/22/2021 | | $90,400.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 10/1/2021 | 10288 | $23,076.92 | N |
| **AZLS Enterprises Inc.** | Optimum Bank | Coast Processing LLC dba LPG | X6738 | 11/8/2021 | | $218,400.00 | N |
| **AZLS Enterprises Inc.** | UnionBank | The Litigation Practice Group PC | X4858 | 11/23/2021 | | $250,000.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 1/3/2022 | 1121 | $100,000.00 | N |
| **AZLS Enterprises Inc.** | UnionBank | The Litigation Practice Group PC; IOLTA | X4874 | 1/7/2022 | 121 | $67,185.30 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 2/10/2022 | 1136 | $100,000.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/4/2022 | 1152 | $23,076.92 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/9/2022 | 1153 | $25,000.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/15/2022 | 1161 | $25,000.00 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/22/2022 | 1172 | $23,076.92 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 3/22/2022 | 1173 | $21,339.50 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 4/8/2022 | 1203 | $21,339.50 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 4/15/2022 | 1208 | $23,076.92 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 5/10/2022 | 1230 | $21,339.50 | N |
| **AZLS Enterprises Inc.** | Chase | The Litigation Practice Group PC | X3158 | 6/6/2022 | 11407 | $23,000.00 | N |
| | | | | | Total | **$1,273,038.30** | |

Exhibit 2
Page 52

EXHIBIT 7, PAGE 271

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Check Number | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|---|
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/1/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/15/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 9/30/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/14/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 10/29/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/12/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 11/30/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/14/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 12/30/2020 | | $3,000.00 | N |
| **Investlinc Wealth Services** | Wells Fargo | Vulcan Consulting Group LLC | X3193 | 1/6/2021 | | $20,000.00 | N |
| **Investlinc Wealth Services** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 4/19/2021 | | $6,000.00 | N |
| **Investlinc Wealth Services** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 5/7/2021 | | $6,000.00 | N |
| **Investlinc Wealth Services** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 5/14/2021 | | $1,500.00 | N |
| **Investlinc Wealth Services** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/4/2021 | | $4,500.00 | N |
| **Investlinc Wealth Services** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 6/17/2021 | | $4,500.00 | N |
| **Investlinc Wealth Services** | Optimum Bank | COAST PROCESSING LLC DBA LITIGATION PRACTICE GROUP | X6712 | 8/26/2021 | | $34,500.00 | N |
| | | | | | Total | $104,000.00 | |
| | | | | | | | |

Exhibit 2
Page 53

**EXHIBIT 7, PAGE 272**

# EXHIBIT 3

Exhibit 3
Page 54
EXHIBIT 7, PAGE 273

| Bank Name | Account Name | Account Number | Transaction Date | Debit/Charge | Payee | Post-Petition Transfer |
|---|---|---|---|---|---|---|
| Bank of America | Prime Logix LLC | X9201 | 4/6/2023 | $25,000.00 | United Partnerships LLC | Y |
| Bank of America | Prime Logix LLC | X9201 | 4/12/2023 | $20,000.00 | United Partnerships LLC | Y |
| Bank of America | Prime Logix LLC | X9201 | 5/1/2023 | $25,000.00 | United Partnerships LLC | Y |
| Bank of America | Prime Logix LLC | X9201 | 5/12/2023 | $35,000.00 | United Partnerships LLC | Y |
| | | | | | | |
| | | | Total | $105,000.00 | | |

Exhibit 3
Page 55

**EXHIBIT 7, PAGE 274**

# EXHIBIT 4

Exhibit 4
Page 56
EXHIBIT 7, PAGE 275

## DEBT REPAYMENT AGREEMENT

This DEBT REPAYMENT AGREEMENT (this *"Agreement"*) is executed as of April 15, 2022 (the *"Effective Date"*), by and between THE LITIGATION PRACTICE GROUP PC, a California law corporation (the *"Company"*), and   OXFORD KNOX, LLC, a Delaware limited liability company (*"Creditor"*). The Company and the Creditor may be collectively referred to as the *"Parties,"* and individually as a *"Party."*

### RECITALS

WHEREAS, the Company is provides legal services to clients in connection with debt resolution of the clients' enrolled liabilities (the *"Business"*);

WHEREAS, the Creditor has in the past provided, directly or indirectly through its members, contractors, affiliates and/or predecessors-in-interest, funding for the Company's operations, including funding for the recruitment, training and support related to marketing affiliates;

WHEREAS, despite good faith efforts, the Parties have been unable to establish the precise amount of the funding previously provided by the Creditor to the Company, and by way of compromise have agreed that Company is indebted to the Creditor in the amount of $22,000,000 (the *"Indebtedness"*); and

WHEREAS,  the Company and the Creditor have further agreed that the Indebtedness shall be satisfied and paid in full by (i) monthly payments set forth on Schedule 1 through October 2027; plus (ii) a balloon payment in the amount of $10,000,000, payable solely in the event of a Sale of Business (as defined below) with respect to the Company.

NOW, THEREFORE, in consideration of the mutual promises, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Recitals. The statements contained in the recitals set forth above are true and correct and by this reference are made a part of this Agreement.

2.      Definitions. In addition to the terms defined elsewhere in this Agreement, for all purposes of this Agreement, the following terms shall have the meanings indicated in this Section 2:

*"Net Proceeds from Sale of Business"* means the proceeds from a Sale of Business, as applicable, as determined after reduction for the following: (a) payment of all expenses related thereto, including any applicable commissions and other fees paid in connection therewith; and (ii) in the case of a Sale of Business, payments in satisfaction of any and all present and future indebtedness for borrowed money (other than the Indebtedness), obligations or liabilities of the Company.

*"Sale of Business"* means a sale, transfer, assignment, or other disposition by the Company or the Company's shareholders of all or substantially all of the Business.

3.      Debt Repayment. As payment in full of the Indebtedness, the Company agrees to make the following payments to the Creditor:

        a.      Monthly Payments. The Company shall repay $12,000,000 of the Indebtedness in monthly installments in accordance with Schedule 1 through October 2027 or until a Sale of Business has occurred with respect to the Company, whichever comes first. Each such repayment installment shall be due and

Exhibit 4
Page 57

EXHIBIT 7, PAGE 276

payable on or before the 15th business day of each month (or such other time as may be mutually agreed upon by the Parties), with the first payment having been made on November 4, 2021. The Indebtedness repayment schedule may be revised from time to time by mutual agreement of the Parties by executing and amendment to Schedule 1.

      b.      Prepayments. The Company shall make monthly prepayments of the Indebtedness in the amount of Excess Cash Flow, as calculated by the Company in good faith consistent with past practice. Such prepayments shall be consistent with the Parties' agreement that the Company shall use commercially best efforts to repay the Indebtedness in its entirety by December 31, 2024.

      c.      Balloon Payment. At the time of a Sale of Business, the Company shall make a balloon payment to the Creditor, in full satisfaction of the Indebtedness, in the amount of (i) $10,000,000, *plus* (b) if applicable, the principal outstanding amount at such time of the monthly installment obligations payable pursuant to Section 3(a), above together with the balance of any unpaid interest and other amounts payable thereunder (the "***Balloon Payment***"). The Balloon Payment shall be paid to the Creditor through the escrow or similar agreement, or arrangement established for such sale, provided, however, that the amount payable to the Creditor in the case of a Sale of Business pursuant to this Section 3(c) shall not exceed the Net Proceeds from Sale of Business.

4.      Representations and Warranties.

      a.      The Company represents and warrants to the Creditor that (i) the Company is a California legal corporation duly organized, validly existing, and in good standing under the laws of the state of California, (ii) the Company has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, (iii) the execution and delivery of this Agreement and the performance of the terms hereof by the Company have been duly authorized by all necessary action on the part of the Company, (iv) the execution and delivery of this Agreement and the consummation of the transactions herein contemplated by the Company does not conflict in any material respect with, or constitute a material default under, the organizational documents of the Company, and does not violate any contract, instrument, or other agreement, whether written or oral to which the Company is a party or by which the Company is bound, (v) this Agreement constitutes the legal, valid, and binding obligation of the Company, enforceable against the Company in accordance with its terms, and (vi) the Company has all licenses, permits, consents and approvals required to be obtained by it from any regulatory agency exercising its authority over the Company in order for it to lawfully conduct its business, to perform its obligations hereunder and to receive the rights and benefits available to it hereunder except to the extent the failure to have any of the foregoing could not, singly or in the aggregate, reasonably be expected to have a material adverse effect on the Company.

      b.      the Creditor represents and warrants to the Company that (i) the Creditor is a Delaware limited liability company duly organized, validly existing, and in good standing under the laws of the state of Delaware, (ii) the Creditor has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, (iii) the execution and delivery of this Agreement and the performance of the terms hereof by the Creditor have been duly authorized by all necessary action on the part of the Creditor, (iv) the execution and delivery of this Agreement and the consummation of the transactions herein contemplated by the Creditor does not conflict in any material respect with, or constitute a material default under, the organizational documents of the Creditor, and does not violate any contract, instrument, or other agreement, whether written or oral to which the Creditor is a party or by which the Creditor is bound, (v) this Agreement constitutes the legal, valid, and binding obligation of the Creditor, enforceable against the Company in accordance with its terms, and (vi) the Creditor has all licenses, permits, consents and approvals required to be obtained by it from any regulatory agency exercising its authority over the Creditor in order for it to lawfully conduct its business, to perform its obligations hereunder and to receive the rights

and benefits available to it hereunder except to the extent the failure to have any of the foregoing could not, singly or in the aggregate, reasonably be expected to have a material adverse effect on the Creditor.

5.    Confidentiality. The Parties agree that any and all Confidential Information (as defined herein) shall be used solely for the purposes of the lawful performance of this Agreement and shall not be used or disclosed to any third party except as authorized herein or by the Parties in writing.

   a.    Definition. As used in this Agreement, "*Confidential Information*" shall include (i) all information regarding an existing or potential client of the Company, (ii) each Party's proprietary information, trade secrets or other business information that is either identified as or should otherwise be reasonably understood to be of a confidential nature, as may be disclosed to the other Party in connection with the performance of this Agreement, and (iii) this Agreement and the nature, terms and conditions of this Agreement.

   b.    Limited Use. Each Party agrees it shall not, without the prior written consent of the other Party or as permitted by the terms and conditions of this Agreement, do any of the following: (i) disclose any Confidential Information to any third party; (ii) permit any third-party access to such Confidential Information; or (iii) use Confidential Information for any purpose other than in connection with the performance of its obligations under this Agreement.

   c.    Exceptions. The confidentiality obligations imposed on the Parties by this section shall not apply to Confidential Information which, through no fault of a Party: (i) is required to be disclosed in order to comply with applicable laws and regulations, court orders or other process of law, (ii) is required to be made to any tax, banking or other regulatory authority, or legal or financial advisor of either Party, (iii) is made to such Party's current or prospective lenders or investors, (iv) was already known to that Party prior to disclosure of the same Confidential Information by the other Party or is independently discovered by the Party, or (v) subsequently becomes available to the public at large without a breach of this Agreement.

   d.    Return of Confidential Information. Upon termination of this Agreement, both Parties shall return the Confidential Information of the other Party to the Party to which the Confidential Information belongs.

   e.    Enforcement. In the event of any breach of the obligations under this section, the Parties acknowledge that the Party adversely affected by the breach would have no adequate remedy at law to protect its Confidential Information, since the harm caused by such a breach could not be easily measured and compensated for in damages, and that in addition to such remedies as may be available, a Party may obtain injunctive relief including, but not limited to, specific performance.

   f.    Confidentiality of Agreement. The Parties agree that this Agreement and its terms are strictly confidential and shall not be disclosed to any person, firm, corporation, or other entity, orally or in writing, except as may be necessary to comply with applicable laws and regulations, court orders or other process of law, confer with a financial advisor, tax preparer, or lawyer regarding the subject matter of this Agreement, or to enforce this Agreement.

   g.    Survival. The provisions of this section shall survive the expiration or any termination of this Agreement or any addendum hereto.

6.    Indemnification. The Parties agrees to be responsible for their own actions, and each Party agrees to indemnify, defend and hold harmless the other party and such other Party's directors, officers, employees and agents for, from and against all claims and losses of any type, including reasonable attorneys' fees, in connection with, in whole or in part: (a) any negligent act or omission by, or any willful misconduct on the

3

Exhibit 4
Page 59
**EXHIBIT 7, PAGE 278**

part of, the indemnifying Party; (b) the indemnifying Party's failure to comply with any applicable federal, state, or local law; or (c) any breach of this Agreement by the indemnifying Party.

7.    Construction. The Parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any Party because of the authorship of any provision of this Agreement. Any reference to any federal, state, provincial, territorial, local, or foreign law shall be deemed also to refer to such law as amended and all rules and regulations promulgated thereunder, unless the context requires otherwise. Any reference to any contract or agreement (including schedules, exhibits and other attachments thereto), including this Agreement, shall be deemed also to refer to such contract or agreement as amended, restated, or otherwise modified, unless the context requires otherwise. The words "include," "includes," and "including" shall be deemed to be followed by "without limitation." Pronouns in masculine, feminine, and neuter genders shall be construed to include any other gender, and words in the singular form shall be construed to include the plural and vice versa, unless the context requires otherwise. The words "this Agreement," "herein," "hereof," "hereby," "hereunder," and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited. Where this Agreement states that a Party "will" or "shall" perform in some manner or otherwise act or omit to act, it means that such Party is legally obligated to do so in accordance with this Agreement. The captions, titles, and headings included in this Agreement are for convenience only and do not affect this Agreement's construction or interpretation. Any reference to an Article, Section, or Schedule in this Agreement shall refer to an Article or Section of, or Schedule to, this Agreement, unless the context otherwise requires. This Agreement is for the sole benefit of the Parties and does not, and is not intended to, confer any rights or remedies in favor of any person (including any employee, director, shareholder or third party lender or service provider of a party) other than the Parties.

8.    No Assignment by the Company. Except as set forth herein, the Company shall not assign, transfer, or otherwise alienate any or all of its rights or interest under this Agreement without the express prior written consent of the Creditor, which consent may be granted or withheld in the Creditor's sole discretion.

9.    Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersede (a) all prior oral or written proposals or agreements, (b) all contemporaneous oral proposals or agreements, and (c) all previous negotiations and all other communications or understandings between the Parties, in each case with respect to the subject matter hereof.

10.    Notices. Any notice, instruction, direction or demand under the terms of this Agreement required to be in writing shall be duly given upon delivery, if delivered by hand, facsimile, email or other generally accepted means of electronic transmission, or mail (with postage prepaid), to the following addresses:

If to the Company, to:

> The Litigation Practice Group PC
> 17542 E 17th Street
> Suite 100
> Tustin, CA 92780
> Fax No.: 949-715-0648
> Email: admin@LPGLaw.com
> Attention: Daniel S. March

Exhibit 4
**EXHIBIT 7, PAGE 279**
Page 60

If to the Creditor, to:

        Oxford Knox, LLC
        c/o Rick R, Emmett
        300 S. Harbor Blvd., Suite 1000
        Anaheim, CA 92805
        Fax No.: (714) 563-1316
        Email: remmett@investlincadvisors.com
        Attention: Rick R. Emmett, Manager

or to such other addresses or telecopy numbers as may be specified by like notice to the other Party.

11.    Severability. If any term or other provision of this Agreement shall be determined by a court, governmental authority, or arbitrator to be invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability shall not render the entire Agreement invalid. Rather, this Agreement shall be construed as if not containing the particular invalid, illegal, or unenforceable provision, and all other provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to either Party. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the Parties shall negotiate in good faith to modify this Agreement so as to give effect to the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the fullest extent permitted under applicable law.

12.    Amendment. This Agreement may only be amended by a written agreement executed by both Parties.

13.    Binding Effect. This Agreement binds and benefits the Parties and their respective successors and permitted assigns. Other than those persons entitled to indemnity hereunder, there are no third-party beneficiaries having rights under or with respect to this Agreement.

14.    Waiver. A provision of this Agreement may be waived only by a writing signed by the Party intended to be bound by the waiver. A Party is not prevented from enforcing any right, remedy, or condition in the Party's favor because of any failure or delay in exercising any right or remedy or in requiring satisfaction of any condition, except to the extent that the Party specifically waives the same in writing. A written waiver given for one matter or occasion is effective only in that instance and only for the purpose stated. A waiver once given is not to be construed as a waiver for any other matter or occasion. Any enumeration of a Party's rights and remedies in this Agreement is not intended to be exclusive, and a Party's rights and remedies are intended to be cumulative to the extent permitted by law and include any rights and remedies authorized in law or in equity.

15.    Disputes.

        a.    Dispute Resolution. Except with respect to a Party's request for equitable or provisional relief or to otherwise protect its Confidential Information provided under this Agreement, no civil aetion, proceeding as set forth below with respect to any dispute, controversy or claim arising out of, or relating to, or in connection with, this Agreement, or the breach, termination, or validity hereof, including the validity of this dispute resolution provision (each of which dispute, controversy, or claim will be termed a "*Dispute*") between the Parties may be commenced, nor may a Party terminate any portion of this Agreement for a material breach of a material warranty, representation, covenant or obligation of this Agreement, until the Parties have first attempted to resolve the Dispute amicably in good faith.

Exhibit 4
Page 61
**EXHIBIT 7, PAGE 280**

b.    Arbitration of Disputes. If the Parties cannot resolve a Dispute pursuant to Section 15(a) above, any and all disputes under this Agreement shall be resolved by final and binding arbitration pursuant to JAMS Rules of Arbitration. Such arbitration shall be conducted pursuant to the JAMS Streamlined Arbitration Rules & Procedures then in effect. The decision by the arbitrator shall be final and binding, may be confirmed by a court of competent jurisdiction and judgment shall be entered thereon. The arbitration shall be conducted in Orange County, California. This clause shall not preclude Parties from seeking provisional remedies in aid of arbitration (e.g., to compel arbitration) or from seeking equitable or provisional relief from a court of competent jurisdiction.

c.    Confidentiality of Proceedings. The Parties agree that any arbitration proceedings hereunder will be treated as the Confidential Information of both Parties and that the existence of the proceeding and any element of it (including, but not limited to, any pleadings, briefs or other documents submitted or exchanged and any testimony or other oral submissions and awards) will not be disclosed beyond the arbitration panel, except as may lawfully be required in judicial proceedings relating to the arbitration. In addition, if a Party's Confidential Information is required to be disclosed pursuant to an arbitration proceeding or other judicial proceeding, the Receiving Party shall treat the Disclosing Party's Confidential Information pursuant to the terms of Section 5 (Confidentiality).

d.    Attorneys' Fees and Costs. The prevailing Party in any arbitration or other legal proceeding shall be entitled to recover its reasonable fees and costs (including attorneys' fees) associated with the dispute from the other Party. The arbitrator shall determine who is the prevailing Party and award reasonable attorney fees.

e.    Choice of Law. This arbitration provision (including the validity and applicability of the agreement to arbitrate, the conduct of any arbitration of a Dispute, the enforcement of any arbitral award made hereunder and any other questions of arbitration law or procedure arising hereunder) and its interpretation, any and all Disputes between the Parties arising out of or relating to this Agreement in any manner, shall be governed by and construed in accordance with the substantive internal laws of the State of California, excluding its conflicts of law rules.

16.    Relationship of Parties. This Agreement does not create a fiduciary relationship, partnership, joint venture, or relationship of trust or agency between the Parties. Each Party shall have the obligation to supervise, manage, contract, direct, procure, perform or cause to be performed, all work to be performed under this Agreement and shall be liable for all acts or omissions of its employees and agents in performing their respective obligations hereunder. The Company understands and agrees that it has complete control over the operation and decision making of its business.

17.    Further Assurances. From time to time, each Party agrees to execute and deliver such additional documents and will provide such additional information and assistance as any Party may reasonably require to carry out the terms of this Agreement.

18.    Survival. The Parties agree that the provisions of this Agreement that by their terms or nature are intended to survive the termination of this Agreement shall survive such termination.

19.    No Publicity. Neither Party shall issue a press release announcing the Parties' business relationship, without the prior, written consent of the other Party as to the context and content of such materials or press release. Each Party shall have the right to terminate its consent at any time and for any reason by providing written notice to the other Party.

20.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which, when taken together, shall be one and the same document.

Exhibit 4
Page 62

EXHIBIT 7, PAGE 281

Each Party may rely upon a "pdf" counterpart of this Agreement signed by the other Party with the same effect as if such Party had received an original counterpart signed by such other Party.

[Signatures on the following page]

7

Exhibit 4
Page 63
EXHIBIT 7, PAGE 282

IN WITNESS WHEREOF, the Parties have executed this Debt Repayment Agreement to be effective as of the Effective Date.

**OXFORD KNOX, LLC**

By: _____

Name:  Rick R. Emmett

Title:  Manager/Secretary

**THE LITIGATION PRACTICE GROUP PC**

By: _____

Name:  DANIEL MARCH

Title:  MANAGING SHAREHOLDER

## SCHEDULE 1

### REPAYMENT SCHEDULE

Starting Balance:      $12,000,000.00
Annual Interest Rate:   10.0%
Repayment Period:    72 months
Start Date:         November 1, 2021

| Repayment Date | Repayment Installment | Remaining Balance |
|---|---|---|
| November 2021 | $757,454.09 | $11,334,950.40 |
| December 2021 | $0 | $11,431,219.84 |
| January 2022 | $629,090.35 | $10,896,899.08 |
| February 2022 | $357,142.30 | $10,620,609.71 |
| March 2022 | $0 | $10,343,421.67 |
| April 2022 | $200,000.00 | $10,226,792.26 |
| May 2022 | $200,000.00 | $10,111,951.32 |
| June 2022 | $200,000.00 | $9,993,419.41 |
| July 2022 | $200,000.00 | $9,876,596.40 |
| August 2022 | $200,000.00 | $9,758,781.19 |
| September 2022 | $200,000.00 | $9,637,346.52 |
| October 2022 | $200,000.00 | $9,517,499.32 |
| November 2022 | $200,000.00 | $9,394,081.51 |
| December 2022 | $200,000.00 | $9,272,168.23 |
| January 2023 | $200,000.00 | $9,149,219.52 |
| February 2023 | $200,000.00 | $9,017,871.07 |
| March 2023 | $200,000.00 | $8,892,762.58 |
| April 2023 | $200,000.00 | $8,764,209.94 |
| May 2023 | $200,000.00 | $8,636,947.06 |
| June 2023 | $200,000.00 | $8,506,291.83 |
| July 2023 | $200,000.00 | $8,376,838.42 |
| August 2023 | $200,000.00 | $8,246,285.54 |
| September 2023 | $200,000.00 | $8,112,419.40 |
| October 2023 | $200,000.00 | $7,979,620.77 |
| November 2023 | $200,000.00 | $7,843,562.86 |
| December 2023 | $200,000.00 | $7,708,480.79 |
| January 2024 | $200,000.00 | $7,572,251.45 |
| February 2024 | $200,000.00 | $7,428,805.70 |
| March 2024 | $200,000.00 | $7,290,201.04 |
| April 2024 | $200,000.00 | $7,148,476.66 |
| May 2024 | $200,000.00 | $7,007,491.12 |
| June 2024 | $200,000.00 | $6,863,443.11 |
| July 2024 | $200,000.00 | $6,720,036.73 |
| August 2024 | $200,000.00 | $6,575,412.39 |
| September 2024 | $200,000.00 | $6,431,306.41 |
| October 2024 | $200,000.00 | $6,287,644.25 |
| November 2024 | $200,000.00 | $6,137,679.68 |
| December 2024 | $200,000.00 | $5,988,109.29 |
| January 2025 | $200,000.00 | $5,837,268.58 |
| February 2025 | $200,000.00 | $5,680,513.38 |
| March 2025 | $200,000.00 | $5,527,060.20 |
| April 2025 | $200,000.00 | $5,370,844.26 |
| May 2025 | $200,000.00 | $5,214,761.02 |
| June 2025 | $200,000.00 | $5,055,978.23 |
| July 2025 | $200,000.00 | $4,897,220.79 |

Exhibit 4
Page 65
EXHIBIT 7, PAGE 284

| | | |
|---|---|---|
| August 2025 | $200,000.00 | $4,737,114.99 |
| September 2025 | $200,000.00 | $4,574,406.35 |
| October 2025 | $200,000.00 | $4,411,558.84 |
| November 2025 | $200,000.00 | $4,246,174.39 |
| December 2025 | $200,000.00 | $4,080,539.16 |
| January 2026 | $200,000.00 | $3,913,497.16 |
| February 2026 | $200,000.00 | $3,741,984.27 |
| March 2026 | $200,000.00 | $3,572,066.87 |
| April 2026 | $200,000.00 | $3,399,782.49 |
| May 2026 | $200,000.00 | $3,226,958.73 |
| June 2026 | $200,000.00 | $3,051,837.84 |
| July 2026 | $200,000.00 | $2,876,058.93 |
| August 2026 | $200,000.00 | $2,698,787.10 |
| September 2026 | $200,000.00 | $2,520,694.27 |
| October 2026 | $200,000.00 | $2,341,675.89 |
| November 2026 | $200,000.00 | $2,159,278.71 |
| December 2026 | $200,000.00 | $1,975,919.16 |
| January 2027 | $200,000.00 | $1,791,002.31 |
| February 2027 | $200,000.00 | $1,603,207.26 |
| March 2027 | $200,000.00 | $1,415,124.91 |
| April 2027 | $200,000.00 | $1,225,112.23 |
| May 2027 | $200,000.00 | $1,033,818.67 |
| June 2027 | $200,000.00 | $840,671.97 |
| July 2027 | $200,000.00 | $646,113.29 |
| August 2027 | $200,000.00 | $449,902.20 |
| September 2027 | $200,000.00 | $252,093.13 |
| October 2027 | $252,093.13 | $0.00 |

Exhibit 4
Page 66

**EXHIBIT 7, PAGE 285**

**Oxford Knox LLC**
**LPG Loan Calculations per agreement dated April 15, 2022**

November 1, 2021 - June 30, 2023

| From Date | To Date | Days | Total Pd | Principal | Interest | Beg Bal | Int | Annual | Per Day | Interest Amt | Ending Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/01/21 | | | | | | $12,000,000.00 | | | | | $12,000,000.00 |
| (Per Schedule 1 of agreement dated 4/15/22) | | | | | | | | | | | |
| 11/01/21 | Payment | | $757,454.09 | $665,049.60 | $92,404.49 | | | | | | $11,334,950.40 |
| 01/01/22 | Payment | | $629,090.35 | $438,051.32 | $191,039.03 | | | | | | $10,896,899.08 |
| 02/01/22 | Payment | | $357,142.30 | $276,289.37 | $80,852.93 | | | | | | $10,620,609.71 |
| 03/01/22 | 03/11/23 | 375 | | | | | 10% | $1,062,060.97 | $2,909.76 | $1,091,158.53 | $11,711,768.24 |
| 03/11/23 | Notice of Default Balloon Payment | | | | | $10,000,000.00 | | | | | $21,711,768.24 |
| 03/11/23 | 06/30/23 | 111 | | | | | 10% | $2,171,176.82 | $5,948.43 | $660,275.69 | $22,372,043.93 |
| **Totals** | | | **$1,743,686.74** | **$1,379,390.29** | **$364,296.45** | **$22,000,000.00** | | | | **$1,751,434.22** | **$22,372,043.93** |

*7/20/2023  Updated/jaw*

Exhibit 4
Page 67
EXHIBIT 7, PAGE 286

# EXHIBIT 5

Exhibit 5
Page 68
EXHIBIT 7, PAGE 287

| Payee | Bank Name | Account Name | Account Number | Transaction Date | Payment | 90 Day Transfer |
|---|---|---|---|---|---|---|
| **LPG PC; Syed Gilani** | Chase | The Litigation Practice Group PC | X3158 | 2/11/2022 | $5,344.99 | N |
| **LPG PC; Syed Gilani** | Chase | The Litigation Practice Group PC | X3158 | 3/11/2022 | $190,271.26 | N |
| **LPG PC; Syed Gilani** | Chase | The Litigation Practice Group PC | X3158 | 4/19/2022 | $254,488.04 | N |
| **LPG PC; Syed Gilani** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 8/15/2022 | $2,638.06 | N |
| **LPG PC; Syed Gilani** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 9/2/2022 | $80,906.55 | N |
| **LPG PC; Syed Gilani** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 11/16/2022 | $84,078.06 | N |
| **LPG PC; Syed Gilani** | Bank of America | Vulcan Consulting Group LLC dba DRD | X9551 | 1/13/2023 | $78,910.81 | Y |
| | | | | **Total** | **$696,637.77** | |

Exhibit 5
Page 69

**EXHIBIT 7, PAGE 288**

**PROOF OF SERVICE**

I am over the age of 18 and not a party to this case. My business address is **655 W. Broadway, Suite 800, San Diego, California 92101.**

True and correct copies of the **TRUSTEE'S SECOND AMENDED COMPLAINT** will be served in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 13, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Leslie A Cohen -** leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com; bryn@lesliecohenlaw.com
- **Yosina M Lissebeck -** yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com; ayrton.celentino@dinsmore.com
- **Richard A Marshack (TR)  -** pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- **Tyler Powell  -** tyler.powell@dinsmore.com, lydia.tharp@dinsmore.com; wendy.yones@dinsmore.com
- **United States Trustee (SA) -** ustpregion16.sa.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**: On **August 13, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Scott C. Clarkson
United States Bankruptcy Court
Ronald Reagan Federal Building & Courthouse
411 West Fourth Street, Suite 5130/Room 5C
Santa Ana, CA 92701-4593

Bae Enterprises, Inc.
Attn: Cloud Peak Law LLC, Registered Agent
1095 Sugarview Drive, Suite 500
Sheridan, WY 82801

**3.  BY ELECTRONIC MAIL:** On **August 13, 2025**, I caused such documents described herein to be sent to the person(s) at the e-mail addresses listed below. I did not receive within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

David M. Goodrich, Esq. - dgoodrich@go2.law
Jeffrey I. Golden, Esq. - jgolden@go2.law
Anerio Altman, Esq. - aaltman@go2.law

**EXHIBIT 7, PAGE 289**

**4. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 13, 2025 | Wendy A.Yones | /s/ Wendy A. Yones |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**3070 Bristol St., Suite 640, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*):  **REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF DAVID M. GOODRICH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) **August 18, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;bryn@lesliecohenlaw.com
Yosina M Lissebeck    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;ayrton.celentino@dinsmore.com
Richard A Marshack (TR)    pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
Tyler Powell    tyler.powell@dinsmore.com, lydia.tharp@dinsmore.com;wendy.yones@dinsmore.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.    SERVED BY UNITED STATES MAIL**:
On (*date*) **August 18, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
411 W. 4th St., Ste 5130/Ctrm 5C
Santa Ana, CA  92701-4593

☐ Service information continued on attached page

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served)**:**    Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 18, 2025 | David M. Fitzgerald | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    **F 9013-3.1.PROOF.SERVICE**
0.0